**Marc Fishman**
3200 Netherland Avenue
Apartment G
Bronx, NY 10463
(914) 837 – 3209
Facsimile (347) 843 - 6894



Via Hand Delivery and Facsimile

March 3, 2020

Honorable Judge Nelson Roman
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: 19-cv-00265-NSR Civil Rights Case Fishman vs.
New Rochelle &
    Westchester County request for permission to file
summary judgement
    Based on recent ny state appeals decision

Dear Honorable Judge Roman:

Pursuant to your part rules and conversation with your
staff, am writing to request permission to file motion
for summary judgement in the above case against all
defendants.

The New York State appellate division second
department last Wednesday ruled that the order of
protection that I was falsely arrested  for allegedly
violating by going to the children's  house WITH THE
COURT ORDERED SUPERVISOR ON 12/15/18 FOR
SUPERVISED VISITATION  was subject to A CARVE
OUT provision for state court ordered visitation.  Am
attaching the order 2018-08743 decided 2/26/2020

under 2020 NY SLIP Op 01352, that states , "Further, the court issued an order of protection directing, inter alia, the father to stay away from the children, their home and their schools, EXCEPT for certain supervised visitation."

The police ignored my speech, traumatic brain injury, post concussion syndrome, hearing impairment, tinnitus and memory impairment during their questioning and denied me the opportunity to show them my visitation orders  specified in the orders of protection that had a carve out for visitation and instead rushed to arrest me without my aide or a speech interpreter present to help me communicate.  I attach the orders of protection dated August 29, 2017 and September 1, 2017 from the lower state court specifying to stay away from my children, "Except as provided by court order of custody and visitation."   I also attach the testimony of the  court ordered visitation provider  Ann  Elliot last month specifying that 12/15/18 was a prepaid, prescheduled and prearranged court ordered visit.

The police refused entry to the questioning room of my communications and American with disability act aide, Isabel Bolivar who also corroborated that 12/15/18 was a court ordered visit at trial.  The police instead directed my aide, Isabel Bolivar to drive the supervisor Ms. Elliot home to Manhattan instead of helping me communicate in complete, intentional, direct and blatant violation of the American with disabilities Act .  I communicated to the police that I was disabled and had brain injury and needed my communications aide/note taker to assist me.  I tried to show the police my brain injury and implant card for my neurostimulator but the police refused to view it or allow me to take it out from my wallet. The police knew I was very disabled because in their arrest report, officer Schlesinger stated he released me with $300 bail due to my "poor health."

Both Isabel Bolivar and Ann Elliot testified at trial that 12/15/18 was a court ordered supervised, prepaid, prearranged and prescheduled visit.

The alleged order of protection that the police stated I violated from June 27, 2017 was never served on me and the police knew this during the arrest/questioning. The police knew the order of protection was not served on me because I was already in county jail before court clerk Ed Edmeade allegedly prepared it. Please see the attached testimony of Judge Schauer's clerk, Ed Edmeade from 1/27/2020. When asked if I was served the order of protection by him in court, Ed Edmeade said "no." because I was already in jail. The police had the records of me being in jail on 6/27/17 and instead arrested me knowing that I had not received this alleged order of protection when I was in jail.

The county is liable for discrimination as Ed Edmeade works for the county and the district attorney, Anthony Scarpino maliciously prosecuted me knowing my orders of protection that I did receive had a carve out for supervised visitation on the arrest date in question.

Judge Zuckerman stated I could not be convicted of violating an order of protection when I did not set foot on my ex-wife's property(see transcript of Judge Zuckerman 1/27/20.) None of the order of protections had any distance to stay away from my ex-wifes house on them.

The ADA requires state officers including the police to provide meaningful communication including auxiliary aides to those with hearing and cognitive disabilities like me. The New Rochelle police purposely rushed an arrest, without reading Miranda and sent my disability aide and social worker home without assisting me.

Under Foley, 359 F. 3d at 928 I have shown I have been discriminated against by establishing, 1. I was a protected person under title two of the ADA, that 2. I was subject to discrimination by the state/city entity and 3. the discrimination was by reason of disability.

