UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x
MARC FISHMAN, INDIVIDUALLY, and on behalf of all others :
similarly situated,                                                                    :
                                                                                              :    Docket No. 19 CV 265
                                                Plaintiff,                              :    (NSR)
                                                                                              :
                        -against-                                                      :
                                                                                              :
CITY OF NEW ROCHELLE, New Rochelle Police Department,  :
LANE SCHLESINGER, individually and in his administrative      :
and official capacity as a police officer #1058 employed by the   :
City of New Rochelle, JOSEPH F. SCHALLER, individually, and :
in his administrative and official capacity as a police                  :
commissioner/officer employed by the City of New Rochelle, and :
W. JOSEPH, individually, and in his administrative and official     :
capacity as a police officer/detective #18 employed by the City of :
New Rochelle, and WESTCHESTER COUNTY,                            :
                                                                                              :
                                                Defendants.                           :
------------------------------------------------------------------------------- x


## THE CITY DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS


WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for City Defendants
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000

8353042v.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

PERTINENT FACTS AND PROCEDURAL HISTORY ................................................... 2

    A.    PERTINENT FACTS ......................................................................... 2

    B.    PROCEDURAL HISTORY ................................................................ 7

ARGUMENT ....................................................................................................................... 7

    POINT I    THIS COURT MAY PROPERLY CONSIDER THE ORDER OF PROTECTION AND THE RELATED POLICE REPORTS ON THE MOTION TO DISMISS .................................................. 7

    POINT II    THE INDIVIDUAL CITY DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION .................. 8

    POINT III    DEFENDANTS MYRON JOSEPH AND JOSEPH F. SCHALLER SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT ............................................................... 9

    POINT IV    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A VIOLATION OF TITLE II OF THE ADA ACT OR SECTION 504 OF THE REHABILITATION ACT ................................................. 11

        A.    THE ADA TITLE II CLAIM FAILS ............................................ 13

        B.    THE REHABILITATION ACT CLAIM FAILS ......................... 13

    POINT V    PLAINTIFF'S FIRST-AMENDMENT RETALIATION CLAIM FAILS ................................................................................ 14

    POINT VI    PLAINTIFF'S SECTION 1983 FALSE ARREST CLAIM FAILS .......... 15

    POINT VII    PLAINTIFF'S COMMON-LAW CLAIMS FOR NEGLIGENCE, FALSE ARREST, AND MALICIOUS PROSECUTION FAIL .............. 19

    POINT VIII    PLAINTIFF'S COMMON-LAW CLAIM FOR MALICIOUS PROSECUTION ............................................................................... 20

CONCLUSION ................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amore v. Novarro,*
  624 F.3d 522 (2d Cir. 2010) ...................................................................................16

*Andino v. Fischer,*
  698 F. Supp. 2d 262 (S.D.N.Y. 2010) ....................................................................13

*Bernard v. United States,*
  25 F.3d 98 (2d Cir. 1994) .......................................................................................15

*Black v. Coughlin,*
  76 F.3d 72 (2d Cir. 1996) ..................................................................................10, 11

*Bonilla v. BOCES,*
  2010 U.S. Dist. LEXIS 91314 (W.D.N.Y. Sept. 2, 2010) ..................................12, 13

*Carthew v. County of Suffolk,*
  709 F. Supp.2d 188 (E.D.N.Y. 2010) ....................................................................18

*Colon v. City of New York,*
  60 N.Y.2d 78, 468 N.Y.S.2d 453 (1983) ...............................................................20

*Cornejo v. Bell,*
  592 F.3d 121 (2d Cir. 2010) ...................................................................................20

*Corsini v. Brodsky,*
  731 Fed. Appx. 15 (2d Cir. April 13, 2018) ...........................................................16

*Cox v. Warwick Valley Cent. School Dist.,*
  654 F.3d 267 (2d Cir. 2011) ...................................................................................14

*Davis v. Abrams,*
  2014 U.S. Dist. LEXIS 8742 (E.D.N.Y. Jan. 23, 2014) ...........................................8

*Devenpeck v. Alford,*
  543 U.S. 146 (2004) ................................................................................................15

*Dove v. Fordham Univ.,*
  56 F. Supp.2d 330 (S.D.N.Y. 1999) .......................................................................10

*E.L.A. v. Abbott House,*
  2018 U.S. Dist. LEXIS 52313 (S.D.N.Y. March 27, 2018) ......................................9

*Faruki v. The City of New York,*
  2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. March 30, 2012) .....................................19

*Fincher v. The County of Westchester,*
  979 F. Supp. 989 (S.D.N.Y. 1997) ........................................................................19

*Frank v. Sachem School Dist.,*
  84 F. Supp. 3d 172 (E.D.N.Y. 2015) .................................................................12, 13

*Garcia v. Does,*
  779 F.3d 84 (2d Cir. 2015) ....................................................................................16

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,*
  280 F.3d 98 (2d Cir. 2001) .................................................................................13, 14

*Gaston v. City of New York,*
  851 F. Supp. 2d 780 (S.D.N.Y. 2012) .....................................................................20

*Geldzahler v. New York Medical College,*
  663 F. Supp. 2d 379 (S.D.N.Y. 2009) .....................................................................14

*Gilfus v. Vargason,*
  2006 U.S. LEXIS 74037 (N.D.N.Y. Sept. 30, 2006).................................................10

*Glassman v. The City of New York,*
  2013 U.S. Dist. LEXIS 1170 (S.D.N.Y. Jan. 3, 2013) ............................................18

*Guo v. IBM 401(k) Plus Plan,*
  2016 U.S. Dist. LEXIS 126360 (S.D.N.Y. Sept. 15, 2016 .........................................7

*Hardy v. New York City Health & Hosps. Corp.,*
  164 F.3d 789 (2d Cir. 1999) ..................................................................................19

*Henrietta D. v. Bloomberg,*
  331 F.3d 261 (2d Cir. 2003) ..................................................................................12

