14. I suffer from tinnitus and TMJ. These together with my neurostimulator and occipital neuralgia limit my hearing. Instead of giving me cart real time closed captioned transcription that the court gives now in other proceedings judge schauer denied cart and notetaker accommodations for me.

15. If the court does have the grievance appeal now and appoint a neutral independent judge to oversee this case to award me frequent and regular visitation, I fear I will never see my kids until they are over 18 and not subject to family court. The kids and I face imminent harm and need the court to award in person visitation immediately.

16. .These denial of accommodations are now subject to a federal lawsuit 20-1300 in federal court. Had schauer not denied these accommodations for my hearing and memory impairments, I would have had meaningful communication(approved by the court ada liaison William curry) and be able to understand the proceeding. Under Tennessee v Lane 541 us 509 (2004), it is illegal for a state to deny aids and tolls for the hearing and memory impaired. This also violates atty general enforcing regulations under 28 cfr 35.130 and 28 cfr 35.134 and 28 cfr 35.160. Judge Schauer intentionally denied the notetaker after having an ada hearing six days before being told I do not hear and remember well.

17. Am making this last and final appeal to the appellate division to show the federal judges that I have done every possible appeal and motion in the state before seeking injunctive an declaratory relief from them.

18. This court is well aware an order of protection is invalid under criminal and family law if it is not served. Judge schauer's discrimination resulted in limiting my kids

5

access to me be cause of this illegal, unserved, and unexplained and unacknowledged order of protection.

19. My ada advocate was in court 6/27/17 (donna drum) and also did not receive this order of protection that is being used in 2020 to keep kids away from their dad. My atty never gave me any order of protection and told the guards an I and court officers in jail that he had not received the order of protection 6.27/17 to explain it to me when he visited me twice in jail. Furthermore, my atty Ian Spier who was assigned was very forgetful with his Parkinson's condition and judge schauer refused to replace him or allow my notetaker to help him during trial. Atty dambrosio blocked my notetaker access to the court on 6/27/17 in violation of the ada and a central issue in federal lawsuit 20-1300 now in federal appellate court 2nd district.

20. There was no special order to serve me in jail from the court. This further supports that I was not served the order of protection issued after I was jailed 6/27/17. No one served me any order of protection in jail after the 6/27/17 hearing.

21. I submit this affidavit requesting the court immediately restore the previous supervisor, licensed Social worker African American (with 24 years social worker experience) Ann Elliot as supervisor foe eight hours visitation weekly starting 8/28/2020.

22. I submit this affidavit in advance of the Human rights hearing now rescheduled 9/9/2020 where the NY unified court system Judge Capeci, Ivy Ozer, Judge Davidson and Elizabeth bussian have been found to be in violation of the human rights laws of the sate of Ny and the ada for willful disability discrimination,

6

retaliation and failure to accommodate mr. fishman's disabilities and those of his two sons ▇ and ▇.

23. Elizabeth Bussian has refused and continues to refuse for over 9 months now to do any home based visitation service unless she receives a full retraction of civil rights complaints her for overcharges, failure to accommodate disabilities, and retaliation. This retaliation is illegal and violates the human rights laws warranting Elizabeth bussian's removal from the case for disability discrimination, retaliation.

24. Am also seeking removal of Judith woods afc. Judith woods has repeatedly opposed my accommodations for myself including an aide for court programs and for my disabled kids. Need four independent attys who have not been influenced by the courts discrimination to represent the kids going forward. Judith has failed to ask or seek any accommodations for my disabled sons ▇ or ▇. Judith has failed to communicate all the civil rights litigation to the kids so they can make their own decisions on seeing me. Judith has been disrespectful and hangs up the phone on me. Said conduct warrant removal of the afc. My son ▇ has not seen me since 12/1/18 and needs his own atty. My other kids have not seen me since December. Time cannot be made up and urgent action to stop the disability discrimination and retaliation is needed now to order visitation to comply with the family court act. To wait longer post none months is imminent harm..to parent child relationship.

25. Ann Elliot is the best-qualified Social Worker because ANN already has an established rapport with the family and kids. Social workers are expensive and ANN ELIOT who charges $35 an hour (less than the $100 by Elizabeth bussian) is in the unique position to be able to get a report in the least amount of time possible, since

7

the therapeutic rapport has been established already and Ann is aware of the disabilities of my sons and I and needed for ada accommodations.

