

# CENTER FOR COGNITION AND COMMUNICATION
952 Fifth Avenue, New York, NY 10075
(212) 535-8932  Fax: (212) 535-5443

4/19/18

**Patient's Name:** Marc Fishman
**Date of Birth:**
**Date of Evaluation:** 4/28/17
**Date of Injury:** 11/20/13

To Whom It May Concern:

Mr. Fishman is a 44 year old male, who was referred for a neuropsychological evaluation. He is currently a patient under my care at Center for Cognition and Communication. Mr. Fishman needs someone to help him with note taking in court.

If there are any other questions, you can contact my office at 212-535-8932.

Respectfully Submitted,

Jason Brown, M.D.
Clinical Professor, Neurology (ret.)
New York University Medical Center

www.drjbrown.org

Exhibit "F"

Robyn Powell
Rpat, Barriers to Communication
and Accomodation
on disability discrimination
in State Courts
and how it
violates
ADA
(published this week)

Judges also have the opportunity to address some of the tensions raised by the participants in this Study. Several attorneys in this Study expressed concerns that judges did not understand the ADA's application to the child welfare system and that some judges refused to apply the law appropriately. In particular, attorneys reported issues relating to ASFA's reasonable efforts requirement. However, recent decisions in Michigan and Colorado have created a roadmap for addressing these tensions, holding in both cases that reasonable efforts cannot be achieved without reasonable modifications.[169] Judges across all jurisdictions must make similar findings.

## CONCLUSION

The ADA was passed thirty years ago with the promise of "equality of opportunity"[170] for people with disabilities. Notwithstanding the disability rights movement's many triumphs, the fundamental right to parent is still not widely enjoyed by people with disabilities. Significantly, a nascent body of scholarship reveals parents with disabilities experience substantial and pervasive inequities within the child welfare system, resulting in strikingly high rates of involvement with the child welfare system, inadequate family preservation and reunification services, and increased likelihood of termination of parental rights. Moreover, research indicates that the ADA is often disregarded or misapplied by child welfare agencies and courts. However, existing scholarship has failed to empirically elucidate why the ADA is not effectively safeguarding the rights of parents with disabilities. In particular, no research concerning the ADA and the child welfare system has collectively examined the experiences and perspectives of the individuals most intimately involved in these cases: parents with disabilities, child welfare workers, and parents' attorneys. Not including the insights of these individuals is a substantial omission from an otherwise considerable body of research. This Study, therefore, begins to fill this scholarly void.

The ADA should guarantee that the child welfare system treats parents with disabilities justly. Specifically, parents with disabilities should not be at increased risk of involvement with the child welfare system or termination of their parental rights merely because they are disabled. Moreover, the child welfare system should be fully accessible to parents with disabilities, including the provision of reasonable modifications, as necessary, to ensure services and supports meet the individual needs of parents. Above all, the ADA should prohibit widespread bias against parents with disabilities by the child welfare system. As this Study demonstrates, however, numerous challenges remain. In particular, this Study indicates that several barriers and facilitators exist that affect compliance with the ADA by the child welfare system. First, knowledge, training, and information about the ADA by parents with disabilities, child welfare workers, and legal professionals impede or enable ADA compliance. Second, institutional support—especially well-defined agency policies and procedures about the ADA, agency culture and leadership, and resource availability—impact compliance with the ADA. Third, factors related to the legal and

---

[169] *In re Hicks/Brown*, 893 N.W.2d 637 (Mich. 2017); *People ex. rel. S.K.*, 2019 COA 36, 440 P.3d 1240, 1249.
[170] *Id.* at § 12101(a)(7)

