# Marc Fishman
3200 Netherland Avenue
Apartment G
Bronx, NY 10463
(914) 837 – 3209
Facsimile (347) 843 - 6894

Via Email

October 13, 2020

Honorable Federal Judge Nelson Roman
White Plains Federal Court
Quaropas Street
White Plains, NY,10801

Re: Fishman V. New Rochelle et al (plaintiff response to defendant motion to dismiss)
File No. 19-cv-00265-NSR

Dear Hon Judge Nelson Roman:

The police officers lacked probable cause or Arguable Probable Cause in my false arrest. Officer Lane Schlesinger and his supervisor knew that I was not served the order of protection. Officer Lane Schlesinger and his supervisor knew I did not physically go on my ex-wife's property. The officers knew it was a scheduled, prepaid court ordered visit which was an exception and "carve out" in kids' order of protection. The police knew supervised visitation is a form of probation. Probation is a government service that is permitted under the law when the conditions of probation are followed and the probation officer is present to supervise. Police Officers do not have qualified immunity if similar officers in the shoes of these would not make the same arrest with the same information. The officers have elected to ignore the evidence "party not served" with the order of protection and facts that I did not go on or near the property, but was 4 houses away(as reported by the probation social worker report.) The order of protection had no distance indicated to stay away from the property. No reasonable officer with the information police had after an hour of questioning would have arrested me under these circumstances. See (Kingsland V. City of Miami, 382 F 3d 1220, 1229, 1233 (11th Cr. 2004) and Carter V. Butt City. 821 F. 3d 1310, 1321 (11th Cir. 2016).

A police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest. See Bevier V. Hucil 806 F.2d 123(128 7th Cir 1986). Police ignored the fact that I came to the police station to file a police report for a family offense violation needed for family court. The police knew supervised visitation is an allowable government service with probation officer present. Instead Police overstepped their boundaries, refused to give me a police report

number of receipt for filing police report and instead arrested me. This completely lacked probable cause or arguable probable cause and was discriminatory. 4 times before from 2012 to present, I came to this station and filed a police report and was given a police report reference number for visitation matters in the past with Jennifer Solomon. On this visit, I was not given a police report, solely by reason of disability discrimination by the police. The discriminating police who were intent to meet quotas and make an arrest they knew was false after reading "party not served" order of protection and carve out visitation order. If a part does not go one the property, they did not violate any order of protection. Plus police knew I could communicate with my son, if the supervisor was present, so there was no crime talking with my son during a court ordered visit with Ann Elliot present.

In Cozzi V. City of Birmingham et cl, dead 6/19/2008, the Eleventh Circuit declined probable cause or arguable probable cause not present and held that the arresting officer be kept as defendant and did not have qualified immunity.

Title II's antidiscrimination provision provides that no individual with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. " 42 U.S.C. Sec. 12132. I was denied the government program of supervised visitation. This program is funded to the unified court system of New York from the Usdoj office of women and therefore section 504 of the rehabilitation act of 1973 applies. The police could have summoned my ex-wife to the police station and directed that she leave kids with both myself and Ann Elliot to effectuate visitation with a disabled person and his disabled son. The police did this 3 times before since 2012. Instead, the police effectuated an arrest where the served order of protection had a cave out for supervised visitation twice a month. The starting point in determining the ADA's applicability to law enforcement operations that include supervised visitation (supervised visitation in Westchester funded through the probation dept see probation grants to the ywca) is the statutory text. See Pennsylvania Dep't of Corr. V. Yeskey, 524 U.S. 206, 209-10 (1998) (ruling that state prisons "fall squarely within the statutory definition of "public entity"'in Title II of the ADA). By its plain terms, Title II applies to all governmental entities, including law enforcement agencies, probation offices, supervised probation and questioning and interviewing people in police stations.. Title II uses the term "any" in its ordinary "expensive" sense, i.e. "one or some indiscriminately of whatever kind. "United States v. Gonzales, 520 U.S. 1, 5 (1997) (citation omitted). Moreover, the statutory text contains no "exception that could cast the coverage of " law enforcement entities, "into doubt", Yeskey, 524 U.S. at 209. Accordingly, law enforcement agencies , including probation and supervised probation fall within the ADA's comprehensive definition of a public enemy.

