UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____         │
│ DATE FILED: __10/19/2021__      │
└─────────────────────────────────┘
```

MARC H. FISHMAN,

                     Plaintiff,

    -against-

CITY OF NEW ROCHELLE, LANE
SCHLESINGER, individually and in his
administrative and official capacity as a police
officer #1058 employed by the City of New
Rochelle, JOSEPH F. SCHALLER, individually,
and in his administrative and official capacity as a
police commissioner/officer employed by the City of
New Rochelle, and W. JOSEPH, individual, and in
his administrative and official capacity as a police
officer/detective #18 employed by the City of New
Rochelle, and WESTCHESTER COUNTY,

                     Defendants.

19-cv-00265 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Marc Fishman ("Plaintiff"), proceeding *pro se*, commenced this action on January

8, 2019 for alleged violations of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C.

§ 794, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, 42 U.S.C. § 1983

("Section 1983") for alleged constitutional violations of the First, Fourth, and Fourteenth

Amendments, as well as negligence, false arrest, and malicious prosecution against the County of

Westchester ("Westchester"), and the City of New Rochelle (the "City"), Police Officer Lane

Schlesinger, Commissioner Joseph F. Schaller, and Sergeant Myron W. Joseph (collectively, the

"City Defendants").  (Complaint ("Compl."), ECF No. 2.)  Presently before the Court are

Westchester's motion to dismiss the Complaint (ECF No. 24), and the City Defendants' motion to

dismiss the Complaint (ECF No. 27.)  For the following reasons, Westchester's motion is

GRANTED in full, and the City Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, oppositions to the motions to dismiss, and the documents incorporated by reference or integral to the Complaint,[1] and are accepted as true for purposes of this motion.

Plaintiff suffers from several physical and mental ailments, including severe obstructive sleep apnea, a traumatic brain injury, post-concussion syndrome, occipital neuralgia, tinnitus, peripheral neuropathy, speech impairment, cubital tunnel syndrome, lingering ailments from hernia surgery, and a temporomandibular joint ("TMJ") caused by two car accidents in 2013. (Compl. ¶ 9.) His ailments affect his eating, sleeping, hearing, thinking, remembering, walking, balance, pain tolerance, and memory. (*Id.* ¶ 31.) He carries a Brain Injury Identification card that lists his ailments, and Inspire Medical Identification cards which list his doctors and their contact information. (*Id.* ¶ 1.) Plaintiff requires aide for effective communication. (*Id.*)

On June 27, 2017, the Westchester County Family Court issued two-year orders of protection against Plaintiff, directing him to stay away from and not have any communication or contact with his ex-wife. (Declaration of Lalit K. Loomba ("Loomba Decl.") ECF No. 28, Ex. B.) Subsequently, on June 13, 2018, a one-year order of protection was issued against Plaintiff further ordering him to stay away from his four children except for supervised visits which occur on Saturdays. (*Id.*; Compl. ¶ 8.) Plaintiff alleges he was never served with the subsequent order, and the order itself directly states that "[t]his order has not been served." (Plaintiff's Opposition to the City Defendants' Motion to Dismiss ("Pl.'s City Opp.") ECF No. 31, at 13, 32-33, Supp. 8 at 4; Plaintiff's Supplemental Opposition to the Defendants' Motions to Dismiss ("Pl.'s Supp. Opp.")

---

[1] As discussed *infra*, both parties filed exhibits with their papers. The Court may review only those exhibits it finds to be integral to the Complaint or incorporated by reference.

ECF No. 35, at 1-2; Plaintiff's Opposition to Westchester's Motion to Dismiss ("Pl.'s Westchester Opp.") ECF No. 25, at 41.)

