COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM
--------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

**NOTICE OF MOTION**
**TO SET ASIDE GUILTY VERDICT**
**AS PER CPL 330.30**

Case No.: 06293M-2018

Return Date: 10/18/21

- against -

MARC FISHMAN,

Defendant.

--------------------------------------------------------------------X

**PLEASE TAKE NOTICE THAT** upon the annexed affirmation of CANER DEMIRAYAK, ESQ., dated October 15, 2021, affirmation of Donna Drumm, Esq., dated October 15, 2021, Affidavit of Marc Fishman, duly sworn to on October 15, 2021 and the Affidavit of Isabel Bolivar, duly sworn to on May 15, 2021, with attached exhibits, and memorandum of law and upon all the prior pleadings and proceedings in this matter, plaintiff will move this Court at Part DZ at the Westchester County Court: Criminal Term at 111 Dr. Martin Luther King, Jr., Blvd., White Plains, New York 10601 on the 18th Day of October, 2021, at 9:30 a.m., or as soon as possible thereafter for an order

I.    Pursuant to CPL 330.30(1) setting aside the guilty verdict and conviction as the record includes numerous grounds which would require a reversal upon an appeal as a matter of law by an appellate court;

II.   Pursuant to CPL 300.50 and 310.50 setting aside the verdict, recording same as an acquittal or ordering a new trial as the verdict was defective, inconsistent and repugnant;

III.  Dismissing this matter;

IV.   Ordering a new trial;

V.      Staying sentencing pending disposition of this motion,

VI.     Scheduling a hearing to determine the need to set aside the guilty verdict; and

VII.    For such other relief as the court deems proper.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214(b), answering papers, if any, must be served upon the undersigned at least seven (7) days before the return date of this motion.

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
       October 15, 2021

*Caner Demirayak*
/s/
Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
Fax: 646-679-2527
caner@canerlawoffice.com

TO:    Westchester County District Attorney

COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM
--------------------------------------------------------------------X
 THE PEOPLE OF THE STATE OF NEW YORK,

                                            Case No.: 06293M-2018

               - against -

 MARC FISHMAN,

                   Defendant.
--------------------------------------------------------------------X

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SET ASIDE GUILTY VERDICT**

                              LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
       October 15, 2021

               _Caner Demirayak_
               Caner Demirayak, Esq.
               300 Cadman Plaza West
               One Pierrepont Plaza, 12th Floor
               Brooklyn, New York 11201
               718-344-6048
               Fax: 646-679-2527
               caner@canerlawoffice.com

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** .................................................................................. iii

**PRELIMINARY STATEMENT** ......................................................................... 4

**STATEMENT OF FACTS** ................................................................................. 4

**ARGUMENT** ...................................................................................................... 6

**I.    The Guilty Verdict is Not Supported by the Evidence and Will be Reversed on Appeal** ...................................................................................................... 6

**II.   The People's Harmful and False Statements During Opening and Closing Statements Will Require a New Trial on Appeal** ......................................... 8

**III.  The Guilty Verdict is Illegal as the Defendant Could not be Found Guilty of Both an Attempt and a Completed Crime due to Legal Inconsistency and Will be Reversed on Appeal** ..................................................................... 8

**IV.   The Court's System for this Case Indicates the Defendant was Found Guilty of a Crime he was Never Charged With** ........................................... 10

**CONCLUSION** ................................................................................................ 10

ii

# TABLE OF AUTHORITIES

**Cases**

*Carlson v. Podeyn*,
    12 A.D.2d 810 (2d Dep't. 1961) ........................................................................ 6

*Holtzman v Beatty*,
    97 A.D.2d 79 (2d Dep't. 1983) .......................................................................... 6

*People v Balt*,
    34 A.D.2d 932 (1st Dep't. 1970) ....................................................................... 7

*People v Gonzalez*,
    200 A.D.2d 759 ................................................................................................. 7

*People v. Flowers*,
    44 A.D.2d 842 (2d Dep't. 1974) ........................................................................ 8

*People v. Gunatilaka*,
    156 Misc. 2d 958 (Crim. Ct., N.Y. Cty 1993) .................................................. 7

*People v. Rosa*,
    108 A.D.2d 531 (1st Dep't. 1985) ...................................................................... 8

*People v. Trappier*,
    87 N.Y.2d 55 (N.Y. 1995) .................................................................................. 9

*People v. Tucker*,
    55 N.Y.2d 1 (N.Y. 1981) .................................................................................... 9

*Sheridan v. Kennedy*,
    12 A.D.2d 332 (1st Dep't. 1961) ....................................................................... 6

**Statutes**

CPL 300.50(1) .......................................................................................................... 9

CPL 300.50(4) .......................................................................................................... 9

CPL 310.50 ............................................................................................................... 9

CPL 310.50(2) .......................................................................................................... 6

## PRELIMINARY STATEMENT

The guilty conviction in this matter was against the weight of the evidence as the People failed to prove that defendant attempted to or completely violated an order of protection issued by the Court. The evidence adduced at trial established that the defendant was engaging in lawful conduct in following court ordered instructions for visitation. The defendant never interacted with Jennifer Solomon, never entered her property line and never came close to doing so. All witnesses, including Jennifer Solomon herself conceded this at trial.

More importantly, the order of protection, which was only verbally issued to defendant was ambiguous and vague as it did not include any distances or other specific instructions as to how far away defendant should stay away from Jennifer Solomon. As such, a defendant who is attempting to follow a visitation order and who never even enters the property line of the complaining witness cannot rationally be found to have attempted to or actually violate an order of protection. The verdict is also legally impossible, inconsistent and repugnant as the defendant could not be found guilty of both attempted criminal contempt in the second degree and completed criminal contempt in the second degree.

## STATEMENT OF FACTS

On June 27, 2017, family court judge Michelle Schauer conducted a hearing in which she was sentencing defendant to a term of imprisonment for violation of an alleged order of protection. During that hearing the judge instructed defendant to stand up next to several officers as she addressed the defendant. At the same time, the judge issued a verbal two year order of protection. The order of protection included no details as to the distance to stay away and did not instruct defendant to have no contact. The Judge specifically stated that the order would be subject to the rights defendant had to visitation, which required contact with Jennifer Solomon.

4

While the judge verbally read the order to defendant, he was unable to hear or comprehend what was stated as he was being arrested and about to spend at least several weeks in jail.

The defendant was never served with a written copy of the order of protection at any point.

On the date of the alleged incident the defendant was scheduled for his court ordered visitation with his children. Jennifer Solomon did not send an email canceling the visitation. As such, defendant, the supervisor and his aide traveled towards Jennifer Solomon's house in a vehicle to conduct the visitation.

The aide was driving and dropped the supervisor off approximately 150 feet away from Solomon's house. Since Solomon lived on a one way street, the aide continued driving forward and passed Solomon's house. Defendant was a passenger in the aide's vehicle at this time, and never came closer than 30 feet to Solomon's property line.

The aide then drove back around the block and stopped the car 200 feet away from Solomon's house and waited for the supervisor to return with defendant's children for the visitation. However, the supervisor returned and advised defendant that Solomon canceled the visitation.

As such, the defendant went to the police station himself to report Solomon's refusal to allow him visitation that day. However, the police arrested defendant as they wrongly believed he violated an order of protection without any probable cause.

During the trial in this criminal matter the People harmfully misled the jury by stating in opening that defendant "was served with the order of protection." And, that the defendant was ordered to have "no contact" with Jennifer Solomon. However, neither statement was factually true and the People knew it. These statements were harmful and resulted in the guilty verdict even though the evidence does not support such verdict.

5

At trial, several witnesses including the supervisor and Solomon herself admitted defendant never entered Solomon's property line nor interacted with her. And, this Court stated on the record that the People did not prove their case, but invited the People to ask for a charge of an attempted violation of an order of protection.

The Court submitted both criminal contempt in the second degree and attempted criminal contempt in the second degree to the jury. But it did not do so in the alternative and nor did the Court explain to the jury that it could only render a guilty verdict as to one of the charges but not the other. As a result the verdict was repugnant and defective. However, the Court did not follow the mandates of CPL 310.50(2) in attempting to remedy the repugnant or defective verdict. As such, the entire verdict should be rejected, and defendant deemed acquitted.

## **ARGUMENT**

### I. **The Guilty Verdict is Not Supported by the Evidence and Will be Reversed on Appeal**

It is settled that "Where the terms of an order are vague and indefinite as to whether or not particular action by a prty is required, then of course, he may not be adjudged in criminal contempt for the willful failure to take such action." *Holtzman v Beatty*, 97 A.D.2d 79 (2d Dep't. 1983); *see also Sheridan v. Kennedy*, 12 A.D.2d 332 (1st Dep't. 1961) ("The mandate alleged to be violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated."). In *Sheridan*, the Appellate Division made clear that "If the order alleged to be disobeyed is capable of a construction consistent with the innocence of the party there should be no punishment." 12 A.D.2d at 332.

