UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

MARC H. FISHMAN,

                           Plaintiff.

                - against -

CITY OF NEW ROCHELLE, POLICE OFFICER
LANE SCHLESINGER SHIELD # 1058, JOSEPH
F. SCHALLER, ROBERT GAZZOLA, IN HIS
OFFICIAL CAPACITY AS POLICE
COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT,
SERGEANT MYRON JOSEPH SHIELD # 18, &
COUNTY OF WESTCHESTER,

                        Defendants.

------------------------------------------------------------------------X

**AMENDED COMPLAINT**

Case No.: 19-cv-265-NSR

**JURY TRIAL DEMANDED**

Plaintiff MARC H. FISHMAN, by his attorneys, Law Office of Caner Demirayak, Esq.,

P.C., complaining of the defendants, respectfully alleges as follows:

**Preliminary Statement**

1.      Plaintiff brings this civil rights action seeking relief for the violation of plaintiff's

rights secured by Title II of the Americans with Disabilities Act 42 USC 12101, *et seq*., (hereinafter

"ADA"), Rehabilitation Act of 1974 29 USC 701 & 794 (hereinafter "Rehab Act"), 42 USC 1983,

1985, and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution,

and for violations of plaintiff's federally protected procedural and substantive Due Process rights.

Plaintiff's claims arise from an incident that arose on December 15, 2018, and which have

continued to the present. During the incident, the defendants, members of the City of New Rochelle

Police Department subjected plaintiff to, among other things, violation of his rights under the ADA

and Rehab Act by failing to accommodate his cognitive and hearing disabilities during police

encounters and interrogations, deliberate indifference, unlawful imprisonment, false arrest, failure

to protect, conspiracy, and violation of the right to a fair trial by the use of false or misleading

evidence. The incident of December 15, 2018 has resulted in lengthy and abusive criminal proceedings which led to a jury verdict that the County of Westchester has conceded was defective as a matter of law. Although the proceedings have not formally been disposed of in plaintiff's favor, the legal equivalent of such defective verdict is deemed an acquittal under New York caselaw and statutory law, for the purposes of a malicious prosecution case. In any event, the defendants lacked any reasonable or probable cause to even initiate any police interactions with the plaintiff and the defendants refused to accept the clear absence of probable cause as demonstrated under the facts in front of them. Plaintiff seeks compensatory and punitive damages from the individual defendants, compensatory damages from the municipal, governmental and agency defendants, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

**<u>Jurisdiction</u>**

2.      This action is brought pursuant to 42 U.S.C 12101, 29 USC 701 & 794, 42 U.S.C. 1983, 1985 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.      The City of New Rochelle receives federal funding and has thus waived any immunity under the Eleventh Amendment pursuant to the Rehab Act. The City's budgetary documents, which are available at: https://www.newrochelleny.com/Search?searchPhrase=budget (last visited March 7, 2022) demonstrate the receipt of federal funding from prior to December 15, 2018, on December 15, 2018 and to the present time.

4.      The County of Westchester receives federal funding and has thus waived any immunity under the Eleventh Amendment pursuant to the Rehab Act. The County's budgetary documents, which are available at https://www.westchestergov.com/2018 (last visited March 7,

2022) demonstrate the receipt of federal funding from prior to December 15, 2018, on December 15, 2018 and to the present time.

5.     As such jurisdiction of this Court is founded upon 28 U.S.C. 1331, 1343 and 1367.

## Venue

6.     Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C. 1391(b), as such district in the district in which the claims herein arose.

## Parties

7.     Plaintiff, Marc H. Fishman is a resident of the State of New York, County of Westchester.

8.     Plaintiff is a person with a qualified disability in accordance with the ADA and Rehab Act. Specifically, plaintiff suffers from cognitive and hearing disabilities which substantially limit his hearing (tinnitus), memory, verbal functioning, verbal learning, and which cause him difficulties in processing information presented to him verbally. On June 21, 2017 during court proceedings the family court judge stated "I'm accepting your statement that he is a disabled individual okay? So I don't need to have his neuropsych report. If he wants to ger it, I've already accepted that he's disabled." In light of such disabilities the plaintiff requested numerous reasonable accommodations, which were not provided by the family court judge despite accepting his disability. As a result of such denials, he was never able to comprehend or understand the order of protection the judge issued on June 27, 2017 *orally on the record* and not in written form. As established and conceded by the defendants, plaintiff was *never served* with a written order of protection. Such failures inevitably led to the rendering of a legally defective verdict on the criminal charges arising out of the events of December 15, 2018. However, it is clear by the facts and circumstances that plaintiff was actually innocent and there was no probable cause to believe he committed any crimes on December 15, 2018.

