UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

MARC FISHMAN,

                        Plaintiff,

             -against-

CITY OF NEW ROCHELLE, LANE SCHLESINGER SHEILD #:
1058, JOSEPH F. SCHALLER, ROBERT GAZOLLA, IN HIS
OFFICIAL CAPACITY AS POLICE COMMISSIONER OF
THE CITY OF NEW ROCHELLE POLICE DEPARTMENT,
SERGEANT MYRON JOSEPH SHIELD #18, & COUNTY OF
WESTCHESTER,

                    Defendants.

------------------------------------------------------------------- x

Docket No. 19 CV 265
(NSR)

## THE CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST-AMENDED COMPLAINT

WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for City Defendants
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

Introduction .................................................................................................................................... 1

Preliminary Statement .................................................................................................................... 1

Pertinent Facts and Procedural History ......................................................................................... 2

Argument ........................................................................................................................................ 6

POINT I          PLAINTIFF'S SECTION 1983 FALSE ARREST CLAIM IS
                 BARRED BY HIS CONVICTION ................................................................ 6

POINT II         PLAINTIFF'S SECTION 1983 FAIR TRIAL CLAIM FAILS AS
                 A MATTER OF LAW .................................................................................. 10

POINT III        PLAINTIFF'S SECTION 1983 MALICIOUS PROSECUTION
                 CLAIM FAILS AS A MATTER OF LAW ................................................... 11

POINT IV         PLAINTIFF'S SECTION 1983 FAILURE TO INTERVENE
                 CLAIM FAILS AS A MATTER OF LAW ................................................... 13

POINT V          PLAINTIFF'S SECTION 1983 SUPERVISORY LIABILITY
                 CLAIM FAILS AS A MATTER OF LAW ................................................... 14

POINT VI         PLAINTIFF'S AMENDED COMPLAINT DOES NOT
                 PLAUSIBLY ALLEGE A VIABLE *MONELL* CLAIM ............................ 16

POINT VII        PLAINTIFF'S FIRST-AMENDMENT RETALIATION CLAIM
                 FAILS AS A MATTER OF LAW .................................................................. 20

POINT VIII       PLAINTIFF'S CLAIM FOR "FEDERAL CIVIL RIGHTS
                 VIOLATIONS" FAILS AS A MATTER OF LAW ....................................... 21

POINT IX         PLAINTIFF'S CLAIM FOR SECTION 1983 CONSPIRACY
                 FAILS AS A MATTER OF LAW .................................................................. 22

POINT X          DEFENDANTS MYRON JOSEPH AND JOSEPH F.
                 SCHALLER SHOULD BE DISMISSED FOR LACK OF
                 PERSONAL INVOLVEMENT ..................................................................... 23

POINT XI         OFFICER SCHLESINGER AND SERGEANT JOSEPH
                 SHOULD BE DISMISSED ON GROUNDS OF LACK OF
                 PERSONAL JURISDICTION ...................................................................... 24

Conclusion .................................................................................................................................... 24

271427980v.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alcantara v. City of New York,*
646 F. Supp. 2d 449 (S.D.N.Y. 2009).......................................................................12

*Ameduri v. Village of Frankfort,*
10 F. Supp. 3d 320 (N.D.N.Y. 2014).......................................................................19

*Anderson v. Branen,*
17 F.3d 552 (2d Cir. 1994).......................................................................14

*Arbuckle v. City of New York,*
2016 U.S. Dist. LEXIS 136857 (S.D.N.Y. Sept. 30, 2016).......................................................................14

*Bailey v. City of New York,*
79 F. Supp. 3d 424 (E.D.N.Y. 2015).......................................................................12

*Boyd v. City of New York,*
336 F.3d 72 (2d Cir. 2003).......................................................................7

*Brown v. Annucci,*
2021 U.S. Dist. LEXIS 43011 (S.D.N.Y. March 8, 2021).......................................................................15

*Carthew v. County of Suffolk,*
709 F. Supp.2d 188 (E.D.N.Y. 2010).......................................................................8

*Ciambriello v. County of Nassau,*
292 F.3d 307 (2d Cir. 2002).......................................................................22

*City of Oklahoma v. Tuttle,*
471 U.S. 808 (1985).......................................................................19

*Connick v. Thompson,*
563 U.S. 51 (2011).......................................................................17

*Costello v. Milano,*
20 F. Supp. 3d 406 (S.D.N.Y. 2014).......................................................................12

*Cotto v. City of New York,*
803 Fed. Appx. 500 (2d Cir. 2020).......................................................................17

*De'Bey v. City of New York,*
2022 U.S. Dist. LEXIS 57388 (S.D.N.Y. March 29, 2022).......................................................................7

271427980v.1

*Delorenzo v. Schiff*,
    2022 U.S. Dist. LEXIS 54391 (S.D.N.Y. March 25, 2022) ....................................15

*Devenpeck v. Alford*,
    543 U.S. 146 (2004).............................................................................................7

*Dufort v. City of New York*,
    874 F.3d 338 (2d Cir. 2017)...............................................................................12

*Escalera v. Lunn*,
    361 F.3d 737 (2d Cir. 2004)...........................................................................6, 9

*Falls v. Pitt*,
    2021 U.S. Dist. LEXIS 58197 (S.D.N.Y. March 21, 2021) ...............................15

*Falls v. Police Officer Det. Michael Pitt*,
    2018 WL 3768036 (S.D.N.Y. Aug. 8, 2018)......................................................22

*Fierro v. City of New York*,
    2022 U.S. Dist. LEXIS 24549 (S.D.N.Y. Feb. 10, 2022)...................................17

*Figueroa v. Mazza*,
    825 F.3d 89 (2d Cir. 2016).................................................................................13

*Garnett v. Undercover Officer C00039*,
    838 F.3d 265 (2d Cir. 2016)...............................................................................10

*Gerlach v. City of Danbury*,
    2011 U.S. Dist. LEXIS (D. Conn. April 21, 2011)............................................21

*Glassman v. The City of New York*,
    2013 U.S. Dist. LEXIS 1170 (S.D.N.Y. Jan. 3, 2013)........................................9

*Grullon v. City of New Haven*,
    720 F.3d 133 (2d Cir. 2013)...............................................................................15

*Hartman v. Moore*,
    547 U.S. 250 (2006)...........................................................................................11

*Heck v. Humphrey*,
    512 U.S. 477 (1994).............................................................................................7

*Hernandez v. United States*,
    939 F.3d 191 (2d Cir. 2019)...............................................................................16

*Jaegly v. Couch*,
    439 F.3d 149 (2d Cir. 2006).................................................................................7

