UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MARC H. FISHMAN,

                    Plaintiffs.                    19-cv-00265-NSR

            - against -

CITY OF NEW ROCHELLE, POLICE OFFICER
LANE SCHLESINGER SHIELD # 1058, JOSEPH
F. SCHALLER, ROBERT GAZZOLA, IN HIS
OFFICIAL CAPACITY AS POLICE
COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT,
SERGEANT MYRON JOSEPH SHIELD # 18, &
COUNTY OF WESTCHESTER,

                    Defendants.
-----------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS BY ALL DEFENDANTS**

                    LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
       July 11, 2022

                    *Caner J Demirayak*

                    Caner Demirayak, Esq.
                    300 Cadman Plaza West
                    One Pierrepont Plaza, 12th Floor
                    Brooklyn, New York 11201
                    718-344-6048
                    Fax: 646-679-2527
                    caner@canerlawoffice.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ......................................................................................................................... 11

Motion to Dismiss Standard ................................................................................................ 11

I.    Plaintiff Has Not Been Convicted and Proceedings Have Ended in His Favor as Per Operation of New York Law Despite the Trial Judge's Refusal to Effectuate Acquittal or to Order a New Trial as the County District Attorney Agrees the Verdict was Defective as a Matter of Law ........................................................................................ 12

II.   Plaintiff's Amended Complaint Plausibly Explains the Absence of Probable Cause and Thus Sets Forth Meritorious Causes of Action Under Section 1983 ................... 15

III.  Plaintiff's Amended Complaint Sets Forth Plausible Claims for Discrimination by the County in Violation of the Rehabilitation Act and Americans with Disabilities Act  18

IV.   Plaintiff Properly Served Defendants Schlesinger and Joseph and the Motion to Dismiss for Lack of Personal Jurisdiction is Premature Pending the Court's Determination on the Motion to Extend the Time to Serve Such Defendants, Who Were Served One Day After Expiration of the Time to Serve After Four Attempts Were Unsuccessful on Their Places of Residence ........................................................ 21

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004).............................................. 20

*Anderson News v. Am Media*, 680 F.3d 162 (2d Cir. 2012) ........................................................ 11

*Biondo v. Kaleida Health*, 935 F.3d 68 (2d Cir. 2019)................................................................ 19

*Cash v County of Erie*, 654 F.3d 324 (2d Cir. 2011) .................................................................. 20

*Disabled in Action v. Bd. of Elections*, 752 F.3d 196 (2d Cir. 2016) ........................................ 19

*Fantasia v. Rochelle*, 2022 U.S. Dist. LEXIS 18058 (S.D.N.Y. 2022) ...................................... 19

*Felix v. City of New York*, 121 F. Supp. 3d 354 (S.D.N.Y. 2015) .............................................. 20

*Fishman v. Office of Court Adm. N.Y. State Courts*, 2021 U.S. App LEXIS 29233 (2d Cir. 2021) .................................................................................................................................................. 18

*Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2014)................................................................................. 15

*Jessany v Jakasal*, 2022 U.S. LEXIS 14436 (2d Cir. 2022) ............................................... 12, 15

*Padilla v. Yeshiva Univ.*, 691 Fed App'x 52 (2d Cir. 2017).......................................................... 12

*Panetta v. Crowley,* 460 F.3d 388 (2d Cir. 2006) ...................................................................... 15

*People v Gonzalez*, 200 A.D.2d 759 .......................................................................................... 14

*People v. Flowers*, 44 A.D.2d 842 (2d Dep't. 1974) ................................................................... 13

*People v. Gunatilaka*, 156 Misc. 2d 958 (Crim. Ct., N.Y. Cty 1993) ........................................ 14

*People v. Trappier*, 87 N.Y.2d 55 (N.Y. 1995) .......................................................................... 14

*People v. Tucker*, 55 N.Y.2d 1 (N.Y. 1981) ............................................................................... 14

*Riccuti v NYCTA*, 941 F.2d 119 (2d Cir. 1991) ......................................................................... 11

*Smalls v. Collins*, 10 F.4tf 117 (2d Cir. 2021) ........................................................................... 17

*Snyder v Fish*, 2022 U.S. Dist. LEXIS 95257 (N.D.N.Y. 2022) ................................................ 15

*Stamm v. New York City Transit Auth.*, 2013 U.S. Dist. LEXIS 8534 (E.D.N.Y. 2013) ............. 19

*Thompson v Clark*, 142 S. Ct. 1332 (2022) ............................................................................... 12

*Townsend v City of New York*, 2022 U.S. Dist. LEXIS 72776, 2022 WL 1446532 (S.D.N.Y. 2022)........................................................................................................................................ 17

*Triolo v. Nassau Cnty.*, 24 F.4th 98 (2d Cir. 2022) .................................................................... 15

**Statutes**

CPL 300.50(1)............................................................................................................................. 13

CPL 300.50(4)............................................................................................................................. 13