In case law Radaszewski v. Maram, 383 F. 3d 599,

607(7th circuit 2004) a plaintiff seeking to establish a section 504 violation must show that the state entity like the county or police took accepted Federal and or State Funds federal entities. The discriminated party must also show as I have that the discrimination was result of disability.

As the police allow aides for other people with disabilities in other cases to be questioned and assist their clients, the police discriminated against me by denying Isabel Bolivar access to me in the police questioning room to show and explain the orders she held for me during our visits.

As police officer Schlesinger and his supervising lieutenant/chief of police denied access to my aide to be questioned or assist me with disability communication in questioning on 12/15/18, but allowed other parties during arrest to have their counsel of ada aide present, the state willfully discriminated against me for my disabilities.

Said discrimination was solely result of disability see Washington v. Indiana High school Athletic Association Inc,., 181 F 3d 840, 845 (7th circuit 1999). By administrating police officer Schlesinger, and police chief ignoring the law on ADA reasonable accommodations for the disabled, Administrator Schlesinger/police chief willfully interfered with my civil rights and rights to court ordered visitation allowed in the orders of protection per the New York State appellate division.

Administrators Police Officer Schlesinger, his police chief and his lieutenant violated attorney general regulation ADA enforcement regulation 28 CFR 35.160. All these administrators acted with deliberate intent to deny me the accommodations of auxiliary aides and services for meaningful access to the police station, police questioning and meaningful communications. By ignoring my aide or need for a note taker/interpreter during the questioning/arrest these administrators acted with deliberate indifference by willfully denying the accommodations

that could have easily been granted. This constitutes disability discrimination in Duvall , 260 F. 3d at 1138-39; and Barber, 562 F. 3d at 1229.

Under attorney general regulation 28 CFR 35.160, " A State entity (including the police, county and city) shall take appropriate steps to ensure that communications with applicants, members of the public with disabilities are AS EFFECTIVE AS COMMUNICATIONS WITH OTHERS." Under 28 CFR 35.160 it states, " A state entity shall furnish appropriate auxiliary aids (including real-time computer-aided transcription services,  a note taker, or aid/interpreter during questioning/arrest.) For those like me with traumatic brain injury, these services where necessary to afford individuals with disabilities, including applicants, participants, and members of the public an equal opportunity to participate in and enjoy the benefits of a service, program, or activity of a state entity.

Numerous Studies show that closed captioned and use of interpreters/aides helps those with learning disabilities like traumatic brain injury and post concussion syndrome.  CART Real time transcripts and Closed captioning/note taker/interpreter or aide, help the disabled like me and assist to provide meaningful communication in the police questioning room.  The Supreme Court mandated "Meaningful access and Communication" for the disabled in the decision in Tennessee versus Lane 504 US 509 in 2004.

No where in the opposing state attorneys papers does it dispute that I have a hearing disability called tinnitus , a brain injury called traumatic brain injury and post concussion syndrome and occipital neuralgia.  My neurostimulator stimulation cord implant runs within inches of the ear and sometimes effects my hearing.  The ringing in my ear from tinnitus affects my hearing and communication. Administrative Police officer and his supervisors could have granted this request for aide to be in questioning as my aide was already present and offered to attend the questioning with me.

The police officer acted with deliberate indifference and denied the aide access and sent her elsewhere instead of allowing her to help me with meaningful communications. The police simply chose not to accommodate me and to willfully discriminate against me.

This Federal Court needs to please support ADA/Rehabilitation Act and force the state court to comply with accommodations for disabilities including hearing and cognitive impairments like I have. Without Federal enforcement and protection of ADA, New York police administrators will continue to violate the law with multiple disabled people like others and me.

As the Federal Court is aware I have numerous qualified ADA disabilities including Tinnitus, Traumatic Brain Injury, Occipital Neuralgia, TMJ, Peripheral Neuropathy, Sever Obstructive Sleep apnea, Cubital Tunnel Syndrome and Post Concussion Syndrome. These "qualified disabilities" effect the major bodily functions of but not limited to hearing, learning, sleeping, remembering, eating, breathing, use of arm, organizing and writing. The police and county/city need to accommodate, and not discriminate.