*Jackson v. New York State Dep't of Labor,*
  709 F. Supp. 2d 218 (S.D.N.Y. 2010) ....................................................................14

*Johnson v. City of New York,*
  2010 U.S. Dist. LEXIS 55315 (S.D.N.Y. June 7, 2010) ..........................................21

*Kalyanaram v. American Ass'n of Univ. Professors at N.Y. Inst. of Techn., Inc.,*
  742 F.3d 42 (2d Cir. 2014) ..................................................................................7, 8

*Koltun v. Berry,*
  2013 U.S. Dist. LEXIS 102193 (S.D.N.Y. July 19, 2013) .........................................8

8345668v.1

*Leonard F. v. Israel Discount Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999) ........................................................................8

*Levantino v. Skala*,
    56 F. Supp. 3d 191 (E.D.N.Y. 2014) .......................................................10

*Liang v. City of New York*,
    2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. Sept. 24, 2013) .................8, 18

*Manganiello v. City of New York*,
    612 F.3d 149 (2d Cir. 2010) .....................................................................20

*Matthews v. City of New York*,
    779 F.3d 167 (2d Cir. 2015) .....................................................................14

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) .......................................................................8

*Mitchell v. City of New York*,
    841 F.3d 72 (2d Cir. 2016) .......................................................................15

*Moffitt v. Town of Brookfield*,
    950 F.2d 880 (2d Cir. 1991) .....................................................................10

*Monell v. New York State Dep't of Social Services*,
    436 U.S. 658 (1978)..................................................................................15

*Morabito v. Blum,*
    528 F. Supp. 252 (S.D.N.Y. 1981) ..........................................................10

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) ...............................................19

*Ortiz v. Red Hook Deli & Grocery 2015 Corp.,*
    2019 U.S. Dist. LEXIS 99567 (E.D.N.Y. June 12, 2019) ..........................9

*People v. Williams,*
    181 Misc.2d 415, 696 N.Y.S.2d 369 (N.Y. Crim. Ct. 1999) ...................18

*Powell v. National Bd. of Medical Examiners,*
    364 F.3d 79 (2d Cir. 2004) .........................................................11, 12, 14

*Read v. Town of Suffern Police Dep't,*
    2013 U.S. Dist. LEXIS 89189 (S.D.N.Y. June 25, 2013) ........................18

*Rothstein v. Carriere*,
    375 F.3d 275 (2d Cir. 2004) .....................................................................20

8345668v.1

*Savino v. City of New York*,
  331 F.2d 63 (2d Cir. 2003) ...................................................................................20, 21

*Scalericio-Isenberg v. Port Auth. of New York*,
  2018 U.S. Dist. LEXIS 55814 (S.D.N.Y. March 31, 2018) .......................................13

*Smith v. Westchester County*,
  769 F. Supp.2d 448 (S.D.N.Y. 2011) ..........................................................................8

*Stampf v. Long Island R.R. Co.*,
  761 F.3d 192 (2d Cir. 2014) ......................................................................................20

*Sutton ex. Rel Rose v. Wachovia Secs., LLC*,
  208 Fed. App. 27 (2d Cir. Dec. 7, 2006) .....................................................................8

*Sutton v. United Air Lines*,
  527 U.S. 471 (1999)....................................................................................................12

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*,
  534 U.S. 184 (2002)....................................................................................................13

*United States v. Scala*,
  388 F. Supp.2d 496, 401 (S.D.N.Y. 2005) .................................................................15

*Volpe v. Nassau County*,
  915 F. Supp.2d 284 (E.D.N.Y. 2013) .........................................................................10

*Weyant v. Okst*,
  101 F.3d 845 (2d Cir. 1996) ......................................................................................15

*White v. Averill Park Cent. School Dist.*,
  195 Misc.2d 409, 759 N.Y.S.2d 641 (Sup. Ct. Rensselaer Co. 2003).......................19

*Williams v. Suffolk Cty.*,
  284 F. Supp. 3d 275 (E.D.N.Y. 2018) ........................................................................18

*Wright v. Smith*,
  21 F.3d 496 (2d Cir. 1994) ........................................................................................10

*Zalaski v. City of Hartford*,
  723 F.3d 382 (2d Cir. 2013) ......................................................................................16

**Statutes**

29 C.F.R. §1530.2(i) ...........................................................................................................13

29 U.S.C. §794 .....................................................................................................................6

29 U.S.C. §794(a) ...............................................................................................................11

42 U.S.C. §12131(2) .................................................................................................11

42 U.S.C. §12132 .....................................................................................................11

N.Y. Gen. Mun. Law § 50-e ...............................................................................19, 20

N.Y. Penal Law §215.50 ..........................................................................................16

N.Y. Penal Law §215.50(3) ......................................................................................16

Rehabilitation Act of 1973 § 504 .........................................................1, 5, 6, 11, 12

Section 1983...................................................................................1, 6, 9, 10, 15

**Rules**

CPLR 308(2) .........................................................................................................8, 9

Fed. R. Civ. P. 4(e)(2)(C) ..........................................................................................9

N.Y.C.P.L.R. 308(2) .................................................................................................9

Rule 12(b)(6)............................................................................................................13

8345668v.1

**Introduction**

Defendants City of New Rochelle ("City"), Police Officer Lane Schlesinger,

Commissioner Joseph F. Schaller, and Sgt. Myron W. Joseph (s/h/a "W. Joseph") (collectively,

the "City Defendants"), respectfully submit this memorandum of law in support of their motion

to dismiss the complaint of plaintiff Marc Fishman ("Mr. Fishman" or "plaintiff").

**Preliminary Statement**

This is a civil rights case stemming from plaintiff's arrest by members of the New

Rochelle Police Department ("NRPD") on December 15, 2018.  Plaintiff was arrested and

charged with violating an order of protection issued in favor of his ex-wife and their four

children.  On January 27, 2020, plaintiff was convicted on the charge of criminal contempt (2d

degree).  His sentencing is currently scheduled for July 27, 2020.