26. Could not take my own notes because my fingers were numb in court with my cubital tunnel disability. Schauer was aware had surgery for that condition as well which further necessitated need for note taker accommodation.

27. The appellate division must act/ have been subject to wrongful prosecution for 21 months in criminal court---without final order to appeal-----for wrongful prosecution due to side effects of not hearing/remembering/registering like nondisabled do.. The lower criminal court refuses to give me an appealable order on the conviction for violating the order of protection I did not receive 6/27/17. Given I was not served ..this matter should have never been tried in family court but was moved to criminal court as retaliation for suing judge schauer in federal court for disability discrimination.

28. It was my understanding that any order of protection was subject to a carve out for visitation based on previous orders of protection shown to me AND PREVIOUS VIISTS INCLUDING OVER 20 VIISTS CURBSIDE AND PICKUP AT JENNIFER'S HOUSE IN THE LAST 5 PLUS YEARS.

29. Currently there is visitation and no contact between father and children.. Per Daghir v Daghir, IN PERSON visitation must be frequent and regular. Ann Elliot has stated she will perform home based visits for my need for disability accommodations while the appointed supervisor bussian has never done a home visit recommended by my doctors.

8

30. .Hope and pray the court grants all requested relief or will have no choice but to seek emergency relief in federal court.

31. In person "Visitation is required to be frequent and regular" per case sited in Daghir v Daghir, 82 AD2d at 194, affd 56 NY2d 938 [1982]; see Matter of Graves v. Smith, 264 844 AD2d [1999]; Matter of Gerald D. Versus Lucille S., 188 AD2d at 650. In order to develop meaningful relationship with his or her child, visitation must be frequent and regular. The appellate division must restore visitation now. The disabled cannot be denied visitation due to disability—which is in effect what the state court is doing. This violates my constitutional rights to be a father under the constitution.

32. Parental access with a non-custodial parent is presumed to be in the best interests of the child per case Matter of Granger v. Misercola, 21 NY3d 86, 90, Matter of Grimes v. Pignalosa-Grimes, 165 AD3d 796, 797 and Matter of Irizarry v. Jorawar, 161 AD3d 863, 864.

33. Am disabled and seek fee waiver for the motion and appeal and seek to represent myself going forward. Am making fee waiver application as I have 18b poor person status in the lower courts and it is illegal to charge for grievances for filing appeal of denial of ada accommodations.

**WHEREFORE,** it is respectfully requested that the relief sought, herein be in all respects granted, together with such other and further relief as to this Court may seem just, proper and equitable under the circumstances.

_____
Marc Fishman, respondent

Sworn to before me on this
28th day of _August_ 2020

_____
Notary Public

STELLA BORUKHOVA
Notary Public, State of New York
No. 01BO6354071
Qualified in Queens County
Commission Expires 02/06/2021

8:42 AM Fri Aug 28

< >  ⌑  AA        Not Secure — nycourts.gov         ⟳  ⬆  +  ⧉

Crec    LRB Search...   ✕ Matter of So...   (9) Facebook   Judges & Pa...  ial Dirg...

| |
|---|
| **Matter of Solomon v Fishman** |
| 2018 NY Slip Op 04740 [162 AD3d 1051] |
| June 27, 2018 |
| Appellate Division, Second Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, August 1, 2018 |

Exhibit "A"

[*1]

| |
|---|
| **In the Matter of Jennifer S. Solomon, Respondent,**<br>**v**<br>**Marc H. Fishman, Appellant.** |

Del Atwell, East Hampton, NY, for appellant.

Nicole E. Feit, White Plains, NY, for respondent.

Kathleen M. Hannon, Scarsdale, NY, attorney for the children.

In a family offense proceeding pursuant to Family Court Act article 8, the father appeals from an order of commitment of the Family Court, Westchester County (Michelle I. Schauer, J.), dated June 27, 2017. The order of commitment, in effect, confirmed a decision of the same court dated September 2, 2016, made after a hearing, determining that the father willfully violated a temporary order of protection and an interim order of visitation, and committed him to the custody of the Westchester County Correctional Facility for a period of 21 days unless sooner discharged according to law.