*Forthcoming* STANFORD L. & POL'Y REV. Draft, please do not circulate or cite without the author's permission. 56

reforming their laws.[160] According to the National Research Center for Parents with Disabilities, nearly 30 states have introduced or passed legislation aimed at ensuring the rights of disabled parents.[161] For example, in 2017, South Carolina enacted the Persons with Disabilities Right to Parent Act.[162] This law adopted the ADA's definitions of covered entities and disability; defined adaptive parenting equipment, adaptive parenting techniques, and supportive services; required the child welfare agency and courts to comply with the ADA and ensure that reasonable efforts to prevent removal and reunify a family is individualized and based on a parent's disability; and mandated that child welfare agencies make reasonable modifications.[163] Further, the Act amended the state's termination of parental rights statute to require a nexus between a parent's disability and their ability to care for the child, and prohibited termination of parental rights based solely on disability.[164] Similarly, in 2018, Colorado passed the Family Preservation for Parents with Disability Act.[165] This law prohibited a parent's disability from serving as the basis for denying or restricting custody, visitation, adoption, foster care, or guardianship, when it is otherwise considered to be in the best interest of the child; required courts to consider the benefits of providing supportive parenting services when determining custody, visitation, adoption, foster care, and guardianship; and mandated the state's child welfare agency to provide reasonable modifications to parents with disabilities based on individual need.[166] Findings from this Study underscore the importance of comprehensive state legislation that explicitly requires compliance with the ADA and addresses perceived tensions between children's rights and parents' rights.

Statutory or regulatory reforms on the federal level should also be considered. With respect to issues relating to ASFA's timelines, which participants in this Study described as a significant barrier to ADA compliance, the National Council on Disability recommended: "Statutory time periods need to be extended to reflect the needs of parents with disabilities and their children. Specifically, ASFA must be amended to fully accommodate parents with disabilities."[167] The National Council on Disability also suggested the need for federal legislation to protect the rights of parents with disabilities or amendments to the ADA to include the child welfare system explicitly.[168] Indeed, any state or national statutory or regulatory change should address the intersection of the ADA's reasonable modifications requirement and ASFA's reasonable efforts mandate.

---

[160] Kay, *supra* note 103, at 812 ("While the ADA has had a rocky history in child protection courts, particularly as a defense to termination of parental rights, there are signs of progress in state statutes and court decisions.")
[161] National Research Center for Parents with Disabilities, Map of Current State Legislation Supporting Parents with Disabilities, (Oct. 22, 2019), *available at* https://heller.brandeis.edu/parents-with-disabilities/map/index.html.
[162] Persons with Disabilities Right to Parent Act, S.C. CODE ANN. § 63-21-10 (2017).
[163] *Id.*
[164] *Id.*

Case 7:19-cv-00265-NSR-VR Document 31-2 Filed 09/16/20 Page 5 of 7



*Forthcoming* STANFORD L. & POL'Y REV. Draft, please do not circulate or cite without the 55 author's permission.

disabilities.[156] Accordingly, attention and resources should be allocated to improving services for disabled parents. Moreover, as the findings from this Study demonstrate, attorneys need to advocate fervently for their clients to receive individually-tailored services and supports.

Interestingly, the Family First Prevention Services Act of 2017 ("Family First Act")[157] may offer opportunities to expand the availability of resources and to develop and implement family preservation services for parents with disabilities. Specifically, the Family First Act provides Social Security Title IV-E funds for 12 months of in-home parenting skills programs, substance use treatment, and mental health services to keep families intact and children out of foster care.[158] If these services and supports are individually-tailored to meet parents' specific needs, these programs could serve as reasonable modifications for some parents with disabilities. Nonetheless, the Family First Act does not mandate states to provide services using Title IV-E funds; they must "elect" to do so, and the federal government will match a state's contribution 50% until the year 2026.[159] Hence, the Family First Act, if implemented correctly, could expand access to individually-tailored services for disabled parents through additional federal monies for child welfare agencies.

### 3. Regulatory, Statutory, and Judicial Considerations

Finally, findings from this Study suggest the need for regulatory, statutory, and judicial attention to address factors related to the legal and social contexts of cases involving disabled parents that are barriers or facilitators to the child welfare system's compliance with the ADA. Many participants described examples of conflicting policies and practices that affected ADA compliance. For example, implicit and explicit tensions between children's rights and parents' rights often shifted the focus away from ensuring that disabled parents received necessary reasonable modifications. Difficulties relating to the intersection between disability and child welfare law were also raised. For instance, some participants described matters related to ASFA's reasonable efforts requirement and how it implicated the ADA's reasonable modifications provisions.