The statutory text further demonstrates that law enforcement entities are subject to Title II's antidiscrimination mandate with respect to all of their operations, including arrests. The reference to "services, programs, or activities, "42 U.S.C. Sec. 12132, is an all-inclusive phrase that covers everything a public entity does including interviewing people and supervised probation called by the common term "supervised visitation." Congress expressly defined the term "program or

activity" in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq., which served as the model for Title II, to mean[ ] all of the operations of "a covered entity. See 29 U.S.C. Sec. 794(b). Because Congress directed that Title II should not "be construed to apply a lesser standard than the standards applied under "Section 504, 42 U.S.C. sec. 12201(a), the phrase "services, programs, or activities" carries a similar broad meaning under the ADA. See Bragdon v. Abbott, 524 U.S. 624, 631-32 (1998). The statute further protects individuals with disabilities from being "subjected to discrimination," 42 U.S.C. sec. 12132, which can occur during any aspect of an individual's interaction with a public entity. The statute therefore extends to all law enforcement operations, including arrests and court supervising or court probation programs including supervised visitation. As police acknowledged and regarded Ann Elliot as a supervisor of visitation, any visitation with the kids at or near the kids house was a carve out in the ex-wife's order of protection. Hence, police knew there was no crime committed or no arguable crime as supervised visitation was clearly allowed. Police should have enforced the supervised visitation, like they do in nondisabled families with nondisabled dads and nondisabled kids. Previous police in New Rochelle did enforce my visitation order. The discriminatory actions 12/15/18 violated the ada and the rehabilitation act.

The legislative history confirms that Congress contemplated that Title II would apply to law enforcement operations generally, and to arrests in particular. The House Report specifies that Title II's antidiscrimination mandate would "extend[ ]...to all actions of state and local governments". "H.R. Rep. No. 101-485(ii), at 84 (1990)(emphasis added). The Report further singled out arrests as an example of any activity where "discriminatory treatment based on disability can be avoided by proper training "Id. Pt. 3, at 50. In addition, legislators emphasized that Title II would address discrimination in law enforcement, including the arrest of individuals with disabilities. See, e.g., 136 Cong. Rec. 11,461 (1990) ("Many times, deaf persons who are arrested are put in handcuffs. But many deaf persons use their hands to communicate... [T}hese mistakes...constitutes discrimination."); id. At E1913, E1916 (daily ed. June 13, 1990) ("[P}ersons who have epilepsy are sometimes inappropriately arrested because police officers have not received proper training to recognize seizures and to respond to them."). Congress thus expected and intended Title II to cover all law enforcement operations in accordance with the statute's plain text. This is especially true in this case when I asked for my court appointed aide (Isabel Bolivar) to be present with questioning and the officers denied the reasonable accommodation. The police knew and regarded me as disabled (see police report that states I was released due to my poor health." So police acknowledged the disability and needed to accommodate me. I offered to show police my brain injury card in my wallet, but officers stated they read my medical reports in county jail database and acknowledged I was disabled with memory and hearing due to occipital neuralgia, tinnitus and tbi.

The administrative implementations of Title II also demonstrates that Title II of the ADA applies to law enforcement activities such as arrests. The Department of Justice has construed Title II to "appl[y] to anything a public entity does. "28 C.F.R. Pt. 35, App. B; see od ("All governmental activities of public entities are covered.") In particular, the Department oversees the implementation of Title II

with respect to "[a]ll programs, services, and regulatory activities relating to law enforcement. "28 C.F.R. sec. 35.190(b)(6). And the Department has further stated that "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities, "28 C.F.R. Pt. 35, App.B.