On December 15, 2018, Plaintiff was arrested for allegedly violating the orders of protection by attempting to visit his children despite the cancellation of his supervised visitation on that date. (Compl. ¶ 8; Pl.'s Westchester Opp. at 41; Loomba Decl. Ex. C at 3.) The planned visit was cancelled due to a prior dispute, but the social worker who supervised the visits still accompanied Plaintiff to his ex-wife's home. (Lomba Decl. Ex. C at 3.) The social worker told the ex-wife she was there on Plaintiff's behalf, who wanted to see his children. (*Id.*) Plaintiff then exited a vehicle and attempted to speak to one of his sons. (*Id.*) Plaintiff and the social worker then left. (*Id.*) Officer Schlesinger subsequently responded to Plaintiff's ex-wife's home after she reported Plaintiff was in violation of the orders. (*Id.*)

While Officer Schlesinger was still with the ex-wife, police headquarters notified him that Plaintiff was there. (*Id.*) Officer Schlesinger traveled to the station, where Plaintiff was waiting to make a report stating his ex-wife violated the custody order and deprived him of his rights. (*Id.*) Officer Schlesinger interviewed the social worker who stated she had advised Plaintiff that he was violating the orders of protection by going to the house, and she confirmed that Plaintiff attempted to speak to his son. (*Id.*) She also showed Officer Schlesinger a screenshot of a text message conversation from that morning between Plaintiff and one of his kids, which is a "clear violation of the Stay Away and Refrain clauses of the court order." (*Id.*)

Officer Schlesinger then arrested Plaintiff for second degree criminal contempt for violation of the orders of protection. (*Id.*) After he was arrested, Plaintiff identified himself as disabled and stated he needed a disability aide for effective communication. (Compl. ¶ 1.) Plaintiff was left in a cell for over an hour before he was provided a disability aide. (*Id.* ¶ 8.) Police refused

to allow him to have the aide or any other person tasked with helping him communicate accompany him during questioning, but did allow the social worker supervisor to join.  (*Id*. ¶¶ 1, 8-9, 20.)

Plaintiff alleges there was no violation as he had a planned supervised visitation that day, which the social worker supervisor told the police during questioning.  (Pl.'s Westchester Opp. at 41.)  Plaintiff also alleges the police retaliated against him by refusing to facilitate court ordered visitation with his four children, failing to charge his ex-wife for intervening with his supervised visit, failing to provide him with a police report detailing the incident, and detaining Plaintiff to prevent his supervised visit.  (Compl. ¶¶ 21, 24-25.)  Plaintiff has suffered from anxiety and PTSD as a result of his arrest.  (*Id*. ¶ 9.)

Plaintiff commenced this action on January 8, 2019.  (ECF No. 2.)  On May 29, 2020, the Court granted Defendants leave to file motions to dismiss, (ECF No. 21) which they did on September 16, 2020 (ECF Nos. 24 & 27.)  Plaintiff filed oppositions to both motions (ECF Nos. 25, 31 & 33)[2], and also sought and was granted the opportunity to supplement his opposition papers.  (ECF No. 34.)  Plaintiff filed a supplemental opposition (ECF Nos. 35 & 36)[3], and the City Defendants then filed a supplemental reply.  (ECF No. 37.)

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court

---

[2] Plaintiff's Opposition to the City Defendants' motion was filed in two parts.

[3] Plaintiff's supplemental opposition appears to have been filed twice.

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678. (quoting *Twombly*, 550 U.S. at 555) (emphasis added). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I.     The Parties' Exhibits

Though the parties have submitted numerous documents outside of the four corners of the Complaint in connection with the instant motions, only certain of those documents are appropriately before the Court.  As discussed below, the Court will only consider Plaintiff's Exhibits and the City Defendants' Exhibits B and C in resolving the instant motions.

In deciding a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This generally includes "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Communs, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007).

A document is incorporated by reference into the complaint where the complaint "refers to" the document.  *EQT Infrastructure Ltd v. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012).  However, "[a] mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself."  *Williams v. Time Warner Inc*., 440 F. App'x 7, 9 (2d Cir. 2011).

A document may also be considered if it is "integral" to the complaint.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include . . . documents that, although not incorporated by reference, are 'integral' to the complaint.") (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)).  A document is integral to the complaint where the plaintiff "(1) has 'actual notice' of the document and its information and (2) has 'relied upon the[] documents in framing the complaint.'"  *McLennon v. City of New York*, 171 F. Supp. 3d 69, (E.D.N.Y. 2016) (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002)).