In *Carlson v. Podeyn*, 12 A.D.2d 810 (2d Dep't. 1961), the Second Department held that "As punishment for contempt may involve….loss of liberty…it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and, when applied to the act

complained of, it should appear with reasonable certainty that it had been violated." *See also People v Balt*, 34 A.D.2d 932 (1st Dep't. 1970) (stating a vague and indefinite order of protection cannot provide the basis for contempt).

Directly on point is the holding in *People v Gonzalez*, 200 A.D.2d 759 in which it was held that "It was legally insufficient to establish that defendant violated the order of protection by going to his daughter's home."

Additionally, in *People v. Gunatilaka*, 156 Misc. 2d 958 (Crim. Ct., N.Y. Cty 1993), it was held that a defendant's actions in walking back and forth in front of the complaining witness's house was not sufficient for a violation of a vague and indefinite order of protection.

In the case at bar, the June 27, 2017 verbal order of protection issued in court was vague and indefinite as to the conduct that defendant could not engage in. It did not include a distance of how far to stay away from Jennifer Solomon. Moreover, it specifically incorporated a permitted carve out for supervised visitation. The evidence adduced at trial established that there was no violation of such order and that the conduct engaged in was capable of a construction consistent with innocence.

Here, the defendant merely sought to have his court ordered visitation and followed all the rules in doing so. Clearly, this cannot be an attempt or a complete violation of the verbal order of protection.

Moreover, the order of protection was never served or provided to the defendant and he was not aware of and did not fully comprehend the order. And, the order of protection which the arresting officer relied upon, did not even include the visitation carve out. Had it included same, this case would never have been prosecuted.

7

II.    **The People's Harmful and False Statements During Opening and Closing Statements Will Require a New Trial on Appeal**

The misconduct by the prosecutor in the trial of this matter prejudiced the defendant and denied him a fair trial. During his opening and closing statements the prosecutor made harmful, prejudicial and false statements regarding this matter. First, the prosecutor misled the jury into believing that defendant was served with an order of protection, which is not true and was never entered into evidence. Next, the prosecutor misled the jury and did not advise them of the allowed visitation of the children, which would have required a finding of not guilty.

As such, "the totality of this persistent misconduct deprived the defendant of his right to a fair trial." *People v. Rosa*, 108 A.D.2d 531 (1st Dep't. 1985).

III.    **The Guilty Verdict is Illegal as the Defendant Could not be Found Guilty of Both an Attempt and a Completed Crime due to Legal Inconsistency and Will be Reversed on Appeal**

The jury's verdict of guilty as two both the greater offense of criminal contempt in the second degree and the lesser included offense of attempted criminal contempt in the second degree was defective, legally impossible and repugnant. As explained below, this court committed profound error by allowing the jury to consider both the greater and lesser included charge without advising the jury it could only consider the charges in the alternative.

A defendant cannot be convicted of an inchoate or attempted crime and the completed crime under the same set of allegations. The jury was clearly confused and issued a defective verdict. There is no way to determine if the jury only felt the defendant attempted the crime or completed it as it rendered a guilty verdict on both charges. If instructed properly, the jury could have found defendant guilty only of the lesser offense, requiring a new trial.

In *People v. Flowers*, 44 A.D.2d 842 (2d Dep't. 1974), the Second Department explained that "When a jury renders an illegal verdict the court must explain the defect or error and must direct the jury to reconsider such verdict, to resume its deliberation for such purpose, and to render a proper verdict. It further provides that if the jury persists in rendering a defective or improper verdict the court may in its discretion either order that he verdict…be recorded as an acquittal or discharge the jury and authorize the people to retry the indictment."

CPL 300.50(1) is clear: any lesser included offense must be submitted to the jury in the alternative to the greater offense. And, CPL 300.50(4) makes clear that "Whenever the court submits two or more offenses in the alternative…it must instruct the jury that it may render a verdict of guilty with respect to any one of such offenses…but that it may not render a verdict of guilty with respect to more than one." The section further provides that "A verdict of guilty of any such offense is not deemed an acquittal of any lesser offense submitted but is deemed an acquittal of every greater offense submitted."

As such, here, the verdict is legally impossible and defective as section 300.50(4) requires the acquittal of each charge which cancels each other out. Since the jury found defendant guilty on the lesser included, the greater offense is deemed acquitted. However, since the jury also found defendant guilty on the greater, the lesser included is not deemed acquitted.

Upon an appeal of this matter the verdict will be reversed as in violation of the criminal procedure law. This Court has an obligation to set aside the verdict and at the very least order a new trial as per CPL 310.50, but truly to record the verdict as an acquittal.

Each of the charges submitted to the jury require a different mens rea and issuing a verdict of guilty on both is repugnant and inconsistent. The Court of Appeals has explained that "A verdict is inconsistent or repugnant…where the defendant is convicted of an offense containing an

9

essential element that the jury has found the defendant did not commit." *People v. Trappier*, 87 N.Y.2d 55 (N.Y. 1995). In *People v. Tucker*, 55 N.Y.2d 1 (N.Y. 1981), the Court of Appeals explained "The critical concern is that an individual not be convicted for a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all. Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it."

Had the jury found the defendant guilty of the greater or lesser and not guilty of the lesser or greater the verdict would have been fine. However, since the jury found defendant guilty on both the court must record the verdict as an acquittal or order a new trial immediately.

## IV.    The Court's System for this Case Indicates the Defendant was Found Guilty of a Crime he was Never Charged With

The defendant is extremely concerned that he data included on the ecourts Webcrims page for this matter states that he was convicted of attempted witness tampering when he was not. This discrepancy must be resolved and investigated.

### CONCLUSION

The motion to set aside the verdict should be granted in all respects.

10

COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM
--------------------------------------------------------------------X
 THE PEOPLE OF THE STATE OF NEW YORK,

                                                    Case No.: 06293M-2018

            - against -
                                          **ATTORNEY AFFIRMATION**

 MARC FISHMAN,

                        Defendants.
--------------------------------------------------------------------X

            CANER DEMIRAYAK, ESQ., an attorney duly admitted to practice before the Courts of

the State of New York, affirms the truth of the following under the penalty of perjury pursuant to

CPLR 2106:

            1.        I am the attorney for Marc Fishman, and as such, I am fully familiar with the facts

and circumstances of this matter. The source of my knowledge is the files and records maintained

by my office and discussions with plaintiff.

            2.        I submit the following Affirmation in support of the motion to set aside the guilty

verdict pursuant to CPL 330.30.

            3.        For the reasons set forth in the annexed affirmations, affidavits, exhibits and

memorandum of law, the guilty verdict must be set aside as a matter of law. The People failed to

prove their case beyond a reasonable doubt and the evidence adduced at trial established the

defendant's innocence. Moreover, the People caused harmful error by its outright lies during

opening statements and summations.

            4.        I was retained by defendant to take over the handling of this matter late in the

afternoon on October 1, 2021. The court refused to adjourn the matter and I appeared on October

4, 2021 with limited knowledge and information as to this case and without the case file from the

former attorney.

5.    During the October 4, 2021 the former attorney advised on the record that it would be time consuming and difficult to transfer the file. The attorney also advised the cost of copying may not be reimbursed by the 18-b panel causing further difficulties.

6.    Defendant did not appear as he had been hospitalized that morning and could not attend in person proceedings.

7.    As of this date, I still have not received any portions of the former attorney's file and do not have any documents in my possession from the attorney.

8.    The only items I have are some documents the defendant sent to me. I do not have anything else in this matter which I will need to properly represent my client.

9.    During my investigation of this matter it appears that the court system has the defendant listed as violating crimes he never committed. As per the current print out of Webcrims, annexed hereto as Exhibit "A," it states Mr. Fishman was convicted of attempted witness intimidation in the third degree and criminal contempt in the second degree. However, Mr. Fishman was never charged with witness intimidation, let alone an attempt to intimidate. Mr. Fishman also never engaged in any conduct to support such charges.

10.    Since I do not have the former attorney's file, I do not have any information on what jury charges he asked to be submitted to the jury and what the verdict sheet actually looks like. These are substantial matters that need to be resolved before we can proceed to sentencing.