3

9.     In addition to the family court's acceptance of plaintiff's disability, in a medical note dated April 18, 2018 plaintiff was noted to need someone to assist him with note taking during court proceedings. In a medical note dated March 20, 2019 the plaintiff was noted to have demonstrated cognitive deficits in areas of verbal learning and memory trials, initial acquisition of non-verbal learning and memory, working memory and verbal functioning (confrontation naming). As such, in a March 28, 2018 note the doctor stated plaintiff required the assistance of a disability aide during visits with his children.

10.     As a result of these medical notes and additional notes dated as recent as May 2021 the United States Court of Appeals for the Second Circuit granted plaintiff's motion for reasonable accommodations to accommodate his communications disability during oral argument in an Order dated July 16, 2021, and available at the Second Circuit's ECF docket at entry # 133.

11.     Defendant, the City of New Rochelle (hereinafter "the City") is a city and municipality created and existing pursuant to the laws of the State of New York. The City maintains a police department known as the City of New Rochelle Police Department (hereinafter the "NRPD") and employs all such members, officers, and agents of such police department. This defendant is responsible for the actions of its officers who violated plaintiff's rights as described herein.

12.     Defendant, Police Officer Lane Schlesinger, Shield 1058, (hereinafter "Schlesinger") was and is a police officer employed by the NRPD and is an employee of the City. Schlesinger violated plaintiff's rights as described herein and all of his actions or omissions occurred under and pursuant to the color of law. This defendant blatantly refused to investigate the lack of probable cause and illegally placed plaintiff in a custodial interrogation, failed to advise him of his rights and failed to accommodate his obvious disabilities during questioning.

13.    Defendant, Joseph F. Schaller as the chief/commissioner of police ordered the unlawful arrest of plaintiff on December 15, 2018, and violated plaintiff's rights and failed to intervene in the unlawful conduct of his subordinates. Schaller spoke with the district attorney/assigned district attorney on December 15, 2018 to effectuate the illegal arrest.

14.    Defendant, Robert Gazolla, in his official capacity as the police commissioner of the NRPD was sworn in as the police commissioner on July 1, 2021. This defendant is responsible for managing, supervising, training and controlling all officers and employees of NRPD. This defendant is sued in his official capacity pursuant to *Ex Parte Young*, to avoid any claims that this matter is barred by the Eleventh Amendment. At the time of the incident and up to July 1, 2021, Joseph F. Schaller was the police commissioner.

15.    Sergeant Myron Joseph, Shield 18, was and is a police sergeant employed by the NRPD and is an employee of the City. Joseph violated plaintiff's rights as described herein and all of his actions or omissions occurred under and pursuant to the color of law.

16.    Defendant, County of Westchester, is and was a county created and existing pursuant to the laws of the State of New York. This defendant is responsible for the actions of its prosecutors and other employees who violated plaintiff's rights as described herein. Specifically, Assistant District Attorney Amit Parab, knowing that Schlesinger and other witnesses were using false or misleading evidence continued the prosecution and made false and misleading statements to the jury. Parab should have known that the plaintiff's conduct was completely innocent and that he was never served with an order of protection which would render him liable for any charges. Additionally, Parab caused the criminal court to submit an illegal jury charge and verdict and advocated for such, which the current prosecutor has now conceded resulted in a legally defective verdict.

17.     Defendant County of Westchester refused to provide discovery documents in the criminal action in an accessible format to plaintiff, including in large print. The discovery documents were very blurry and difficult for anyone, let alone a person with a cognitive disability to understand.

18.     At all times hereinafter mentioned the defendants, either personally or through their employees were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New Rochelle and County of Westchester.

19.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City and County.

### Statement of Facts

20.     For a period of time the plaintiff advised his family court judge that he suffered from several cognitive and hearing disabilities that substantially affected his ability to comprehend, understand and hear the proceedings. On November 2, 2015, the family court judge rejected plaintiff's disabilities by stating on the record that: "[Y]ou're saying I'm discriminating against you because you're disabled, and what I'm saying is that as you sit here right now, there is no apparent disability. You're not in a wheelchair, you didn't come in with a cane, you don't have crutches, you don't have a brace on you. There's no physical indication that you have any disability."