271427980v.1

*Jean-Laurent v. Wilkerson,*
    461 Fed. Appx. 18 (2d Cir. 2012) ............................................................................18

*Johnson v. Constantellis,*
    221 Fed. Appx. 48 (2d Cir. 2007) ............................................................................12

*Levantino v. Skala,*
    56 F. Supp. 3d 191 (E.D.N.Y. 2014) ......................................................................23

*Levy v. City of New York,*
    935 F. Supp. 2d 575 (E.D.N.Y. 2013) ....................................................................14

*Liang v. City of New York,*
    2013 WL 5366394 (E.D.N.Y. Sept. 24, 2013) ..........................................................9

*Lore v. City of Syracuse,*
    670 F.3d 127 (2d Cir. 2012) .....................................................................................15

*Magnotta v. Putnam County Sheriff,*
    2014 WL 705281 (S.D.N.Y. Feb. 24, 2014) ...........................................................22

*Manganiello v. City of New York,*
    612 F.3d 149 (2d Cir. 2010) .....................................................................................11

*Martinez v. City of New York,*
    2021 WL 4502440 (E.D.N.Y. Sept. 30, 2021) .......................................................14

*Matthews v. City of New York,*
    779 F.3d 167 (2d Cir. 2015) .....................................................................................20

*McDonough v. Smith,*
    139 S. Ct. 2149 (2019) .............................................................................................10

*O'Neill v. Krzeminski,*
    839 F.2d 9 (2d Cir. 1988) .........................................................................................13

*Panetta v. Crowley,*
    460 F.3d 388 (2d Cir. 2006) .......................................................................................6

*Pangburn v. Culbertson,*
    200 F.3d 65 (2d Cir. 1999) .......................................................................................22

*People v. Williams,*
    181 Misc.2d 415, 696 N.Y.S.2d 369 (N.Y. Crim. Ct. 1999) ....................................8

*Quinones v. New York City,*
    2020 U.S. Dist. LEXIS 149333 (S.D.N.Y. Aug. 17, 2020) ....................................19

271427980v.1

*Read v. Town of Suffern Police Dep't*,
  2013 U.S. Dist. LEXIS 89189 (S.D.N.Y. June 25, 2013).........................................9

*Ricciuti v. N.Y.C. Transit Auth.*,
  124 F.3d 123 (2d Cir. 1997)...........................................................................7, 13

*Rounseville v. Zahl*,
  13 F.3d 625 (2d Cir. 1994)....................................................................................12

*Rush v. Astacio*,
  1998 U.S. App. LEXIS 18588 (2d Cir. July 31, 1990).............................................7

*Santos v. New York City*,
  847 F. Supp. 2d 573 (S.D.N.Y. 2012)..................................................................17

*Savino v. City of New York*,
  331 F.3d 63 (2d Cir. 2003).....................................................................................12

*Singer v. Fulton County Sheriff*,
  63 F.3d 110 (2d Cir. 1995)......................................................................................6

*Smalls v. Collins*,
  10 F.4th 117 (2d Cir. 2021) ............................................................................10, 11

*Stansbury v. Wertman*,
  721 F.3d 84 (2d Cir. 2013).......................................................................................7

*Tangreti v. Bachmann*,
  983 F.3d 609 (2d Cir. 2020)............................................................................15, 23

*Tieman v. City of Newburgh*,
  2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. March 26, 2015) ...................................18

*Triano v. Town of Harrison, NY*,
  895 F. Supp.2d 526 (S.D.N.Y. 2012).............................................................17, 18

*Volpe v. Nassau County*,
  915 F. Supp.2d 284 (E.D.N.Y. 2013) ...................................................................23

*Whitley v. Bowden*,
  2018 WL 2170313 (S.D.N.Y. May 10, 2018) .......................................................22

*Williams v. Suffolk Cty.*,
  284 F. Supp. 3d 275 (E.D.N.Y. 2018) .....................................................................8

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007).................................................................................17

*Wright v. Smith,*
  21 F.3d 496 (2d Cir. 1994)..............................................................................23

**Other Authorities**

CPLR 308(2)..............................................................................................24

## Introduction

Defendants City of New Rochelle and Commissioner Robert Gazzola, sued in his official capacity only (collectively, the "City"), and Lane Schlesinger, Joseph F. Schaller and Myron W. Joseph (together with the City, the "City Defendants"), respectfully submit this memorandum of law in support of their partial motion to dismiss the first-amended complaint of plaintiff Marc Fishman ("Mr. Fishman" or "plaintiff").

In its decision dated October 19, 2021 (D.E. 38), this Court (i) held that plaintiff's original complaint (D.E. 2) stated a plausible claim for relief under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"); (ii) dismissed certain other claims for relief; (iii) dismissed the individual City Defendants on the basis of insufficiency of service of process; and (iv) provided plaintiff an opportunity to file and serve an amended complaint. D.E. 38. Plaintiff's amended complaint (D.E. 48), restates the ADA and RA claims, as its first and second claims for relief, respectively. The City Defendants' instant motion is not addressed to the ADA or RA claims,[1] but only to the remaining claims for relief set forth in the amended complaint.

## Preliminary Statement

This case stems from plaintiff's arrest by members of the New Rochelle Police Department ("NRPD") on December 15, 2018. Plaintiff was arrested and charged with violating an order of protection issued in favor of his ex-wife. On or about January 27, 2020, plaintiff was convicted by a jury of his peers on the charge of criminal contempt (2d degree) for violating the order of protection. Apparently because of the Covid-19 pandemic, plaintiff's sentencing has been scheduled, postponed, and re-scheduled multiple times. However, as alleged in the

---

[1] The City Defendants will eventually answer and deny the ADA and RA claims, and if appropriate address them through a post-discovery motion for summary judgment.

8353042v.1

amended complaint, when plaintiff failed to appear in criminal court to be sentenced on January 9, 2022, a bench warrant was issued for his arrest. **Exhibit A** (Am. Comp.), at ¶72.

Plaintiff's central allegation is that he suffers from a qualified disability under the ADA, and that his rights under the ADA and RA were violated during his arrest. In his amended complaint, plaintiff brings nine additional claims for relief: (i) a Section 1983 claim for false arrest/unlawful imprisonment (Ex. A, at ¶¶94-98); (ii) a Section 1983 claim alleging denial of his right to a fair trial (*id.* at ¶¶99-105); (iii) a Section 1983 claim for malicious prosecution (*id.* at ¶¶106-110); (iv) a Section 1983 claim for failure to intervene (*id.* at ¶¶111-115); (v) a Section 1983 claim for supervisory liability (*id.* at ¶¶116-118); (vi) a *Monell* claim against the City (*id.* at ¶¶119-137); (vii) a Section 1983 First Amendment retaliation claim (*id.* at ¶¶138-141); (viii) a purported Section 1983 claim entitled "Federal Civil Rights Violations" (*id.* at ¶¶142-146); and finally (ix) a Section 1983 conspiracy claim (*id.* at ¶¶147-149).