N.Y. C.P.L. 300.50(1) ................................................................................................................. 13

N.Y. C.P.L. 300.50(4) ................................................................................................................. 13

N.Y. C.P.L. 380.20 ..................................................................................................................... 12

N.Y. C.P.L. 380.30(1) ................................................................................................................. 12

N.Y. C.P.L. 380.40(1) ................................................................................................................. 12

N.Y. C.P.L. 450.10 ..................................................................................................................... 13

N.Y. C.P.L. 450.15 ..................................................................................................................... 13

N.Y. C.P.L.R. 308 ...................................................................................................................... 21

Plaintiff, Marc Fishman respectfully submits this memorandum of law in opposition to the defendants' motions seeking dismissal of the plaintiff's Amended Complaint ("AC"). As explained herein, the defendants' motions must be denied in their entirety.

## PRELIMINARY STATEMENT

Plaintiff was arrested by Police Officer Lane Schlesinger for engaging in innocent conduct. There was no probable cause or other basis to believe the plaintiff had committed any crimes at the time of the arrest. At the time plaintiff interacted with Schlesinger, he was voluntarily at the police station reporting a violation of his right to supervised visitation. However, the defendants placed plaintiff in a custodial situation and interrogated him over allegations by his ex-wife that did not provide probable cause or arguable probable cause for the violation of any crimes.

Plaintiff tried to explain to Schlesinger and the defendants that he was disabled, required a disability aide for communication assistance, and that the order of protection he was alleged to have violated actually allowed for the conduct of the day. Plaintiff was even accompanied with the person assigned as the supervisor for visitation at the time of the police encounters.

The defendants refused to accommodate plaintiff, denied him communications assistance, and never allowed plaintiff to show them or explain to them that the order of protection allowed for his conduct. At the same time, the defendants knew from all parties, including the complaining witness herself, that plaintiff never entered her property and never interacted with her on that day.

The allegations were so deficient that on October 29, 2019, the judge presiding over the criminal case held the misdemeanor complaint created by Schlesinger, along with the statement of the complaining witness (the ex-wife), were legally insufficient to set forth a claim for criminal contempt in the second degree. The charging instrument was permitted to be amended.

However, the evidence at trial was still deficient. Instead of dismissing the charges, the trial judge allowed the government to amend their charging instruments again to include a claim for attempted criminal contempt in the second degree. The judge did not instruct the jury to consider the charges in the alternative. The jury rendered a verdict of guilty on both charges. This is a legally impossible verdict. However, the trial judge did not order a new trial or declare the verdict an acquittal.

The jury's verdict was rendered at the end of January 2020. However, the defendant has still not been sentenced, and thus not convicted. The delay was not primarily caused by the pandemic.

It was not until a motion to set aside the verdict was made in October 2021 that the County District Attorney conceded the verdict was in fact legally defective. In those proceedings the County District Attorney also requested dismissal of the verdict as to attempted criminal contempt, but the judge refused. This was partly correct as the judge may only order a new trial or deem the verdict an acquittal. The New York Criminal Procedure Law does not permit the court to pick and choose portions of a verdict to sentence and enter a conviction on.

As explained herein, the motions to dismiss must be denied as the plaintiff has set forth plausible claims pursuant to section 1983. The criminal case terminated in plaintiff's favor as per operation of New York Law despite the criminal court judge's refusal to effectuate an acquittal or to order a new trial. In any event, plaintiff has not yet been convicted as he has not yet been sentenced on the jury's verdict.

## STATEMENT OF FACTS

Plaintiff was scheduled for supervised visitation with his children on December 15, 2018, as authorized by the Family Court. AC ¶ 27. While there was an order of protection issued on June 27, 2017, the order specifically allowed for such supervised visitation and envisioned incidental conduct between plaintiff and his ex-wife. AC ¶ 23.

On December 14, 2018, the ex-wife confirmed the visitation with the supervisor, Ann Elliot. AC ¶ 25-26.

On December 15, 2018, the plaintiff, accompanied by his supervisor for visitation and disability aide headed towards his ex-wife's house in a vehicle to visit his children. The vehicle was driven by his disability aide. AC ¶ 27. The vehicle was stopped 150 feet away from the ex-wife's house. AC ¶ 28. The supervisor exited the vehicle and walked to the house to initiate the visitation. *Id*.

The disability aide then drove the vehicle past the ex-wife's house as she lived on a one-way street. The vehicle was driven by at a normal speed and never came closer than 30 feet to the property line. AC ¶ 28-29. After passing by the house, the vehicle was parked 200 feet away from the house. AC ¶ 30. Plaintiff stayed in the vehicle and never came close to the ex-wife's property. AC ¶ 30.

After waiting for some time, the supervisor came back to the vehicle without any of plaintiff's children. AC ¶ 31. The supervisor explained to plaintiff that the visitation had been canceled. AC ¶ 31.