New York police chiefs and state district attorneys and county administrators are regularly discriminating and Federal enforcement is the only effective means to make meaningful change.

I pray the court will allow me to file for summary judgment.
Thank you for your assistance.

Very Truly Yours,

Marc Fishman
Qualified Ada Disabled Litigant, Pro se
Enclosures

| Matter of Solomon v Fishman |
| --- |
| 2020 NY Slip Op 01352 |
| Decided on February 26, 2020 |
| Appellate Division, Second Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This opinion is uncorrected and subject to revision before publication in the Official Reports. |

Decided on February 26, 2020 SUPREME COURT OF THE STATE OF NEW YORK Appellate Division, Second Judicial Department
REINALDO E. RIVERA, J.P.
RUTH C. BALKIN
JOHN M. LEVENTHAL
PAUL WOOTEN, JJ.

<u>2018-08743</u>
<u>2018-08934</u>
(Docket Nos. V-8186-14/15B/17P, V-8187-14/15B/17P, V-8188-14/15B/17P, V-8189-14/15B/17P)

[*1]In the Matter of Jennifer Solomon, respondent,

v

Marc Fishman, appellant. (Proceeding No. 1.)


In the Matter of Marc Fishman, appellant,

v

**Jennifer Solomon, respondent. (Proceeding No. 2.)**

Del Atwell, East Hampton, NY, for appellant.

Legal Services of the Hudson Valley, White Plains, NY (Nicole E. Feit of counsel), for respondent.

Kathleen M. Hannon, Scarsdale, NY, attorney for the children.

DECISION & ORDER

In related proceedings pursuant to Family Court Act article 6, the father appeals from (1) an order of fact-finding of the Family Court, Westchester County (Michelle I. Schauer, J.), dated June 13, 2018, and (2) an order of protection of the same court, also dated June 13, 2018. The order of fact-finding, after a hearing, granted the mother's petition to modify the parties' so-ordered agreement dated May 5, 2014, so as to award her sole legal and residential custody of the parties' children, and denied the father's cross petition to enforce that agreement. The order of protection, inter alia, directed the father to stay away from the children, their home, and their schools, except for certain supervised parental access, until and including June 13, 2019.

ORDERED that the order of fact-finding is affirmed, without costs or disbursements; and it is further,

ORDERED that the appeal from the order of protection is dismissed as academic, without costs or disbursements.

The parties were divorced in 2012, and are the parents of four children. On May 5, 2014, the parties entered into a so-ordered agreement providing, inter alia, for joint legal custody of the children, with the mother having physical custody and final decision-making power, and the father having alternate weekend and midweek parental access with the children (hereinafter the May 2014 agreement). Thereafter, the mother filed certain petitions, including a family offense petition against the father, and the Family Court entered temporary orders of protection and interim parental access orders. In 2015, the mother filed a petition to modify the May 2014 agreement, so as to award her sole legal and residential custody of the children. The father cross-petitioned to enforce the May [*2]2014 agreement. After a fact-finding hearing, the court granted the mother's petition and denied the father's cross petition. Further, the court issued an order of protection directing, inter alia, the father to stay away from the children, their home, and their schools, except for certain supervised parental access, until and including June 13, 2019.

The order of protection expired by its own terms on June 13, 2019, and the determination of the appeal from that order would, under the facts of this case, have no direct effect upon the parties (*see Matter of Linda F. [Jose F.], 119 AD3d 944*, 945). Further, under the facts of this case, the issuance of that order of protection did not constitute a "permanent and significant stigma which might indirectly affect the [father's] status in potential future proceedings" (*Matter of McClure v McClure*, 176 AD2d 325, 326 [internal quotation marks omitted]; *see Matter of Melikishvili v Grigolava, 20 AD3d 569*, 570). Accordingly, we dismiss the appeal from the order of protection as academic.