Subsequent to his arrest, but prior to his conviction, plaintiff commenced the instant

action.  Plaintiff's central allegation is that he suffers from a qualified disability under the

Americans with Disabilities Act (ADA) and that his rights under that statute were violated by his

arrest.  Plaintiff's complaint alleges seven (7) claims for relief: (i) a violation of Title II of the

ADA (¶¶32-44); (ii) a violation of Section 504 of the Rehabilitation Act of 1973 (¶¶45-52); (iii)

a Section 1983 claim alleging, in effect, that he was arrested in retaliation for exercising his First

Amendment rights (¶¶53-59); (iv) a Section 1983 claim alleging false arrest (¶¶60-66); (v) a

common-law claim for negligence (¶¶67-68); (vi) a common-law claim for false arrest (¶¶69-

70); and (vii) a common-law claim for malicious prosecution (¶¶71-72).  As demonstrated

below, these claims cannot prevail on the facts alleged in the complaint and which this Court

may properly consider on this motion.  The City Defendants' motion should therefore be granted,

and this case dismissed as against them with prejudice.

-1-

**Pertinent Facts and Procedural History**

The pertinent facts set forth below are based on the allegations contained in plaintiff's complaint, as well as an Order of Protection and related police records referenced and/or integral to the allegations in the complaint. All exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba, Esq.

A.     Pertinent Facts

Mr. Fishman alleges that he is an individual with a qualified disability under the ADA by virtue of having Severe Obstructive Sleep Apnea, as well as additional conditions, including traumatic brain injury, occipital neuralgia, TMJ, post-concussion syndrome, peripheral neuropathy, tinnitus, speech impairment, disabilities from hernia surgery and cubital tunnel syndrome. Complaint (**Exhibit A**), at ¶¶1, 16, 20, 28.

On June 27, 2017, the Hon. Michelle I. Schauer, of the Westchester County Family Court, issued orders of protection against plaintiff Marc H. Fishman. Under these orders, Mr. Fishman was directed to stay away from and not have any communication or contact with his ex-wife, Jennifer S. Solomon. **Exhibit B** (orders of protection). In a subsequent order, issued June 13, 2018, Mr. Fishman was ordered, in addition, to stay away from his four minor children with Jennifer Solomon – A.S Fishman, J.D. Fishman, J.S. Fishman, and S.A. Fishman -- except for court-supervised visits. The orders of protection issued June 27, 2017 had two years terms that expired June 27, 2019; the order of protection issued June 13, 2018, had a one year term that expired June 13, 2019. *Id.*

On December 15, 2018, during the effective term of each order of protection, Police Officer Lane Schlesinger of the NRPD ("Officer Schlesinger") responded to Ms. Solomon's home, who stated that her ex-husband, Mr. Fishman, had just come to her residence in violation

- 2 -

of the orders. **Exhibit C** (Domestic Incident Report). Ms. Solomon explained that a visitation between Mr. Fishman and his children previously scheduled for December 15, 2018 had been cancelled due to a prior dispute, but that the social worker appointed to supervise visitations between Mr. Fishman and his children, a Ms. Elliot, nevertheless arrived at Ms. Solomon's home. *Id.* Ms. Elliot said that she was there on behalf of Mr. Fishman who was requesting to speak with and see the children. *Id.*

Ms. Solomon was taken aback by Ms. Elliot's appearance because the visit scheduled for that date had been cancelled. Ex. C (Domestic Incident Report). In any event, while Ms. Solomon was speaking with Ms. Elliot, she observed Mr. Fishman exit a car and attempt to contact her son. Mr. Fishman and Ms. Elliot then left the area in the same car, which was being driven by a second woman. *Id.*

While Officer Schlesinger was still at Ms. Solomon's residence learning of these facts, headquarters advised him that Mr. Fishman was at police headquarters. Ex. C (Domestic Incident Report). Officer Schlesinger responded to headquarters where he encountered Mr. Fishman, Ms. Elliot and the second woman, Ms. Bolivar. *Id.* Officer Schlesinger interviewed Ms. Elliot, who stated that she had advised Mr. Fishman that he was violating the order of protection by going to Ms. Solomon's residence. *Id.* Ms. Elliot stated further that she had advised Mr. Fishman against attempting to contact his children. *Id.* Ms. Elliot confirmed Ms. Solomon's statement that Mr. Fishman had attempted to contact/communicate with her son. *Id.* She also showed Officer Schlesinger a text message from Mr. Fishman which contained a screen shot of a text conversation, dated December 15, 2018, that he was having with one of his minor daughters. *Id.*

Based on the information obtained, it was determined there was probable cause to arrest

- 3 -

Mr. Fishman and charge him with violation of the orders of protection.  Ex. C (Domestic

Incident Report).  Mr. Fishman was read his Miranda rights at 12:05 p.m. on December 15, 2018.

**Exhibit D** (Miranda Card).  At 12:43 p.m., Mr. Fishman was charged with criminal contempt (2d

degree) for violating the Order of Protection.  **Exhibit E** (Booking Report).  Due to Mr.

Fishman's stated poor health and inability to drive, after he posted a bail of $300 he was released

to Ms. Bolivar, who was the driver of the car when plaintiff attempted to visit his wife's

residence, and assigned a return date of December 17, 2018.  *Id*. Three days later, Ms. Solomon

signed a written statement confirming the information that she had provided to Officer

Schlesinger, and which Officer Schlesinger summarized in his police report.  **Exhibit F** (J.

Solomon Statement).

      In his complaint, plaintiff claims that he identified himself as "cognitively and speech,

sleep and physically disabled" to unnamed members of the NRPD who detained him, and that he

told officers that he needed his "aide for effective communication for my qualified ADA

disabilities."  Ex. A (Complaint), at ¶1.  He alleges that the "police refused to allow [his]

disability aide who assists [plaintiff] with speech communication, cognitive, memory, Occipital

Neuralgia and TMJ pain and other impairments to accompany plaintiff during questioning even

though the aide asked to accompany plaintiff."  *Id*.  He further alleges that the police "caused and

directed and instructed the disability aide to leave the police station instead of accommodating

plaintiff's disabilities."  *Id*.  He alleges that the "police took bail money from the aide before

arresting plaintiff, reading plaintiff his rights under Miranda or taking plaintiff's [cross]

complaint against his ex-wife for violating the visitation order."  *Id*.