Ordered that the appeal from so much of the order of commitment as committed the father to the Westchester County Correctional Facility for a period of 21 days is dismissed as academic, without costs or disbursements, as the period of incarceration has expired (see Matter of Becker v Guenther, 150 AD3d 985 [2017]); and it is further,

Ordered that the order of commitment is affirmed insofar as reviewed, without costs or disbursements.

The father and the mother have four children together. They have been divorced since August 2012. There have been numerous post-matrimonial proceedings and motions made in both the Family Court and the Supreme Court since the parties' divorce, regarding a plethora of issues, including child support arrears, parental access, and the father's failure to comply with various court orders. In the course of a family offense proceeding commenced by the mother by a petition dated [*2]June 11, 2014, the Family Court issued a series of temporary orders of protection and interim orders on behalf of the mother and the subject children with respect to the father. Beginning in June 2014, the mother filed a series of petitions in the Family Court alleging that the father had violated certain provisions of the temporary orders of protection and interim orders. The court conducted a fact-finding hearing on the violation petitions that began on June 28, 2016, and concluded on September 2, 2016, at which time the court found that the father had willfully violated the terms of a temporary order of protection and an interim order of visitation, both dated April 6, 2016. After a dispositional hearing, the Family Court issued an order of commitment dated June 27, 2017, which, in effect, confirmed the court's decision that the father willfully violated the prior court orders, and committed the father to the custody of the Westchester County Correctional Facility for a period of 21 days unless sooner discharged according to law. The father appeals from the order of commitment.

v

Marc H. Fishman, Appellant.

Del Atwell, East Hampton, NY, for appellant.

Nicole E. Feit, White Plains, NY, for respondent.

Kathleen M. Hannon, Scarsdale, NY, attorney for the children.

In a family offense proceeding pursuant to Family Court Act article 8, the father appeals from an order of commitment of the Family Court, Westchester County (Michelle I. Schauer, J.), dated June 27, 2017. The order of commitment, in effect, confirmed a decision of the same court dated September 2, 2016, made after a hearing, determining that the father willfully violated a temporary order of protection and an interim order of visitation, and committed him to the custody of the Westchester County Correctional Facility for a period of 21 days unless sooner discharged according to law.

Ordered that the appeal from so much of the order of commitment as committed the father to the Westchester County Correctional Facility for a period of 21 days is dismissed as academic, without costs or disbursements, as the period of incarceration has expired (see Matter of Becker v Guenther, 150 AD3d 985 [2017]); and it is further,

Ordered that the order of commitment is affirmed insofar as reviewed, without costs or disbursements.

The father and the mother have four children together. They have been divorced since August 2012. There have been numerous post-matrimonial proceedings and motions made in both the Family Court and the Supreme Court since the parties' divorce, regarding a plethora of issues, including child support arrears, parental access, and the father's failure to comply with various court orders. In the course of a family offense proceeding commenced by the mother by a petition dated [*2]June 11, 2014, the Family Court issued a series of temporary orders of protection and interim orders on behalf of the mother and the subject children with respect to the father. Beginning in June 2014, the mother filed a series of petitions in the Family Court alleging that the father had violated certain provisions of the temporary orders of protection and interim orders. The court conducted a fact-finding hearing on the violation petitions that began on June 28, 2016, and concluded on September 2, 2016, at which time the court found that the father had willfully violated the terms of a temporary order of protection and an interim order of visitation, both dated April 6, 2016. After a dispositional hearing, the Family Court issued an order of commitment dated June 27, 2017, which, in effect, confirmed the court's decision that the father willfully violated the prior court orders, and committed the father to the custody of the Westchester County Correctional Facility for a period of 21 days unless sooner discharged according to law. The father appeals from the order of commitment.

The appeal from so much of the order of commitment as committed the father to the custody of the Westchester County Correctional Facility for a period of 21 days must be dismissed as academic, as the period of incarceration has ended (see Matter of Savas v Bruen, 154 AD3d 859, 860 [2017]; Matter of Becker v Guenther, 150 AD3d 985, 985 [2017]; Matter of Pace v Douglas, 141 AD3d 530, 530 [2016]). However, in light of the enduring consequences which could flow from the determination that the father violated the subject temporary order of protection and interim order of visitation, the appeal from so much of the order of commitment as, in effect, confirmed the determination that the father was in willful violation of those orders, is not academic (see Matter of Pace v Douglas, 141 AD3d at 530).