To address discrimination against parents with disabilities involved with the child welfare system, including issues relating to complying with and enforcing the ADA, states have begun

---

[156] Phillip A. Swain & Nadine Cameron, *"Good Enough Parenting:" Parental Disability and Child Protection*, 18 DISABILITY & SOC'Y 165, 170 (2003). Examples of services include in-home training for parents, adaptive parenting equipment, respite services, and mental health treatment.
[157] H.R. 253, 115th Cong. (2017). This legislation was initially introduced as the Family First Prevention Services Act of 2016. H.R. 5456, 114th Cong. (2016); S. 3065, 114th Cong. (2016). It was sponsored by Rep. Vernon Buchanan (R-FL) in the House, and by Sen. Orrin Hatch (R-UT) and Sen. Ron Wyden (D-OR), with support from House Ways and Means Committee Chairman Kevin Brady (R-TX) and Ranking Member Sander Levin (D-MI). *Id.* The House of Representatives passed the legislation by voice vote on June 21, 2016, but it stalled in the Senate.
[158] H.R. 253. Before the enactment of the Family First Act, states could only spend Title IV-E funds on foster care and

**Archived:** Friday, September 11, 2020 4:22:23 PM
**From:** Loomba, Lalit K.
**Sent:** Fri, 11 Sep 2020 14:46:32
**To:** Natoli, Michelle
**Subject:** FW: Case 19-cv-00265-nsr
**Sensitivity:** Normal

Lalit K. Loomba
Of Counsel
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
914.872.7118 (Direct)
914.500.3902 (Cell)
914.323.7000 (Main)
914.323.7001 (Fax)
lalit.loomba@wilsonelser.com

**From:** marc fishman [mailto:█████████]
**Sent:** Monday, August 31, 2020 2:48 PM
**To:** romannysdchambers@nysd.uscourts.gov
**Cc:** Loomba, Lalit K. <Lalit.Loomba@wilsonelser.com>; tal5@westchestergov.com
**Subject:** Case 19-cv-00265-nsr

**[EXTERNAL EMAIL]**

Dear Hon Judge Roman:

Proof that nys human rights commission has action against state court for disability duscrimination in family court and criminal court.

Until the hearing, do not know if I need to add case to the federal case with your office.

Thanks Marc Fishman, pro se



**NEW YORK STATE** **Division of Human Rights**

Exh#  "C"

JOHNATHAN J. SMITH
Interim Commissioner

Exhibit "C"

August 3, 2020

Re:  Marc Fishman v. New York State, Unified Court System
Case No.    10208672

To the Parties Listed Below:

The above-referenced case has been filed with the White Plains Office of the New York State Division of Human Rights.

In an effort to expedite the handling of pending cases and in an attempt to achieve favorable resolutions of these charges, the Division of Human Rights (DHR) has selected this case to be part of the Division's early resolution program. As part of the program, cases are scheduled for a conciliation conference at the outset of the investigation.

The conciliation conference for your case is scheduled on **8/25/2020 at 10:00 AM, by telephone. Please use the following call-in instructions: 914-989-3110,** with **Yonette Ageda Scott**, Human Rights Specialist II. You may have an attorney representing you at this conference if you wish, but you are not required to do so.

During the conciliation conference a DHR representative will facilitate the process of settlement. You should be prepared for the following:

1. Compromise and cooperation in the achievement of a resolution. The responding party should be aware that in most cases, this will include providing some benefit, such as monetary compensation, to the complainant.

2. Actual signing of a conciliation agreement to officially conclude the processing of the discrimination complaint. If a responding party participates through a representative, that representative must have the authority to negotiate a settlement and to sign the written agreement.

Your appearance at the conference is required. Your cooperation in this process will expedite the handling of the case. Entering into a signed conciliation agreement at the conference is voluntary for all parties.

If the matter is not resolved, it will proceed without interruption to a **fact-finding conference**. Therefore, please also come prepared to discuss the issues of the case, and you may bring witnesses, documents, etc. in support of your position.