Consistent with this interpretation, the Department has repeatedly issued guidance to assist law enforcement entities in complying with the ADA, including in the context of arrests. For example, 2006 guidance states that "[t]he ADA affects virtually everything that officers and deputies do, "including "arresting, booking, and holding suspects. "U.S. Dep't of Justice, Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement sec. I, question 2 (Apr. 4, 2006), available at https://www.ada.gov/q&a_law.htm. Additionally, the Department's Title II Technical Assistance Manual states that "[a} municipal police department encounters many situations where effective communication with members of the public who are deaf or hard of hearing is critical, "including "interviewing suspects prior to arrest," and "interrogating arrestees. "U.S. Dep't of Justice, Americans with Disabilities Act: Title II Technical Assistance Manual Covering State and Local Government Programs and Services sec. II-7.1000(B), illus. 3, at 3 (Nov. 1993 & Supp, 1994) available at https://www/ada.gov/taman2up.html. Instead of police allowing my aide to attend and show the cops all the orders and file kept in her car, the police denied her entry to the questioning room even after I told cops I needed Isabel to help me remember and take notes for me to understand questioning and have meaningful communication required under 28 cfr 35.130 and 28 cfr 35.160 of the attorney general regulations enforcing the ada. Because Congress expressly vested the Department with authority to implement the ADA through regulations and technical assistance, the Department's interpretation of Title II must be accorded "controlling weight unless it is "arbitrary, capricious, or manifestly contrary to the statute. "ABF Freight Sys., Inc. v. NLRB, 510 U.S. 317, 324 (1994) (quoting Chevron 467 U.S. at 844); see Bragdon, 524 U.S. at 646.)

New Rochelle and Westchester County had a duty to educate their officers and police departments on the ada, New York human rights laws and section 504 of the rehabilitation act and must stay in the case as defendants. Governments are responsible for their contractors, agents and employees. The county is responsible for all its city's and towns to comply with the ada when performing county police activities. Since the county office of probation funds supervised probation/visitation, the county is liable to insure county visitation takes place with disabled defendants like me. Since nondisabled defendants do not get arrested during county funded supervised visitation, the county is liable. The county funded reporting costs top Ann Elliot. The county must conduct its probation free of disability discrimination and must stay in as defendant. Title two of the ada manual by usdoj states the state governments must have procedures and safeguards to insure activities like county probation./supervised visitation complies with the ada. Clearly my visit was not allowed to happen and the county had a hand in that. It is too premature to dismiss against the county as there has been no final certificate of disposition. The uncertified and non-so ordered draft transcript is not enough to prove that a person is convicted. The

defendants must wait before filing their motion to dismiss until they can prove conviction with a final order. Under ny state law a party cannot appeal without a final order. Without a certificate of disposition confirming the crime, there is no conviction under ny state law. The matter is just pending.

The Second circuit has generally read the ada broadly see e.g. Henrietta D. v. Bloomberg, 331 F.3d 261, 279(2d circuit. 2003) and has noted that the "phrase services, programs or activities in the ada have been a catch all phrase that prohibits all discrimination by a public entity. See Noel v NY City Taxi and Limousine Commission, 687 F 3d 63, 68 (2d cir. 2012.) In Williams v city of NY 121 F. Supp. 3d 354, 368(SDNY 2015,) the second circuit court recently held that the only reasonable interpretation of title two of the ada is that law enforcement officers who are acting in an investigative or custodial capacity are performing "services, programs, or activities within the scope of title two."

Even if the crime is not dismissed in the lower state court, the police had a duty under the ada to allow my aide in to questioning to provide interpretations, and meaningful communication to help me. The police knew I needed help and knew I had an aide to drive kids, hold my records and assist with my disabilities.

Given the lower court has not issued a certificate of disposition, it is too early to dismiss the federal lawsuit. The lower court has adjourned sentencing now 11 times since the trial in January. If there is no certificate of disposition, the case is called conviction pending and not conviction settled or recorded. Given the new incoming da has pledged to dismiss this case, it would be improvident and inappropriate of this court to dismiss this federal lawsuit at this point. Incoming da has a mandate not to pursue false arrests like this one and have a proper conviction integrity unit. Current da lost Westchester by over 73 percent of voters, voting for new da Mimi Rocah.

I hope the court allows my disability discrimination lawsuit to proceed. Police and county da should not be rewarded for willfully withholding exonerating evidence to my state attorney and I that they knew before the jury trial that "party not served with order of protection." Now that we have this evidence from this case, the lower court will have to overturn the false conviction in state court. The lower court judge has not ruled on the 330.30 (3) motion to dismiss, so this application to dismiss in federal court is way to premature.

Thank you.

Very Truly Yours,

Marc Fishman
Pro Se

Enclosures

C: lalit loomba, atty for police
Westchester County Atty
Joe Goubeaud, Esq.