However, "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the document in preparing his complaint." *Williams v. City of New York*, No. 14-CV-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

Plaintiff's oppositions to the motions to dismiss each attach various documents as exhibits. (See ECF Nos. 25, 31, 33, 35, & 36.)  The exhibits generally consist of (1) documents relevant to or discussing family court proceedings between Plaintiff and his ex-wife as well as Plaintiff's criminal charge; (2) documents relevant to or discussing Plaintiff's past appeals or violations of the orders of protection; (3) Plaintiff's medical records; and (4) cases, legal articles, and treatises.

The City Defendants filed the Declaration of Lalit K. Loomba with their motion to dismiss, that attached six exhibits: (1) the Complaint; (2) the orders of protection against Plaintiff ("Exhibit B"); (3) a domestic incident report dated December 15, 2018 ("Exhibit C"); (4) a Miranda Card signed by Plaintiff dated December 15, 2018; (5) the booking report for Plaintiff's arrest dated December 15, 2018; and (6) a witness statement dated December 18, 2018.  (ECF No. 28.)  The City Defendants argue the Court can take these documents into consideration because the Complaint references the orders of protection and the police documents prepared in connection with Plaintiff's arrest.  (The City Defendants' Memorandum of Law in Support of their Motion to Dismiss ("City MOL") (ECF No. 29, at 8.)

**Plaintiff's Exhibits**:  Although Plaintiff's exhibits were not attached to the Complaint, the Court may consider documents attached to opposition papers if they are consistent with the allegations in the Complaint and Plaintiff is proceeding *pro se*.  *Rosendale v. Mr. Cooper Group Inc.,* No. 19-cv-9263 (NSR), 2021 WL 4066821, at *8 n.4 (S.D.N.Y. Sept. 7, 2021).  Therefore, the Court will consider Plaintiff's exhibits.

**City Defendants' Exhibit B**:  Exhibit B contains the orders of protection asserted against Plaintiff.  It is clear that the orders are incorporated by reference into the Complaint, as Plaintiff expressly refers to these documents in his Complaint and opposition papers.  (Compl. ¶¶ 8, 23.)

**City Defendants' Exhibit C**:  Plaintiff indicates in his supplemental opposition that the Court should "see police report that states I was released due to my poor health."  (Pl.'s Supp. Opp. at 3.)  This is in reference to City Defendants' Exhibit C, which includes the Domestic Incident Report prepared by Officer Schlesinger.[4]  (Loomba Decl. Ex. C.)  The Court finds that this exhibit has also been incorporated into Plaintiff's pleadings.  *See Cherry v. New York City Hous. Auth.*, 15-CV-6949 (MKB), 2017 WL 4357344, at *5 n.11 (E.D.N.Y. Sept. 29, 2017) ("Although Plaintiff does not attach this letter to any of his court filings, he quotes from the letter in his opposition to the motion to dismiss . . . The Court therefore considers the letter incorporated by reference into the Amended Complaint, as the Court accepts Plaintiff's factual allegations in his opposition as supplementing the Amended Complaint."); *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 Civ. 6331(RA), 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (holding documents submitted with a *pro se* plaintiff's opposition were appropriate to consider "in light of the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss . . . and the mandate that 'the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.'") (internal citations omitted).

However, the remaining exhibits submitted by the City Defendants will not be considered at this stage.  While the City Defendants allege the "police documents" are referenced in the

---

[4] At the end of the report, it states "Due to the poor health of Mr. Fishman and his inability to drive it was authorized to release him to Ms. Bolivar and assign a return date of 17 Dec. 18."  (Loomba Decl. Ex. C at 4.)

Complaint, they only point to Plaintiff's allegation that he never received a police report.  (City

MOL at 8.)  This is not a clear reference to any of the other attached documents.

Therefore, the Court will only consider Plaintiff's Exhibits and the City Defendants'

Exhibits B and C.

## II.    Personal Jurisdiction

The City Defendants aver that this Court lacks personal jurisdiction over Defendants

Schlesinger, Schaller, and Joseph as these parties were not properly served.  (City MOL at 8.)