11.    The following other exhibits are annexed and explained as follows:

    a.  Exhibit B – Portions of the Transcript as to the verbal order of protection June 27, 2021

            i.  In this exhibit Judge Schauer set forth the order of protection terms which my client never heard nor comprehended. The terms were vague and

ambiguous and allowed for visitation. The evidence in this matter did not come close to proving a violation of the order of protection beyond a reasonable doubt.

b. Exhibit C – Portions of the Transcript as to the Judge Schauer admitting the recording system in family court is faulty September 12, 2017

    i. In this exhibit Judge Schauer concedes that a portion of the testimony and proceedings were not recorded. As such she went again and conducted the proceedings again to get it on the record. This raises serious concerns as to the reliability of anything stated in open court before this Judge and questions the order of protection issued verbally only 2 months earlier.

c. Exhibit D – Several portions of the criminal trial transcripts – testimony

    i. In this exhibit it is established that the evidence adduced at trial did not prove a completed criminal contempt or attempted beyond a reasonable doubt

d. Exhibit E – Several portions of the criminal trial transcripts – harmful statements by prosecutor and court acknowledgement of lack of proof

    i. In this exhibit the prosecutor advised the jury that the order of protection was **served** on Fishman which is not true and was not put into evidence and that the order did not allow **any contact** with Jennifer Solomon and failed to acknowledge the allowances for visitation. This exhibit also shows the court's statements confirming the lack of any evidence in this case supporting the criminal charges.

    e.   Exhibit F – Portions of the trial transcript establishing failure to prove the case beyond a reasonable doubt.

12.    Based on the foregoing, the guilty verdict must be set aside and the case dismissed, or a new trial be ordered. The Court system must also correctly reflect the crimes the defendant was charged with violating and actually convicted of.

13.    Sentencing must be stayed pending determination of this motion and the scheduling of a hearing on this motion.

14.    The defendant can provide the court with a copy of the trial minutes and transcript via e-mail in its entirety if necessary.

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
       October 15, 2021

*Caner Demirayak*
/s/
Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
Fax: 646-679-2527
caner@canerlawoffice.com

# EXHIBIT A

# New York State Unified Court System

## WebCriminal

## Case Details - Charges

### CASE INFORMATION

Court:          **Westchester County Court - Criminal Term**
Case #:         **06293M-2018**
Defendant:      **Fishman, Marc H**

| Charge | Detail | | Disposition/Sentence |
|--------|--------|--|----------------------|
| PL 215.50 03 **TOP CHARGE** | **A Misdemeanor, 1 count, Arrest charge, Not an arraignment charge** | | Tried &amp; Found Guilty |
| | Description: | *Crim Contempt-2nd:disobey Crt* | |
| | Indictment Count: | *1* | |
| PL 110-215.15 00 | **A Misdemeanor, 1 count, Not an arrest charge, Not an arraignment charge** | | Tried &amp; Found Guilty |
| | Description: | *Attempted Intimidating Vict/witness-3rd* | |
| | Indictment Count: | *2* | |
| | Date Added: | *01/28/2020* | |

# EXHIBIT B

```
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
  --------------------------------------
FISHMAN                                  )
                                         ) DOCKET
NO.
                                         )
                                         )
Plaintiff,                               )
                                         )
        -against-                        )
                                         )
                                         )
,                                        )
                                         )
                    Plaintiff            )
  --------------------------------------
                    JUNE 27 2017


  HELD AT:
COURT STREET ADDRESS
                      COURT CITY ADDRESS



  BEFORE:            HONORABLE JUDGE'S NAME

  APPEARANCES:       ATTORNEY 1

                     Behalf of Plaintiff Petitione
                     Attorney 2
                     Behalf of
Plaintiff Petitioner
                     Defendant Name
                     Defendant


           TRANSCRIBER:      ALAN KACHALSKY
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2          COURT CLERK:  on the record.  This is case numbers 274 on

3     the calendar.  In the Matter of the Fishman Solomon, counsel,

4     appearances.

5          MS. FEIT:  Good morning your Honor, Nichole Feit, staff

6     attorney with Legal Services of the Hudson Valley, on behalf

7     of Petitioner, Jennifer solomon.

8          MS. FOULKROD:  Virginia Foulkrod, also Legal Services of

9     the Hudson Valley, on behalf of Miss solomon.

10          MR. SPIER:  Ian Spier.  I represent Marc Fishman.  Good

11     morning, Judge.

12          MS. SOLOMON:  Donna Drum, Americans with Disabilities

13     advocate, for Marc Fishman.

14          MS. CASALLE:  Loretta Cassale, assisting Ian Spier, Good

15     Morning.

16          MS. HANNON:  Kathleen Hannon, attorney for the children,

17     Joanna, Jonah, Aiden and Skye.  Good morning, Your Honor.

18          COURT CLERK:  All parties, raise your right hands,

19     please.  (inaudible).

20          MS. SOLOMON:  Yes.

21          MR. FISHMAN:  Yes.

22          COURT CLERK:  And (inaudible) relationship with

23     (inaudible).

24          MS. SOLOMON:  My name is Jennifer Solomon.  I am mother

25     to the Joanna, Jonah, Aiden and Skye.

1          COURT CLERK:  Sir?

2          MR. FISHMAN:  Marc Fishman, father.

3          COURT CLERK:  (inaudible).

4          UNKNOWN:  (inaudible),  legal intern with Legal Services

5     of the Hudson Valley.

6          COURT CLERK:  You may all be seated.

7          THE COURT:  Good morning.  This court --

8          MR. SPIER:  (inaudible) but this part with regard to the

9     intern, I have no objection to the intern being in here, but I

10    would just ask that if Mr. Fishman has, during (inaudible)

11    proceedings in his case (inaudible), had someone that he

12    wanted to have observe, sit quietly in the back, not disturb

13    anybody, that there wouldn't be any objection to that.  Not

14    only --

15         THE COURT:  This is an open courtroom.

16         MR. SPIER:  That's what I have advised him.

17         THE COURT:  This court, having completed a fact-finding

18    hearing, and having found that respondent father, Marc Fishman

19    violated temporary Orders of Protections issued by this Court,

20    in favor of Petitioner mother, Jennifer Solomon, we're here

21    today to proceed to disposition.

22         Today's proceeding will conclude all current family

23    offense petitions of violation petitions and violation

24    petitions currently pending before the court.  Before we

25    get to that, I would like to discuss how the pending 'V'

1    evaluation took place on December 29th, 2016.

2        The fact-finding in this case ended on September 2

3    2016.  The disposition was scheduled to occur on

4    December 22nd, 2016.  That date had been repeatedly

5    adjourned at the request of Mr. Fishman and his

6    disabilities advocate.  Her asserted that he was was too

7    ill to appear in court, as he needed to heal from hernia

8    surgery, he was undergoing.

9        I find this to be just another example of

10   Mr. Fishman's attempt to manipulate and control the Court

11   process.

12       At virtually every court appearance, Mr. Fishman

13   could not restrain himself from being interrupt -- from

14   interrupting the Court and counsel, arguing with the

15   Court, despite being admonished on many, many occasions,

16   not to do so, by both the Court and his attorney.

17       While this Court has no desire to incarcerate

18   Mr. Fishman, it appears that incarceration is the only

19   remaining remedy that may jolt him into the reality that

20   Court Orders must be followed.

21       I'm going to first issue an Order of Protection, a

22   two year Order of Protection on behalf of Miss Solomon,

23   that will run until June 27th 2019.  That Order of

24   Protection requires you, Mr. Fishman, to stay away from

25   Miss Solomon, to stay away from her home, to stay away

1    from her place of employment at Chatsworth School,

2    including the school grounds of Chatsworth School.

3        You are to have no communication with her by any

4    means, including through third parties.  You are not to

5    harass, assault, threaten, intimidate, or commit any

6    criminal offense against her.  I'm dismissing the

7    underlying Family Offense Petition.  The issue as to an

8    Order of Protection regarding the children, will continue

9    with respect to the Custody and Visitation Petitions

10    pending before the Court.  And I will be continuing the

11    Temporary Order of Protection on behalf of the children

12    under the 'V' dockets, not under the 'O' docket, that you,

13    Mr. Fishman stay away from your children, except as

14    provided by Court Order of Visitation.  That you stay away

15    from your children's home and school.  That you have no

16    communication with the children, including by sending

17    gifts except as provided by Court Order, and that you not

18    harass, assault, threaten, intimidate or commit any

19    criminal offense against them.

20        The law authorizes this Court to incarcerate

21    Mr. Fishman for up to six months, for each of his five

22    willful violations of the Orders of Protection.

23        Today this Court sentences Mr. Fishman to three weeks

24    incarceration for each violation, each sentence to run

25    concurrently.

1          Thank you.  That concludes today's proceedings.

2          MR. SPIER:  I just want to make a request.

3          Mr. Fishman needs certain medical devices to take

4      with him.  We expected this to --

5          THE COURT:  That true.  That's for him to deal with

6      Corrections.  That's not my issue.  Thank you

C E R T I F I C A T E

  I, Alan Kachalsky, certify that the foregoing
transcript of proceedings in the YONKERS FAMILY
COURT, of Matter of Fishman and Solomon, Docket no.
131794 was prepared using the required transcription
equipment and is a true and accurate record of the
proceedings.


  Signature _____


**Al's Transcription Services**
**800 Westchester Avenue, Suite S-608**
**Rye Brook, New York 10573**
**Tel: (914) 220-5324**
**E-mail: catchsky@earthlink.net**

# EXHIBIT C

1