21.     Nearly two years later the same family court judge finally accepted plaintiff's disabilities but still refused to provide him with the necessary reasonable accommodations. On June 21, 2017, the family court judge stated "I'm accepting your statement that he is a disabled

individual okay? So I don't need to have his neuropsych report. If he wants to get it, I've already accepted that he's disabled."

22.    Plaintiff had requested simple and easy accommodations for his communications disabilities to ensure he had effective access to proceedings in the form of a note taker, large print documents and orders and the use of a disability aide/advocate. The plaintiff had also requested a real time computer accessed transcription service, which is similar to closed captioning during proceedings. Shockingly, the family court judge still refused to accommodate the disabilities she now accepted.

23.    Six days later on June 27, 2017 the family court judge issued an oral order of protection against the plaintiff. The oral order specifically allowed plaintiff to have supervised visitation, which would inevitably require him to come close to his ex-wife and her property. No specific distances or other specific information was included in the order of protection. During the proceedings the family court judge did not allow a note taker and did not provide a transcriber. Additionally, the plaintiff was neither provided with nor served with an order of protection in writing let alone with large print.

24.    While the family court judge read out the oral order of protection to plaintiff, he was surrounded by five court officers as he was about to be arrested. The five officers' walkie talkies were loud and kept going off while the judge read the order to plaintiff. Plaintiff's disability aide, Donna Drumm, Esq., who was present during the June 27, 2017, proceeding stated in an affirmation submitted to the criminal court that it was "Unlikely he was able to comprehend the order of protection," and that he was not given a copy of the order of protection in writing.

25.    The usual practice for canceling the court ordered supervised visitation would be for plaintiff's ex-wife to e-mail the supervisor the day before. However, no such e-mail was sent

to the supervisor on December 14, 2018. In fact, plaintiff's ex-wife and supervisor worked out a visit for December 15, 2018.

26.     The supervisor Ann Elliot confirmed in her criminal trial testimony that the visit was not canceled and there was no email sent to cancel the visit on December 14, 2018:

> A:     Now is it your testimony that you had worked out on December 15th a partial visit…?
>
> Q:     Correct, yes.
>
> Q:     Now, if I told you Ms. Solomon testified that the entire visit was cancelled that day would she be wrong?
>
> A:     Correct.

27.     Thus, on December 15, 2018, the plaintiff, like any other supervised visitation headed towards his ex-wife's house in a vehicle. The vehicle was driven by his disability aide and occupied by the supervisor.

28.     The disability aide stopped the vehicle 150 feet from the ex-wife's house and the supervisor walked to the house like any other visitation.

29.     After dropping the supervisor off the aide and plaintiff continued to drive past the ex-wife's house as she lived on a one-way street. They drove by at a normal speed and never came closer than 30 feet to the property line.

30.     The disability aide eventually stopped the vehicle, with plaintiff inside, 200 feet away from the ex-wife's house.

31.     The supervisor then came back to the vehicle and advised plaintiff that his ex-wife had canceled the visitation.

32.     Since plaintiff had been denied his court ordered visitation, he asked his disability aide to drive him to the police station to make a report of his ex-wife's refusal to allow visitation.

33.     Before the plaintiff could arrive at the police station, the ex-wife called the police and claimed plaintiff violated the order of protection even though he never set foot on his ex-wife's property and neither interacted with nor communicated with her.

34.     Schlesinger then drove to the ex-wife's house to investigate her claims. During his conversation with the ex-wife, he received a phone call from the precinct advising that plaintiff was already there attempting to file a report about the failure to allow visitation.

35.     As such Schlesinger asked the station to keep plaintiff there as he traveled back to the station to question him. By this point the plaintiff was not free to leave and Schlesinger intended to question plaintiff with respect to the possible charges of criminal contempt in the second degree in an attempt to elicit incriminating responses.

36.     Schlesinger then arrived at the station to question plaintiff, the supervisor and his disability aide.

37.     Plaintiff advised Schlesinger that he suffered from a cognitive and hearing communications disability and asked for a reasonable accommodation to ensure he had effective and meaningful communications during the interrogation/questioning. Plaintiff asked for a cognitive interpreter or a specialist and a note taker, large print documents and for his disability aide to be present during questioning.