As demonstrated below, these additional claims cannot prevail on the facts alleged in the amended complaint and of which this Court may properly consider on this motion. In addition, plaintiff failed to timely serve the amended complaint on Police Officer Lane Schlesinger and Sergeant Myron Joseph. City Defendants' motion should therefore be granted, all defendants other than the City should be dismissed, and the case should proceed to discovery only on the ADA and RA claims.

### Pertinent Facts and Procedural History

The facts set forth below are based on the allegations contained in plaintiff's amended complaint, as well as the documents that this Court previously held were reviewable on a motion to dismiss: (i) the Orders of Protection (**Exhibit B**) and (ii) the Domestic Violence Report (**Exhibit C**). *See* Order, D.E. 38, at 6-8. All exhibits referenced herein are annexed to the

accompanying declaration of Lalit K. Loomba, Esq.

Mr. Fishman alleges that he is an individual with a qualified disability under the ADA by virtue of having "cognitive and hearing disabilities which substantially limit his hearing (tinnitus), memory, verbal functioning, verbal learning, and which cause him difficulties in processing information presented to him verbally." Ex. A (Am. Comp.) at ¶8.

On June 27, 2017, the Hon. Michelle I. Schauer, of the Westchester County Family Court, issued orders of protection against plaintiff and in favor of his ex-wife, Ms. Jennifer Solomon. Ex. B (orders of protection). These orders had two-year terms which expired June 27, 2019. *Id.* Among other instructions, the orders directed plaintiff to "Stay Away" from Ms. Solomon's home. *Id.* Each of the orders is preceded by a caveat text stating: "Defendant Advised in Court of Issuance and Contents of Order – Order is Enforceable." *Id.* Each order similarly indicates that it was "Issued" and "Served" on June 27, 2017, and expired two years later, on June 27, 2019. *Id.*

On December 15, 2018, during the effective term of the orders of protection, Police Officer Lane Schlesinger of the NRPD ("Officer Schlesinger") responded to Ms. Solomon's home. Ex. C (Domestic Incident Report). Ms. Solomon told Officer Schlesinger that her ex-husband, *i.e.,* plaintiff, had just come to her residence in violation of orders of protection. *Id.* She explained that a court-supervised visitation between Mr. Fishman and their children that had been scheduled for December 15, 2018 was cancelled due to a dispute, but that the social worker appointed to supervise visitations -- Ms. Ann Elliot -- nevertheless arrived at Ms. Solomon's home. *Id.* Ms. Elliot told Ms. Solomon that she was there on behalf of Mr. Fishman who was requesting to speak with the children. *Id.* Ms. Solomon was taken aback by Ms. Elliot's appearance at her home because the visit scheduled for that date had been cancelled, and also

because court-supervised visitation between plaintiff and the children always occurred at plaintiff's residence, not at Ms. Solomon's home. *Id.* In any event, while Ms. Solomon was speaking with Ms. Elliot, Ms. Solomon observed plaintiff exit a car and attempt to contact her son, who was playing in the driveway. Plaintiff and Ms. Elliot then left the area in the same car, which was being driven by a second woman, Ms. Bolivar, who was accompanying plaintiff at the time. *Id.*

While Officer Schlesinger was still at Ms. Solomon's residence learning of these facts, he was notified that plaintiff was at police headquarters. Ex. C (Domestic Incident Report). Officer Schlesinger responded to headquarters where he encountered plaintiff, Ms. Elliot and Ms. Bolivar. *Id.* Officer Schlesinger interviewed Ms. Elliot, who stated that she had advised plaintiff that he was violating the order of protection by going to Ms. Solomon's residence. *Id.* Ms. Elliot stated further that she had advised plaintiff against attempting to contact his children. *Id.* Ms. Elliot confirmed Ms. Solomon's statement that plaintiff had attempted to contact/communicate with Ms. Solomon's son. *Id.*

Based on the information obtained, it was determined there was probable cause to arrest plaintiff and charge him with violation of the orders of protection. Ex. C (domestic incident report). In addition, as alleged in the amended complaint, the decision to arrest was only made after then Police Commissioner Joseph Schaller repeatedly conferred with the district attorney to inquire whether, based on these facts, plaintiff could and should be charged with violating the orders of protection. Ex. A (Am. Comp.), at ¶46.

Plaintiff's bail was set at $300. Ex. A (Am. Comp.), at ¶49. Officer Schlesinger told Ms. Bolivar to drive Ms. Elliot back to her home, and then return to the police station to pick up plaintiff. *Id.* at ¶50. Plaintiff was held in a detention cell for over three hours. *Id.* at ¶47.

- 4 -

Plaintiff alleges that because he was denied accommodations for his disabilities he was unable to explain to the police that he was not guilty of any crime. *Id.* at ¶¶56-57.

Subsequently, the Westchester County District Attorney's Office prosecuted the charges against plaintiff, and a jury *found him guilty* of violating the orders of protection. Ex. A (Am. Comp.), at ¶67. Notwithstanding the guilty verdict, plaintiff alleges that Officer Schlesinger testified falsely at the criminal trial, *id.* at ¶¶59-60; that the County prosecutor misled and lied to the jury, *id.* at ¶¶61-62; that a court clerk testifying on behalf of the County lied to the jury, *id.* at ¶63; that the jury's verdict was "defective as a matter of law," *id.* at ¶67; and finally that the criminal court judge was obligated to record the verdict as an acquittal and order a new trial. *Id.* at ¶68. Plaintiff does not allege that he sought any relief from the verdict in the underlying criminal court, or that he filed an appeal from his conviction.