The plaintiff then asked his disability aide to drive him to the police station to make a report of his ex-wife's refusal to allow visitation. AC ¶ 32. While plaintiff was voluntarily on the way to the police station**,** the ex-wife called the police and claimed plaintiff violated the order of protection

even though he never set foot on his ex-wife's property and neither interacted with nor communicated with her. AC ¶ 33.

In response to the call by the ex-wife, Lane Schlesinger proceeded to the ex-wife's house to investigate her claims. During his conversation with the ex-wife, he received a phone call from the precinct advising that plaintiff was already there attempting to file a report about the failure to allow visitation. AC ¶ 34. Schlesinger asked the station to keep plaintiff there as he traveled back to the station to question him. By this point the plaintiff was not free to leave and Schlesinger intended to question plaintiff with respect to the possible charges of criminal contempt in the second degree in an attempt to elicit incriminating responses. AC ¶ 35. Schlesinger then arrived at the station to question plaintiff, the supervisor and his disability aide. AC ¶ 36.

Plaintiff advised Schlesinger that he suffered from a cognitive and hearing communications disability and asked for a reasonable accommodation to ensure he had effective and meaningful communications during the interrogation/questioning. Plaintiff asked for a cognitive interpreter or a specialist and a note taker, large print documents and for his disability aide to be present during questioning. AC ¶ 37. Plaintiff is a person with a disability. AC ¶ 8.

Plaintiff also showed Schlesinger his traumatic brain injury ("TBI") and implant cards from the Brain Injury Association that confirmed his need for assistance to understand what was going on. The card states on the front "I have a brain injury which may affect my behavior and ability to communicate." The back of the card sets forth symptoms of a brain injury including "Difficulty with attention, concentration, memory or understanding, confusion, disorientation, dizziness, difficulty processing and slow response time…" AC ¶ 38. All such requests were refused. AC ¶ 39.

Schlesinger had access to the 28-page custody and visitation order/agreement during questioning and kept going back and forth with Schaller on whether to actually charge plaintiff with criminal contempt in the second degree.  Schlesinger asked plaintiff if December 15, 2018 was a visitation day which he confirmed was. Schlesinger also asked the supervisor that the last visit was December 1, 2018 and that each visit was every two weeks. Without the accommodations plaintiff could not explain the custody and visitation allowances to show his actual innocence. AC ¶ 40. Plaintiff advised Schlesinger that he needed his disability aide's assistance in discussing and explaining the 28-page agreement and a note taker, which was denied. AC ¶ 41.

Schlesinger stated the agreement was the longest he had ever seen and asked the supervisor to authenticate the document, which she did. AC ¶ 42. In fact, plaintiff advised Schlesinger that he had in the vehicle documents which would further support his claims of disability. Plaintiff's request to go to the car to obtain such document was denied. Plaintiff's request to have his disability aide or supervisor to obtain the documents was denied. AC ¶ 43.

Had Schlesinger allowed plaintiff or his companions to go to the car and obtain documents, he would have been shown a March 28, 2018 Order specifically authorizing and appointing the disability aide to serve as an aide during supervised visitations. The Order would have also made clear that the ex-wife was required to consent to the presence of the disability aide, which she did agree to. The March 28, 2018 order also described the aide as an ADA aide. AC ¶ 44. Schlesinger advised plaintiff repeatedly that Schaller was speaking with the district attorney to determine if he should be charged with criminal contempt as they could not make a decision based on what was in front of them. AC ¶ 46. As such, Plaintiff was caused to be held in a detention cell for over three hours. AC ¶ 47.

5

Schlesinger then advised Schaller would reduce the $1,500 cash bail to $300 as they did not want to have to take plaintiff with all of his poor health issues to the hospital. Schlesinger stated we would never want to keep you overnight because then we have to bring you to the hospital which we do not want to do. AC ¶ 48-49. Schlesinger and Schaller then told plaintiff's disability aide to leave plaintiff at the station and to drive the supervisor home. They stated that the disability aide could just come back and pick plaintiff up. AC ¶ 50. Schlesinger and Schaller then told plaintiff that he will not get a police or complaint report for his charge against his ex-wife for not allowing visitation as it was not their problem. AC ¶ 51. However, Schlesinger admitted during his criminal trial testimony that such requests were made, and that plaintiff's health appeared to be poor and that he clearly had health issues.

On October 29, 2019 the presiding judge handling the criminal matter held that the misdemeanor complaint and the statement of the complaining witness was insufficient as a matter of law. *See* October 29, 2019 Decision and Order of Hon. Susan M. Capeci, A.J.S.C., annexed to Demirayak Decl. as Exhibit 1. The judge explained that the charging documents did not mention the defendant had been served with the order (we now know he never was). The judge went further and stated there were no factual allegations to support that plaintiff knew of the order he violated and does not even allege that plaintiff was present in court or that he signed it accepting receipt. As such the basis for Schlesinger's interactions with and arrest of plaintiff was lacking.