" Modification of an existing court-sanctioned custody or [parental access] arrangement is permissible only upon a showing that there has been a change in circumstances such that a modification is necessary to ensure the continued best interests and welfare of the child[ren]'" (*Matter of Spencer v Killoran, 147 AD3d 862*, 863, quoting *Matter of O'Shea v Parker, 116 AD3d 1051*, 1051; *see Matter of Lewis-*

_Daniel v Daniel,_ 176 AD3d 940). " [I]nasmuch as custody determinations turn in large part on assessments of the credibility, character, temperament, and sincerity of the parties, the [court's] determination should be disturbed only if it lacks a sound and substantial basis in the record'" (_Bondarev v Bondarev,_ 152 AD3d 482, 482, quoting _Matter of Bacchi v Clancy,_ 101 AD3d 993, 993).

Here, the Family Court's determination that there had been a change in circumstances requiring a transfer of legal custody is supported by a sound and substantial basis in the record (_see Matter of Lewis-Daniel v Daniel_, 176 AD3d at 940; _Bondarev v Bondarev_, 152 AD3d at 482). Moreover, the court's determination that an award of sole legal and residential custody to the mother would be in the children's best interests is supported by a sound and substantial basis in the record (_see Bondarev v Bondarev_, 152 AD3d at 482). The record demonstrates that certain behavior by the father has resulted in both fear and anxiety in the children. Moreover, the parties' relationship deteriorated after they entered into the May 2014 agreement. Therefore, we agree with the court's determination granting the mother's petition so as to award her sole legal and residential custody of the children, and denying the father's cross petition.

The father's remaining contentions are without merit.

RIVERA, J.P., BALKIN, LEVENTHAL and WOOTEN, JJ., concur.

2018-08743 DECISION & ORDER ON MOTION

2018-08934

In the Matter of Jennifer Solomon, respondent,

v Marc Fishman, appellant.

(Proceeding No. 1)

In the Matter of Marc Fishman, appellant,

v Jennifer Solomon, respondent.

(Proceeding No. 2)

(Docket Nos. V-8186-14/15B/17P, V-8187-14/15B/17P,

V-8188-14/15B/17P, V-8189-14/15B/17P)

Motion by the appellant to strike the brief of the attorney for the children on the ground that the brief refers to matter dehors the record. By decision and order on motion of this [*3]Court dated December 4, 2019, inter alia, the motion was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the submission of the appeals, it is

ORDERED that the motion is granted to the extent that the last paragraph on page 14 of the brief of the attorney for the children is stricken and has not been considered on the appeals; and it is further,

ORDERED that the motion is otherwise denied.

RIVERA, J.P., BALKIN, LEVENTHAL and WOOTEN, JJ., concur.

ENTER:

Aprilanne Agostino

Clerk of the Court

NOTICE OF ENTRY

F.C.A §§ 430, 550, 655, 828 &amp; 1029

GF5 12/2013

PLEASE TAKE NOTICE that the within is a true copy of an order entered in the office of the Clerk of the Family Court of the State of New York in the County of Westchester.

ORI No:      NY059023J

Order No:    2017-005255   Date: ........ 8/29/17

NYSID No:    _____

_Chief Clerk of the Court_

Order Distributed  ☑P ☑R-ATY
☐DSS/SCU ☑R ☑B-ATY
☐Other ☐C-ATY ☐M

At a term of the Family Court of the State of New York, held in and for the County of Westchester, at Yonkers Family Court 131 Warburton Avenue, Yonkers, NY 10701, on August 29, 2017

PRESENT: Honorable Michelle I. Schauer

In the Matter of a CUSTODY/VISITATION Proceeding

Jennifer S Solomon (DOB: 12/24/1974),
　　　　　　Petitioner

- against -

Marc H Fishman (DOB: 08/21/1972),
　　　　　　Respondent

File #    131794

Docket #   V-08189-14/15B
　　　　　V-08186-14/15B
　　　　　V-08187-14/15B
　　　　　V-08188-14/15B

Temporary Order of Protection

Both Parties Present in Court

**NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.**

A petition under Article 6 of the Family Court Act, having been filed on March 09, 2015 in this Court and good cause having been shown, and Marc H Fishman having been present in Court and advised of the issuance and contents of this Order.