      Plaintiff alleges that "police . . . falsely arrested plaintiff in violation of an order of

protection and court order allowing for supervised visitation with plaintiff's four children before

reading plaintiff his Miranda rights." Complaint (Ex. A), at ¶8. He claims that the police

"retaliated" against him "by refusing to facilitate court ordered visitation," and by "removing

[plaintiff's] disability Aide from the Police Station." *Id*. Plaintiff further alleges the "police

retaliated against [him for] trying to report a violation [of] court order by his ex-wife, by

detaining plaintiff in a cell for over an hour without reading plaintiff his Miranda/rights/rights to

remain silent or providing plaintiff with his aide to assist him for his [ADA] disabilities or

communication/speech impairments." *Id*. He alleges that the police "failed to bring an

interpreter or another aide to help plaintiff understand rights or facilitating 'meaningful

communication' required under title two of the ADA with his cognitive disabilities." *Id*.; *see

also id*. at ¶20.

        Plaintiff specifically incorporates by reference the June 13, 2018 order of protection, and

alleges that the police failed to enforce its terms. Complaint (Ex. A), at 23. Plaintiff further

alleges that the police failed to provide a police report detailing charges plaintiff reported against

his ex-wife as retaliation for plaintiff's disabilities and disability accommodation requests. *Id*. at

¶25. These allegations allow this Court to consider the order of protection as well as the

Domestic Incident Report and Miranda card prepared in connection with plaintiff's arrest on the

motion to dismiss, as well as the sworn statement by Jennifer Solomon. *See infra* Point I.

        Plaintiff alleges that he has "severe obstructive sleep apnea, traumatic brain injury, post

concussion syndrome, speech impairment, cubital tunnel syndrome, disabilities from hernia

surgery and TMJ caused by two car accidents in 2013 and related prescription drug interaction."

Complaint (Ex. A), at ¶9. Plaintiff alleges that "[a]ll defendants have discriminated against

[him] in violation of Title Two of the ADA and Section 504 of the 1973 rehabilitation Act by

failing to reasonabl[y] accommodate [his] 'Qualified ADA Disabilities' in court and court

proceedings/programs." *Id.* Plaintiff continues that "[a]ll Defendants discriminated multiple times with instances of intentional disability discrimination including . . . denial of a note taker during questioning, and denial of access to [plaintiff's] communications aide, denial of a cognitive or speech interpreter/specialist to be present and denial of large print writing on papers supplied by police on exiting station." *Id.* Plaintiff asserts that as compared with persons with more "visible" disabilities, such as those who require a wheel chair, the "defendants" discriminated against plaintiff. *Id.* Plaintiff also asserts the "Defendants" failure to read him Miranda warrants before questioning or arrest, as a failure to reasonably accommodate his disabilities. *Id.* at ¶20.

As noted, plaintiff's complaint lists seven (7) claims for relief. First, plaintiff alleges that defendants violated Title II of the ADA by excluding him from participation in and denying him the benefit of public services and by subjecting him to discrimination in violation of the ADA. Ex. A (Complaint), at ¶¶3244. Plaintiff specifically cites defendants' failure to: (i) ensure effective communication by providing a qualified person interpreter who understands cognitive/speech impairments or other appropriate auxiliary communications aids and services including disallowing plaintiff's aid from attending the "arrest process, id. at ¶41; and (ii) train employees to accommodate disabled individuals and modify discriminatory practices and procedures, id. at ¶42.

Second, citing the same alleged failures, plaintiff alleges that defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Ex. A (Complaint), at ¶¶45-52. Third, plaintiff asserts a First Amendment claim, pursuant to Section 1983, alleging that defendants arrested and charged him in "derogation of Plaintiff's constitutional right of freedom of speech." *Id.* at ¶¶53-59. Fourth, plaintiff asserts a False Arrest claim, pursuant to Section 1983. *Id.* at

¶¶60-66.  Fifth, plaintiff asserts a common-law claim for negligence.  *Id*. at ¶¶67-68.  Sixth,

plaintiff asserts a common-law claim for false arrest.  *Id*. at ¶¶69-70.  And finally, seventh,

plaintiff asserts a common-law claim for malicious prosecution.  *Id*. at ¶¶71-72.

B.    Procedural History

Plaintiff commenced this action on January 8, 2019.  D.E. 2.  By order dated January 10,

2019, the Court denied plaintiff's request to proceed in forma pauperis.  D.E. 5.  By order dated

February 11, 2019, the Court denied, without prejudice, plaintiff's application for appointment of

pro bono counsel.  D.E. 9.  Summonses were issued to the City Defendants on February 11,

2019, and a service package was mailed to plaintiff on February 11, 2019.  D.E. 10.  The City of

New Rochelle was served with the summons and complaint on March 1, 2019.  D.E. 11.  On

March 1, 2019, a process server delivered a single copy of the summons and complaint to a

receptionist at police headquarters, as purported service of process on Officer Schlesinger, Sgt.

Myron W. Joseph, and Police Commissioner Joseph F. Schaller.  D.E. 12.

On January 28 2020, plaintiff was convicted on the charge of criminal contempt (2d

degree).  *See* Loomba Decl. at ¶10.  His sentencing is currently scheduled for July 27, 2020.  *Id.*

**Argument**

**POINT I**

**THIS COURT MAY PROPERLY CONSIDER THE ORDERS OF PROTECTION
AND THE RELATED POLICE REPORTS ON THE MOTION TO DISMISS**

On a motion to dismiss, a District Court "'may consider the complaint, any written

instrument attached to the complaint as an exhibit, or any statement or documents incorporated

in it by reference,' as well as 'matters of which judicial notice may be taken, and documents

either in the plaintiff['s] possession or of which the plaintiff[] had knowledge and relied on in

bringing suit." *Guo v. IBM 401(k) Plus Plan*, 2016 U.S. Dist. LEXIS 126360, at *15 (S.D.N.Y.