Contrary to the father's contentions, it was not necessary for the Family Court to find that the father had committed a family offense or a crime prior to making the determination that he willfully violated the subject orders (see Matter of Lisa T v King E.T., 30 NY3d 548, 551 [2017]; Matter of Santiago v Santiago, 158 AD3d 772, 773 [2018]). Moreover, the court properly found, beyond a reasonable doubt, that the father willfully violated provisions of the subject orders, having freely admitted to engaging in conduct constituting such willful violations (see Matter of Rubackin v Rubackin, 62 AD3d 11, 15 [2009]). Rivera, J.P., Maltese, Barros and Christopher, JJ., concur.



Exh+ "B"

**Matter of Solomon v Fishman**
2018 NY Slip Op 04741 [162 AD3d 1052]
June 27, 2018
Appellate Division, Second Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
As corrected through Wednesday, August 1, 2018

[*1]

In the Matter of Jennifer S. Solomon, Respondent,
v
Marc H. Fishman, Appellant.

Del Atwell, East Hampton, NY, for appellant.

Virginia Foulkrod, White Plains, NY (Nicole E. Feit of counsel), for respondent.

Kathleen M. Hannon, Scarsdale, NY, attorney for the children.

In a proceeding pursuant to Family Court Act article 8, the father appeals from an order of protection of the Family Court, Westchester County (Michelle I. Schauer, J.), dated June 27, 2017. The order of protection directed the father, inter alia, to stay away from the mother until and including June 27, 2019.

Ordered that the order of protection is affirmed, with costs.

Contrary to the father's contention, vacatur of the order of protection is not warranted based upon the Family Court's alleged failure to provide reasonable accommodations for his alleged disabilities, in violation of the Americans with Disabilities Act (42 USC § 1210 et seq. [hereinafter the ADA]). The father failed to submit sufficient evidence in support of his claim that he was disabled (see Kadanoff v Kadanoff, 46 AD3d 626, 627 [2007]). Additionally, the father did not demonstrate, as required by the ADA, that, by virtue of his alleged disabilities, he was substantially limited in a major life activity (see id. at 627; Blank v Invested Ernst & Co., 2004 WL 2725138, 2004 US Dist LEXIS 24008 [SD NY, Nov. 29, 2004, No. 02 Civ 3260 (RCC)]). Moreover, the court, despite the absence of an adequate showing by the father of any such disability, nonetheless acceded to all of the father's reasonable requests for accommodations.

The Family Court providently exercised its discretion in denying the father's request for the use by him of a personal note-taker or tape recorder at court proceedings, as the father had the ability to order official transcripts of the proceedings. Likewise, the court providently denied the [*2]father's ex parte requests under the guise of an ADA accommodation for alterations to the terms of his supervised parental access with the parties' children, since no such alterations could be made in the absence of a determination of the best interests of the subject children (see Matter of Wilson v McGlinchey, 2 NY3d 375, 380-381 [2004]; Matter of Irizarry v Jorawar, 161 AD3d 863 [2d Dept 2018]). The court also providently denied the father's ADA-based requests for the production to the father by the court of confidential records prepared for the court by a social worker, and for certain ADA accommodations for one of his sons, who he claimed was also disabled. Rivera, J.P., Maltese, Barros and Christopher, JJ., concur.



**NEW YORK STATE | Division of Human Rights**

ANDREW M. CUOMO
Governor

JOHNATHAN J. SMITH
Interim Commissioner

Exhibit "C"

Exhibit "C"

August 3, 2020

Re: Marc Fishman v. New York State, Unified Court System
Case No.    10208672

To the Parties Listed Below:

The above-referenced case has been filed with the White Plains Office of the New York State Division of Human Rights.

In an effort to expedite the handling of pending cases and in an attempt to achieve favorable resolutions of these charges, the Division of Human Rights (DHR) has selected this case to be part of the Division's early resolution program. As part of the program, cases are scheduled for a conciliation conference at the outset of the investigation.