Rule 4 of the Federal Rules of Civil Procedure states service on an individual may be

effected by:

> (1) following state law for serving a summons in an action brought in courts of
> general jurisdiction in the state where the district court is located or where service
> is made; or
>
> (2) doing any of the following: (A) delivering a copy of the summons and of the
> complaint to the individual personally; (B) leaving a copy of each at the individual's
> dwelling or usual place of abode with someone of suitable age and discretion who
> resides there; or (C) delivering a copy of each to an agent authorized by
> appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Under New York law, service may be accomplished "by delivering the

summons within the state to a person of suitable age and discretion at the actual place of business,

dwelling place or usual place of abode of the person to be served and by . . . mailing the summons

by first class mail to the person to be served at his or her actual place of business . . . ."  N.Y.

C.P.L.R. § 308(2).

Here, an affidavit of service dated March 5, 2019 states an agent of Defendants Schlesinger,

Joseph, and Schaller was served the summons and complaint.  (ECF No. 12.)  The listed "party

accepting service" is Liane Dimeglio, who is "authorized to accept service by Captain Rosenberg."

(*Id*.)  The affidavit states that Captain Rosenberg stated Liane Dimeglio is authorized to accept

service for all three defendants.  (*Id.*)  The City Defendants argue that (1) service is improper under New York law because none of the individual Defendants were mailed a copy of the summons and complaint, and (2) Liane Dimeglio is not an agent authorized to accept service on their behalf. (City MOL at 9.)  The Court agrees.

First, the affidavit of service does not indicate that copies of the summons and complaint were mailed to the individual City Defendants.  (ECF No. 12.)  Therefore, Plaintiff has not completed service under New York law.

Second, Plaintiff's service is also deficient under Rule 4.  "Claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to satisfy the service requirements of Rule 4(e)(2); there must be evidence that the defendants intended to confer that authority upon the agent."  *Fenwick v. United States*, 691 F. Supp. 2d 108, 112–13 (D.D.C. 2010) (holding the person served stated he was authorized to receive service on behalf of the individual defendants was insufficient under Rule 4 without evidence demonstrating any intent on the part of the defendants to authorize him to receive service on their behalf) (internal citations and quotation marks omitted).  Therefore, the individual Defendants were not properly served, the Court does not have personal jurisdiction over them, and consequently it cannot consider the merits of Plaintiff's claims against them.  *See Sauer v. Town of Cornwall*, No. 20-cv-4881 (NSR), 2021 WL 4066848, at *5 (S.D.N.Y. Sept. 7, 2021) ("The Court cannot address these arguments at this juncture, since the court finds it has no personal jurisdiction.").

However, Rule 4(m) provides that:

[i]f a defendant is not served within 90 days after the complaint is filed, the court — on a motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Accordingly, there are two means by which a court can grant an extension: (1) upon a showing of good cause; or (2) within its discretion.  *Id*.; *see also Zapata v. City of New York*, 502 F.3d 192, 195–96 (2d Cir. 2007) (holding an extension proper "even in the absence of good cause").

Plaintiff has not shown "good cause" for his failure to properly serve the individual City Defendants.  Fed. R. Civ. P. 4(m).  The first and primary factor that courts consider in assessing good cause is the reason the plaintiff proffers for the failure.  *Gordon v. Hunt*, 116 F.R.D. 313, 319–21 (S.D.N.Y. 1987).  "[A] plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control."  *Spinale v. United States*, No. 03CIV1704KMWJCF, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd*, 352 Fed. Appx. 599 (2d Cir. 2009).  Inadvertence, unanticipated difficulty, or neglect does not constitute good cause for an extension.  *Id*.

Plaintiff offers no explanation for his failure to effect proper service.  Instead, Plaintiff ignores the City Defendants' argument completely.  Although the requirements under Rule 4(m) are often lessened for *pro se* plaintiffs, good cause cannot be found where the plaintiff presents no excuse for the failure to serve.  *See Toner v. Suffolk County Water Auth.*, 220 F.R.D. 20, 21 (E.D.N.Y. 2004) (dismissing *pro se* plaintiff's complaint with prejudice after defendants were not served under Rule 4).  Further, in the Court's Order of Service dated February 11, 2019, it was clear that Plaintiff was directed to serve the summons and complaint on Defendants within 90 days, and if he failed the Court may dismiss the claims pursuant to Rule 4.  (ECF No. 8.)  Plaintiff has clearly failed to make a showing of good cause.