```
FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------x
JENNIFER SOLOMON,

                        Petitioner,


            - vs -                  Family Unit: 131794
                                    Docket Nos.:
                                    V-08186-14/15B
                                    V-08187-14/15B
                                    V-08188-14/15B
                                    V-08189-14/15B


MARC FISHMAN,

                        Respondent.
-------------------------------------------x
MARC FISHMAN,

                        Petitioner,


            - vs -                  Family Unit: 131794
                                    Docket Nos.:
                                    V-08186-14/17P
                                    V-08187-14/17P
                                    V-08188-14/17P
                                    V-08189-14/17P


JENNIFER SOLOMON,

                        Respondent.
-------------------------------------------x
                                    131 Warburton Avenue
                                    Yonkers, New York 10701
                                    September 12, 2017




B E F O R E:   HON. MICHELLE SCHAUER
```

2

A P P E A R A N C E S:

NICOLE E. FEIT, ESQ., Attorney for Jennifer Solomon
VIRGINIA FOULKROD, ESQ., Attorney for Jennifer Solomon
JOANNE SIROTKIN, ESQ., Attorney for Jennifer Solomon
IAN PHILIP SPIER, ESQ., Attorney for Marc Fishman
VALERIA CASALE, ESQ., Attorney for Marc Fishman
KATHLEEN M. HANNON, ESQ., Attorney for Children
MARC FISHMAN, Respondent/Petitioner
DONNA DRUM, Americans with Disabilities Advocate

Electronic Proceeding Transcribed By:
Gloria C. Hooker, Transcriber
La Palabra Court Reporting, LLC
175 Main Street, 7th Floor, Suite 18
White Plains, New York 10601
(914) 621-7271

3

INDEX

E X A M I N A T I O N S

PETITIONER

|                | Direct | Cross | Re Direct | Re Cross |        |
|----------------|--------|-------|-----------|----------|--------|
| Witness        | Direct | Cross | Re Direct | Re Cross |        |
| NONE           |        |       |           |          |        |

RESPONDENT

| Witness            | Direct | Cross | Re Direct | Re Cross | Re-re Direct |
|--------------------|--------|-------|-----------|----------|--------------|
| Marc Fishman       |        |       |           |          |              |
| By Ms. Feit        |        | 9     |           |          | 122          |
| By Ms. Hannon      |        | 93    |           |          |              |
| By Mr. Spier       |        |       |           | 102      | 126          |
|                    |        |       |           |          |              |
| Michelle Maidenberg|        |       |           |          |              |
| By Mr. Spier       | 58     |       |           |          |              |
| By Ms. Feit        |        | 71    |           |          |              |
| By Ms. Hannon      |        | 74    |           |          |              |

E X H I B I T S

COURT

| Exhibit No. | Description | ID | Evidence |
|-------------|-------------|-----|----------|
| NONE        |             |     |          |

PETITIONER

| Exhibit No. | Description         | ID  | Evidence |
|-------------|---------------------|-----|----------|
| 47          | 10/17/14 Transcript | --  | 16       |
| 48          | Email               | 28  | 30       |
| 49          | Email               | 33  | 34       |
| 50          | Email               | 50  | 52       |

RESPONDENT

| Exhibit No. | Description                      | ID  | Evidence |
|-------------|----------------------------------|-----|----------|
| M           | Letter dated 9/27/16             | 66  | --       |
| N           | Letter to Mr. Weddle Dated 9/10/16 | 68 | --       |
| O           | Letter to Allstate dated 11/6/16 | 68  | --       |
| P           | Letter to Judge Marks dated 3/10/14 | 69 | --      |

COLLOQUY

4

1    (Audio CD, counter 9:48:34)

2              COURT OFFICER:  Today is Tuesday, September 12,

3        2017, Yonkers Family Court, County of Westchester, State of

4        New York, Part 17, the Honorable Michelle Schauer

5        presiding, case number 1 through 8 in the matter of Solomon

6        and Fishman.

7              Counsels, state your appearance.

8              MS. FEIT:  Good morning, Your Honor.  Nicole

9        Feit, staff attorney with Legal Services of the Hudson

10       Valley, on behalf of Jennifer Solomon, whose appearance was

11       waived today.

12             MS. FOULKROD:  Virginia Foulkrod, also of Legal

13       Services of the Hudson Valley, for Jennifer Solomon.

14             MS. SIROTKIN:  Joanne Sirotkin, also from Legal

15       Services of the Hudson Valley, for Jennifer Solomon.

16             MR. SPIER:  Ian Spier, counsel for Marc Fishman.

17       Good morning.

18             MS. DRUM:  Good morning, Donna Drum, Americans

19       with Disabilities Advocate for Marc Fishman.

20             MS. CASALE:  Valeria Casale, attorney assisting

21       Ian Spier.  Good morning.

22             MS. HANNON:  Kathleen Hannon, attorney for the

23       children.  Good morning, Your Honor.

24             COURT OFFICER:  All parties please raise your

25       right hand.

COLLOQUY

1              Do you swear or affirm to tell the truth?

2              M A R C   F I S H M A N, a witness herein, was

3      examined and testified as follows:

4              MR. FISHMAN:  Yes.

5              COURT OFFICER:  Please state your name and

6      address, unless confidential.

7              MR. FISHMAN:  Marc Fishman, 3200 Netherland

8      Avenue, Apartment G, Bronx, New York 10463.

9              MS. FEIT:  You can be seated.

10             THE COURT:  Thank you.  Ms. Drum needs to be

11     sworn in as well.

12             COURT OFFICER:  Ma'am, do you swear or affirm to

13     tell the truth?

14             D O N N A   D R U M, a witness herein, was

15     examined and testified as follows:

16             MS. DRUM:  I do.

17             COURT OFFICER:  State your name, title, and

18     agency.

19             MS. DRUM:  Donna Drum, Drum Advocacy, 800

20     Westchester Avenue, Rye Brook, New York, Suite 641, 10573.

21             COURT OFFICER:  Be seated.

22             THE COURT:  Okay, good morning.  I began with a

23     brief attorneys' conference to discuss a little problem.

24     So Mr. Fishman was requesting the transcripts, as he always

25     does, which is not the problem, but in pulling up the

COLLOQUY

6

1     records, the Clerk discovered that there's a brief section
2     of September 1 that was not recorded.
3           So what we're going to begin today's session with
4     is I'm going to go off the record.  My Clerk is going to
5     pull up September 1, the last part before, I guess, the
6     recorder had a glitch and stopped recording, so we can
7     listen to the last recorded testimony and then Ms. Feit you
8     can go from there.  I think it was only about 10 minutes,
9     so it shouldn't be too much trouble.
10          Alright, does anyone have anything to say before
11    we go off the record and we'll play the recording?  Okay,
12    off the record.
13          MS. FEIT:  No, Your Honor.
14          (Off the record)
15          (Time noted 9:51:02 a.m.)
16          (On the record)
17          (Time noted 10:02:00 a.m.)
18          THE COURT:  Okay, so we're back on the record.
19    We did have an opportunity to listen to the last questions
20    from the September 1 proceeding.
21          At this point, all counsel have agreed that Ms.
22    Feit is going to ask Mr. Fishman the questions that she
23    asked during that brief period we were off the record and
24    that was from 4:18 to 4:30, so it's just a very short
25    period of time.  She'll ask the questions and that will

COLLOQUY

7

1      complete or fix the gap in the testimony.

2              And you're agreeing -- that's acceptable to you,

3      Mr. Spier?

4              MR. SPIER:  Yes.

5              THE COURT:  Okay.  Ms. Hannon?

6              MS. HANNON:  Yes, Your Honor, that's fine.

7              THE COURT:  Alright, so I will ask Mr. Fishman

8      please come back up.

9              MS. DRUM:  Your Honor, may I join him as I did on

10     the last date?

11             THE COURT:  Yes, you may.

12             MS. DRUM:  Thank you.

13             THE COURT:  So we've learned a lesson from this.

14     Just make sure the microphone is next to your mouth, Mr.

15     Fishman, and I'm not saying it was your fault.  It wasn't.

16     It appears to be a problem with the recorder, but if we

17     could all just be careful to speak directly into the

18     microphone it will make the recordings much better.

19             MS. FEIT:  Thank you, Your Honor.

20             MR. FISHMAN:  May I bring my water, Your Honor.

21             THE COURT:  You may.

22             Okay, Ms. Feit, you may proceed.

23             MS. FEIT:  Thank you, Your Honor, if the witness

24     could be showed Court's Exhibit 27?

25             And in the meantime, I'd like to put on the

COLLOQUY

8

1    record what was missing from the previous record which was

2    administrative.

3              THE COURT:  Okay.

4              MS. FEIT:  That we asked for the Temporary Order

5    of Protection on the "V" docket to be extended through and

6    until the end of September 12 -- that is the Temporary

7    Order of Protection on behalf of the children and we also

8    discussed the Visitation Order and the parties had agreed

9    on the record to September 10.  And I'll note, for the

10   record, that the parties subsequently contacted the Court

11   and it was changed to September 9.

12             We also discussed witnesses and that all counsel

13   were authorized to speak to any witnesses who were going to

14   be subpoenaed.  Your Honor stated that they are not experts

15   and therefore anyone can speak to them if they are not

16   experts and we continued the Temporary Order of Protection

17   through the 12th and I referred to Court Exhibit No. 27.

18             So Mr. Fishman, when you have a copy of the

19   Exhibit 27 in front of you, please let me know.

20             THE COURT:  Is that your recollection, Mr. Spier,

21   of what occurred during that time we were off the record or

22   the recorder was not recording?

23             MR. SPIER: I have no objection to that summary.

24             THE COURT:  Ms. Hannon?

25             MS. HANNON:  That's my recollection, Your Honor.

# EXHIBIT D

Case 7:19-cv-00265-NSR-VR    Document 40-1    Filed 11/11/21    Page 38 of 68

Exhibit "A"

Exhibit "A"

Judge, Tuckerman Comments that Mr Fishman did not Go
on MS Solomon's
Property

Proceedings                    35

1       MR. GOUBEAUD:  That is correct, Judge.

2       THE COURT:  Okay.

3       MR. GOUBEAUD:  That is the basis for my arguments

4    with respect to the proof that has been presented.

5       THE COURT:  Thank you.

6       Do you want to be heard on any of this, Mr. Parab?

7       MR. PARAB:  No.  I believe that the People have

8    established, based upon the evidence in the light most

9    favorable to the People, that we do have a prima facie case.

10   The evidence shows that the defendant went near or to the

11   home of the protected party in violation of the order of

12   protection.

13      THE COURT:  I agree that in terms of the motion I

14   do have to assess the evidence in the light most favorable

15   to the People, but on the other hand, I don't think there's

16   any dispute, factually or evidentiary wise, the defendant

17   did not cross the threshold, was not on the property itself,

18   unless someone wants to tell me otherwise.  Do you,

19   Mr. Parab?

20      MR. PARAB:  No, I agree with that as well.

21      THE COURT:  This Court is troubled on the issue