38.     Plaintiff also showed Schlesinger his traumatic brain injury ("TBI") and implant cards from the Brain Injury Association that confirmed his need for assistance to understand what was going on. The card states on the front "I have a brain injury which may affect my behavior and ability to communicate." The back of the card sets forth symptoms of a brain injury including

"Difficulty with attention, concentration, memory or understanding, confusion, disorientation, dizziness, difficulty processing and slow response time…"

39.    All such requests were refused. However, Schlesinger admitted during his criminal trial testimony that such requests were made, and that plaintiff's health appeared to be poor and that he clearly had health issues.

40.    Schlesinger had access to the 28-page custody and visitation order/agreement during questioning and kept going back and forth with Schaller on whether to actually charge plaintiff with criminal contempt in the second degree. Schlesinger asked plaintiff if December 15, 2018 was a visitation day which he confirmed was. Schlesinger also asked the supervisor that the last visit was December 1, 2018 and that each visit was every two weeks. Without the accommodations plaintiff could not explain the custody and visitation allowances to show his actual innocence.

41.    Plaintiff advised Schlesinger that he needed his disability aide's assistance in discussing and explaining the 28-page agreement and a note taker, which was denied.

42.    Schlesinger stated the agreement was the longest he had ever seen and asked the supervisor to authenticate the document, which she did.

43.    In fact, plaintiff advised Schlesinger that he had in the vehicle documents which would further support his claims of disability. Plaintiff's request to go to the car to obtain such document was denied. Plaintiff's request to have his disability aide or supervisor to obtain the documents was denied.

44.    Had Schlesinger allowed plaintiff or his companions to go to the car and obtain documents, he would have been shown a March 28, 2018 Order specifically authorizing and appointing the disability aide to serve as an aide during supervised visitations. The Order would

have also made clear that the ex-wife was required to consent to the presence of the disability aide, which she did agree to. The March 28, 2018 order also described the aide as an ADA aide.

45.     The questioning and arrest occurred made during plaintiff's court ordered visitation time of 10 am to 5 pm and violated his rights.

46.     Schlesinger advised plaintiff repeatedly that Schaller was speaking with the district attorney to determine if he should be charged with criminal contempt as they could not make a decision based on what was in front of them.

47.     Plaintiff was caused to be held in a detention cell for over three hours.

48.     After Schlesinger and Schaller decided to charge plaintiff, Schlesinger advised plaintiff he would be kept incarcerated unless he posted $1,500 cash bail. In response plaintiff stated he did not have that much money for bail.

49.     Schlesinger then advised Schaller would reduce the cash bail to $300 as they did not want to have to take plaintiff with all of his poor health issues to the hospital. Schlesinger stated we would never want to keep you overnight because then we have to bring you to the hospital which we do not want to do.

50.     Schlesinger and Schaller then told plaintiff's disability aide to leave plaintiff at the station and to drive the supervisor home. They stated that the disability aide could just come back and pick plaintiff up.

51.     Schlesinger and Schaller then told plaintiff that he will not get a police or complaint report for his charge against his ex-wife for not allowing visitation as it was not their problem.

52.     Schlesinger also falsely testified in his criminal trial testimony that the only documents he reviewed to determine if there was a violation of the June 27, 2017 order of protection was whatever the teletype system had provided to him. Schlesinger testified he neither

saw nor asked for a copy of the specific custody and visitation agreements for which the order of

protection allowed, which was false. Plaintiff attempted to explain the documents to him but could

not without the proper reasonable accommodations.

53.    A brief review of the teletype that Schlesinger had in front of him included a

notation that "Note: this order has not been served."

54.    The teletype in front of Schlesinger also confirmed: "Except for supervised access,

provided by court order entered June 13, 2018." But this language did not include any further detail

and does not describe that the June 27, 2017 oral order also allowed for the supervised visitation.

55.    Thus, Schlesinger was confronted with a situation in which probable cause to

believe plaintiff had committed criminal contempt in the second degree was lacking as the written

order on teletype clearly allowed for supervised access by court order, the plaintiff had just come

to the station *with the supervisor* and court appointed disability ADA aide to report the ex-wife's

refusal to allow for visitation, and both the plaintiff and the ex-wife advised the officer that

supervised visitation was allowed pursuant to the order of protection.