Although plaintiff was convicted in January 2020, his sentencing date has been scheduled, adjourned and re-scheduled multiple times, apparently because of the Covid-19 pandemic. Ultimately, when plaintiff failed to appear in court for his sentencing scheduled on January 9, 2022, the criminal court judge issued a bench warrant for plaintiff's arrest. Ex. A (Am. Comp.), at ¶72. It appears that this warrant is outstanding and that plaintiff is subject to outstanding criminal process requiring his arrest and appearance before the sentencing court. *Id.*

Plaintiff filed his original complaint on January 8, 2019 (D.E. 2), before his underlying criminal trial had even commenced. On October 19, 2021, subsequent to plaintiff's conviction, this Court issued an Order and Opinion (D.E. 38), ruling on motions to dismiss filed by the City Defendants and the County. This Court held: (i) that the individual City Defendants were not subject to the Court's personal jurisdiction, *id.* at 9-12; (ii) that plaintiff did not plausibly allege viable Section 1983 claims for First Amendment Retaliation or False Arrest, *id.* at 12-14; (iii)

that the plaintiff plausibly alleged a failure to accommodate claim under the ADA and RA

against the City of New Rochelle, *id.* at 14-18; and (iv) that plaintiff's state-law claims for

negligence, false arrest and malicious prosecution were procedurally barred. *Id.* at 19-20. The

Court granted plaintiff an opportunity to file an amended complaint and to serve the individual

defendants. *Id.*

      Plaintiff filed his amended complaint on March 12, 2022. D.E. 52. The deadline for

service of process on the individual City Defendants is April 17, 2022. D.E. 45. However, on

April 11, 2022, plaintiff filed a motion (his fourth) seeking to extend the deadline set by the

Court for service of the amended complaint on the individual defendants. D.E. 66. On April 22,

2022, the Court set a briefing schedule on plaintiff's motion: May 12, 2022 for plaintiff to serve

the motion; June 13, 2022, for the City Defendants to serve opposition; and June 28, 2022 for

plaintiff's reply.

      The City Defendants have completed their opposition to plaintiff's motion to extend the

time to serve the individual defendants and are serving it simultaneously with the instant motion

to dismiss.

### Argument

### POINT I
### PLAINTIFF'S SECTION 1983 FALSE ARREST
### CLAIM IS BARRED BY HIS CONVICTION

      "To establish a claim for false arrest under Section 1983, a plaintiff must show that 'the

defendant intentionally confined him without his consent and without justification.'" *Escalera v.*

*Lunn*, 361 F.3d 737, 743 (2d Cir. 2004), quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.

1996). A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable

cause to arrest. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995). Probable

- 6 -

cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted). Probable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). The existence of "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013). And notably, where, as here, the plaintiff was convicted of criminal charges, the conviction is conclusive evidence of probable cause. *See Rush v. Astacio,* 1998 U.S. App. LEXIS 18588, at *2 (2d Cir. July 31, 1990), citing *Weyant,* 101 F.3d at 852; *De'Bey v. City of New York,* 2022 U.S. Dist. LEXIS 57388, at *21-22 (S.D.N.Y. March 29, 2022).

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense with which plaintiff is eventually charged. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Provided there was probable cause to arrest the plaintiff for any criminal offense, a false arrest claim will fail. *See Jaegly*, 439 F.3d at 152. In addition, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, as alleged in his amended complaint, plaintiff was convicted after a jury verdict of violating orders of protection issued against him and in favor of his ex-wife. Ex. A (Am. Comp.), at ¶67. Plaintiff's conviction establishes probable cause as a matter of law, and is fatal to his civil claim of false arrest. *Rush,* 1998 U.S. App. LEXIS 18588, at *2; *De'Bey,* 2022 U.S.

Dist. LEXIS 57388, at *21-22.[2]

Even disregarding plaintiff's conviction, there was ample information known to Officer Schlesinger at the time of plaintiff's arrest to support the existence of probable cause. As set forth in the domestic incident report, which this Court has already held may be considered on a motion to dismiss, Officer Schlesinger spoke with plaintiff's ex-wife, who described a clear violation of protective orders issued in her favor when plaintiff was driven by her home at a slow speed, exited the car and then approached her son, who was playing in Ms. Solomon's driveway. *See* Ex. C. Officer Schlesinger also spoke with Ms. Ann Elliot -- the court-appointed supervisor for visitation between plaintiff and the children. Ms. Elliot told Officer Schlesinger that she had warned plaintiff that he was violating the orders of protection by going to the ex-wife's residence because, *inter alia,* under the court-ordered custody and visitation agreement visits with the children were to occur at plaintiff's home. *Id.*

"Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed; (2) the defendant knew about that order, and (3) the defendant intended to violate the order." *Carthew v. County of Suffolk*, 709 F. Supp.2d 188, 198 (E.D.N.Y. 2010); *see also People v. Williams*, 181 Misc.2d 415, 696 N.Y.S.2d 369, 370 (N.Y. Crim. Ct. 1999). Here, Officer Schlesinger confirmed that valid and operative orders of protection had been issued against Mr. Fishman, and was told by both Ms. Solomon and Ms. Elliot that they directly observed Mr. Fishman violate the terms of the orders. Ms. Elliot also informed Officer Schlesinger that she had advised Mr. Fishman that his conduct – i.e., his attempt to contact his son at his ex-wife's house -- was in violation of the order of protection. From this information,

---

[2] Plaintiff alleges in his amended complaint that procedural irregularities with the criminal trial cast doubt on the jury's verdict. However, he does not allege that he has appealed his conviction or otherwise sought relief from it directly from the criminal court. Rather, plaintiff mounts a collateral civil attack on his conviction, a strategy which is foreclosed by *Heck v. Humphrey,* 512 U.S. 477 (1994).

Officer Schlesinger could reasonably conclude that Mr. Fishman knew about the orders of

protection and that his conduct in violation of them was intentional.  This is sufficient to establish

probable cause.  *See Williams v. Suffolk Cty.*, 284 F. Supp. 3d 275, 286-287 (E.D.N.Y. 2018);

*Liang v. City of New York*, 2013 WL 5366394, at *8 (E.D.N.Y. Sept. 24, 2013) ("Courts in this

circuit have repeatedly found that, in the absence of reason to doubt the complainant, an

allegation that an individual has violated a stay away order supports probable cause for the

arrest") (citing cases); *Read v. Town of Suffern Police Dep't*, 2013 U.S. Dist. LEXIS 89189, at

*14-15 (S.D.N.Y. June 25, 2013); *Glassman v. The City of New York*, 2013 U.S. Dist. LEXIS

1170, at *17-18 (S.D.N.Y. Jan. 3, 2013).

In sum, the existence of probable cause – which follows necessarily from plaintiff's

conviction and is also supported on the facts -- is fatal to both plaintiff's federal and state-law

claims for false arrest.

Even if this Court is reluctant to rule that probable cause existed as a matter of law, there

certainly was arguable probable cause to justify the arrest.  Arguable probable cause – which is

an application of qualified immunity in the context of a false arrest claim – exists "if either (a) it

was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of

reasonable competence could disagree on whether the probable cause test was met." *Escalera v.*

*Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Even if probable cause to arrest is ultimately found not

to have existed, an arresting officer will still be entitled to qualified immunity from a suit for

damages if he can establish that there was 'arguable probable cause' to arrest.")