A superseding information was then filed on November 7, 2019 which still did not cure the defects. In fact, the superseding information is identical to the original complaint, differing only by referring to the attached order of protection. *See* November 7, 2019 Superceding Misdemeanor Information, annexed to Demirayak Decl. as Exhibit 17. The defendants would not dare claim directly in their own charging instruments that plaintiff was actually served with the order or was

6

aware of the terms, as it knew from a review of the e-justice documents that it was not served and that plaintiff was permitted to engage in the supervised visitation at the time of the incident.

Schlesinger falsely testified in his criminal trial testimony that the only documents he reviewed to determine if there was a violation of the June 27, 2017 order of protection was whatever the teletype system had provided to him. Schlesinger testified he neither saw nor asked for a copy of the specific custody and visitation agreements for which the order of protection allowed, which was false. Plaintiff attempted to explain the documents to him but could not without the proper reasonable accommodations. AC ¶ 52. A brief review of the teletype that Schlesinger had in front of him included a notation that "Note: this order has not been served." AC ¶ 53.

The teletype in front of Schlesinger also confirmed: "Except for supervised access, provided by court order entered June 13, 2018." But this language did not include any further detail and does not describe that the June 27, 2017 oral order also allowed for the supervised visitation. AC ¶ 54. Schlesinger refused to further investigate the scope of the carve out for visitation and decided to arrest and commence criminal proceedings against plaintiff in the absence of probable cause and in the face of actual innocence. Schlesinger also refused to accommodate plaintiff's disabilities while at the station . Had Schlesinger accommodated plaintiff, he would have explained the 28-page custody and visitation order which further demonstrated his actual innocence and lack of any probable cause. AC ¶ 56.

Schlesinger did not have any patience for plaintiff's disabilities and had he provided basic reasonable accommodations, he would have understood from the plaintiff that the events of December 15, 2018 were sanctioned by the court and did not constitute any criminal contempt. AC ¶ 57. This was not enough for Schlesinger as he misled the criminal jury and provided them

with false evidence by testifying that the June 27, 2017 order of protection was a "full stay away order," and was the "most stringent," which allowed for no communications or contact whatsoever. AC ¶ 59. Schlesinger knew this was false as the teletype in front of him clearly advised that the order of protection was subject to court ordered supervised visitation. Schlesinger's testimony made it appear that plaintiff's actions in attempting to have legally court sanctioned visitation was illegal when it clearly was not. Schlesinger then admitted he never saw, investigated or understood the scope of allowance for visitation. AC ¶ 60.

The County prosecutor then made maters worse by misleading the jury and advising during opening statements and summation that plaintiff was subject to a full stay away order and was not allowed for visitation. AC ¶ 61. The County prosecutor lied to the jury and stated plaintiff was actually served with the order of protection. AC ¶ 62.

Near the end of the trial, the criminal court judge expressed doubt that the prosecution had proven that plaintiff actually committed criminal contempt in the second degree, predominantly because he never entered the ex-wife's property line and did not communicate with her. As such the criminal court judge asked if the prosecution would consider adding a charge of attempted criminal contempt in the second degree, which the prosecution requested be added. AC ¶ 64. Over the defense's objection the jury was then provided with jury charges that characterized both completed criminal contempt and attempted criminal contempt as separate charges, instead of alternative charges. AC ¶ 65. The jury rendered a legally impossible verdict of guilty as to both attempted and completed criminal contempt in the second degree. AC ¶ 67.

The criminal court judge did not record the defective verdict as an acquittal or order a new trial. AC ¶ 68.

In November 2021 the prosecution finally conceded that the jury's verdict was defective and that the charge of attempted criminal contempt must be dismissed. AC ¶ 71. However, the criminal court judge refused to dismiss the charges or order a new trial. The judge has still not sentenced plaintiff and thus he has not been convicted.

With reference to the allegations herein, the defendants violated their own Manual of Procedure Article 1.01(12) by refusing to convey plaintiff to the hospital. Additionally, the Adult Arrest Procedure in the Manual of Procedure includes no guidance on how to reasonably accommodate a disabled person. AC ¶ 130. The Manual of Procedure even includes an Article on Health and Safety but no policies or procedures have been adopted or implemented relating to the reasonable accommodation of those with disabilities and communications disabilities. AC ¶ 133

The defendants also violated Article 4.01(8) of their Manual of Procedure for Orders of Protection which states "the officer shall attempt to verify the existence and terms of the order through Department records or NYSPIN. However, if the order is not produced or its existence cannot be verified, the officer should proceed as though an order of protection does not exist." AC ¶ 131.

Defendant Schaller and others refused to follow the Manual of Procedure as to Disciplinary Procedures (Article 6.01) when Schlesinger and other subordinates were improperly performing an assigned task and was not performing in accordance with department standards. AC ¶ 131.