　　NOW, THEREFORE, IT IS HEREBY ORDERED that Marc H Fishman (DOB:08/21/1972) observe the following conditions of behavior:

[01] Stay away from:

[A] Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008) EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

[B] the home of Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

[C] the school of Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008) EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

GF-5 Page 2
V-08186-14/15B, V-08187-14/15B, V-08188-14/15B, V-08189-14/15B
2017-005255

[99] Observe such other conditions as are necessary to further the purposes of protection: Marc H Fishman (DOB: 08/21/1972) SHALL HAVE NO GIFTS SENT TO THE CHILDREN EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

**It is further ordered** that this temporary order of protection shall remain in force until and including September 01, 2017, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

Dated:    August 29, 2017                         ENTER



Honorable Michelle I. Schauer

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**
[x] Party against whom order was issued was advised in Court of issuance and contents of Order
[x] Order personally served in Court upon party against whom order was issued
[ ] Service directed by other means[specify]: _____
[ ] [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]:
[ ] Warrant issued for party against whom order was issued[specify date]: _____
[ ] ADDITIONAL SERVICE INFORMATION [specify]: _____

CA §§ 430, 550, 655, 8... a true copy of an order entered in the office of the Clerk of the Family County of Westchester.

GF5 12/2013

**ORI No:** NY059023J Date: ..................... 9/11/7
**Order No:** 2017-005324 Jms H Fisher
**NYSID No:** Chief Clerk of the Court

Order
Distributed
☐ DSS/SCU
☐ OTHER ..........

☐ P   ☐ P-ATY
☐ R   ☐ R-ATY
☐ C-ATY
☐ M

At a term of the Family Court of the State of New York, held in and for the County of Westchester, at Yonkers Family Court 131 Warburton Avenue, Yonkers, NY 10701, on September 01, 2017

**PRESENT: Honorable Michelle I. Schauer**

In the Matter of a CUSTODY/VISITATION Proceeding

Jennifer S Solomon (DOB: 12/24/1974),
            Petitioner

        - against -

Marc H Fishman (DOB: 08/21/1972),
            Respondent

**File #**      131794
**Docket #**    V-08188-14/15B
                V-08186-14/15B
                V-08187-14/15B
                V-08189-14/15B

**Temporary Order of Protection**

**Both Parties Present in Court**

**NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.**

A petition under Article 6 of the Family Court Act, having been filed on March 09, 2015 in this Court and good cause having been shown, and Marc H Fishman having been present in Court and advised of the issuance and contents of this Order.

    **NOW, THEREFORE, IT IS HEREBY ORDERED** that Marc H Fishman (DOB:08/21/1972) observe the following conditions of behavior:

[01] Stay away from:

[A]  Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008) EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

[B]  the home of Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

[C]  the school of Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008) EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Aidan S Fishman (DOB: 07/14/2008), Joanna D Fishman (DOB: 02/09/2004), Jonah S Fishman (DOB: 11/20/2005) and Skye A Fishman (DOB: 07/14/2008);

GF-5 Page 2
V-08186-14/15B, V-08187-14/15B, V-08188-14/15B, V-08189-14/15B
2017-005324

[99] Observe such other conditions as are necessary to further the purposes of protection: Marc H Fishman (DOB: 08/21/1972) SHALL HAVE NO GIFTS SENT TO THE CHILDREN EXCEPT AS PROVIDED BY COURT ORDER OF CUSTODY AND VISITATION.;

**It is further ordered** that this temporary order of protection shall remain in force until and including September 12, 2017, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

**Dated:**    September 01, 2017                    **ENTER**

Honorable Michelle I. Schauer

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**

[x] Party against whom order was issued was advised in Court of issuance and contents of Order

[x] Order personally served in Court upon party against whom order was issued

[ ] Service directed by other means[specify]: _____

[ ] [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]: _____

[ ] Warrant issued for party against whom order was issued[specify date]: _____

[ ] ADDITIONAL SERVICE INFORMATION [specify]: _____



**U.S. Department of Justice**
Civil Rights Division

# Examples and Resources to Support Criminal Justice Entities in Compliance with Title II of the Americans with Disabilities Act

*The legal requirements this guidance discusses are restatements of existing requirements from Title II of the Americans with Disabilities Act, 42 USC 12131-12134, and its implementing regulations at 28 CFR pt. 35. If you have questions about these requirements, please contact the Civil Rights Division's ADA Information Line.*