Sept. 15, 2016), quoting *Kalyanaram v. American Ass'n of Univ. Professors at N.Y. Inst. of Techn., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  In addition, courts may consider documents which "simply provide documentation of an event that [p]laintiff alleges occurred."  *Smith v. Westchester County*, 769 F. Supp.2d 448, 461 (S.D.N.Y. 2011).

Here, the complaint specifically references the orders of protection, *see* Ex. A (complaint), at ¶23, as well as the police documents prepared in connection with plaintiff's arrest.  *Id.* at ¶25. These documents may therefore properly be considered in connection with the instant motion. *See, e.g., Sutton ex. Rel Rose v. Wachovia Secs., LLC*, 208 Fed. App. 27, at *29-30 (2d Cir. Dec. 7, 2006); *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Davis v. Abrams*, 2014 U.S. Dist. LEXIS 8742, at *3 n.1 (E.D.N.Y. Jan. 23, 2014); *Liang v. City of New York*, 2013 U.S. Dist. LEXIS 136795, at *15-17 (E.D.N.Y. Sept. 24, 2013); *Koltun v. Berry*, 2013 U.S. Dist. LEXIS 102193, at *3 (S.D.N.Y. July 19, 2013).

## POINT II
### THE INDIVIDUAL CITY DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Police Commissioner Schaller, Sgt. Joseph, and Officer Schlesinger are not subject to this Court's personal jurisdiction because they were never properly served with the summons and complaint.

The affidavit of service filed by plaintiff states that a copy of the summons and complaint was delivered to Mrs. Liane DiMeglio at 475 North Avenue, New Rochelle, NY 10801[1], who was authorized by "Captain Rosenberg" to accept service for "Police Officer Lane Schlesinger, Shield No. 1058; Det. W. Joseph, Shield No. 18, and Police Commissioner Joseph F. Schaller."

---

[1]    475 North Avenue, New Rochelle, NY, is the address of New Rochelle Police Headquarters.

- 8 -

D.E. 12.  This purported service fails under both New York Law and Federal Law.

First, under CPLR 308(2), even assuming that Mrs. DiMeglio was a person of suitable age and discretion, substitute service requires that an additional copy of the summons and complaint be mailed "to the person to be served."  N.Y.C.P.L.R. 308(2).  The affidavit of service does not recite that this extra, required step, was taken.  D.E. 12.  Also service under CPLR 308(2) would require a separate copy of the summons and complaint, along with separate follow-up service by mail, to be served on each individual defendant.  Here, plaintiff's process server just dropped of a single copy, and never followed-up with mail service.  *Id.*

Second, under Rule 4(e)(2)(C), a summons and complaint may be served on an individual by "delivery a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Mrs. DiMeglio is not an agent authorized by appointment to accept service of process for the individual City Defendants, and the bare assertion in the affidavit of service that a "Captain Rosenberg" told the process server that she is authorized to "accept service for all of the 3 above defendants" is not sufficient to prove that Ms. DiMeglio was authorized by appointment by any of the individual City Defendants to accept service of process for them.  *See Ortiz v. Red Hook Deli & Grocery 2015 Corp.,* 2019 U.S. Dist. LEXIS 99567, at *8-9 (E.D.N.Y. June 12, 2019); *E.L.A. v. Abbott House,* 2018 U.S. Dist. LEXIS 52313, at *22-24 (S.D.N.Y. March 27, 2018).

As the individual City Defendants were never properly served with the summons and complaint, they are not subject to personal jurisdiction before this Court and the complaint should be dismissed as against them on that ground.

## POINT III

### DEFENDANTS MYRON JOSEPH AND JOSEPH F. SCHALLER SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991). Personal involvement is also a prerequisite to liability for the state law claims. *See Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014). Indeed, courts have consistently held that, "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Volpe v. Nassau County*, 915 F. Supp.2d 284, 299 (E.D.N.Y. 2013), quoting *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999). Moreover, supervisory officials cannot be held liable merely because they hold a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Instead, in order to hold a supervisor liable under §1983, a plaintiff must allege either "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Id.* (internal citation omitted); *see also Gilfus v. Vargason*, 2006 U.S. LEXIS 74037, at *11-12 (N.D.N.Y. Sept. 30, 2006) (dismissing complaint where plaintiff failed to explain how defendants violated the law or caused plaintiff damages); *Morabito v. Blum,* 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (dismissing defendant where plaintiff named him in the caption but the complaint lacked allegations indicating how the defendant injured the plaintiff).

Here other than naming them in the caption, and identifying them as members of the New Rochelle Police Department, *see* Ex. A, at ¶¶6, 7, plaintiff's complaint does not even mention Sgt. Myron Joseph or Commissioner Joseph Schaller. The Commissioner appears to have been named as a defendant merely because of his position as Commissioner of Police which, by in and

of itself, is not sufficient to hold him personally liable for any of plaintiff's alleged claims for relief. *Coughlin*, 76 F.3d at 74. This same argument applies to Sgt. Joseph. It appears his sole involvement in the case was to review the Domestic Incident Report prepared by Officer Schlesinger for form, and then sign it as "supervisor." Ex. C (domestic incident report). As plaintiff has not alleged the personal involvement of Sgt. Joseph or Commissioner Schaller in his arrest, nor from the relevant police records does it appear that either had any involvement in the arrest, the complaint should be dismissed with prejudice as against Sgt. Joseph and Commissioner Schaller.

**POINT IV**

**PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A VIOLATION OF TITLE II
OF THE ADA ACT OR SECTION 504 OF THE REHABILITATION ACT**

Plaintiff's complaint alleges violations of Title II of the ADA, *see* Complaint (Ex. A), at ¶¶32-44, and Section 504 of the Rehabilitation Act. *Id*. at ¶¶45-52. Title II of the ADA provides, in relevant part, that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. §12132. A qualified individual with a disability is defined "as a disabled person who, whether or not given an accommodation, 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004), quoting 42 U.S.C. §12131(2).