The conciliation conference for your case is scheduled o**n 8/25/2020 at 10:00 AM, by telephone. Please use the following call-in instructions: 914-989-3110,** with **Yonette Ageda Scott**, Human Rights Specialist II. You may have an attorney representing you at this conference if you wish, but you are not required to do so.

During the conciliation conference a DHR representative will facilitate the process of settlement. You should be prepared for the following:

1. **Compromise and cooperation in the achievement of a resolution.** The responding party should be aware that in most cases, this will include providing some benefit, such as monetary compensation, to the complainant.

2. **Actual signing of a conciliation agreement to officially conclude the processing of the discrimination complaint.** If a responding party participates through a representative, that representative must have the authority to negotiate a settlement and to sign the written agreement.

Your appearance at the conference is required. Your cooperation in this process will expedite the handling of the case. Entering into a signed conciliation agreement at the conference is voluntary for all parties.

If the matter is not resolved, it will proceed without interruption to a **fact-finding conference**. Therefore, please also come prepared to discuss the issues of the case, and you may bring witnesses, documents, etc. in support of your position.

11 South Broadway, Suite 314, White Plains, New York 10601
(914) 989-3120 | Facsimile (914) 989-3122 | WWW.DHR.NY.GOV

9:38 AM  Fri Aug 28
≡ JUSTIA                                 🔍  Log In   Sign Up

# Matter of New York State Unified Ct. Sys. v New York State Div. of Human Rights

Exhibit "D"

[Annotate this Case]

Matter of New York State Unified Ct. Sys. v New York State Div. of Human Rights 2020 NY Slip Op 01252 Decided on February 20, 2020 Appellate Division, First Department Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 20, 2020
Gische, J.P., Webber, Oing, Singh, JJ.
11075 450006/18

[*1] In re New York State Unified Court System, etc., Petitioner,

v

New York State Division of Human Rights, et al., Respondents.

John W. McConnell, Office of Court Administration, New York (Pedro Morales of counsel), for petitioner.

Caroline J. Downey, Bronx (Michael K. Swirsky of counsel), for New York State Division of Human Rights, respondent.

Jakub R. Zaic, respondent pro se.

Final order of respondent New York State Division of Human Rights (DHR), dated November 15, 2017, which adopted the recommended order of the Administrative Law Judge, and

# JUSTIA

Final order of respondent New York State Division of Human Rights (DHR), dated November 15, 2017, which adopted the recommended order of the Administrative Law Judge, and determined, following a hearing, that petitioner New York State Unified Court System, Office of Court Administration (OCA) discriminated against respondent Jakub R. Zaic based on a disability, and directed petitioner to, inter alia, cease and desist from subjecting individuals to blanket exclusions from the court officer-trainee job title based on hearing loss or the use of hearing aids, pay a civil fine and penalty of $30,000, and pay respondent Zaic $5,000 in compensatory damages, unanimously confirmed, and the proceeding (transferred to this Court pursuant to pursuant to Executive Law § 298 by order of the Supreme Court, New York County [Shlomo Hagler, J.], entered June 8, 2018), dismissed, without costs.

The Commissioner's finding of discrimination is supported by substantial evidence. First, Zaic, currently a per diem court interpreter for OCA in its courts and in other courts, established a prima facie case that OCA discriminated against him on account of his disability of some hearing loss in his right ear (Melman v Montefiore Med. Ctr., 98 AD3d 107, 112-113 [1st Dept 2012]; Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 35 [1st Dept 2011], lv denied 18 NY3d 811 [2012]). Zaic sufficiently demonstrated that upon the provision of reasonable accommodation, namely, a hearing aid, he can perform in a reasonable manner the essential functions of a court officer-trainee (Executive Law § 292 [21]; Romanello v Intesa Sanpaolo, S.p.A., 22 NY3d 881, 883-884 [2013]).

Among other things, Zaic passed the written test for the court officer-trainee position and was conditionally hired. In addition, although the job duties are different, he adequately performed the functions of court interpreter without a hearing aid and without complaints from those who used his services. OCA bans the use of hearing aids on the job or for the audiometric test to medically qualify for the position. Zaic was not obligated to be evaluated for and purchase a hearing aid, and to retake the audiometric test, at his expense, to further make his prima facie case after OCA made clear it still would deem him unqualified and reject such test results.