However, the Court exercises its discretion to grant Plaintiff an extension of time to effectuate service.  *See e.g.*, *Zapata*, 502 F.3d at 196.  The Second Circuit has consistently held that Rule 4 should be construed liberally and that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained*."  *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986).  As Plaintiff is *pro se* and suffers from multiple physical and mental ailments, the Court will grant him an extension.

**III.    Section 1983 Claims**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution."  *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Pursuant to Section 1983, Plaintiff alleges claims for First Amendment retaliation and false arrest in violation of the Fourth and Fourteenth Amendments.  (Compl ¶¶ 53-66.)

Defendants Westchester and City aver that the Complaint fails to allege municipal liability, as it does not include any policy, custom, or practice that led to the alleged constitutional violations.   (Westchester MOL at 5-6; City MOL at 15.)   Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation."   *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).   The Second Circuit uses a two-prong approach in determining *Monell* liability for Section 1983 claims.   *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).   First, the plaintiff must plead "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."   *Id*.   Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."   *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Where municipal liability is based on a failure to train employees, the inadequate training itself must "reflect[ ] deliberate indifference to . . . constitutional rights."   *City of Canton, Ohio v. Harris,* 489 U.S. 378, 392 (1989).   To allege deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows to a moral certainty that [his or] her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights."   *Okin v. Villiage of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009).   A failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to

specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Here, Plaintiff fails to allege any action on behalf of Westchester or any of its officers. The Complaint makes no mention of any Westchester employees or police officers, or any policy, custom, or practice created by Westchester. The only allegation included in the Complaint is that Westchester "includes the City of Rochelle . . . who employs attorneys who maliciously prosecuted plaintiff." (Compl. ¶ 4.) This conclusory statement fails to raise a plausible cause of action.

Plaintiff also fails to plausibly allege municipal liability for the City. He alleges no specific policies, customs, or practices enforced by the City that would plausibly lead to his alleged constitutional violations of First Amendment retaliation or false arrest. He also fails to allege either Westchester or the City lacked any specific kinds of training that would have prevented these alleged constitutional violations.

Accordingly, all Section 1983 claims against Westchester and City are dismissed, without prejudice.

## IV.    ADA and RA

Plaintiff alleges Defendants violated the ADA and RA for failing to provide him aide, services, and items necessary to ensure effective communication to assist him during questioning as well as failing to train officers to accommodate disabled individuals. (Compl. ¶¶ 40-42, 49-51.) The City avers the Complaint fails to allege any discriminatory animus due to Plaintiff's disabilities or that any individual acted with deliberate indifference, and there is no individual liability under either statute. (City MOL at 13-14.) Westchester again avers that the Complaint

contains no factual allegations involving any Westchester officials or employees.  (Westchester MOL at 10-11.)

Though it is not before the Court as the individual defendants were not served, there is no individual liability under the ADA or the RA.  *Santiago v. 1199 SEIU*, No. 18-CV-06711 (AMD) (RLM), 2020 WL 4350048, at *5 (E.D.N.Y. July 29, 2020).  Further, as discussed above, Plaintiff has failed to allege any factual allegations involving Westchester giving rise to ADA or RA claims, and therefore his claims against it are dismissed.[5]  Nonetheless, Plaintiff has alleged a sufficient claim for discrimination under the ADA and RA as against the City, as discussed below.

  a.  *Discrimination*

The ADA and RA "impose identical requirements."  *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004).  Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

To establish a violation of Title II, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was

---

[5] In his Supplemental Opposition, Plaintiff alleges for the first time that he was denied the "government program of supervised visitation," in violation of the ADA and RA, and that Westchester "had a hand in" preventing it because "the county office of probation funds supervised probation/visitation."  (Pl.'s Supp. Opp. at 2, 4.) Assuming for the purposes of this motion that supervised visitation is a government program under Title II, this claim fails as it is conclusory and contains no plausible, factual allegations that either Westchester or the City prevented Plaintiff's supervised visits.

"denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal citations and quotation marks omitted). To establish a claim under the RA, a plaintiff must also demonstrate that the defendant receives federal funding. *Henrietta D.*, 331 F.3d at 272.

"The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled." *Felix v. New York City Transit Auth*., 324 F.3d 102, 107 (2d Cir. 2003). A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D.*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). The determination of what constitutes a reasonable accommodation is a "highly fact-specific, case-by-case inquiry." *Mary Jo C. v. New York State & Local Ret. Sys*., 707 F.3d 144, 165 (2d Cir. 2013) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)). "[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 277.

"An arrest or seizure of an individual, including post arrest transportation and investigation, is a 'service, activity, or benefit' of a police department and is thus covered under the ADA." *Nicholas v. City of Binghamton*, No. 10-CV-1565, 2012 WL 3261409, at *13 (N.D.N.Y. Aug. 8, 2012). Under both Title II of the ADA and Section 504 of the RA, courts have recognized claims

in the context of arrests for "failure to provide reasonable accommodations, where police execute a proper arrest but fail to reasonably accommodate a plaintiff's disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees." *Wagner v. City of New York*, No. 14-CV-2521 (VEC), 2015 WL 5707326, at *7 (S.D.N.Y. Sept. 28, 2015) (internal citations and quotation marks omitted).

Here, the parties do not dispute that Plaintiff is disabled, or that Defendants are subject to the ADA.[6] Plaintiff avers he requested certain accommodations to assist him during questioning, as he suffers from disabilities that affect his communication and thinking skills. Drawing all reasonable inferences in Plaintiff's favor, the allegations that the City failed to accommodate his disabilities during his arrest and interrogation are enough, at this stage, to state a plausible claim. Plaintiff has pled plausible allegations that his disability made it difficult for him to participate in interrogation, and consequently exposed him to greater injury and indignity than other arrestees. Therefore, Plaintiff's claim stands.[7]

   *b.  Retaliation*

Plaintiff also appears to allege that Defendants retaliated against him based on his disability. Plaintiff alleges (i) Defendants denied him reasonable accommodations to assist with visitation pickups with his disabled son; (ii) the police failed to enforce the supervised visitation carve out; (iii) the police failed to charge his ex-wife with custodial interference; (iv) the police failed to provide him a police report that includes the charges he reported against his ex-wife; and (v) the police detained Plaintiff to prevent his visitation. (Compl. ¶¶ 21, 23-26.)

---

   [6] While the City Defendants attempt to argue the RA claim should be dismissed because the Complaint fails to allege the City receives federal funds, the Court will assume that this is true for the instant motion.

   [7] The City Defendants argue that Plaintiff is required to show deliberate indifference in order to recover money damages under Title II. (City Defs.' MOL at 12.) As Plaintiff is seeking other kinds of relief, including declaratory and injunctive relief, the Court will not address this argument at this time.

"[T]he elements of a retaliation claim under either Section 504 or the ADA are '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (quoting *Weixel v. Bd. of Educ. of N.Y.C.*, 2000 WL 1100395, at *4 (S.D.N.Y. Aug. 7, 2000)).  The last element may be shown by "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of [others] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal citations omitted).

Here, Plaintiff alleges he was retaliated against due to his disability accommodation requests.  (Compl. ¶¶ 21, 23-26.)  While making accommodation requests is a protected activity, *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012), Plaintiff's allegations are all conclusory statements that fail to allege a plausible claim.  He states the "police" refused to enforce the terms of the order of protection, charge his ex-wife, or provide a police report, and arrested him all "as retaliation for [his] disabilities and disability accommodation requests," but he includes no facts to support these statements.  (Compl. ¶¶ 21, 23-26.)  Further, Plaintiff fails to allege a causal connection between these actions and his disabilities.  Based on the Complaint, it is likely that all of these alleged actions took place *before* Plaintiff requested his accommodations, and therefore they could not have been done in retaliation.