22   that I just identified; the failure of the order of

23   protection to set forth a distance at all, which means we're

24   left merely with the language, quote, stay away from -- it's

25   Paragraph B -- the home of Jennifer Solomon, end quote.

Case 7:19-cv-00265-NSR-VR   Document 40-1   Filed 11/11/21   Page 39 of 68

exhibit "c"

1           THE COURT:  Don't.  Please don't answer that,

2     ma'am.

3           THE WITNESS:  Oh, sorry.

4     Q    Now, it is your testimony that you had worked out on

5     December 15th a partial visit, so to speak; is that correct?

6     A    Correct, yes.

7     Q    Now, if I told you Ms. Solomon testified that the

8     entire visit was canceled that day would she be wrong?

9     A    Correct.

10    Q    Your testimony was, I believe, that you stopped a

11    couple of houses away when you got to the area in New Rochelle;

12    is that correct?

13    A    Yes.

14    Q    And that you saw Ms. Solomon outside already?

15    A    Yes, I did.

16    Q    Now, if she testified that you came to the door and

17    rang the bell, that was the first contact that she had with you,

18    would she be wrong?

19           MR. PARAB:  Objection.

20           THE COURT:  Sustained.

21    Q    Approximately how long were you talking with

22    Ms. Solomon on the front porch?

23    A    It was probably anywhere from 5 to 10 minutes.

24    Q    Okay.  And it was some time towards the end of that

25    stretch that the car drove past the house?

Case 7:19-cv-00265-NSR-VR    Document 40-1    Filed 11/11/21    Page 40 of 68

1      A    I believe it was during.

2      Q    Well, I believe you just said you got off the porch at

3  that point in time and stopped talking to her, correct?

4      A    No, I was still in the process of speaking with

5  Ms. Solomon when the car passed by the house.

6      Q    Okay.  And your testimony was, it stopped two to four

7  houses down the street on --

8      A    Around the corner.

9      Q    The side street?

10     A    Correct.

11     Q    Now, at the police station you indicated that at some

12 point you went into the back and you and Mr. Fishman were

13 speaking with the police officer?

14     A    I was speaking with the police officer.  Mr. Fishman

15 was present.

16     Q    And was there any conversation with the police about

17 visitation or anything like that?

18     A    They wanted to know what the visitation arrangements

19 were.

20     Q    And I believe that was every two weeks on Saturday?

21     A    Every other week, yes, on Saturdays.

22     Q    Okay.  Did they ask to see any visitation order?

23     A    I believe that was faxed over to them by Ms. Solomon.

24     Q    Did you get paid for this supervised visitation?

25     A    Correct.

1        Q     And did you get paid if it was canceled?  You said some

2    visits were canceled from time to time, correct?

3        A     Yeah, if it was canceled I wasn't paid.

4        Q     What time was the -- I'm sorry.  Was it a hockey lesson

5    or hockey rink?  At the hockey rink.  What time were the lessons

6    at the hockey rink?

7        A     They usually start playing around noon, but they had to

8    get there by 11:00 to get dressed up.  The visits are usually

9    from 10:00 to 5:00.  So Ms. Solomon had given permission if he

10   wanted to have breakfast with the children before, which is

11   within the vicinity, so we would have breakfast from 10:00 to

12   11:00, we'd go over to the hockey rink, Jonah suited up for the

13   rink and then the games started at noon.

14       Q     Okay.  And the breakfast was somewhere in New Rochelle?

15       A     Yeah, it was right within the vicinity of the rink.

16       Q     And did Jonah have his hockey equipment on when you

17   were at the house?

18       A     No, he just had his hockey stick with him.  He usually

19   gets dressed once he gets to the hockey rink.  His father would

20   suit him up.

21       Q     Did Mr. Fishman go on to Ms. Solomon's property at all

22   that day?

23       A     No.  He wasn't on the property, no.

24             MR. GOUBEAUD:  Thank you.  No further questions,

25       Judge.

Case 7:19-cv-00265-NSR-VR   Document 40-1   Filed 11/11/21   Page 42 of 68

1       Q      And what was the purpose for going to New Rochelle that

2   particular day?

3       A      It was for visitation.

4       Q      All right.  And when you got to New Rochelle what did

5   you do?

6       A      So I initially went to the gas station, which is

7   approximately two -- two or three blocks from the house where

8   the children reside, and then we went close to the house,

9   approximately a block away, towards the corner of the block

10  where they live, and Ms. Elliott got out to find the mother of

11  the children because she couldn't contact them by phone.

12      Q      Okay.  And when she left the car where did she go?

13      A      She went to the house of the children.

14      Q      Okay.

15      A      Excuse me.

16      Q      And approximately how long was she out of the car?

17      A      About 10, 12 minutes.

18      Q      And what did you do next?

19      A      So I decided to drive the car going towards the end of

20  the block and making a right and I went down to the middle of

21  the block approximately four houses away.

22      Q      And what was your purpose in driving past the house?

23      A      I wasn't sure what was taking place, why Ms. Elliott

24  was taking so long.  It was close to 10 o'clock, which is the

25  time for the visitation, so I decided to just drive over.  I

1   didn't see a harm in doing that.

2      Q     All right.  And you were driving?

3      A     I was driving.

4      Q     It wasn't Mr. Fishman, was it?

5      A     No.  He cannot drive.  The Court mandates it.

6      Q     Okay.  And why is that?

7      A     He's had several accidents.  There have been a lot of

8   issues related to it and the family court judges have decided

9   that it's best to have someone else drive the children during

10  visitation.

11     Q     What, if anything, happened next?

12     A     So I parked the car approximately four houses away and

13  as I drove past I saw that Jonah was playing I think hockey with

14  another child or older -- a teenager, I think.  I didn't look

15  closely.  And so we waited in the car and as Ms. Elliott was

16  walking towards us, she had turned the corner, Marc got out of

17  the car, but he was still next to the car, and he was calling

18  out for Jonah but I don't think he heard him.  He didn't respond

19  to him, and I was watching as Ms. Elliott was approaching the

20  car.

21     Q     You were watching in the rearview mirror?

22     A     And I turned around.

23     Q     Was there ever a time that Marc went onto miss -- onto

24  the property?

25     A     No.



1    A   Jonah loves hockey.

2    Q   And he takes a hockey camp or something, hockey

3  classes?

4    A   No longer.  He did.

5    Q   At the time did he?

6    A   At the time, yes.

7    Q   And was he scheduled to go to hockey that particular

8  day?

9    A   He took, like, a hockey program on Saturday mornings.

10    Q   And did Mr. Fishman frequently accompany him to those

11  hockey programs?

12    A   Not frequently, a few times, because it was during our

13  visitation schedule.

14    Q   Okay.  And you indicated Mr. Fishman, the car he was

15  in, was at the next house, is that correct, on Howard Parkway?

16    A   When the car stopped it was at the boundary.  Like, the

17  car stopped right where my house meets the other driveway and,

18  yeah, so he was -- I don't know if the car crossed both

19  boundaries, but it was just right in that spot.

20    Q   He did not come onto your property; is that correct?

21    A   No.

22    Q   Did Ann Elliott then get into the car?  Did you see her

23  get into the car?

24    A   I don't remember seeing her -- I remember seeing her

25  run in that direction.  My focus was getting Jonah in the house.

# EXHIBIT E

1  trial is opening statements by the lawyers.  The law

2  requires the prosecutor to make an opening statement first.

3       Mr. Parab, whenever you're ready.  Sir.

4       MR. PARAB:  Thank you, your Honor.

5       May it please the Court, defense counsel and

6  members of the jury.  This is a pretty straightforward case.

7  It's not going to take much deliberations.  But what we have

8  to do and establish is that this defendant, Marc Fishman,

9  violated a duly served order of protection.  That's going to

10  be established through the testimony that you hear from four

11  separate witnesses.

12       It's going to be first from Jennifer Solomon who

13  was married to Marc Fishman.  They got married in 2001 and

1    ordered the defendant to stay away from her and also ordered

2    the defendant to stay away from her home.

3         You'll hear from Jennifer Solomon and you'll hear

4    from a clerk from Yonkers Family Court that the defendant

5    violated that order of protection.  In June of 2017,

6    Michelle Schauer, a judge who presides over Yonkers Family

7    Court, found the defendant guilty of violating that order of

8    protection.  He violated that order of protection four

9    separate ways.  You'll hear from the witnesses how he

10   violated the order of protection, but on that particular

11   day, the judge, once again, reinstituted an order of

12   protection which prevented the defendant from having any

13   contact with Jennifer Solomon and prevented the defendant

14   from going to her home in New Rochelle.

15        We're here today because the defendant violated

16   that order of protection from June 27th of 2017.  The

17   defendant was present in court when that order of protection

18   was issued.  It was read to him by the judge and it was

19   acknowledged by both parties.

20        On December 15th of 2018, the defendant violated

21   that order of protection by going to the home of Jennifer

22   Solomon.  He drove to her home and tried to have contact

23   with one of his children.  When that occurred on that

24   particular day, Jennifer Solomon called the police

25   department up in the City of New Rochelle and the police

Case 7:19-cv-00265-NSR-VR   Document 40-1   Filed 11/11/21   Page 48 of 68

1    intent, what she specified in terms of what the order of

2    protection meant to her when she issued the order of

3    protection, she puts in her order exactly how the children

4    would be dropped off and picked up from the home. So

5    clearly the judge's intent was to keep him away from the

6    vicinity of her home. That would be my argument.

7    Obviously, I understand what Mr. Goubeaud is saying in terms

8    of why that shouldn't be included, but often times courts

9    may look to see what the judge's intent was in terms of what

10   the order of protection meant.

11            THE COURT: I have a couple of thoughts with

12   respect to that, Mr. Parab. First, were we dealing with an

13   alleged violation of a visitation order, which wouldn't be

14   heard in this court, it would be in family court, I would

15   say you're probably right. However, I do agree with

16   Mr. Goubeaud. Judge Schauer's intent, even though it is

17   written in the decision and order that she issued at the

18   time she issued this final order of protection from family

19   court, I believe is not relevant here. Moreover, there's no

20   indication the defendant personally was served or read that.

21   I think we're bound by the terms of the order of protection

22   that is the subject of this criminal contempt action.

23            And I mentioned earlier, I'll mention it again,

24   there's been no request that I consider something lesser in

25   the nature of an attempt or otherwise. What I understand

# EXHIBIT F