56.    Schlesinger refused to further investigate the scope of the carve out for visitation

and decided to arrest and commence criminal proceedings against plaintiff in the absence of

probable cause and in the face of actual innocence. Schlesinger also refused to accommodate

plaintiff's disabilities while at the station and obtained responses and statements illegally. Had

Schlesinger accommodated plaintiff, he would have explained the 28-page custody and visitation

order which further demonstrated his actual innocence and lack of any probable cause.

57.    It is evident that Schlesinger did not have any patience for plaintiff's disabilities

and had he provided basic reasonable accommodations, he would have understood from the

plaintiff that the events of December 15, 2018 were sanctioned by the court and did not constitute

any criminal contempt. However, plaintiff was denied effective communications accommodations to allow him to explain himself to the police or to allow him to understand what specifically was going on.

58.    For instance, although the defendants have produced a supposed "Miranda" card for plaintiff, it is not signed by plaintiff nor a witnessing officer. Plaintiff maintains the Miranda warnings were never read to him and even if they were he would not comprehend or understand same without basic accommodations for his communications disabilities, which were denied.

59.    This was not enough for Schlesinger as he misled the criminal jury and provided them with false evidence by testifying that the June 27, 2017 order of protection was a "full stay away order," and was the "most stringent," which allowed for no communications or contact whatsoever.

60.    Schlesinger knew this was false as the teletype in front of him clearly advised that the order of protection was subject to court ordered supervised visitation. Schlesinger's testimony made it appear that plaintiff's actions in attempting to have legally court sanctioned visitation was illegal when it clearly was not. Schlesinger then admitted he never saw, investigated or understood the scope of allowance for visitation.

61.    The County prosecutor then made maters worse by misleading the jury and advising during opening statements and summation that plaintiff was subject to a full stay away order and was not allowed for visitation.

62.    The County prosecutor lied to the jury and stated plaintiff was actually served with the order of protection!

63.    Additionally, court clerk Edward Edmead's testimony at the criminal trial portrayed the order of protection as not allowing for visitation nor any communication with

plaintiff's children. The carve out for supervised visitation was consciously omitted from Edmead's testimony. But Edmead did not stop there, he also acknowledged that although he checked off a box stating plaintiff was served with the order in court that he never observed that it was served and just assumed it was. However, it is a fact that plaintiff was never served with a written copy of that order, let alone in an accessible format for his disabilities.

64.    After both sides rested the criminal court judge expressed doubt that the prosecution had proven that plaintiff actually committed criminal contempt in the second degree, predominantly because he never entered the ex-wife's property line and did not communicate with her. As such the criminal court judge asked if the prosecution would consider adding a charge of attempted criminal contempt in the second degree, which the prosecution requested be added.

65.    Over the defense's objection the jury was then provided with jury charges that characterized both completed criminal contempt and attempted criminal contempt as separate charges.

66.    The criminal court judge did not advise the jury to consider the charges in the alternative, as it was legally mandated to do so.

67.    The jury then came back with a verdict of guilty as to both attempted and completed criminal contempt in the second degree, which was legally defective as a matter of law.

68.    The criminal court judge was obligated to record the defective verdict as an acquittal or order a new trial, but the criminal court judge did neither.

69.    Immediately after the verdict the criminal court judge issued a full order of protection disallowing any and all contact or visitation with plaintiff's children. This order was without jurisdiction as none of the children were witnesses in the case.

70.     In August 2020 the prosecution admitted that the order of protection was never served on plaintiff and that the police knew this before the arrest but that the charges were still somehow valid.

71.     In November 2021 the prosecution finally conceded that the jury's verdict was defective and that the charge of attempted criminal contempt must be dismissed.

72.     Although the plaintiff had substantial requests for reasonable accommodations and requested to appear remotely, the criminal court judge issued a bench warrant for plaintiff's failure to appear for sentencing on January 9, 2022, nearly two years after the jury's verdict of January 2020.

73.     All of the above events and violations of plaintiff's rights have caused plaintiff severe harm, mental anguish, anxiety and post-traumatic stress disorder.

## AS AND FOR A FIRST CAUSE OF ACTION
### Failure to Accommodate and Intentional Discrimination in Violation of the ADA

74.     Plaintiff repeats and realleges those allegations of the Amended Complaint marked and designated herein as paragraphs "1" through "73," with the same force and effect as if herein set forth at length.