Here, based on the information available to Officer Schlesinger and the other individual

defendants, it was objectively reasonable to believe that plaintiff violated the orders of

protection, and officers of reasonable competence could certainly disagree as to whether the

probable cause test was met. Indeed, the amended complaint supports the existence of arguable

probable cause when it alleges that Officer Schlesinger and Commissioner Schaller repeatedly

communicated with the District Attorney's office to help determine whether there was a valid

basis to arrest plaintiff. *See* Ex. A (Am. Comp.), at ¶¶13, 46.

**POINT II**

**PLAINTIFF'S SECTION 1983 FAIR TRIAL
CLAIM FAILS AS A MATTER OF LAW**

Plaintiff's fair trial claim is based on the allegation that "Defendants created false

evidence against [him] and made it appear to the criminal jury that the order of protection was a

'full stay away order,' and that plaintiff's attempt at visitation on December 15, 2018 was

unlawful, which was blatantly false." Ex. A (Am. Comp.), at ¶100. He further alleges that

"Defendants testified falsely at trial and/or consciously omitted certain facts personally known to

them to deny plaintiff the right to a fair trial." In light of plaintiff's underlying conviction, these

allegations are not sufficient to plausibly allege a fair trial claim.

To prevail on a Section 1983 fair trial claim based on the fabrication of evidence, a

plaintiff must plead and prove that "(1) an investigating official (2) fabricates information (3)

that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5)

the plaintiff suffers a deprivation of life, liberty or property as a result." *Garnett v. Undercover

Officer C00039,* 838 F.3d 265, 279 (2d Cir. 2016). Further, under *McDonough v. Smith,* 139 S.

Ct. 2149, 2158 (2019), when a "plaintiff asserts a Section 1983 fair-trial claim based on

fabricated evidence," the plaintiff must show "that the underlying criminal proceeding [was]

terminated in such a manner that the [civil] lawsuit does not impugn an ongoing prosecution or

outstanding conviction." *Smalls v. Collins,* 10 F.4th 117, 139 (2d Cir. 2021).

Plaintiff cannot meet that latter requirement. As alleged in the amended complaint,

- 10 -

plaintiff was convicted upon a jury verdict, is awaiting sentencing and, in fact, there is an

outstanding bench warrant for his arrest based on his failure to appear at a sentencing scheduled

for January 9, 2022.  *See* Ex. A (Am. Comp.), at ¶¶67-72.  Given his conviction, which has not

been overturned on appeal or otherwise invalidated, his fair trail claim cannot prevail.  *Smalls*, 10

F.4th at 139.

## POINT III
### PLAINTIFF'S SECTION 1983 MALICIOUS
### PROSECUTION CLAIM FAILS AS A MATTER OF LAW

Plaintiff's malicious prosecution claim is based on the allegation that plaintiff was

"prosecuted without any probable cause and for innocent conduct," Ex. A (Am. Comp. at ¶108),

and upon the assertion that plaintiff's conviction should be "deemed an acquittal by way of the

County prosecutor's concession in November 2021 that the jury's verdict was legally defective."

*Id.*  However, recognizing that he cannot viably assert a malicious prosecution claim -- and

perhaps anticipating the City Defendants' motion -- plaintiff's amended complaint also "requests

that this [malicious prosecution] claim . . . be denied without prejudice to refile upon a formal

order or decision dismissing" his conviction.  *Id.* at ¶109.

To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must allege and

prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination

of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding;

and (4) actual malice as a motivation for the defendant's actions." *Manganiello v City of New

York,* 612 F.3d 149, 160-161 (2d Cir. 2010).

"[W]here an allegation of misconduct is directed at police, a malicious prosecution claim

cannot stand if the decision made by the prosecutor to bring criminal charges was independent of

any pressure exerted by police." *Hartman v. Moore,* 547 U.S. 250, 263 (2006).  Accordingly,

8353042v.1

where, as here, "a plaintiff pursues a claim of malicious prosecution against police officers based on an 'unlawful arrest,' the intervening exercise of independent judgment' by a prosecutor to pursue the case usually breaks the 'chain of causation' unless the plaintiff can produce evidence that the prosecutor was 'misled or pressured' by the police." *Dufort v. City of New York,* 874 F.3d 338, 352 (2d Cir. 2017), quoting *Townes v. City of New York,* 176 F.3d 138, 147 (2d Cir. 1999); *see also Bailey v. City of New York,* 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015). Thus, "once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Alcantara v. City of New York,* 646 F. Supp. 2d 449, 459 (S.D.N.Y. 2009).

The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003). "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant …." *Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir. 1994). "If probable cause existed at the time of arrest it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis,* 221 Fed. Appx. 48, 50 (2d Cir. 2007), quoting *Kinzer v. Jackson,* 316 F.3d 139, 144 (2d Cir. 2003). Finally, "[a]n officer is entitled to qualified immunity from suit on a claim of malicious prosecution if there was 'arguable probable cause' to charge the plaintiff." *Costello v. Millano,* 20 F. Supp. 3d 406, 416 (S.D.N.Y. 2014), quoting *Jean v. Montina,* 412 Fed. Appx. 352, 354 (2d Cir. 2011). Arguable probable cause to charge exists where "accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for the defendant

officer to charge the plaintiff with the crime in question.'" *Id.* (citations omitted).

In the instant case, plaintiff's malicious prosecution claim fails all of these elements. First, and fundamentally, plaintiff was convicted of violating the orders of protection. *See* Ex. A (Am. Comp.), at ¶67. Therefore, plaintiff did not receive a favorable termination. Second, plaintiff cannot prevail on the initiation element because he did not specifically allege that Officer Schlesinger, or any other member of the NRPD, signed an initiating document to commence the criminal proceeding against plaintiff. And even if plaintiff had so alleged, the intervening action of the District Attorney's office is fatal to plaintiff's claim. Third, as was the case for probable cause to arrest, the information available to Officer Schlesinger was sufficient to justify a reasonable person in the belief that there were lawful grounds for prosecuting the plaintiff. Finally, even if probable cause did not exist, the individual City Defendants would be entitled to qualified immunity.

## POINT IV
### PLAINTIFF'S SECTION 1983 FAILURE TO INTERVENE CLAIM FAILS AS A MATTER OF LAW

Plaintiff's failure-to-intervene claim asserts that "[d]efendants had an affirmative duty to intervene on behalf of [plaintiff]," Ex. A (Am. Comp.), at ¶112, and "failed to intervene to prevent the unlawful conduct described herein." *Id.* at ¶113. These sparse allegations are not sufficient to survive a motion to dismiss.