The defendants failed to train and supervise its employees prior to and during the interactions with plaintiff in 2018. AC ¶ 134. This was not the first time and the defendants have repeatedly refused to train and supervise Schlesinger and Joseph since at least 2005.

Specifically, Schlesinger and Joseph have a history of exceeding their authority or refusing to abide by the law in the performance of their police duties. Defendants Gazzola and Schaller have direct and personal knowledge of such but took no remedial actions, demonstrating a policy of the New Rochelle Police Department, in addition to the lack of any training and direct violation of the training manuals.

On January 4, 2012 Schlesinger failed to request a Spanish speaking officer to communicate properly with an individual suspected of a crime. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 9. Gazzola was the captain at the time and was aware of and issued the reprimand letter.

On July 18, 2013 Schlesinger failed to file the appropriate charges with the district attorney's office prior to the defendant's return to court. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 10. Gazzola was the captain at the time and was aware of and issued the reprimand letter.

Myron Joseph was Schlesinger's supervisor on the date of the incident alleged herein.

On March 14, 2005 Joseph failed to take proper police action in that he attempted to legitimize the actions of a suspect and prevented an arrest. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 11. Gazzola was the captain at the time and was aware of and issued the discipline.

On November 29, 2007 Joseph was found to have failed to properly supervise two officers and allowed memo books to be improperly prepared for at least three months. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 12. Gazzola was the captain at the time and was aware of and issued the reprimand letter.

On January 9, 2008 Joseph voided a summons given to him to investigate for a complaint by Schaller in violation of the manual. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 13. Gazzola was the captain at the time and was aware of and issued the reprimand letter. Schaller was also involved in the incident and aware of Joseph's failures.

On July 20, 2008 Joseph took police action without notifying dispatch and as a result no entry was generated in the system. *See* Command Discipline Report annexed to Demirayak Decl. as Exhibit 14. Gazzola was the captain at the time and was aware of and issued the reprimand letter.

## ARGUMENT

### Motion to Dismiss Standard

It is well settled that, "For a complaint to be sufficient…it must allege facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct: A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Anderson News v. Am Media*, 680 F.3d 162 (2d Cir. 2012). Further, "In determining whether a complaint states a claim that is plausible, the court is required to proceed on the assumption that all the factual allegations are true." *Id*. Since "[P]lausibility is a standard lower than probability, a given set of facts may well be subject to diverging interpretations, each of which is plausible." *Id*. However, "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b) motion." *Id*.

The "Plaintiff is not required to prove his case at the pleading stage." *Riccuti v NYCTA*, 941 F.2d 119 (2d Cir. 1991). "In particular, a plaintiff alleging…discrimination does not need to state a prima facie case to survive a motion to dismiss so long as they plausibly allege facts that

11

give rise to an inference of…discrimination." *Padilla v. Yeshiva Univ.*, 691 Fed App'x 52 (2d Cir. 2017).

### I.    Plaintiff Has Not Been Convicted and Proceedings Have Ended in His Favor as Per Operation of New York Law Despite the Trial Judge's Refusal to Effectuate Acquittal or to Order a New Trial as the County District Attorney Agrees the Verdict was Defective as a Matter of Law

The defendants miss the mark by incorrectly arguing in their moving papers that the defendant has been "convicted" of the alleged crimes which form the basis of the false arrest and deprivation of plaintiff's rights. Pursuant to N.Y. C.P.L. 380.20, a sentence on a verdict or plea of guilty must be pronounced before a conviction may be entered. For some reason the criminal trial court did not abide by N.Y. C.P.L. 380.30(1) and did not sentence plaintiff "without unreasonable delay." As of this date defendant has still not been sentenced and thus has not been convicted. The plaintiff even requested to be sentenced in his absence, as is permitted pursuant to N.Y. C.P.L. 380.40(1), but such request as refused.

As such, pursuant to *Thompson v Clark*, 142 S. Ct. 1332, 1341 (2022), plaintiff has set forth plausible claims as "A plaintiff need only show that the criminal prosecution ended without a conviction." The Second Circuit adhered to *Thompson* in *Jessany v Jakasal*, 2022 U.S. LEXIS 14436 (2d Cir. 2022) and explained a plaintiff need only show the absence of a conviction and need not establish nor prove actual innocence or a "favorable termination." The amended complaint also plausibly alleges the lack of probable cause as explained below.

As set forth in the amended complaint and the Exhibits attached to the Declaration of Caner Demirayak, Esq., plaintiff's jury verdict was legally defective. The prosecution conceded this point. However, since the trial judge refused to order an acquittal or a new trial, let alone sentence and enter a conviction of plaintiff, he has no ability to file an appeal.    N.Y.   C.P.L.   450.10

only permits appeals from a judgment and sentence and not from a mere verdict. Plaintiff also does not qualify for any permissible basis for an appeal under N.Y. C.P.L. 450.15.

As of this date the plaintiff still has viable claims for a deprivation of his rights as he was not convicted. The fact that he has not formally prevailed in the proceedings should not materially affect the claims herein. Especially not where the district attorney conceded the verdict is legally defective.