Title II of the Americans with Disabilities Act (ADA) protects individuals with mental health disabilities and intellectual and developmental disabilities (I/DD) from discrimination within the criminal justice system. Pursuant to the ADA, state and local government criminal justice entities—including police, courts, prosecutors, public defense attorneys, jails, juvenile justice, and corrections agencies—must ensure that people with mental health disabilities or I/DD are treated equally in the criminal justice system and afford them equal opportunity to benefit from safe, inclusive communities. Nondiscrimination requirements, such as providing reasonable modifications to policies, practices, and procedures and taking appropriate steps to communicate effectively with people with disabilities, also support the goals of ensuring public safety, promoting public welfare, and avoiding unnecessary criminal justice involvement for people with disabilities.

The ADA also requires State and local governments to avoid discriminating against people with mental health disabilities or I/DD in administering services, and to serve people with these disabilities in the most integrated setting appropriate to their needs. Effective implementation of these requirements will help people with these disabilities receive the community-based services they need. Furthermore, increased collaboration and improved resource allocation between criminal justice agencies and disability service systems can also help reduce the social, vocational, economic, and educational disparities people with disabilities experience.

This document highlights opportunities to increase ADA compliance and positive community outcomes through improved policies, effective training, use of data, resource allocation, and collaboration between criminal justice entities and disability service systems. The Department of Justice hopes this technical assistance will promote the safety and welfare of both individuals with disabilities and criminal justice personnel.

## I. General ADA Requirements

Title II of the ADA provides that no qualified individual with a disability shall, because of that disability, be excluded from participation in, denied the benefits of, or subjected to discrimination in the services, programs, and activities of all state or local government entities, including law enforcement, corrections, and justice

```
 1   SUPERIOR COURT OF THE STATE OF NEW YORK
     COUNTY OF WESTCHESTER - CRIMINAL TERM - PART DZ
 2   ----------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
                    -against-                    Indict#6293M/2018
 4
     MARC FISHMAN,
 5
                              Defendant
 6   ----------------------------------------x
     TRIAL (Cont'd)
 7
                              Westchester County Courthouse
 8                            111 Dr. M.L.K., Jr. Blvd.
                              White Plains, New York 10601
 9
                              January 27, 2020
10
     B E F O R E:
11
         HONORABLE DAVID S. ZUCKERMAN,
12                County Court Judge

13   A P P E A R A N C E S:

14           OFFICE OF ANTHONY A. SCARPINO, JR., ESQ.
             DISTRICT ATTORNEY - WESTCHESTER COUNTY
15               For the People
             BY:  AMIT PARAB, ESQ.,
16               Assistant District Attorney

17           JOSEPH G. GOUBEAUD, ESQ.,
                 For the Defendant
18               22 West First Street - Suite #502
                 Mount Vernon, New York 10550
19

20

21                           Nicole Ameneiros
                             Senior Court Reporter
22

23

24

25
```

Cross - Ann Elliott - People                    18

1          THE COURT:  Don't.  Please don't answer that,

2     ma'am.

3          THE WITNESS:  Oh, sorry.

4     Q    Now, it is your testimony that you had worked out on

5     December 15th a partial visit, so to speak; is that correct?

6     A    Correct, yes.

7     Q    Now, if I told you Ms. Solomon testified that the

8     entire visit was canceled that day would she be wrong?

9     A    Correct.

10    Q    Your testimony was, I believe, that you stopped a

11    couple of houses away when you got to the area in New Rochelle;

12    is that correct?

13    A    Yes.

14    Q    And that you saw Ms. Solomon outside already?

15    A    Yes, I did.

16    Q    Now, if she testified that you came to the door and

17    rang the bell, that was the first contact that she had with you,

18    would she be wrong?

19          MR. PARAB:  Objection.

20          THE COURT:  Sustained.

21    Q    Approximately how long were you talking with

22    Ms. Solomon on the front porch?

23    A    It was probably anywhere from 5 to 10 minutes.

24    Q    Okay.  And it was some time towards the end of that

25    stretch that the car drove past the house?

1    court at the time the order was issued.

2                    MR. PARAB:  Judge, I have no further questions of

3        this witness.