"Enacted before the ADA, the focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal assistance." *Powell*, 364 F.3d at 85, citing 29 U.S.C. §794(a). Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

- 11 -

the participation in, be denied the benefits of, or be subjected to discrimination under any

covered program or activity.  *Id.*  Apart from the federal funding requirement, the standards

adopted by Title II of the ADA are the same as for Section 504 of the Rehabilitation Act.  *See*

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

In order to establish a "prima facie violation" under either Title II of the ADA or Section

504 of the Rehabilitation Act, a plaintiff must allege and demonstrate "(1) that she is a qualified

individual with a disability; (2) that the defendants are subject to [Title II and/or Section 504]; and

(3) that [plaintiff] was 'denied the opportunity to participate in or benefit from defendants'

services, programs, or activities, or [was] otherwise discriminated against by defendants, by

reason of her disabilit[y]."  *Powell*, 364 F.3d at 85 (internal quotes omitted).  Moreover, in order

to recover monetary damages under Title II of the ADA, a plaintiff must allege that discrimination

was intentional, by detailing with specific facts that "a policymaker acted with ill will or personal

animosity toward [plaintiff] because of his disability or that the policymaker acted with

'deliberate indifference' to his rights under the ADA."  *Frank v. Sachem School Dist.*, 84 F. Supp.

3d 172, 187 (E.D.N.Y. 2015).

"A plaintiff can demonstrate deliberate indifference in the Title II context where an

official with authority to address the alleged discrimination and to institute corrective measures on

plaintiff's behalf had actual knowledge of ongoing discrimination against plaintiff but failed to

respond adequately."  *Frank,* 84 F. Supp. 3d. at 187 (citations omitted).  With respect to the first

factor, "[t]he determination of whether or not a person suffers from a disability under the ADA 'is

an individualized inquiry' that does not rest on the mere diagnosis of an impairment."  *Bonilla v.*

*BOCES*, 2010 U.S. Dist. LEXIS 91314, at *15 (W.D.N.Y. Sept. 2, 2010), citing *Sutton v. United*

*Air Lines*, 527 U.S. 471, 483 (1999).  Rather, to meet the statutory definition, a plaintiff must

allege an impact on a major life activity; it is "insufficient for individuals attempting to prove disability status . . . to merely [allege] a medical diagnosis of impairment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).  Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1530.2 (i) (2004).  Accordingly, the "bald assertion" that a plaintiff suffers from certain mental or psychological conditions does not mean, a fortiori, that she is disabled within the meaning of the ADA." *Bonilla*, 2010 U.S. Dist. LEXIS 91314, at *15.

As a general matter, ADA claims are dismissed under Rule 12(b)(6) where they are supported only by conclusory statements.  *See Andino v. Fischer*, 698 F. Supp. 2d 262, 379 (S.D.N.Y. 2010).  Finally, individuals are not proper defendants in claims for monetary damages under Title II of the ADA or Section 504 of the Rehabilitation Act.  *See Scalericio-Isenberg v. Port Auth. of New York*, 2018 U.S. Dist. LEXIS 55814, at *38-39 (S.D.N.Y. March 31, 2018).

A.    The ADA Title II Claim Fails

Here, the Title II claim fails as against the City because even assuming the truth of the allegations in the complaint, the decision to arrest and charge Mr. Fishman was based on the existence of an order of protection, information obtained directly from Mr. Fishman's ex-wife, and information obtained directly from the social worker, Ms. Elliot.  Moreover, the complaint does not allege facts showing that any City policymaker acted with ill will or personal animus towards Mr. Fishman because of any alleged disability, or that a policymaker acted with deliberate indifference to his rights as an allegedly disabled person.  *See Frank*, 84 F. Supp. 3d at 187.  The Title II claims fails against the individual defendants because, as noted, there is no individual liability under ADA Title II.  *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*,

- 13 -

280 F.3d 98, 107 (2d Cir. 2001); *Andino v. Fischer*, 698 F. Supp.2d 362, 380 (S.D.N.Y. 2010).

B.    The Rehabilitation Act Claim Fails

The complaint fails to allege that the City receives federal funds.  Accordingly, plaintiff's Rehabilitation Act claim fails as against the City.  *Powell*, 364 F.3d at 85.  Moreover, there is no individual liability under the Rehabilitation act.  *See Garcia*, 280 F.3d at 107.  The claim therefore fails as against the individual City Defendants as well.

**POINT V**

**PLAINTIFF'S FIRST-AMENDMENT
RETALIATION CLAIM FAILS**

Plaintiff's complaint alleges that he was arrested and charged with a crime under "the City/County Ordinance, for engaging in lawfully protected speech."  Complaint (Ex. A), at ¶57.  Plaintiff also alleges that the "City Ordinance" -- a term which Mr. Fishman does not define for the reader with any more specificity -- "is substantially overbroad and vague and thus invalid on its face in violation of the First Amendment."  *Id*. at ¶58.

"A plaintiff asserting a First Amendment retaliation case must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.'"  *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015), quoting *Cox v. Warwick Valley Cent. School Dist*., 654 F.3d 267, 272 (2d Cir. 2011).  While a pro se complaint must be liberally interpreted, it must still allege sufficient facts to plausibly allege entitlement to relief.  The complaint's allegations must be sufficient to "raise a right to relief above the speculative level," *Jackson v. New York State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and a Court's duty to liberally construe a pro se complaint is not "the equivalent of a duty to rewrite it."  *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387

- 14 -

(S.D.N.Y. 2009).

Here, the complaint contains no specific allegations that plaintiff was arrested because he exercised his right to speech. Instead, from the documentation referenced in the complaint, it is apparent that plaintiff was arrested because there was ample proof that he violated the terms of an order of protection. The First Amendment claim should therefore be dismissed.

Also, to the extent plaintiff seeks to hold the City of New Rochelle responsible for a violation of his First Amendment rights, he would have to plead the existence of a policy or practice. *Monell v. New York State Dep't of Social Services*, 436 U.S. 658 (1978). The complaint is devoid of such allegations.