Permitting court officers to wear a hearing aid is a reasonable accommodation and would not, as OCA argues, impose undue hardship on OCA by posing any "direct threat," i.e. "a significant risk of substantial harm to the . . . safety of the employee or others" (9 NYCRR 466.11[g][2][I]; Executive Law §§ 292[21-e], 296[3][a]; Pimentel v Citibank, N.A., 29 AD3d 141, 145 [1st Dept 2006], lv denied 7 NY3d 707 [2006]). OCA cites only to the physical demands of the job and the speculative risk that a hearing aid could become dislodged in a [*2]scuffle or fail to operate in an emergency. OCA's argument is undermined by its own policy permitting court officer-trainee candidates to meet its vision standard with or without corrective lenses or glasses, which could be lost or become dislodged in a scuffle.



9:37 AM  Fri Aug 28            law.justia.com            81%

**JUSTIA**    Log In    Sign Up

Next, OCA failed to provide any legitimate non-discriminatory reason for its decision. An individual may be denied employment because of a disability only if that condition will prevent him from performing in a reasonable manner the activities involved in the job or occupation sought, based on an individualized assessment of the specific individual (Matter of State Div. of Human Rights [Granelle], 70 NY2d 100, 106-107 [1987]). No sufficiently individualized assessment occurred here, nor does OCA's formula take into account the ability of someone with asymmetrical hearing loss to perform the essential functions of a court officer-trainee.

Similarly, while OCA's preference for those with a minimal amount of hearing acuity might be a bona fide occupational qualification (Executive Law § 296[1][d]), its preference for hearing acuity without the use of a hearing aid is not.

Given OCA's blanket policy barring hearing-impaired persons from employment as court officers and its failure to accommodate Zaic who had an asymmetric hearing loss, the civil penalty of $30,000 was correctly assessed (Executive Law § 297[4][c] [a civil penalty below $50,000 may be assessed if an entity is found to have committed an "unlawful discriminatory act"]).

"Judicial review of an administrative penalty is limited to whether the measure or mode of penalty . . . constitutes an abuse of discretion as a matter of law . . . . [A] penalty must be upheld unless it is so disproportionate to the offense as to be shocking to one's sense of fairness'" (Matter of County of Erie v New York State Div. of Human Rights, 121 AD3d 1564, 1566 [4th Dept 2014], quoting Matter of Kelly v Safir, 96 NY2d 32, 38 [2001]; see also Matter of New York State Div. of Human Rights v International Fin. Servs. Group, 162 AD3d 576 [1st Dept 2018]). Further, we have upheld civil penalties if they were "reasonable" (Matter of Framboise Pastry Inc. v New York City Commn. On Human Rights, 138 AD3d 532, 533 [1st Dept 2016]). Here, the civil penalty was not an abuse of discretion. Nor was it was unreasonable.

The record contains substantial evidence to support the Commissioner's finding that Zaic is entitled to a compensatory damages award of $5,000 (Executive Law § 297[4][c][iii]; Matter of Framboise Pastry Inc. v New York City Commn. on Human Rights, 138 AD3d 532, 533 [1st Dept 2016]; see Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 216-217 [1991]; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143, 147 [1974]).

We have considered petitioner's remaining contentions and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT

9:37 AM Fri Aug 28

🔒 law.justia.com

≡ JUSTIA

🔍  Log In  Sign Up

We have considered petitioner's remaining contentions and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: FEBRUARY 20, 2020

CLERK

## Legal Jobs Delivered to Your Inbox

Subscribe Now



### Search this Case

Google Scholar
Google Books
Legal Blogs

Google Web
Bing Web

Google News
Google News Archive
Yahoo! News

# Exhibit "E"

Proof of Disability

TMJ, Cubital Tunnel Syndrome, TBI
Post Concussion Syndrome

C Marc Fishman




January 8, 2016

Donald Bernstein, D.D.S.
Scarsdale Dental Associates
688 Post Road, Suite 208
Scarsdale, NY 10583

RE: Marc H. Fishman

Dear Dr. Bernstein:

Thank you for referring Marc Fishman. I saw Marc on January 8, 2016. He presents with the following history: He has had an intermittent swelling over the left TM joint region and left parotid gland. He saw his ENT who diagnosed a possible blocked or infected parotid gland. He had seen Dr. Ross at Westmed, an ENT, and Dr. Ramani. They were not sure exactly what was causing the intermittent swelling. You then saw Marc, said it could be a TMJ disorder. He had independently seen Dr. Paul Gittelman for an IME back on May 12, 2014. Dr. Gittelman found crepitus in the left temporomandibular joint and also gave a diagnosis of TMJ dysfunction which was causally related to November 20, 2013. Marc was involved in two motor vehicle accidents. He was hit driving on Central Avenue which has caused occipital neuralgia and cubital tunnel syndrome. The second motor vehicle accident exacerbated the symptoms, and he had a torn rotator cuff and many other symptoms. Currently Marc is wearing a Medtronic neurostimulator which he got on March 18, 2014, and he is feeling much better. Marc is feeling actually greatly improved. He was able to go off many of your pain medications. He also had a cubital release on March 26, 2014. These surgeries greatly improved his tinnitus and his ear pain. However, the swelling remains over the left parotid and left TM joint. He has been having symptoms of TMJ for at least the last six months, and his hearing has decreased. He also complains of snoring, obstructive sleep apnea, and he was scheduled to have a sleep test, a polysomnogram, next week. He have gained approximately 50 pounds following the motor vehicle accident, and he has high blood pressure. He complains of excessive daytime sleepiness in the late afternoon.

**CLINICAL EVALUATION**: On muscle palpation, we find mild tenderness in the left trapezius, **exquisite tenderness in the left sternocleidomastoid muscle. The masseter muscles are exquisitely tender on the right**. The left temporomandibular joint is tender to palpation, particularly the lateral TMJ capsule. **Temporal tendon, medial pterygoid, and lateral**

pterygoid are all exquisitely tender on the left. On my examination, I find swelling over the left parotid gland. Interincisal opening is 52 mm. The mandible is off to the left by approximately 1 mm.

Tongue level is a level 3. Occlusion is class 1. Mallampati airway inspection shows a class III airway.

**IMAGING**: There is beaking in the right temporomandibular joint with an anvil-shaped condyle. There is some excess adenoidal tissue still present, and we see hypertrophy at the base of the tongue and the lingual tonsillar region and decreased airway space.

**DIAGNOSTIC IMPRESSION**: There is probable sleep-disordered breathing which will be confirmed by the polysomnogram. I also feel that there is a swelling over the left parotid. It is not clear whether this is an autoimmune disease or is in some way related to the temporomandibular joint.

**CONTRIBUTING FACTORS**: The trauma from the motor vehicle accidents.

**SEQUENTIAL TREATMENT PLAN**: I have recommended or agreed that the patient should have a polysomnogram based on the results of the polysomnogram. Marc may be eligible for an oral appliance, a 3-D printed oral appliance for sleep apnea. We also discussed the new Medtronic stimulator which monitors his breathing and helps stimulate the genioglossus muscle and maintain an open airway. I have not recommended a daytime appliance at this point. I would like to see Marc again in approximately one month after we have the results of his sleep study.

Donald, thanks for thinking of me.

Sincerely,

_____

Michael L. Gelb, D.D.S., M.S.

cc:       Michael H. Joseph, Esq. 203 E. Post Rd. White Plains, NY 10601







**CENTER FOR COGNITION AND COMMUNICATION**
952 Fifth Avenue, New York, NY 10075
(212) 535-8932  Fax: (212) 535-5443

3/20/19

**Patient's Name:**     Marc Fishman
**Date of Birth:**      ▓▓▓▓▓▓
**Date of Injury:**     11/20/13

To Whom It May Concern:

Mr. Fishman sustained a Traumatic Brain Injury and Post-Concussion Syndrome and received cognitive rehabilitation treatment at our center. In April 2017, Mr. Fishman underwent a neuropsychological evaluation and demonstrated cognitive deficits in areas of verbal learning and memory trials, initial acquisition of non-verbal learning and memory, working memory, and verbal functioning (confrontation naming).

Respectfully Submitted,

_____
Jason Brown, M.D.
Clinical Professor, Neurology (ret.)
New York University Medical Center

www.drjbrown.org