Accordingly, Plaintiff's ADA and RA claims against Westchester are dismissed without prejudice.  The City's motion to dismiss these claims is denied.

18

## V.      State Law Claims

Plaintiff alleges state law claims for negligence, false arrest, and malicious prosecution. (Compl. ¶¶ 67-72.)  Defendants allege these claims must be dismissed as Plaintiff failed to serve a notice of claim pursuant to New York General Municipal Law § 50-e.  (City MOL at 19-20; Westchester MOL at 7-8.)

"Under New York law, a notice of claim is a condition precedent to bringing a personal injury action against a municipal corporation."  *Parise v. N.Y.C. Dep't of Sanitation*, 306 F. App'x 695, 697 (2d Cir. 2009); (citing *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)).  Section 50-e of the New York General Municipal Law requires that a plaintiff file such a notice of claim within ninety days of the incident giving rise to the claim.  N.Y. Gen. Mun. Law § 50-e(1).  To state a claim upon which relief can be granted, a plaintiff's complaint must allege (1) the notice of claim was served; (2) at least thirty days have passed since the notice of claim was filed and before the complaint was filed; and (3) the defendant has not adjusted or satisfied the claim in that time.  *See Roundtree v. City of New York*, No. 1:15 CV 6582, 2018 WL 443751, at *6 (S.D.N.Y. Jan. 16, 2018).

"Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Tulino v. City of N.Y.*, No. 15 CV 7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (internal quotation marks omitted).  State law claims for negligence, false arrest, and malicious prosecution all require a notice of claim to be filed.  *See, e.g., Packard v. City of New York*, 15 Civ. 7130 (AT) (RLE), 2017 WL 11580855, at *2 (S.D.N.Y. July 17, 2017) ("Because Plaintiffs have not alleged that that they filed or served the City with a notice of claim, their false arrest claim under New York law is barred."); *Anderson v. City of New York*, 817 F. Supp. 2d 77, 99

(S.D.N.Y. 2011) ("given the failure to file a timely notice of claim for malicious prosecution, the court agrees with defendants that plaintiff's state law claim against defendant City alleging malicious prosecution must be dismissed"); *Fisher v. County of Nassau*, 10-CV-0677(JS)(ETB), 2011 WL 4899920, at \*3 (E.D.N.Y. Oct. 13, 2011) ("Plaintiff's negligence claims against the County must be dismissed because he did not comply with New York's notice of claim procedure.").

Here, there are no allegations in the Complaint or any of the oppositions to the instant motions that Plaintiff served a notice of claim on Westchester or the City.  Plaintiff does not address this deficiency in his filings.  Therefore, the state law claims against the City and Westchester are dismissed, without prejudice.

## **CONCLUSION**

For the foregoing reasons, Westchester's motion is GRANTED, and the City Defendants' motion is GRANTED in part and DENIED in part.  The surviving claims include Plaintiff's ADA and RA claims against the City for failure to accommodate.  Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice.[8]  If he chooses to do so, Plaintiff will have until November 18, 2021 to file an Amended Complaint consistent with this order.  Plaintiff is advised that the Amended Complaint will replace not supplement the Complaint so any claims he wants to pursue must be included in or attached to the Amended Complaint.  Defendants are then directed to answer or otherwise respond by December 20, 2021.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be

---

[8] Plaintiff requests leave to amend his Complaint in one of his oppositions.  (Pl.'s City Opp. at 2.)  That request is now moot, as Plaintiff is granted leave to file an Amended Complaint.  If Plaintiff would like to add additional defendants to his Amended Complaint, he may do so.

deemed dismissed with prejudice.  If no Amended Complaint is timely filed, the City must answer the remaining claims against it on or before December 3, 2021.  Plaintiff will also have until December 18, 2021 to serve the individual Defendants if he wishes to proceed with his claims against them.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 24 & 27. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and to show proof of service on the docket.

Dated: October 19, 2021                                SO ORDERED:
         White Plains, New York

                                        _____
                                            NELSON S. ROMÁN
                                        United States District Judge