```
 1   SUPERIOR COURT OF THE STATE OF NEW YORK
     COUNTY OF WESTCHESTER: CRIMINAL TERM: PART DZ
 2   ---------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK    :
 3
              -against-                     :Indict#6293M/2018
 4
     MARC FISHMAN                           :
 5
                          Defendant      :
 6   ---------------------------------------x
     JURY SELECTION/TRIAL
 7
                               January 24, 2020
 8
     B E F O R E:
 9      HONORABLE DAVID S. ZUCKERMAN,
              County Court Judge, and a jury
10
        (Appearances same as previously noted.)
11
                            Nicole Ameneiros
12                          Senior Court Reporter
                    - - - - - - - - - - -
13              THE CLERK:  Calendar No. 1, continuation of a jury

14      trial, People of the State of New York versus Marc Fishman.

15      This is under 6293M of the year 2018.

16              Are the People ready?

17              MR. PARAB:  People ready.  Amit Parab for the

18      People.  Good morning, Judge.

19              THE COURT:  Good morning.

20              THE CLERK:  Defendant ready?

21              MR. GOUBEAUD:  Ready, your Honor.  Joe Goubeaud for

22      the defense.

23              THE COURT:  Good morning.

24              Good morning, Mr. Fishman.

25              THE DEFENDANT:  Good morning, your Honor.
```

1    trial is opening statements by the lawyers.  The law

2    requires the prosecutor to make an opening statement first.

3              Mr. Parab, whenever you're ready.  Sir.

4              MR. PARAB:  Thank you, your Honor.

5              May it please the Court, defense counsel and

6    members of the jury.  This is a pretty straightforward case.

7    It's not going to take much deliberations.  But what we have

8    to do and establish is that this defendant, Marc Fishman,

9    violated a duly served order of protection.  That's going to

10   be established through the testimony that you hear from four

11   separate witnesses.

12             It's going to be first from Jennifer Solomon who

13   was married to Marc Fishman.  They got married in 2001 and

14   they were married for approximately nine years.  They have

15   four children in common.  There's Joanna, Jonah and two

16   twins, Aidan and Skye.  But in 2010, the victim in this

17   case, Jennifer Solomon, decided to initiate a divorce

18   proceeding with this individual Marc Fishman.  She went to

19   court, she filed the paperwork, and two years later, in

20   August of 2012, the Court granted her request and she was

21   finally separated from this defendant.

22             But the relationship did not end.  In June of 2014,

23   she actually went to family court and she sought an order of

24   protection preventing the defendant from having any contact

25   with her.  A family court judge in Yonkers City Court

1    ordered the defendant to stay away from her and also ordered

2    the defendant to stay away from her home.

3         You'll hear from Jennifer Solomon and you'll hear

4    from a clerk from Yonkers Family Court that the defendant

5    violated that order of protection.  In June of 2017,

6    Michelle Schauer, a judge who presides over Yonkers Family

7    Court, found the defendant guilty of violating that order of

8    protection.  He violated that order of protection four

9    separate ways.  You'll hear from the witnesses how he

10   violated the order of protection, but on that particular

11   day, the judge, once again, reinstituted an order of

12   protection which prevented the defendant from having any

13   contact with Jennifer Solomon and prevented the defendant

14   from going to her home in New Rochelle.

15        We're here today because the defendant violated

16   that order of protection from June 27th of 2017.  The

17   defendant was present in court when that order of protection

18   was issued.  It was read to him by the judge and it was

19   acknowledged by both parties.

20        On December 15th of 2018, the defendant violated

21   that order of protection by going to the home of Jennifer

22   Solomon.  He drove to her home and tried to have contact

23   with one of his children.  When that occurred on that

24   particular day, Jennifer Solomon called the police

25   department up in the City of New Rochelle and the police

```
 1   SUPERIOR COURT OF THE STATE OF NEW YORK
     COUNTY OF WESTCHESTER: CRIMINAL TERM: PART DZ
 2   ---------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK      :
 3
                -against-                     :Indict#6293M/2018
 4
     MARC FISHMAN                             :
 5
                                 Defendant    :
 6   ---------------------------------------x
     JURY SELECTION/TRIAL
 7
                                      January 24, 2020
 8
     B E F O R E:
 9       HONORABLE DAVID S. ZUCKERMAN,
               County Court Judge, and a jury
10
         (Appearances same as previously noted.)
11
                                  Nicole Ameneiros
12                                Senior Court Reporter
                     - - - - - - - - - - -
13              THE CLERK:  Calendar No. 1, continuation of a jury

14       trial, People of the State of New York versus Marc Fishman.