75.     Pursuant to 42 U.S.C. 12132, "[N]o…individual…shall, by reason of such disability be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

76.     It is deemed discriminatory to afford an individual on the basis of disability with the opportunity to participate in or benefit from the aid, benefit, or service (1) not equal to that afforded to others, (2) not as effective in affording equal opportunity to obtain the same result, benefit of achievement, or (3) different or separate from that provided to others as per 28 CFR 35.130(a) and (b).

77.    "An arrest or seizure of an individual, including post arrest transportation and investigation, is a service activity or benefit of a police department and is thus covered under the ADA."

78.    As set forth herein, the defendants failed to reasonably accommodate plaintiff's disability during its investigation of the alleged criminal charges and arrest, causing him to suffer greater injury or indignity than other arrestees.

79.    The defendants' failure to accommodate plaintiff's communications disabilities denied him meaningful access to the activity, service or benefit of the police department, i.e., the arrest, questioning, seizure, transportation and interrogation of plaintiff.

80.    The defendants were deliberately indifferent to plaintiff's need to be accommodated as they knew or should have known that plaintiff would be unable to effectively participate and communicate in the police activity without such accommodations but nevertheless refused to provide the necessary accommodations, resulting in unnecessary harm.

81.    Specifically, plaintiff advised the defendants he was disabled and required an accommodation and Schlesinger testified at his criminal trial that it was clear plaintiff was in poor health with health issues.

82.    Plaintiff advised the defendants that his disability would make it difficult for him to access the benefits and program of police activity that is otherwise available to persons without disabilities in the absence of a basic reasonable accommodation.

83.    The failure to accommodate resulted in plaintiff being arrested and charged for crimes he was actually innocent of and for which the police lacked probable cause. But for the failure to accommodate plaintiff's disabilities, he would have been able to explain to the defendants that the 28-page custody and visitation order made his conduct on December 15, 2018

16

completely legal. This has now resulted in four years of criminal proceedings against plaintiff and a jury trial which resulted in a legally defective verdict as conceded by the County prosecution office. The plaintiff has been subjected to an illegal order of protection against all of his children since January 2020 and is now subject to a bench warrant for sentencing as the criminal court judge refused to accommodate his request for a virtual appearance even after having surgery. Strangely, the criminal court judge also advised he would provide a computer accessed real time transcription stenographer during sentencing, but still refused to accommodate plaintiff's disabilities, like the defendants here.

84.    The harms suffered by plaintiff as a result of Schlesinger's and Schaller's refusal to accommodate plaintiff's disabilities are extensive and could have been avoided.

85.    The defendants intentionally discriminated against plaintiff by refusing to provide reasonable accommodations for his disabilities despite a valid request for same and Schlesinger's own personal knowledge of plaintiff's obvious poor health and health concerns, including refusing to even accommodate him in transporting him post arrest to the hospital.

86.    The County defendants failed to accommodate plaintiff's request to provide discovery in the criminal action in an accessible format.

87.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Failure to Accommodate and Intentional Discrimination in Violation of the Rehab Act

88.    Plaintiff repeats and realleges those allegations of the Amended Complaint marked and designated herein as paragraphs "1" through "87," with the same force and effect as if herein set forth at length.

89.    Pursuant to 29 U.S.C. 794, "No otherwise qualified individual with a disability…shall solely by reason of…his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

90.    It is deemed discriminatory to afford an individual on the basis of handicap with the opportunity to participate in or benefit from the aid, benefit, or service (1) not equal to that afforded to others, (2) not as effective in affording equal opportunity to obtain the same result, benefit of achievement, or (3) different or separate from that provided to others as per 42 CFR 42.503.

91.    The governmental defendants receive federal funding but have failed to ensure their police programs, activities and services are in compliance with the mandates of the RA and implementing regulations.

92.    As the ADA and Rehab Act impose identical requirements and are analyzed co-extensively, the plaintiff hereby adopts and incorporates the allegations contained in paragraphs 77 to 86 herein as if set forth separately for the claim of violation of the Rehab Act.

93.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## False Arrest/Unlawful Imprisonment under 42 USC 1983

94.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 93 with the same force and effect as if fully set forth herein.

95.     Defendants arrested and/or created a custodial situation of plaintiff MARC H. FISHMAN without probable cause, causing him to be detained against his will for an extended period of time with no basis in law for such arrest, custody or detainment.