To hold an officer liable under a failure to intervene theory, a plaintiff must demonstrate that the officer's failure to intervene "permitted fellow officers to violate" the plaintiff's "clearly established statutory or constitutional rights," and that it was "objectively unreasonable . . . to believe that his fellow officers' conduct did not violate those rights." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). A police officer is under a duty to intercede, and may

- 13 -

be held liable for his failure to do so, only if he has sufficient time and a realistic opportunity to prevent a violation of plaintiff's clearly established constitutional rights. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); *see also Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). A failure-to-intervene claim is derivative in nature, and accordingly is "contingent upon the disposition of the [underlying] primary claims." *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013); *Martinez v. City of New York*, 2021 WL 4502440, at *12 (E.D.N.Y. Sept. 30, 2021). Finally, an officer cannot be said to have "failed to intervene" to prevent his own conduct because the failure to intervene claim would simply merge with the direct claim. *See Arbuckle v. City of New York*, 2016 U.S. Dist. LEXIS 136857, at *42 (S.D.N.Y. Sept. 30, 2016) (a "defendant 'cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation.'"), quoting *Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, at *65-66 (S.D.N.Y. March 7, 2016).

Here, plaintiff has alleged that Officer Schlesinger and former Commissioner Schaller violated his rights directly. They cannot be liable for a failure to intervene to prevent their own allegedly unconstitutional conduct. Moreover, the amended complaint contains no allegations against Sgt. Joseph, other than naming him in the caption. In addition, as demonstrated above, it was objectively reasonable for Officer Schlesinger and Commissioner Schaller to believe that arresting plaintiff and charging plaintiff with violating the orders of protection did not violate any of plaintiff's constitutional rights. In short, the failure to intervene claim fails.

**POINT V**

**PLAINTIFF'S SECTION 1983 SUPERVISORY
LIABILITY CLAIM FAILS AS A MATTER OF LAW**

Plaintiff's supervisory liability claim simply recites: "The supervisory defendants

- 14 -

personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees." Ex. A (Am. Comp.), at ¶117. This allegation is not sufficient to survive a motion to dismiss.

In *Tangreti v. Bachmann,* 983 F.3d 609, 620 (2d Cir. 2020), the Second Circuit joined other circuit courts in rejecting the previously-applied five-part test for supervisory liability, and held that to prevail a plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti,* 983 F.3d at 618, quoting *Iqbal,* 556 U.S. at 676. Accordingly, to prevail on the supervisory claim in the instant case, plaintiff must prove that the supervisory defendants violated his rights by virtue of each defendant's "own conduct, not by reason of [their] supervision of others who [may have] committed [a] violation." *Id.* at 619; *see Falls v. Pitt,* 2021 U.S. Dist. LEXIS 58197, at *104-105 (S.D.N.Y. March 21, 2021) ("*Tangreti* put the matter to rest by rejecting a special standard for supervisory liability"); *see also Delorenzo v. Schiff,* 2022 U.S. Dist. LEXIS 54391, at 10 (S.D.N.Y. March 25, 2022); *Brown v. Annucci,* 2021 U.S. Dist. LEXIS 43011, at *12 (S.D.N.Y. March 8, 2021).

The police supervisors named as defendants in plaintiff's amended complaint are former police Commissioner Joseph Schaller and Sergeant Myron Joseph.[3] Other than naming him in the caption, and referencing him at paragraph 15, the amended complaint does not contain any allegations specific to Sgt. Joseph. Sgt. Joseph should be dismissed because plaintiff has failed to allege that he participated personally in any of the claimed deprivations of his constitutional rights. *See Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013). With respect to former Commissioner Schaller, any supervisory claim would simply merge with the direct

---

[3]   Police Commissioner Robert Gazzola is only named in is official capacity. An official-capacity action brought against a municipal employee is no different than a claim against the municipal employer. *See Lore v. City of Syracuse,* 670 F.3d 127, 164 (2d Cir. 2012).

claims brought against him.  As demonstrated herein, those direct claims fail as a matter of law.

Accordingly, the supervisory liability claim must be dismissed.

## POINT VI
### PLAINTIFF'S AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A VIABLE *MONELL* CLAIM

Plaintiff's *Monell* claim is based on an alleged failure to train.  *See* Ex. A (Am. Comp.),

at ¶¶121-134.  Plaintiff also alleges that the City maintained a "policy of illegally and improperly

communicating with the County district attorney to make decisions on police conduct and

investigations, including whether to affect arrests when faced with a lack of probable cause."  *Id.*

at ¶127.  Plaintiff's allegations fail to plausibly allege a Section 1983 claim for municipal

liability against the City.

Municipalities may not be held vicariously liable under Section 1983 for their employees'

actions.  *Hernandez v. United  States,* 939 F.3d 191, 206 (2d Cir. 2019).  Instead, to hold a

municipality liable, a plaintiff must plead and prove that his constitutional rights were violated as

a result of a municipal policy.  *Id,* citing *Connick v. Thompson,* 563 U.S. 51, 60 (2011).  A

"municipal policy" for these purposes includes "'decisions of a government's lawmakers, the

acts of its policymaking officials, and practices so persistent and widespread as to practically

have the force of law.'"  *Id.,* quoting *Connick,* 563 U.S. at 61.

A municipality may also be held liable under Section 1983 for the failure to train its

employees, but only under very limited circumstances.  *Hernandez,* 939 F.3d at 206.  "To state a

failure-to-train claim, a plaintiff must allege that 'a municipality's failure to train its employees

in a relevant respect . . . amount[s] to deliberate indifference to the rights of persons with whom

the untrained employees come into contact.'"  *Id.,* quoting *Connick,* 563 U.S. at 61.  To establish

deliberate indifference, a plaintiff must plead and prove: (i) that a policymaker knows to a

8353042v.1

"moral certainty" that municipal employees will confront a particular situation; (ii) that the situation either presents the employee with "a difficult choice of the sort that training or supervision will make less difficult" or that "there is a history of employees mishandling the situation"; and (iii) that an incorrect choice by the employee "will frequently cause the deprivation of a citizen's constitutional rights." *Wray v. City of New York,* 490 F.3d 189, 195-196 (2d Cir. 2007) (internal quotes and citation omitted). The deliberate indifference standard applicable to a failure-to-train claim "is a strict standard of fault." *Connick,* 563 U.S. at 61. Indeed, a municipality's culpability for the deprivation of a person's constitutional rights "is at its most tenuous where a claim turns on a failure to train." *Id.*