It is beyond dispute that the plaintiff's verdict is ineffective against him and provides no defense to these claims. The verdict does not even establish probable cause. In New York it is settled that, "When a jury renders an illegal verdict the court must explain the defect or error and must direct the jury to reconsider such verdict, to resume its deliberation for such purpose, and to render a proper verdict. It further provides that if the jury persists in rendering a defective or improper verdict the court may in its discretion either order that he verdict…be recorded as an acquittal or discharge the jury and authorize the people to retry the indictment." *People v. Flowers*, 44 A.D.2d 842 (2d Dep't. 1974)

The trial judge was required to submit the charges in the alternative as greater and lesser included offenses. *See* N.Y. C.P.L. 300.50(1). Additionally, the trial judge was required to "instruct the jury that it may render a verdict of guilty with respect to any one of such offenses…but that it may not render a verdict of guilty with respect to more than one." N.Y. CPL 300.50(4) The section further provides that "A verdict of guilty of any such offense is not deemed an acquittal of any lesser offense submitted but is deemed an acquittal of every greater offense submitted."

As such the verdict was legally impossible and defective as N.Y. C.P.L. 300.50(4) requires the acquittal of each charge which cancels each other out. Since the jury found defendant guilty

13

on the lesser included, the greater offense is deemed acquitted. However, since the jury also found defendant guilty on the greater, the lesser included is not deemed acquitted.

Each of the charges submitted to the jury required a different state of mind and the issuing of a verdict of guilty on both is repugnant and inconsistent. In New York, "A verdict is inconsistent or repugnant…where the defendant is convicted of an offense containing an essential element that the jury has found the defendant did not commit." *People v. Trappier*, 87 N.Y.2d 55 (N.Y. 1995). In *People v. Tucker*, 55 N.Y.2d 1 (N.Y. 1981), the Court of Appeals of New York explained "The critical concern is that an individual not be convicted for a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all. Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it."

Had the jury found the defendant guilty of the greater or lesser and not guilty of the lesser or greater the verdict would have been fine. However, since the jury found defendant guilty on both the court was required to record the verdict as an acquittal or order a new trial immediately.

Additionally, the amended complaint plausibly alleges that plaintiff was innocent of the charges against him with respect to criminal contempt in the second degree. Like the allegations of plaintiff going to his ex-wife's house, but not setting foot on the property nor interacting with her, the court in *People v Gonzalez*, 200 A.D.2d 759 held that "It was legally insufficient to establish that defendant violated the order of protection by going to his daughter's home." Further, in *People v. Gunatilaka*, 156 Misc. 2d 958 (Crim. Ct., N.Y. Cty 1993), it was held that a defendant's actions in walking back and forth in front of the complaining witness's house was not sufficient for a violation of a vague and indefinite order of protection.

14

## II.    Plaintiff's Amended Complaint Plausibly Explains the Absence of Probable Cause and Thus Sets Forth Meritorious Causes of Action Under Section 1983

The Second Circuit has explained that "An arresting officer advised of a crime by a...victim...has probable cause to arrest...absent circumstances that raise doubts as to the victim's veracity." *Triolo v. Nassau Cnty.*, 24 F.4th 98 (2d Cir. 2022). *Triolo* has an analgous fact pattern to the case at bar. In that case the plaintiff was reporting a crime against himself when the arresting officer arrested him upon allegations of the alleged victim. The Second Circuit explained that the officer clearly "did not have reasonably trust worthly information to believe the defendant committed a crime." *See*, *Triolo*, 24 F.4th at 98. The officer was "not free to disregard plainly exculpatory evidence presented." *See id.*

Since at least 2006 it has been settled in the Second Circuit that when assessing the existence of probable cause officers "May not disregard plainly exculpatory evidence." *Panetta v. Crowley,* 460 F.3d 388 (2d Cir. 2006). Moreover, "Probable cause may be defeated if the officer deliberately disregards facts known to him which establish justification." *Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2014). At least one district court has held that "The failure to make a further inquiry when a reasonable person would have done so, may show that the conduct was unjustified." *Snyder v Fish*, 2022 U.S. Dist. LEXIS 95257 (N.D.N.Y. 2022).

Even if there is probable cause, same may be rebutted by proof of "fraud, perjury, suppression of evidence or conduct of police in bad faith." *Jessamy*, 2022 U.S. App Lexis. And, in the Second Circuit, even where there is arguable probable cause, municipalities do not receive the benefits of qualified immunity. Pursuant to this legal backdrop, plaintiff clearly sets forth plausible claims for false arrest, denial of a fair trial, malicious prosecution, failure to intervene, supervisory liability, municipal liability, retaliation, conspiracy and personal involvement. Especially, where the defendants only argument is that plaintiff's conviction (which never happened) is a defense to all

charges and established probable cause. The defendants do not even address the implication of *Thompson,* which unquestionably holds that the lack of a conviction is all that is needed to proceed on a malicious prosecution claim for the "favorable termination" prong.