4                    THE COURT:  Whenever you're ready, Mr. Goubeaud,

5        you may cross-examine.

6                    MR. GOUBEAUD:  Thank you.

7                    THE COURT:  You're welcome.

8    CROSS-EXAMINATION

9    BY MR. GOUBEAUD:

10       Q    Mr. Edmead, you indicated it wasn't actually

11   distributed to Mr. Fishman in the courtroom; is that correct?

12       A    Yeah, I said --

13       Q    I'm sorry.  Let me rephrase the question.

14            That order that is in front of you that you referred to

15   today --

16       A    Yes.

17       Q    -- it was not -- a copy of that order wasn't given to

18   Mr. Fishman in the courtroom; is that correct?

19       A    That is correct.

20       Q    Is that because he was taken from the courtroom and put

21   into custody right away?

22       A    Yes, he was.

23       Q    And did you personally give him a copy of that order at

24   a later time?

25       A    I handed it to the court officers who where responsible

Cross - Edward Edmead - People                    30

1    for securing him in the holding pen that day.

2        Q     So the fact that it has that little box checked up top

3    that says it was distributed to him, it wasn't actually given to

4    him that particular day, correct?

5        A     It indicates who was present.

6        Q     I understand that.  And that's over on the right-hand

7    side it indicates who was present in court?

8        A     Correct.

9        Q     But then there's a little spot on the top of that order

10   which indicates that it was distributed, correct?

11       A     Yes.

12       Q     And the box that says respondent, who would have been

13   Mr. Fishman, is checked as well, correct?

14       A     Yes.

15       Q     But it's fair to say that you did not -- excuse me --

16   specifically give it to him; is that correct?

17       A     Personally, no.  I did not personally hand it to him.

18       Q     Thank you.

19             Is it fair to say that order refers to a September 2014

20   petition?

21       A     I think this order refers to a violation from 2014 on

22   top of an underlying petition for a family offense.  Looking at

23   the docket numbers it's a supplemental docket number which

24   indicates it was something that was filed after the initial

25   family offense petition.  In fact, it refers to several

1    on her property, had no actual contact with him, Judge, had

2    no communication with her at that location, and I believe

3    that there is a plausible explanation for him actually being

4    in the neighborhood.  So I would argue that the People have

5    failed to make out a prima facie case and would ask the

6    Court to dismiss at this point in time.

7              THE COURT:  Thank you, Mr. Goubeaud.

8              Before I hear from the People, let me just place on

9    the record a couple of things.  First, People's Exhibit 1,

10   which is the order of protection that was issued by Judge

11   Schauer that the defendant's alleged to have violated here,

12   does not set forth any distances with respect to being --

13   withdrawn.  With respect to staying away from the home of

14   Ms. Solomon.

15             Second, the accusatory instrument here charges the

16   defendant with violating that order of protection by going,

17   and I think I'm quoting, quote, to the victim's home in

18   violation of the duly issued order of protection, end quote.

19             If I'm hearing you correctly, Mr. Goubeaud, your

20   motion is that the People failed to make out the element of

21   violating the order in that the defendant did not go on the

22   property, across the property line and therefore did not go

23   to the home, or put another way, did not violate the

24   provision of the order that directs him to stay away from

25   the home.

1          MR. GOUBEAUD:  That is correct, Judge.

2          THE COURT:  Okay.

3          MR. GOUBEAUD:  That is the basis for my arguments

4     with respect to the proof that has been presented.

5          THE COURT:  Thank you.

6          Do you want to be heard on any of this, Mr. Parab?

7          MR. PARAB:  No.  I believe that the People have

8     established, based upon the evidence in the light most

9     favorable to the People, that we do have a prima facie case.

10    The evidence shows that the defendant went near or to the

11    home of the protected party in violation of the order of

12    protection.