## POINT VI
### PLAINTIFF'S SECTION 1983
### FALSE ARREST CLAIM FAILS

Plaintiff's complaint alleges that he was subject to an unreasonable seizure in violation of the Fourth Amendment. *See* Complaint (Ex. A), at ¶¶60-66. To prevail on a Section 1983 claim for false arrest under the Fourth Amendment, a plaintiff must allege and prove that defendants acting under color of state law intentionally confined the plaintiff, without his consent and without justification. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Id.*, quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Devenpeck v. Alford*, 543 U.S. 146, 153-155 (2004). "Probable cause exists when the arresting officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). "Probable cause is not a particularly demanding standard." *United States v. Scala*, 388 F.

- 15 -

Supp.2d 496, 401 (S.D.N.Y. 2005).  Moreover, when a plaintiff alleging false arrest or malicious

prosecution is convicted on a charge stemming from the arrest, the conviction "necessarily

establishes probable cause for both that arrest and the ensuing prosecution." *Corsini v. Brodsky,*

731 Fed. Appx. 15, 18 (2d Cir. April 13, 2018).

      Even if an officer lacked probable cause, he would be entitled to qualified immunity on a

claim for false arrest if he had "arguable probable cause" to arrest the plaintiff.  *See Garcia v.*

*Does*, 779 F.3d 84, 92 (2d Cir. 2015).  An officer has arguable probable cause if either (1) the

officer possessed a reasonable and objective believe that probable cause was present; or (2)

reasonably competent officers could disagree as to whether there was probable cause.  *Id*. at 92;

*see Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).  In making this determination,

courts "look to the information possessed by the officer at the time of the arrest, but . . . do not

consider the subjective intent, motives, or beliefs of the officer.  *Amore v. Novarro*, 624 F.3d 522,

536 (2d Cir. 2010).

      Here, plaintiff was arrested and charged with Criminal Contempt, 2nd Degree, N.Y.

Penal Law §215.50, for violation of an order of protection.  Plaintiff was convicted on January

28, 2020 and his sentencing is currently scheduled for July 27, 2020.  Loomba Decl. at ¶10.  That

conviction establishes probable cause for the arrest and is fatal to plaintiff's false arrest claim,

under both federal and state law.  *Corsini,* 731 Fed. Appx. at *18.

      But even without reference to the conviction, plaintiff's false arrest claims fail.  As

relevant here, a person is guilty of criminal contempt, 2nd degree, when he engages in the

"[i]ntentional disobedience or resistance to the lawful process or other mandate of a court."  N.Y.

Penal Law §215.50(3) (McKinney's 2019).

      The following facts are evident from the allegations of the complaint and the documents

referenced therein.  On December 15, 2018, Officer Schlesinger responded to the home of

Jennifer Solomon, the plaintiff's ex-wife, regarding a violation of an order of protection.  Ex. C.

Ms. Solomon told Officer Schlesinger that her ex-husband, Mr. Fishman, had just came to the

residence, and attempted to yell at and make contact with their son.  Ms. Solomon displayed

active stay away orders of protection issued by Family Court.  The orders of protection were in

effect on December 15, 2018, and required Mr. Fishman to stay away from Ms. Solomon, her

home, place of business and school.  Ex. B.  The orders further required Mr. Fishman to refrain

from assaulting, stalking, harassing, menacing, intimidating or threatening Ms. Solomon.  *Id*.  The

orders also protected Ms. Solomon's children, and directed that Mr. Fishman must stay away

from the children except for supervised access as provided for by court order.  *Id*.

Ms. Solomon showed Officer Schlesinger a comprehensive 28 page custody and visitation

agreement, which provided for a court-appointed social worker to supervise all visitation by Mr.

Fishman.  *See* Ex. C (police report).  Ms. Solomon told Officer Schlesinger that earlier that day,

the social worker, Ms. Elliot, arrived unexpectedly at her residence, stating that Mr. Fishman

wanted to speak with the children.  *Id*.  It was during her conversation with Ms. Elliot that Ms.

Solomon observed Mr. Fishman attempting to speak with her son.  *Id*.  While on location at Ms.

Solomon's residence, Officer Schlesinger was advised by police headquarters that Mr. Fishman

was at headquarters.  *Id*.

With all the paperwork and information in hand, Officer Schlesinger returned to

headquarters where he encountered Mr. Fishman, Ms. Elliot (the social worker), and a third

female party named Ms. Bolivar.  *See* Ex. C.  Officer Schlesinger interviewed Ms. Elliot who said

that she had told Mr. Fishman that he was violating the order of protection by going to Ms.

Solomon's residence.  *Id*.  She fully corroborated that Mr. Fishman attempted to contact his son.

*Id.* Ms. Elliot also displayed a text message from Mr. Fishman containing a screenshot showing a conversation that he was having via text with one of his daughters. *Id.* The text message was dated as of December 15, 2018, and was in clear violation of the Stay Away and Refrain clauses of the court order. *Id.*

"Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed; (2) the defendant knew about that order, and (3) the defendant intended to violate the order." *Carthew v. County of Suffolk*, 709 F. Supp.2d 188, 198 (E.D.N.Y. 2010); *see also People v. Williams*, 181 Misc.2d 415, 696 N.Y.S.2d 369, 370 (N.Y. Crim. Ct. 1999). Here, Officer Schelsinger was provided with valid and operative orders of protection against Mr. Fishman, and was told by both Ms. Solomon and Ms. Elliot that they directly observed Mr. Fishman violate the terms of the orders. Ms. Elliot also informed Officer Schlesinger that she had advised Mr. Fishman that his conduct – i.e., his attempt to contact his son -- was in violation of the order of protection, from which Officer Schlesinger could reasonably conclude that Mr. Fishman knew about the order and that his conduct was intentional. This is sufficient to establish probable cause. *See Williams v. Suffolk Cty.*, 284 F. Supp. 3d 275, 286-287 (E.D.N.Y. 2018); *Liang v. City of New York*, 2013 WL 5366394, at \*8 (E.D.N.Y. Sept. 24, 2013) ("Courts in this circuit have repeatedly found that, in the absence of reason to doubt the complainant, an allegation that an individual has violated a stay away order supports probable cause for the arrest") (citing cases); *Read v. Town of Suffern Police Dep't*, 2013 U.S. Dist. LEXIS 89189, at \*14-15 (S.D.N.Y. June 25, 2013); *Glassman v. The City of New York*, 2013 U.S. Dist. LEXIS 1170, at \*17-18 (S.D.N.Y. Jan. 3, 2013).