15       This is under 6293M of the year 2018.

16              Are the People ready?

17              MR. PARAB:  People ready.  Amit Parab for the

18       People.  Good morning, Judge.

19              THE COURT:  Good morning.

20              THE CLERK:  Defendant ready?

21              MR. GOUBEAUD:  Ready, your Honor.  Joe Goubeaud for

22       the defense.

23              THE COURT:  Good morning.

24              Good morning, Mr. Fishman.

25              THE DEFENDANT:  Good morning, your Honor.
```

1    trial is opening statements by the lawyers.  The law

2    requires the prosecutor to make an opening statement first.

3             Mr. Parab, whenever you're ready.  Sir.

4             MR. PARAB:  Thank you, your Honor.

5             May it please the Court, defense counsel and

6    members of the jury.  This is a pretty straightforward case.

7    It's not going to take much deliberations.  But what we have

8    to do and establish is that this defendant, Marc Fishman,

9    violated a duly served order of protection.  That's going to

10   be established through the testimony that you hear from four

11   separate witnesses.

12            It's going to be first from Jennifer Solomon who

13   was married to Marc Fishman.  They got married in 2001 and

14   they were married for approximately nine years.  They have

15   four children in common.  There's Joanna, Jonah and two

16   twins, Aidan and Skye.  But in 2010, the victim in this

17   case, Jennifer Solomon, decided to initiate a divorce

18   proceeding with this individual Marc Fishman.  She went to

19   court, she filed the paperwork, and two years later, in

20   August of 2012, the Court granted her request and she was

21   finally separated from this defendant.

22            But the relationship did not end.  In June of 2014,

23   she actually went to family court and she sought an order of

24   protection preventing the defendant from having any contact

25   with her.  A family court judge in Yonkers City Court

1   protection?

2        A    No.

3        Q    And I'm now going to direct your attention to June 27th

4   of 2017.  What, if anything, happened on that date?

5        A    So that date was a dispositional hearing and a fact

6   finding -- the family offense originating back from 2014 where

7   Judge Schauer gave me a permanent order of protection and also

8   decided that there would be permanent supervised visitation.

9        Q    Okay.  You indicated also that he violated the order of

10  protection from 2014.  Did the judge come to a ruling on how he

11  violated the order of protection?

12       A    Yes.

13       Q    So what were -- what were the rulings that took place

14  on that date?

15       A    Okay.  So Judge Schauer ruled that --

16            MR. GOUBEAUD:  Objection, your Honor.

17            THE COURT:  Overruled.  Please continue.

18       A    Okay.  She ruled --

19            THE COURT:  Excuse me.  I'm sorry to interrupt.

20            THE WITNESS:  Sorry.

21            THE COURT:  No, that's all right.

22            I'll see counsel at sidebar briefly.  Thank you.

23            (Sidebar held off the record.)

24            THE COURT:  Ms. Solomon, you may continue.  Thank

25       you.

- Cross - Solomon - Plaintiff                    84

1    2014, maybe it was modified or I don't -- I don't remember

2    exactly what changed in September, but the day I went in I was

3    not represented by an attorney and I just met with people in the

4    office there and they helped me complete the documents.  And I

5    know that --

6         Q    That's the July time you're talking about?

7         A    I'm talking about June.

8         Q    I'm sorry.  June --

9         A    I'm talking about 2014.

10        Q    Okay.

11        A    Okay?  When I went -- when I went in after the incident

12   I was not represented by an attorney and I filed a family court

13   petition.  Was it modified?  It was modified at some point.  And

14   at some point I was represented by Legal Services of the Hudson

15   Valley afterwards.

16        Q    Thank you.

17             From that point forward, June 2014, was there

18   visitation orders in place?

19        A    There were visit -- there were visitation orders in

20   place changing often, yes.

21        Q    At your request they were changed?

22        A    No, things happened.  There were offenses.  There were

23   violations.

24        Q    You filed other petitions is what you're saying?

25        A    That's not what I'm saying.  I'm saying that

1          MR. GOUBEAUD:  Objection, your Honor.

2          THE COURT:  Overruled.  You may answer that,

3     Officer.

4     A    It's the most stringent type of order that's placed.

5     So there's no contact by any means, by a third-party or anything

6     of that nature, so it can't be done by anybody else in between

7     or party to party.

8     Q    Okay.  Based on receiving that order of protection,

9     what did you do?

10    A    I reviewed it.  I looked at the stipulations that would

11    be included within it and started documenting the incident and

12    specifically what happened, what type and with what parties it

13    occurred with.

14    Q    And what happened next?

15    A    I was going to go to headquarters to follow-up with

16    this and contact the defendant at which time headquarters

17    notified me that Mr. Fishman was actually at headquarters

18    requesting to make a report.

19    Q    And did you go to headquarters?

20    A    Yes.

21    Q    And where is that located?

22    A    475 North Avenue.

23    Q    Is that in the City of New Rochelle?

24    A    Yes, sir.

25    Q    And when you got there who, if anyone, did you meet?

COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM
-----------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                                                Case No.: 06293M-2018

                                - against -

                                                                **AFFIRMATION OF**
MARC FISHMAN,                                                   **DONNA DRUMM**

                                Defendant.
-----------------------------------------------------------------------X

    DONNA DRUMM, ESQ., an attorney duly admitted to practice before the Courts of the

State of New York, affirms the truth of the following under the penalty of perjury pursuant to

CPLR 2106:

1.    I am Marc Fishman's ADA Advocate and I submit this affirmation in support of

the motion to set aside the verdict against Marc Fishman.

2.    I was present in court on June 27, 2017 with Mr. Fishman before the Honorable

Michelle Schauer.

3.    At the time the Judge announced her decision, Mr. Fishman was standing up

surrounded by several court officers.

4.    Based on Mr. Fishman's position in the court and the officers around him, it is

unlikely he was able to comprehend the Judge when she stated the order of protection on the record.

5.    I never observed the court give Mr. Fishman the order in writing.

6.    Mr. Fishman was then taken away in handcuffs.

Dated: Rye Brook, New York
       October 15, 2021

                        Donna Drumm, Esq.

COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM

-------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

Case No. 06293M-2015

- against -

**AFFIRMATION OF
DONNA DRUMM**

MARC FISHMAN,

Defendant

-------------------------------------X

DONNA DRUMM, ESQ., an attorney duly admitted to practice before the Courts of the

State of New York, affirms the truth of the following under the penalty of perjury pursuant to

CPLR 2106.

1.    I am Marc Fishman's ADA Advocate and I submit this affirmation in support of

the motion to set aside the verdict against Marc Fishman.

2.    I was present in court on June 27, 2017 with Mr. Fishman before the Honorable

Michelle Schauer.

3.    At the time the Judge announced her decision, Mr. Fishman was standing up

surrounded by several court officers.

4.    Based on Mr. Fishman's position in the court and the officers around him, it is

unlikely he was able to comprehend the Judge when she stated the order of protection on the record.

5.    I never observed the court give Mr. Fishman the order in writing.

6.    Mr. Fishman was then taken away in handcuffs.

Dated: Rye Brook, New York
October 15, 2021

Donna Drumm, Esq.

COUNTY COURT OF THE STATE OF NEW YORK
WESTCHESTER COUNTY: CRIMINAL TERM
-------------------------------------------------------------------X
 THE PEOPLE OF THE STATE OF NEW YORK,

                                       Case No.: 06293M-2018

            - against -

                                   <u>**AFFIDAVIT OF MARC FISHMAN**</u>

 MARC FISHMAN,

                      Defendants.
-------------------------------------------------------------------X
STATE OF NEW YORK    )
                      s.s.    )
COUNTY OF WESTCHESTER    )

       I, **Marc Fishman**, being duly sworn, depose and say that:

       1.      I am the **defendant** in the above referenced proceeding and submit this Affidavit in support of the motion to set aside the guilty verdict and conviction against me.

       2.      On June 27, 2017 I was unable to hear Judge Michelle Schauer when she orally stated the terms of the order of protection on the record.

       3.      While the Judge was speaking, I was already standing up surrounded by five court officers with their loud walkie talkies going on and off.

       4.      I knew I was about to be arrested and sent to jail and was terrified. I could not comprehend what was ongoing.

       5.      After I was taken away in handcuffs I was never provided with a written copy of the order of protection.

       6.      I never received or saw any written order of protection until during the criminal trial.

       7.      At the time of the alleged events in this matter I knew that I was allowed to have supervised visitation and that such visitation would not result in a violation of any court orders.