96.     Defendants had proof that plaintiff was actually innocent and that arguable probable cause was lacking as, among other reasons, the order of protection he was accused of violating allowed for the conduct he engaged in (visitation), plaintiff never interacted or communicated with his ex-wife and also never set foot on her property line, and the order of protection was never served in written form on plaintiff, let alone in an accessible format.

97.     Defendants caused plaintiff MARC H. FISHMAN to be falsely arrested and unlawfully detained.

98.     As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## Violation of Right to Fair Trial under 42 USC 1983

99.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 98 with the same force and effect as if fully set forth herein.

100.    Defendants created false evidence against plaintiff MARC H. FISHMAN and made it appear to the criminal jury that the order of protection was a "full stay away order," and that plaintiff's attempts at visitation on December 15, 2018 was unlawful, which was blatantly false.

101.    Defendants utilized this false evidence against plaintiff MARC H. FISHMAN in legal proceedings.

102.    Defendants testified falsely at trial and/or consciously omitted certain facts personally known to them to deny plaintiff the right to a fair trial.

103.    The County prosecutor lied to the jury and advised them plaintiff was served with an order of protection and that it was a full stay away order, and knew this was not true.

104.    As a result of defendants' creation and use of false evidence, plaintiff MARC H. FISHMAN suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

105.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Malicious Prosecution under 42 USC 1983**

106.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 105 with the same force and effect as if fully set forth herein.

107.    Defendants initiated, commenced and continued malicious prosecutions against plaintiff MARC H. FISHMAN.

108.    Defendants caused plaintiff MARC H. FISHMAN to be prosecuted without any probable cause and for innocent conduct until the charges were deemed an acquittal by way of the

County prosecutor's concession in November 2021 that the jury's verdict was legally defective, which New York State law requires to be recorded as an acquittal or the judge would have to order a new trial. Since the jury was discharged and the judge failed to order a new trial, the plaintiff is entitled to an order of acquittal, which the criminal court judge has refused to order at this time.

109.    Plaintiff requests that this claim for malicious prosecution be denied without prejudice to refile upon a formal order or decision dismissing the now conceded legally defective verdict, should this court feel that this situation is not tantamount to the charges being dismissing in plaintiff's favor as of this date.

110.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Failure to Intervene under 42 USC 1983**

111.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 110 with the same force and effect as if fully set forth herein.

112.    Defendants had an affirmative duty to intervene on behalf of plaintiff MARC H. FISHMAN, whose constitutional rights were being violated in their presence by other officers.

113.    The defendants failed to intervene to prevent the unlawful conduct described herein.

114.    As a result of the foregoing, plaintiff MARC H. FISHMAN's liberty was restricted for an extended period of time, he was put in fear of his safety, he was subjected to handcuffing, and he was humiliated and compelled to appear in criminal court.

115.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### Supervisory Liability under 42 USC 1983

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 115 with the same force and effect as if fully set forth herein.

117.    The supervisory defendants personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

118.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### Municipal Liability under 42 USC 1983

119.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 118 with the same force and effect as if fully set forth herein.

120.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

121.    The aforementioned customs, policies, usages, practices, procedures and rules of the New Rochelle Police Department included, but were not limited to, inadequate screening,

hiring, retaining, training and supervising its employees that as the moving force behind the violation of plaintiff MARC H. FISHMAN's rights as described herein. In addition, the New Rochelle Police Department has failed to properly train its employees with regard to the proper issuance of criminal complaints, and defendant City was aware that NRPD officers routinely baselessly arrested individuals and created and issued facially insufficient criminal complaints depriving said individuals of their constitutional rights. As a result of the failure of the CITY OF NEW ROCHELLE to properly recruit, screen, train, discipline and supervise its officers, including the individual defendants, defendant CITY OF NEW ROCHELLE has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

122.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW ROCHELLE and the New Rochelle Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff MARC H. FISHMAN.

123.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW ROCHELLE and the New Rochelle Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff MARC H. FISHMAN as alleged herein.

124.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW ROCHELLE and the New Rochelle Police Department were the moving force behind the Constitutional violations suffered by plaintiff MARC H. FISHMAN as alleged herein.

125.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW ROCHELLE and the New Rochelle Police Department, plaintiff MARC H. FISHMAN was unlawfully arrested and maliciously prosecuted.

126.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff MARC H. FISHMAN constitutional rights.