Conclusory allegations of a failure to train are not sufficient to survive a motion to dismiss. *See Cotto v. City of New York,* 803 Fed. Appx. 500, at 504 (2d Cir. 2020); *Fierro v. City of New York,* 2022 U.S. Dist. LEXIS 24549, at *28-29 (S.D.N.Y. Feb. 10, 2022); *Triano v. Town of Harrison, NY,* 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012); *Santos v. New York City,* 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012). Hence, a failure-to-train claim will be dismissed where the complaint does not allege specifics about a deficiency in the municipality's training program. *Cotto,* 803 Fed. App.x at 504; *Triano,* 895 F. Supp. 2d at 539. Finally, to plausibly allege a *Monell* claim based on a failure-to-train, a plaintiff must allege the existence of "a pattern of similar constitutional violations by untrained employees." *Connick,* 563 U.S. at 61; *see also Wray,* 490 F.3d at 196; *Triano,* 895 F. Supp. 2d at 539 (dismissing failure-to-train claim where plaintiff "merely alleged that the [defendant] failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train.").

Here, the amended complaint sets forth a series of boiler-plate and conclusory assertions that his arrest and prosecution were caused by a failure to train. A typical allegation appears at paragraph 121, where plaintiff asserts: "the aforementioned customs [and] policies . . . included, but were not limited to, inadequate screening, hiring, training and supervising its employees that as the moving force behind the violation of [plaintiff's] rights as described herein. Ex. A (Am. Comp.), at ¶121. These conclusory assertions are not sufficient to survive a motion to dismiss.

Moreover, to survive a motion to dismiss, plaintiff must allege that the City "was on 'notice that a course of training is deficient in a particular respect.'" *Triano,* 895 F. Supp. 2d at 539, quoting *Connick,* 131 S. Ct. at 1360. "Thus, [p]laintiff must allege that the type of police misconduct at issue here – [arrest and prosecution without probable cause] – was known to the Town, and not just that the Town's police officers engage[d] in misconduct." *Id.* However, notably absent from the amended complaint are any allegations about the details of the City's training program, or any allegation about a specific deficiency in an area applicable to the deprivations that plaintiff allegedly suffered.

In addition, beyond conclusory allegations and mere speculation, the amended complaint fails to allege the existence of prior instances where police officers falsely arrested or maliciously prosecuted a plaintiff, such that the City was on actual, or even constructive, notice of a deficiency in its training program that it then failed to correct. Plaintiff tries to address this by citing a newspaper article from "Talk of the Sound," a publication authored by Robert Cox, entitled "Inside The New Rochelle Police Department Clown Show – Part II." *See* Ex. A (Am. Comp.), at ¶128. A review of Mr. Cox's article shows that it is based entirely on rumor and hearsay. Plaintiff has not cited to a single other legal action where there was a finding of liability against the City of New Rochelle. The mere existence of allegations described in an online

- 18 -

newspaer are not sufficient to plausibly plead the existence of a policy or a failure to train in this case. *See Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18, 22-23 (2d Cir. 2012); *Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, at *48-51 (S.D.N.Y. March 26, 2015) (citing cases); *Ameduri v. Village of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014).

To the extent plaintiff's *Monell* claim is based on the allegation that the City maintained a "policy of illegally and improperly communicating with the County district attorney to make decisions on police conduct and investigations, including whether to affect arrests when faced with a lack of probable cause," Ex. A (Am. Comp.), at ¶127, the *Monell* claim would fail as a matter of law. There is clearly nothing unconstitutional or even inappropriate about having a policy of double checking with the District Attorney's office before making an arrest and charging a crime. And while a *Monell* claim may be based on the failure to remedy policy so deficient and widespread that policymakers knew or should have known within a high degree of certainty that constitutional violations could result, *see City of Oklahoma v. Tuttle,* 471 U.S. 808, 819 (1985), plaintiff has not specifically alleged that City of New Rochelle policymakers knew, or should have known, to a high degree of certainty that maintaining a policy of having the police department check with the District Attorney's office on the existence of probable cause to arrest would lead to constitutional violations. Indeed, to the contrary, one could reasonably expect that having police officers check with the highly-trained legal staff of the District Attorney's office would lead to *fewer*, not more, arrests without probable cause.

Finally, plaintiff alleges that the City violated Section 1983 by failing to adopt policies concerning reasonable accommodations for persons with communication disabilities. *Id.* at ¶¶133, 135. This too is insufficient to support a viable *Monell* claim. *See Quinones v. New York City,* 2020 U.S. Dist. LEXIS 149333, at *54-55 (S.D.N.Y. Aug. 17, 2020) ("under *Monell*, a

- 19 -

municipality's failure to put a formal policy in place to prevent unlawful conduct is not the same thing as an actionable policy"), citing *Zachary v. City of Newburgh,* 2014 U.S. Dist. LEXIS 57236 (S.D.N.Y. April 1, 2014).  In sum, plaintiff's *Monell* claim should be dismissed.

**POINT VII**

**PLAINTIFF'S FIRST-AMENDMENT RETALIATION
CLAIM FAILS AS A MATTER OF LAW**

Plaintiff alleges that he "exercised free speech and his rights under the ADA and Rehab Act during the incident by, among other things, requesting a reasonable accommodation and attempting to file a police report and complaint against his ex-wife, which the defendants refused to do and stated was not their problem."  Ex. A (Am. Comp.), at ¶139.  He further alleges that his "use of free speech and request for a reasonable accommodation was a motivating factor in the defendants [sic] refusing file a police report and complaint against the ex-wife."  *Id.* at ¶140.

"A plaintiff asserting a First Amendment retaliation case must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.'"  *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015), quoting *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

Here, plaintiff's First-Amendment retaliation claim fails for three reasons.  First, to the extent the claim is brought against former Sgt. Myron Joseph, the amended complaint contains no allegations that he played any role in allegedly preventing plaintiff from filing a report and/or complaint against his ex-wife.  Second, plaintiff has not alleged that he suffered an "adverse action" sufficient to support a First Amendment Retaliation claim.  Plaintiff's claim is that as a result of requesting an accommodation for his disabilities, he was told that he could not file a complaint with the police department asserting that his ex-wife violated the visitation provisions

of their custody and visitation agreement.  At best, plaintiff has raised an issue involving rights

and obligations under that agreement, something that does not rise to the level of a constitutional

concern.  *See Gerlach v. City of Danbury,* 2011 U.S. Dist. LEXIS, at *11 (D. Conn. April 21,

2011), citing *A. Aiudi & Sons v. Town of Plainville,* 862 F. Supp. 737, 741 (D. Conn. 1994) (mere

breach of contract does not constitute a constitutional violation).  Third, plaintiff's First

Amendment Retaliation claim is duplicative of his claims under the ADA and the RA.