As alleged in the amended complaint, plaintiff had the right to supervised visitation and was permitted incidental contact with his ex-wife to facilitate such visitation. On the date of the police encounter and arrested plaintiff was scheduled for visitation and was accompanied by his supervisor and disability aide. Plaintiff waited in the car more than 150 feet away from the ex-wife's house and never went on her property nor interacted with her. The ex-wife refused court ordered visitation and plaintiff went to the police station to report the violation.

While he was at the station the ex-wife claimed plaintiff violated the order of protection. The officers were under the unreasonably mistaken belief that plaintiff was subjected to a full stay away order. However, the officers had information in their presence that (1) plaintiff was not served with the order of protection (2) the order of protection permitted supervised visitation and (3) plaintiff had been providing exculpatory evidence and explanations for his conduct which were ignored and disregarded. The e-justice teletype system explained to the officers that plaintiff was permitted visitation, and such innocent conduct was ignored. After having wrongfully refused visitation the police should have doubted the veracity of the alleged victim.

The lack of probable cause and insufficiency of the claim was so profound that the presiding judge held that the misdemeanor complaint prepared by Lane Schlesinger was legally insufficient and subject to dismissal. The defendants were then permitted to amend but merely attached the order of protection to the misdemeanor complaint and made no substantive changes. That order of protection was false as it wrongly stated plaintiff was served in court (which we later

16

learned that he never was, as per the e-justice document) and it did not specify the clearly court sanctioned and innocent conduct plaintiff engaged in, i.e., the allowed supervised visitation.

Lane Schlesinger testified at trial falsely that plaintiff was subjected to a full stay away order and that it was the most stringent he had ever seen. All the while he knew plaintiff was permitted supervised visitation or blatantly disregarded knowledge of such innocent behavior. These facts alone establish plausible claims for false arrest, a denial of a fair trial and malicious prosecution. It is thus no surprise that the prosecution conceded the verdict was legally defective.

The amended complaint also establishes plausibly the lack of any arguable probable cause as no officer would reasonably be able to allege that plaintiff had committed any crimes by attempting to secure supervised visitation and not so much as going near or interacting with his ex-wife. Lane Schlesinger's supervisor Myron Joseph failed to take any actions to rectify the misconduct of the officer in his command, Schlesinger. Schaller and Gazzola similarly failed. Instead of phoning the district attorney to help them justify such an unlawful arrest, the individual defendants should have just let plaintiff go without any charges. However, such defendants had ever intent to charge plaintiff with something that day, and clearly conspired to do so. The defendants certainly plausibly failed to accommodate plaintiff in the police encounters and used that failure to further a criminal case against a plaintiff who was not served with a written order of protection. Gazzola and Schaller are responsible as a supervisors since they were aware of prior misconduct by their subordinates.

Even if there was probable cause, same would be no defense to the denial of a fair trial claim. *See Smalls v. Collins*, 10 F.4tf 117 (2d Cir. 2021); *Townsend v City of New York*, 2022 U.S. Dist. LEXIS 72776, 2022 WL 1446532 (S.D.N.Y. 2022). As alleged in the AC, Schlesinger lied to the jury and advised plaintiff was subjected to a full stay away. Additionally, the jury received

in evidence the order of protection, which falsely stated plaintiff was served with the order when he was not. We did not find out about the lack of service until after the trial, even if the court clerk testified at trial he only assumed plaintiff had been served.

As set forth in the amended complaint and in the attached command discipline reports, the plaintiff has also plausibly alleged a policy or practice of the City of New Rochelle, sufficient to subject it to liability for the actions or inactions of its officers and employees. Schlesinger had a prior instance in not accommodating a Spanish speaking person which was never rectified. Joseph had prior instances of misconduct as well. Nevertheless the department lacks proper training protocols and the individual defendants even violated specific rules in their interactions with plaintiff. At this stage, the *Monell* claims must stand as they are plausibly alleged.

Furthermore, plaintiff's detailed factual allegations in the AC set forth plausible claims for retaliation and conspiracy in violation of section 1983.

Accordingly, when considering the facts as true and viewing all inferences in plaintiff's favor he sets forth plausible claims for false arrest, denial of a fair trial, malicious prosecution, conspiracy, retaliation, supervisory and municipal liability. The defendants have not supported their defense of "probable cause" or a conviction with any foundation or basis.

## III.    Plaintiff's Amended Complaint Sets Forth Plausible Claims for Discrimination by the County in Violation of the Rehabilitation Act and Americans with Disabilities Act

The County shockingly misrepresents the holding in the Second Circuit's decision of *Fishman v. Office of Court Adm. N.Y. State Courts*, 2021 U.S. App LEXIS 29233 (2d Cir. 2021). In that decision the Second Circuit did not render a holding as to whether or not plaintiff was a qualified individual with a disability. In fact, the Second Circuit granted plaintiff reasonable

accommodations for his disability during oral argument and the order to that effect is annexed to the Declaration of Caner Demirayak.