13          THE COURT:  I agree that in terms of the motion I

14    do have to assess the evidence in the light most favorable

15    to the People, but on the other hand, I don't think there's

16    any dispute, factually or evidentiary wise, the defendant

17    did not cross the threshold, was not on the property itself,

18    unless someone wants to tell me otherwise.  Do you,

19    Mr. Parab?

20          MR. PARAB:  No, I agree with that as well.

21          THE COURT:  This Court is troubled on the issue

22    that I just identified; the failure of the order of

23    protection to set forth a distance at all, which means we're

24    left merely with the language, quote, stay away from -- it's

25    Paragraph B -- the home of Jennifer Solomon, end quote.

1          In addition, case law is very clear that in terms

2     of evaluating or interpreting an order any ambiguity in the

3     order must be resolved in favor of the defendant.   The Court

4     of Appeals so held in the matter of Department of

5     Environmental Protection of the City of New York versus

6     Department of Environmental Conservation of the State of New

7     York under NY2d.   That's also set forth by the Second

8     Department in the matter of Holtzman versus Beatty,

9     B-E-A-T-T-Y, 97 AD2d 79; as well as again by the Second

10    Department years later in People versus Roblee, R-O-B-L-E-E,

11    70 AD3d 225 [2009].

12          In contrast, in People versus Guernsey,

13    G-U-E-R-N-S-E-Y, 37 AD3d 989 [2007], the Third Department

14    addressed a stay away provision that also contained

15    additional language that required the defendant to stay at

16    least 250 feet away from his ex-wife to be compared with,

17    for example, People versus Gunatilaka, G-U-N-A-T-I-L-A-K-A,

18    156 Misc.2d 958.   That's a decision by Judge Goldberg, when

19    she was sitting in New York City Criminal Court, where she

20    specifically held that the allegations that the defendant

21    was across the street from the protected party's place of

22    business is insufficient to show that the order was

23    violated.   That case is cited with approval by the Second

24    Department in People versus McDonald, M-C-D-O-N-A-L-D, 287

25    AD2d 655 [2001].



1          Lastly, the Appellate Term has weighed in on this

2     as well in People versus Ali, A-L-I.  It's found at 63

3     Misc.3d 70 from about seven months ago.  In Ali, the

4     prosecution established that the defendant had been standing

5     across the street from the protected party's residence for a

6     period of 10 to 15 minutes.  The Court found that that was

7     not against the weight of the evidence and the conviction

8     for attempted criminal contempt in the second degree.  No

9     one has asked me to consider that count.

10          So, as I said, I'm troubled by the combination of

11     the failure of this order of protection to give a distance

12     from the home of the protected party that's set forth in the

13     order itself, coupled with there's no evidence that the

14     defendant actually was on the property.  I don't think

15     there's any dispute about that.

16               MR. PARAB:  Judge?

17               THE COURT:  Yes, sir.

18               MR. PARAB:  I would argue that the statements that

19     the defendant made to Ms. Elliott showed his disregard for

20     the court order, because clearly his statements to Ann

21     Elliott showed a disregard about the order of protection.

22     He was told that he had to stay away from the home of and

23     then obviously his sentiments were, I will see -- I forgot

24     exactly what the quote was, but he said something in respect

25     to nothing will prevent him from seeing his children.  So I

1   would argue that those statements, coupled with the evidence

2   shows his disregard for the order of protection that was

3   issued out of Yonkers Family Court.

4            THE COURT:  I understand.  Would you agree with me,

5   Mr. Parab, however, that one of the elements here is the

6   defendant has to actually violate the order, or in this

7   case, what I'm wrangling with is whether the defendant did

8   actually violate the order in as much as he never went on

9   the property, or in this case what we call the home of the

10  complainant, Ms. Solomon?

11           MR. PARAB:  I understand the Court's dilemma in

12  terms --

13           THE COURT:  I want to give you a chance to flesh

14  that out.  As long as you want to speak, I'll listen.

15           While what you just said may be relevant to intent

16  or state of mind, the actus reus does require that he

17  actually go onto the property, unless the order says

18  otherwise.  You can correct me if I'm wrong, sir.

19           MR. PARAB:  Well, I'm also looking at the decision

20  and order when the judge specifies exactly how the children

21  would be dropped off and picked up.

22           MR. GOUBEAUD:  Judge, I'm -- I would argue again,

23  Judge, that's not the order we're here for.  We're here for

24  one specific order.

25           MR. PARAB:  Well, if we're looking at the judge's