In sum, the existence of probable cause – which follows necessarily from plaintiff's conviction and is also supported on the facts -- is fatal to both plaintiff's federal and state-law

- 18 -

claims for false arrest.  At the very least, Officer Schlesinger would be entitled to qualified immunity because there was arguable probable cause to arrest plaintiff for violating the orders of protection.

### POINT VII

### PLAINTIFF'S COMMON-LAW CLAIMS FOR NEGLIGENCE, FALSE ARREST, AND MALICIOUS PROSECUTION FAIL

Plaintiff's complaint contains boilerplate allegations asserting common-law claims of negligence, *see* Complaint (Ex. A), at ¶67; false arrest, *id*. at ¶69; and malicious prosecution.  *Id.* at ¶71.  These supplemental claims for relief must be dismissed because plaintiff failed to serve the City with a notice of claim as required by Section 50-e of the New York General Municipal Law.  For the reasons set forth in Point VI, *supra,* the state-law false arrest and malicious prosecution claims also fail because of plaintiff's conviction.

Under New York law, a notice of claim is a condition precedent to bringing a common-law tort claim against a municipality and its employees.  N.Y. Gen. Mun. Law § 50-e (McKinney's 2007); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981); *White v. Averill Park Cent. School Dist*., 195 Misc.2d 409, 759 N.Y.S.2d 641 (Sup. Ct. Rensselaer Co. 2003).  The notice of claim requirement applies "equally to state tort claims brought as [supplemental] claims in a federal civil rights action."  *Fincher v. The County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997).  "Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (citations omitted); *see Faruki v. The City of New York*, 2012 U.S. Dist. LEXIS 47310, at * 2627 (S.D.N.Y. March 30, 2012).

Here, plaintiff's arrest occurred on December 15, 2018, and under Section 50-e of the

General Municipal Law his deadline for serving a notice of claim expired 90 days later on March 15, 2018. Plaintiff has not alleged that he served a notice of claim against the City or any of its employees, and in fact he has not done that. Moreover, plaintiff was convicted of criminal contempt, 2d degree, on January 28, 2020. Loomba Decl. at ¶10. Accordingly, the common-law claims for negligence, false arrest and malicious prosecution must be dismissed.

## POINT VIII
## PLAINTIFF'S COMMON-LAW CLAIM
## FOR MALICIOUS PROSECUTION

In addition to the procedural bar described above, plaintiff's malicious prosecution claim fails for the following reasons. To state a prima facie claim of malicious prosecution under New York Law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted); *see also Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014); *Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010); *Rothstein v. Carriere*, 375 F.3d 275, 282 (2d Cir. 2004); *accord Savino v. City of New York*, 331 F.2d 63, 72 (2d Cir. 2003).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72, citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983). "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that [it] must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted). "Where, as here, probable cause existed for the arrest

itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution." *Johnson v. City of New York*, 2010 U.S. Dist. LEXIS 55315, at *17 (S.D.N.Y. June 7, 2010).[2]

Here, plaintiff's conviction is fatal to his claim for malicious prosecution. Moreover, for the reasons described above, there was probable cause to believe that plaintiff violated the order of protection by driving slowly by Ms. Solomon's home, and by attempting to communicate with Ms. Solomon's son, and plaintiff has not alleged facts that arose between his arrest and his prosecution that dissipated that probable cause. Accordingly, the malicious prosecution claim must be dismissed. *Savino*, 331 F.3d at 72.

---

[2]    Plaintiff also alleges retaliation because actions taken by the defendants have, allegedly, made it more difficult for plaintiff to reasonably accommodate his allegedly disabled son, who plaintiff claims suffers from Langerhan cell Hystiocytis x. See Complaint (Ex. A), at ¶¶18, 19, 21, 26. He also alleges that "[t]he police retaliated against [his] disabled son . . . by denying the child in an act of associational disability discrimination court ordered visitation with dad, by detaining and arresting his father." *Id.* at ¶8. Despite this latter allegation, however, Mr. Fishman's son is not a plaintiff in this case, nor does the complaint allege a separate claim for relief on behalf of the son.

**Conclusion**

Plaintiff's complaint should be dismissed with prejudice as against the City Defendants.

Dated:    White Plains, New York
          July 17, 2020

                     Respectfully submitted,

                     WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for the City Defendants

Lalit K. Loomba

_____

Peter A. Meisels
Lalit K. Loomba

1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000
Our File No.  07367.00109

- 22 -

8353042v.1

<u>Certificate of Service</u>

Lalit K. Loomba, an attorney admitted to practice law before the Courts of the State of New York and the United States District Court for the Southern District of New York, hereby certifies, under penalty of perjury, that on July 17, 2020, I caused the within document entitled **THE CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS** on:

| | |
|---|---|
| MARC H. FISHMAN, *Pro Se*<br>3200 Netherland Avenue, Apt. G<br>Bronx, NY  10463 | OFFICE OF THE WESTCHESTER COUNTY ATTORNEY<br>Attorneys for Defendant Westchester County<br>148 Maritime Avenue, 6th Floor<br>White Plains, NY  10601<br>(914) 995-2684<br>Attn:  Taryn A. Chapman-Langrin, Esq. |

at the address(es) designated by said attorney(s) for that purpose by causing to be deposited a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

Lalit K. Loomba

_____

Lalit K. Loomba

8353042v.1