8.    On the day of the alleged incident, I was scheduled for visitation and Jennifer Solomon did not cancel the visitation. The general practice was for her to send an email to advise of a cancelation, but she never did for that day.

9.    On that day the supervisor called Jennifer Solomon several times on the phone, but she did not respond.

10.    As such, the supervisor and my aide decided to drive towards Jennifer's house. I was also a passenger in the aide's vehicle.

11.    As with all other visits, we stopped the car at least 150 feet away from Jennifer's house to let the supervisor out and commence the visit.

12.    After we dropped the supervisor off 150 feet away, my aide drove the vehicle forward as Jennifer resided on a one way street, in order to go around the block and wait 200 feet away for the supervisor to come back with my son.

13.    As we drove past Jennifer's house I was always a passenger in the vehicle, never exited and the closet we got to her house was 30 feet from the property line while in the vehicle.

14.    I saw my son Jonah in the driveway with his hockey stick. He was too far away to see or hear me.

15.    The supervisor came back and advised that Jennifer wished to cancel the visit and would not allow me to have the court ordered visitation.

16.    As such, I decided to go to the police station to complain as my right to visitation was violated.

17.    On that day I had no intention to and never violated any stay away order. I never came closer than 150 feet to Jennifer's house and remained mostly 200 feet away. I never entered her property line and never interacted with Jennifer or any of my children that day.

18.     I know that during the trial the evidence showed that I never entered her property line and that the order of protection did not have a specific distance as to how far I should be. But, I do know I was allowed to have visitation and that doing so would not be a violation of any order.

19.     My attorney has also told me that the Webcrims information for this case on ecourts states I was convicted of Attempted Intimidating a Victim or Witness in the Third Degree under penal laws 110 and 215.15. This is wrong and incorrect as this was never charged and I never did anything that could even come close to such violations.

20.     Additionally, there were more than a dozen pick ups and drop offs for the supervised visitation with myself in the vehicle and no one ever made an issue of it or accused me of violating any orders of protection. On each of those other visits, all of which occurred after June 27, 2017 I was never alleged to violate any orders. During all of these subsequent visits and the visit of June 27, 2017 I never violated the stay away order.

21.     This is because I have a specific carve out for visitation.

22.     In addition to the need for a new trial and outright dismissal, I also alternatively respectfully request that a hearing be held as to why any evidence as to the subsequent identical visits without any violations was not disclosed by the People or introduced as exculpatory evidence.

23.     As such, I request this court dismiss this case against me or order a new trial.

**Marc Fishman**

Sworn to before me on

this 15th Day of October, 2021

Notary Public



ROBERT NEWMAN
Notary Public, State of New York
No. 01NE5046573
Qualified in Queens County
Comm. Expires 7/17/2023

**WESTCHESTER COUNTY**
**COUNTY COURT OF THE STATE OF NEW YORK**
**HON. JUDGE David Zuckerman**
-------------------------------------------------------------------X

In the Matter of Proceedings under

People State of New York,

      Against

Marc Fishman

                         Case No.: 6293m/2018

                **AFFIDAVIT OF**
                     ISABEL BOLIVAR, American

with Disabilities court appointed effective communications and mobility
Aide for Disabled Marc Fishman
-------------------------------------------------------------------X

STATE OF NEW YORK    )
                        ) Ss.:
COUNTY OF BRONX     )

    I, the undersigned Isabel Bolivar, being duly sworn, do hereby depose

and state as follows ,under penalty of perjury:

    1.    When I testified January 27, 2020, Mr. Fishman was aware of the

Order of Protection in effect, I was referring to the ~~March 20~~ 2018 Order. See attached exhibit "A" IB

    2.    I was court appointed as Mr. Fishman's Americans with

Disabilities Act (ADA) communication and mobility Aide by both Judge

Michelle Schauer and visitation supervisor Ann Elliot as well as Nicole Feit,

1

Attorney for Ms. Jennifer Solomon and Kathy Hannon, attorney for the four children.

3.  My functions as the ADA Aide included, helping Mr. FISHMAN COMMUNICATE EFFECTIVELY, driving visitation supervisor Ann Elliot and Mr. Fishman and the children to and from court ordered visits and places during visits every other Saturday including the pre-confirmed, pre-scheduled, and pre-paid December 15, 2018 court ordered, regularly scheduled visit with Mr. Fishman and court visitation supervisor Ann Elliot in my car.

4.  There were numerous times during 2018 that I dropped off and/or picked up kids in New Rochelle near the childrens' home or school with Ms. Solomon present.

5.  In addition to assisting Mr. Fishman with his mobility, hearing and cognitive disabilities, I assisted Mr. Fishman with his severely disabled son, Jonah Fishman. Jonah Fishman is recognized, regarded and qualified disabled with disabilities that include autism, cancer, ADD, and Langerhans Cell Histiocytosis X.

6.  The ~~May~~ March 2[9] 2018 Order ~~of Appointment~~ appointing me [see exhbit 'A'] specifically stated that Mr. Fishman could not drive his children during court supervised visits and that he needed an aide due to his numerous disabilities. These

2

disabilities of Mr. Fishman include but are not limited to severe obstructive

sleep apnea, hypertension, peripheral neuropathy, tinnitus, post concussion

syndrome, occipital neuralgia, tmj, Traumatic brain injury, cubital tunnel

syndrome and neck injury.

     7.     I never received a written copy of the June 27, 2017 alleged

Order of Protection. I was never aware of the June 27, 2017 written details

on the Order of Protection including " a complete stay away order" in favor

of Ms. Solomon.

     8.     Neither Ann Elliot, court administration or Mr. Fishman ever

gave me a copy of the June 27, 2017 Order of Protection or discussed the

terms with me. As the court appointed communications and mobility disability

aide, it is odd that a court that appointed me, would not give me a written copy

of any order in effect to explain to Mr. Fishman. If this June 27, 2017 Order

was a clear , legal mandate then every subsequent supervised visitation where

Mr. Fishman and Ann Elliot and myself met (over 20 visits with over 160

hours of visitation time) with Ms. Solomon would have been a violation. No

one ever complained to me that any other visit was a crime or violation. Ms.

Solomon in fact stayed through multiple visits with the kids, myself and Ann

including at the Mamaroneck Saturday ice hockey supervised visits. The

December 15, 2018 visit was the regularly scheduled, calendared, bi- monthly

3

visit. I never received any notification from Ann Elliot that Decembet 15, 2018 visit was cancelled. I never received any message from Ann Elliot that the visit was rescheduled for December 22, 2018. I never received a call from.the kids attorney, court administration or Jennifer's attorney that the 12/15/18 visit was cancelled. The visitation order signed by Judge Schauer provided clearly that visits cancelled, would be  made up the following Saturday. There was no visit rescheduled to 12/22/18 by anyone that notified me,, so it id clear 12/15/18 was the visit time and date. I was not appointed in June 2017 and was not present in court June 27, 2017.

9.     As one of Mr. Fishman's communication ADA Aides for over four years, I do not believe he could register, retain, process or remember an oral Order of Protection due to his cognitive and hearing disabilities spoken in court without a copy given in large print and reviewed with him extensively. I met with Mr. Fishman and his speech therapists including Joan Ryan and Premium therapy numerous times to see how Mr. Fishman was doing with his memory, recall, and hearing difficulties

10.     I have attended over 40 cognitive and speech rehabilitative sessions with Mr. Fishman since 2016 including those with Dr Brown, Dr Flaum, and Dr Maidenberg.  During these post concussion treatment sessions in 2017 through 2020, Mr. Fishman had problems remembering my name.  I

4

have attached the April 2017 report from Dr. Brown detailing that Mr. Fishman's memory as a 45 year old scored between 6 and 8 percent of people his age. Those 45 year olds without his disabilities of traumatic brain injury, occipital neuralgia, post concussion syndrome, tinnitus, speech impairment, memory problems score higher on memory, recall and registering over 92 percent of the time than Mr. Fishman.

11.     It's clear to me as his long-term communication and mobility disability aide, that Mr. Fishman could not remember any spoken word from June 27, 2017. ~~(illegible struck-through text)~~ *I.B*

12.     It is also evident that the oral Order of Protection dated June 27, 2017 is unclear as the written, un-served Order of Protection did not have any provision for regular supervised visitation, which the court regularly permitted from 2017 to 2019.

13.     I have read the decision of the Court of Appeals, People vs. McGowan, 1995. I have attached this decision to my affidavit. It is evident that any oral Order of Protection is invalid if the Order does not clearly state what behavior including visitation is permitted or prohibited.

14.     Mr. Fishman should not be punished for not remembering spoken words without a large print written copy to understand and be repeatedly explained to him with his numerous disabilities.

Dated:      Bronx, New York
               May 16th, 2021

_____

Isabel Bolivar

Sworn to before me on the 16th day of May, 20 24.

_____

Notary

**STELLA BORUKHOVA**
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BO6354071
Qualified in Queens County
Commission Expires 02/06/2025

6