127.    For instance, defendant Schaller engaged in the policy and practice of illegally and improperly communicating with the County district attorney to make decisions on police conduct and investigations, including whether to affect arrests when faced with a lack of probable cause. Such communications became a policy and practice as the City failed to properly train and supervise its officers and employees on how to properly handle persons such as MARC H. FISHMAN and in the face of a custody and visitation order which rendered his conduct legal.

128.    As investigated and reported on at https://talkofthesound.com/2021/10/22/inside-the-new-rochelle-police-department-clown-show-part-ii/ the NRPD is rife with proof of inadequate screening, hiring, retaining, training and supervising its employees, which was motivating force behind the violation of plaintiff's rights.

129.    It is public knowledge that on June 5, 2020, an officer of NRPD fatally shot and killed Kamal Flowers, but Joseph Schaller felt no violations were committed and a grand jury refused to indict the officer on charges relating from same.

130.    The defendants violated their own Manual of Procedure Article 1.01(12) by refusing to convey plaintiff to the hospital. Additionally, the Adult Arrest Procedure in the Manual of Procedure includes no guidance on how to reasonably accommodate a disabled person. *See* https://www.newrochelleny.com/DocumentCenter/View/14337/Manual-Of-Procedures.

131.    The defendants violated Article 4.01(8) of their Manual of Procedure for Orders of Protection which states "the officer shall attempt to verify the existence and terms of the order

through Department records or NYSPIN. However, if the order is not produced or its existence cannot be verified, the officer should proceed as though an order of protection does not exist."

132.    Defendant Schaller and others refused to follow the Manual of Procedure as to Disciplinary Procedures (Article 6.01) when Schlesinger and other subordinates were improperly performing an assigned task and was not performing in accordance with department standards.

133.    The Manual of Procedure even includes an Article on Health and Safety but no policies or procedures have been adopted or implemented relating to the reasonable accommodation of those with disabilities and communications disabilities.

134.    The defendants failed to train its employees herein.

135.    The failure of the defendants to follow their own Manual of Procedure and failure to have any policies or procedures as to disabled persons was caused by the failure to properly train and supervise the defendants.

136.    All of the foregoing acts by defendants deprived plaintiff MARC H. FISHMAN of federally protected rights, including, but not limited to, the rights to be free from false arrest/unlawful imprisonment, to be free from the failure to intervene, to receive his right to fair trial, and to be free from malicious prosecution.

137.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
### Retaliation under 42 USC 1983

138.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 137 with the same force and effect as if fully set forth herein.

139.    Plaintiff exercised free speech and his rights under the ADA and Rehab Act during the incident by, among other things, requesting a reasonable accommodation and attempting to file a police report and complaint against his ex-wife, which the defendants refused to do and stated was not their problem.

140.    Plaintiff's use of free speech and request for a reasonable accomodation was a motivating factor in the defendants refusing to file a police report and complaint against the ex-wife.

141.    As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR A TENTH CAUSE OF ACTION**
**42 USC 1983 Federal Civil Rights Violations**

142.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 141 with the same force and effect as if fully set forth herein.

143.    All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

144.    All of the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fist, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and ion violation of 42 USC 1983.

145.    The Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NRPD officers. Said cats by the Defendants officers and agents were without authority of law, an abuse of their powers,

and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by Article I, Section 12 of the New York Constitution and the United States Constitution.

146.   As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### 42 USC 1983 Conspiracy

147.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 146 with the same force and effect as if fully set forth herein.

148.   Defendants are liable to plaintiff because they agreed to act in concert, with each other, to inflict unconstitutional injuries; and committed overt acts done in furtherance of that goal causing damage to plaintiff.

149.   As a result of the foregoing, plaintiff MARC H. FISHMAN is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

I.   Compensatory damages in an amount to be determined by a jury of not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000);

II.   Punitive damages in an amount to be determined by a jury;

III.   Costs, interest and attorney's fees, pursuant to 42 USC 1988; and

IV.    Such other and further relief as this Court may deem just and proper, including but not

limited to injunctive and declaratory relief to ensure the defendants institute proper

policies and procedures for accommodating the disabled during police encounters,

including training and ordering the County to train its prosecutors to provide discovery

to alleged defendants in accessible formats where necessary as an accommodation.

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
      March 10, 2022

*Caner J Demirayak*

Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
caner@canerlawoffice.com