Finally, to the extent plaintiff seeks to bring the claim against the City, his amended

complaint, like his original complaint, lacks allegations of "specific policies, customs or practices

enforced by the City that would plausibly lead to his alleged constitutional violation[] of First

Amendment retaliation."  Order, D.E. 38, at p.14.

## POINT VIII
### PLAINTIFF'S CLAIM FOR "FEDERAL CIVIL RIGHTS VIOLATIONS" FAILS AS A MATTER OF LAW

The tenth claim for relief in plaintiff's amended complaint is entitled "Federal Civil

Rights Violations."  Ex. A (Am. Comp.), at ¶¶142-146.  This claim contains a grab bag of

allegations including that (i) the individual defendants acted under color of state law, *id.* at ¶143;

(ii) plaintiff suffered violations of his rights under the First, Fourth, Fifth, Eighth and Fourteenth

Amendments, *id.* at ¶144; (iii) the defendants violated plaintiff's rights under Article I, Section

12 of the New York State Constitution.  *Id.* at ¶145.  The random mix of allegations set forth in

plaintiff's tenth claim for relief do not set forth a plausible claim distinct from others already

asserted in the amended complaint.

First, an allegation that the individual defendants acted under color of state law is a pre-

requisite to holding them liable under Section 1983, but it does not in and of itself constitute a

separate viable claim for relief.  Second, plaintiff's separate claims for First Amendment

- 21 -

Retaliation, false arrest and malicious prosecution set forth and repeat his claims under the First

and Fourth Amendments, respectively. Third, plaintiff does not have a viable Fifth Amendment

claim, as he has not alleged a taking of property or a claim against a federal officer or official.

Fourth, plaintiff has not alleged his criminal sentence or the conditions of his post-sentencing

imprisonment was otherwise cruel and unusual, and therefore does not have a plausible claim

under the Eighth Amendment. And finally, plaintiff has not alleged a violation of procedural or

substantive due process rights for purposes of a claim under the Fourteenth Amendment.

In short, the tenth cause of action does plausibly allege a distinct or viable claim for relief

and it should be dismissed.

## POINT IX
### PLAINTIFF'S CLAIM FOR SECTION 1983
### CONSPIRACY FAILS AS A MATTER OF LAW

To prevail on a Section 1983 conspiracy claim, a plaintiff must plead and prove "(1) an

agreement between two or more state actors or between a state actor and a private entity; (2) to

act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that

goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999). Conclusory

allegations are insufficient to prevail on a conspiracy claim. *See Ciambriello v. County of*

*Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Falls v. Police Officer Det. Michael Pitt,*

2018 WL 3768036, at *5 (S.D.N.Y. Aug. 8, 2018); *Whitley v. Bowden,* 2018 WL 2170313, at

*13 (S.D.N.Y. May 10, 2018); *Magnotta v. Putnam County Sheriff,* 2014 WL 705281, at *8

(S.D.N.Y. Feb. 24, 2014), citing *Walker v. Jastremski,* 430 F.3d 560, 564 n.5 (2d Cir. 2005).

Here, plaintiff's entire Section 1983 conspiracy claim is set forth in paragraph 148 as follows:

"Defendants are liable to plaintiff because they agreed to act in concert, with each other, to inflict

unconstitutional injuries; and committed overt acts done in further of that goal causing damage to

plaintiff." Ex. A (Am. Comp.), at ¶148.  This bare bones allegation meekly tracking the elements of a conspiracy claim is not sufficient to survive a motion to dismiss.

## POINT X

### DEFENDANTS MYRON JOSEPH AND JOSEPH F. SCHALLER SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991). Personal involvement is also a prerequisite to liability for the state law claims.  *See Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014).  Indeed, courts have consistently held that, "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Volpe v. Nassau County*, 915 F. Supp. 2d 284, 299 (E.D.N.Y. 2013), quoting *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999). Moreover, as noted above, supervisory officials cannot be held liable merely because they hold a position of authority.  *See Tangreti v. Bachmann,* 983 F.3d 609, 620 (2d Cir. 2020).

Here, other than naming them in the caption, and identifying them as members of the New Rochelle Police Department, *see* Ex. A, at ¶¶6, 7, plaintiff's complaint does not even mention Sgt. Myron Joseph, and barely mentions Commissioner Joseph Schaller.  Indeed, the Commissioner appears to have been named as a defendant merely because of his position as Commissioner of Police which, by in and of itself, is not sufficient to hold him personally liable for any of plaintiff's alleged claims for relief.  This same argument applies to Sgt. Joseph.  As plaintiff has not alleged the personal involvement of Sgt. Joseph or Commissioner Schaller in his arrest, nor from the relevant police records does it appear that either had any involvement in

- 23 -

the arrest, the complaint should be dismissed with prejudice as against Sgt. Joseph and Commissioner Schaller.

## POINT XI

### OFFICER SCHLESINGER AND SERGEANT JOSEPH SHOULD BE DISMISSED ON GROUNDS OF LACK OF PERSONAL JURISDICTION

This Court set April 17, 2022, as the deadline to serve the amended complaint on the individual City Defendants. Plaintiff served both pursuant to CPLR 308(2), under which service was not complete until May 3, 2022, over two weeks past the deadline. Unless plaintiff's motion for an adjournment of the deadline to serve the individual defendants is granted, then this action must be dismissed as against Officer Schlesinger and Sergeant Joseph for lack of personal jurisdiction on grounds of failure to timely serve them with process. For the reasons set forth in the City Defendants' opposition to plaintiff's motion to adjourn the service deadline, which are incorporated herein by reference, plaintiff's motion for an adjournment should be denied. Accordingly, the action must be dismissed as against defendants Schlesinger and Joseph.

### Conclusion

Other than plaintiff's claims under the ADA and the RA, all claims set forth in plaintiff's amended complaint should be dismissed. Other than the City of New Rochelle, the amended complaint should be dismissed with prejudice against the individual City Defendants.

- 24 -

Dated:    White Plains, New York
          May 26, 2022

                                Respectfully submitted,

                                WILSON, ELSER, MOSKOWITZ,
                                EDELMAN & DICKER LLP
                                Attorneys for the City Defendants

                                Lalit K. Loomba

                                1133 Westchester Avenue
                                White Plains, New York 10604
                                (914) 323-7000
                                Our File No.  07367.00109

- 25 -