In this Circuit, "To establish a violation under section 504 or Title II, a plaintiff must demonstrate that (1) he is a qualified individual with a disability, (2) the defendant is subject to one of the acts, and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of disability." *Disabled in Action v. Bd. of Elections*, 752 F.3d at 196—97. The Second Circuit has made clear that discrimination under these statutes may exist where the government fails to provide a plaintiff meaningful access. *Id* at 197. Additionally, "It is well settled that a request for accommodation is not required where the disabled individual's need for an accommodation is obvious." *Brown v. County of Nassau*, 736 F. Supp. 2d 602 (E.D.N.Y. 2016)

In *Stamm v. New York City Transit Auth.*, 2013 U.S. Dist. LEXIS 8534 (E.D.N.Y. 2013), the court held "A reasonable jury could find the evidence adduced by Plaintiff sufficient to establish deliberate indifference." The Court in *Stamm* focused on the evidence that "high-ranking…officials were well aware of prior incidents" and that the employees were ignorant of or confused of the policies to apply.

As such a jury might find that the defendants officials and employees observed plaintiff having difficulty understanding or participating in the trial and defense of his case, had the authority to provide larger font documents or reasonably accommodate plaintiff, and deliberately failed to do so notwithstanding repeated notices of prior issues, including other entities, including the trial judge himself accommodating the plaintiff, partially. *Biondo v. Kaleida Health*, 935 F.3d 68 (2d Cir. 2019); *see also Fantasia v. Rochelle*, 2022 U.S. Dist. LEXIS 18058 (S.D.N.Y. 2022).

In a somewhat similar case, a district judge explained "it would be preposterous to believe that given the diversity of the population of the City of New York [it] did not know full well that its [employees] would encounter persons with hearing impairments…and that some of those people would need accommodation." *Felix v. City of New York*, 121 F. Supp. 3d 354 (S.D.N.Y. 2015). Here, how could the defendants not be aware of plaintiff's possible need for accommodations for his cognitive disabilities?

As to deliberate indifference, the Second Circuit held previously that "a plaintiff could establish deliberate indifference that showed: the [entity] knew of a particular risk and had a policy in place to address that risk; a single incident altered the policymaker to deficiencies in the policy; and the policymaker failed to take affirmative steps to cure the deficiencies. *Cash v County of Erie*, 654 F.3d 324 (2d Cir. 2011); *see also Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004).

Here, the plaintiff has plausibly alleged a denial of meaningful access by the county's failure to provide discovery to plaintiff in an accessible format. Plaintiff had previously been granted accommodations such as large print font for documents. Plaintiff has alleged plausibly that these denials have affected his ability to meaningfully participate in his defense. Intentional conduct or discriminatory animus is not necessary to prove such claims. Plaintiff may instead establish such claims by proof of deliberate indifference. The AC plausibly alleges deliberate indifference. Especially where the presiding criminal court judge himself granted plaintiff accommodations during the trial (but only the accommodation of morning only for court) and then offered the accommodation of providing communications accommodations, i.e., CART after the trial and for sentencing.

Finally, collateral estoppel does not apply from the related dismissed case as the same claims and same parties were not involved. The undersigned advised plaintiff not to amend or appeal the decision. The county defendants must amend their motion papers to remove the incorrect characterization of the holding in *Fishman*, as all parties must know by now that it is not disputed plaintiff is disabled.

**IV.    Plaintiff Properly Served Defendants Schlesinger and Joseph and the Motion to Dismiss for Lack of Personal Jurisdiction is Premature Pending the Court's Determination on the Motion to Extend the Time to Serve Such Defendants, Who Were Served One Day After Expiration of the Time to Serve After Four Attempts Were Unsuccessful on Their Places of Residence**

As set forth in plaintiff's motion seeking an extension of time to serve defendants Schlesinger and Joseph, numerous attempts were made to serve such defendants at their residences. The defendants absconded and refused service. The plaintiff then executed service on such defendants at their place of employment one day late. As such, there is personal jurisdiction over such defendants and the court should grant the motion for an extension upon good cause shown or in the exercise of discretion.

Plaintiff served the defendants properly via resort to N.Y. C.P.L.R. 308, which allows service on a person of suitable age and discretion at a defendants place of residence or employment and then mailing to such addresses. The person of suitable age and discretion need not have authority or agency to accept service on behalf of the individuals, so long as they are of suitable age and discretion, i.e., 18 or over and not incompetent. If the court alternatively orders service on the defendants by other means in response to plaintiff's pending motion, personal jurisdiction will otherwise be obtained.

## **CONCLUSION**

Based on the foregoing, the declaration of Caner Demirayak in opposition and the exhibits annexed thereto, the motions to dismiss must be denied in their entirety.