COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                      -against-

**MARC FISHMAN,**

                             Defendants.
-------------------------------------------------------------------X
STATE OF NEW YORK   )
                                : ss.:
COUNTY OF WESTCHESTER)

AFFIRMATION IN
OPPOSITION

Supreme Court
Docket No.
6293M-2018

Return Date:
November 12, 2021

(Zuckerman, J.)

      **JOYCE V. MILLER**, states the following under the penalties of perjury: that she is an Assistant District Attorney of Westchester County and submits this affirmation in opposition to defendant's motion to set aside the verdict pursuant to CPL 330.30 (1) and 330.30 (3). This affirmation is made upon information and belief, the sources of which are the file of this matter maintained by the Office of the District Attorney, and conversations with and information provided by Assistant District Attorney Amit Parab (the trial prosecutor).

      The following facts are relevant to the disposition of the instant motion:

      On June 27, 2017, the Honorable Michelle Schauer of Westchester County Family Court issued a permanent order of protection against defendant, preventing defendant from having any contact or communication with the victim, his ex-wife.

      On June 13, 2018, the Family Court gave the victim sole legal and physical custody of the children she shared with defendant. Per the court's decision, defendant was allowed to have

1

supervised visits with the children every other Saturday that would be supervised by social worker Ann Elliot. The visits were scheduled for every other Saturday per month from 10:00a.m. to 5:00p.m.. Ms. Elliot's responsibility was to supervise the defendant's visits with the children and she was the liason by which all visitation arrangements were to be made.

On December 14, 2018, Jennifer Solomon notified Ms. Elliot that all three children did not wish to proceed with the supervised visitation that was scheduled with the defendant and Ms. Elliot for the next day, Saturday, December 15, 2018. Jennifer Solomon later notified Ms. Elliot that though the children did not wish to visit with their father, Mr. Fishman was still welcome to come to the hockey rink on December 15, 2018, to watch their son Jonah play. Ms. Elliot notified the defendant of the change in plans and he agreed to watch Jonah play hockey at the hockey rink in New Rochelle.

Accordingly, on December 15, 2018, the defendant and Ms. Elliot, along with the defendant's fiancé, set out to watch the defendant's son, Jonah, play at the hockey rink. The defendant and his fiancé picked up Ms. Elliot at her home. At some point, Ms. Elliot observed that the defendant was not driving in the direction of the hockey rink, but were heading towards Ms. Solomon's home instead. Ms. Elliot told the defendant that he could not just go to Ms. Solomon's home as that would be a direct violation of the order of protection that had been in place that had prohibited the defendant from going to Ms. Solomon's home. The defendant told Ms. Elliot that he had a scheduled visit with his children and he would be going to pick them up so that he could see them for the visit as he had not seen them in two prior visits and this was a holiday. Despite Ms. Elliot advising the defendant that this would violate the present order of protection, the defendant insisted that he was going to see his kids and continued to drive to their home.

2

Once the defendant was near Ms. Solomon's home, he parked a few houses away from where Ms. Solomon lived. Ms. Elliot told the defendant that they should go to the hockey rink as that was the plan that Ms. Solomon had agreed on the day before. While Ms. Elliot spoke to the defendant, Ms. Elliot observed Ms. Solomon exit her house to retrieve something from her vehicle. Ms. Elliot decided that she would go and speak with Ms. Solomon as she wanted to tell her about the present situation and also show Ms. Solomon some texts that the defendant had been sending to her daughter that was also of concern to Ms. Elliot.

Ms. Elliot approached Ms. Solomon who was now on the front porch of her home and she started to share with Ms. Solomon some of the text messages that were concerning to her. While Ms. Elliot spoke to Ms. Solomon outside on the front porch, Ms. Solomon observed the defendant driving past her home, all the while glaring and staring at the victim. The defendant then parked his vehicle near to Ms. Solomon's home and approached their son, Jonah, who was outside playing in the front yard of Ms. Solomon's home. Ms. Elliot and Ms. Solomon tried to prevent the defendant from speaking with Jonah. Ms. Elliot told the defendant to get back into his vehicle. The defendant ignored Ms. Elliot and continued to speak with Jonah. Ms. Elliot again told the defendant to get back into his car. Ms. Solomon was able to get their son back into her home. The defendant then drove to the New Rochelle Police Department and stated that he wanted to document that his ex-wife violated the custody order and that he was being deprived of his rights.

Following investigation, the defendant was placed into custody and charged with one count of criminal contempt in the second degree.

On December 17, 2018, defendant was arraigned in New Rochelle City Court, and plead not guilty (Rice, J.).

On December 21, 2018, the New Rochelle City Court transferred the case to the Integrated Domestic Violence Part of the Supreme Court in Westchester County (Capeci, J.).

On November 14, 2019, a superseding misdemeanor information was filed in the Integrated Domestic Violence Part, and defendant was arraigned thereon and entered a plea of not guilty (Capeci, J.).

On January 6, 2020, a jury trial commenced before this Court. After opening statements by the parties, the People began presenting evidence of defendant's guilt.

The evidence of defendant's guilt was overwhelming. It included testimony by social worker Ann Elliot, who testified that she was ordered by the Family Court to supervise all interactions defendant had with his children. She personally witnessed defendant's violation of the order of protection and testified to that effect, including that she and defendant had discussed the order of protection while en route to the victim's house because defendant was no allowed to go there.

The People also presented evidence that defendant was in court when the order was issued, and that the terms of the order were explained to him. These facts were established by the testimony of the court clerk, an uninterested witness, who not only was present when the order was issued, but also was the one who prepared the order, and who took contemporaneous notes about who was present, and what was said. The order itself, which was admitted into evidence, notes that defendant was present when it was issued. The clerk testified that the order was then personally served onto the defendant outside of the courtroom by court officers. Additionally, the victim testified that she was also present in court when defendant was informed of the issuance of the order and its terms. The People also presented evidence of defendant's past violations of the same order of protection and the Family Court's findings that defendant's claimed ignorance of its

4

terms was an attempt to manipulate the court's specific directives. Lastly, defendant's only witness, his fiancé, also testified that defendant knew of the existence of this protective order and also testified that the defendant was present when the protective order was issued. Also relevant to defendant's claims is Police Officer Lane Schlesinger's testimony at trial. Upon information and belief, Officer Schlesinger testified that, defendant at the stationhouse, he talked to defendant, who told him his version of events, and in that version, defendant admitted there was an order of protection that barred him from the victim and her house. Defendant further stated, in sum and substance: he was under the impression that because the social worker was with him, that he could go to the house. The officer also interviewed the social worker who confirmed to the officer that the scheduled visitation had been cancelled.

On January 27, 2020, following the conclusion of the People's case, defendant moved for a trial order of dismissal, arguing the People had failed to present a *prima facie* case that proved that the defendant intentionally violated the order of protection and that defendant had gone to the home of the victim. The Court recognized that there was no testimony adduced at trial that the defendant actually crossed the property line of the victim's home, and opined that it was troublesome that the order of protection in question failed to specify an actual distance requirement. The Court reserved decision on the trial order of dismissal until the next day.

After additional oral arguments by both sides on January 28, 2020, the Court denied defendant's motion for a trial order of dismissal. The Court also decided to submit an additional count of attempted criminal contempt in the second degree (Penal Law §§ 110/215.50 [3]) to the jury. Following closing arguments by both sides, the Court charged the jury with respect to both counts, specifically stating that the lesser-included count of attempted criminal contempt in the second degree was not to be considered in the alternative. The verdict sheet was amended to reflect

the additional charge, and the jury was subsequently instructed to consider the additional second charge as part of its deliberations. Later that same day, the jury returned a verdict, finding defendant guilty of both criminal contempt in the second degree (Penal Law § 215.50 [3]), and attempted criminal contempt in the second degree (Penal Law §§ 110/215.50 [3]).

Sentencing in this matter was set for September 23, 2020 in this Court. However, on August 26, 2020, the People received defendant's first *pro se* motion to set aside the jury's guilty verdict, pursuant to CPL 330.30 (3) on the ground that defendant was now in possession of newly-discovered evidence which he claimed could have been used to impeach the arresting officer's testimony, and would have changed the outcome of the trial. That motion was subsequently denied by the Court and sentencing was scheduled for October 28, 2020. The sentencing never took place on October 28, 2020. Instead, the defendant's sentence kept getting adjourned at defendant's request, citing hospitalizations, medical issues, and then upon defendant's filing of two additional *pro se* CPL § 330.30 motions by defendant. The Court orally denied those two *pro se* motions and set the defendant's sentencing for October 4, 2021.

On October 4, 2021, defendant retained a new attorney, Caner Demiriyak, Esq., who subsequently filed the instant CPL § 330.30 motion.

WHEREFORE, for the reasons more fully set forth in the annexed Memorandum of Law, defendant's motion to set aside the verdict should be denied except as set forth therein.

Affirmed to be True.
November 12, 2021

_____
JOYCE V. MILLER
Assistant District Attorney

## MEMORANDUM OF LAW

### POINT I

### DEFENDANT'S MOTION TO SET ASIDE THE VERDICT AS AGAINST THE WEIGHT OF THE EVIDENCE SHOULD BE SUMMARILY DENIED.

Defendant first moves to set aside the verdict pursuant to CPL 330.30 (1), based on a claim that the verdict was against the weight of the evidence. For the reasons set forth below, defendant's motion should be summarily denied.

A trial court's authority to set aside or modify a jury's verdict is limited to those grounds set forth in the Criminal Procedure Law § 330.30 (*People v Carter*, 63 NY2d 530, 536 [1984]; *see also People v Rivera*, 108 AD2d 829, 830 [2d Dept 1985] [noting that a court's power to grant a new trial based upon newly discovered evidence is "purely statutory"]). Pursuant to CPL 330.30 (1), a trial court may set aside a conviction only upon a "ground appearing in the record which, if raised *upon an appeal* from a prospective judgment of conviction, would require a reversal or modification of the judgment *as a matter of law by an appellate court*" (CPL 330.30 [1] [emphasis added]). Pivotally, this statutory provision prohibits any action by a trial court unless a defendant's CPL § 330.30 (1) claim involves: first, an issue *of law* (*People v Carter*, 63 NY2d at 537-537 [emphasis added]); second, an issue of law that has been preserved for appellate review (*People v Thomas*, 8 AD3d 303 [2d Dept 2004]; *People v Amato*, 238 AD2d 432, 433 [2d Dept 1997]); and third, an issue of law based upon facts appearing on the face of the record (*People v Wolf*, 98 NY2d 105, 118-119 [2002]; *People v Nichols*, 85 AD3d 508, 509 [2d Dept 2006]).

While it is true that intermediate appellate courts are empowered with factual review of the evidence presented at trial, this Court is not an intermediate appellate court, and CPL 330.30 (1) certainly provides no such factual review (*People v Carter*, 63 NY2d 530, 536 [1984] [trial

8

judges not authorized to set aside verdicts as against weight of the evidence]; *People v Land*, 198 AD 2d 438, 439 [2d Dept 1993] [citing *Carter*]). Given these requirements, there is no allowance in the statute for a court to order a post-verdict, fact-finding hearing in conjunction with the determination of a motion made pursuant to CPL 330.30 (1) (CPL 330.40 [2]). It is defendant's burden to establish grounds on which the conviction, if appealed from, would have to be reversed as a matter of law (*People v Zipfel*, 51 AD2d 979 [2d Dept 1976]).

Notably, despite defendant's labeling his claim one of weight, he does not dispute any of the evidence presented by the People. The essence of his argument—that the People did not establish his guilt—is in fact a sufficiency claim, which is belied by the facts adduced at trial. As defendant has failed to meet his burden of establishing any error of law appearing in the record which would require reversal on appeal to support his sufficiency claim, his motion should be denied.

To be found guilty of criminal contempt in the second degree (Penal Law § 215.50 [3]), the People must prove that defendant intentionally disobeyed the mandate of a court (*id.*). For it to be an intentional violation, a defendant must be aware of the order. There is no requirement that defendant be <u>served</u> with the order, merely that he knows of it (*People v Phoenix*, 115 AD3d 1058 [3d Dept 2014] [conviction for criminal contempt supported by evidence that order of protection was issued in court, in defendant's presence and was signed by defendant]; *Matter of Holtzman v Beatty*, 97 AD2d 79 [2d Dept 1983] [*quoting, Matter of Rumaker*, 646 F2d 870, 872 [5th Cir 1980]; *People v Nawaz*, 183 Misc2d 195 [1999]). While showing that defendant was served with an order of protection is one way of proving his awareness of it, it is not the only way.

In the instant trial, there was ample evidence that defendant knew of the court order, including testimony at trial by the court clerk that defendant was present in the courtroom when

9

the order of protection was issued and explained to him. The clerk went on to testify that the defendant was served, just not in the court room immediately after it was issued (*see* January 27, 2020 transcript at p.28, lines 14 and 19). Additionally, both the social worker and the arresting officer testified that defendant was aware of the order. The social worker testified that the defendant continued to drive to Ms. Solomon's house even after she told him that this would be in violation of the order of protection. The arresting officer testified that defendant admitted he was aware of the order of protection. Additionally, defendant's own witness at trial, his fiancé, testified, that defendant had knowledge of the order of protection. There was an abundance of proof at trial of defendant's awareness of the order. Thus, the fact that the defendant as not served with the order while he was in a courtroom has no bearing on the claim that he lacked the knowledge of the order's existence.

Not only was there ample testimony introduced by both the People, and defendant, that defendant knew about the order of protection, but that defendant then violated said order was demonstrated by the overwhelming evidence at trial that included the unimpeached testimony from Jennifer Solomon and the social worker, Ann Elliot, both of whom described how defendant came to Jennifer Solomon's home. First, the jury heard from Jennifer Solomon who described how defendant drove by her house in a slow and eerie manner while she was speaking with the social worker. She testified how defendant had not been to her home in years, and how she felt harassed and intimidated by defendant and the way in which he drove by and glared at her (*see* January 24, 2020 transcript at p. 77). She also testified how defendant pulled up to her driveway via an adjacent driveway and called out to their son, Jonah, who had been playing in the front yard. She testified how she ran to Jonah and brought him inside and then fearfully called the police to report the violation of the order of protection (January 24, 2020 transcript at p. 78).

Ann Elliott then testified how the plan was to go with defendant to watch the oldest son, Jonah, at a hockey rink on that day. She testified how she became concerned when defendant opted to drive to the rink through a residential neighborhood in New Rochelle, near where Jennifer Solomon lived. Because of this, she reminded defendant that he was not to go to Jennifer Solomon's house, as it would be a violation of the order of protection (January 27, 2020 transcript at pp. 11-12). She testified how, in response to that warning, defendant continued to drive to Ms. Solomon's home. She testified how the defendant initially parked his car two to three houses away from Ms. Solomon's home but then later drove by Ms. Solomon's home and parked nearby so that he could physically approach their son, Jonah, who had been playing in the front yard. She testified how she told the defendant two times to go back to his car as this was a violation of the order of protection.

In light of all this testimony as well as the other testimony adduced at trial from the court clerk who prepared the order of protection and the police officer who investigated the case, there is no doubt, as the jury found, that that defendant was both aware of the order of protection and the conduct it prohibited, and acted in direct defiance of it by his actions on December 15, 2018. Thus, as the evidence at trial supports the jury's determination of defendant's guilt his motion to set aside the verdict should be summarily denied.

## POINT II

### DEFENDANT'S MOTION TO SET ASIDE THE VERDICT ALLEGING PROSECUTORIAL MISCONDUCT SHOULD BE SUMMARILY DENIED.

Defendant next argues that the verdict in the instant trial should be set aside due to harmful and false statements that the prosecutor made during his opening and closing arguments at trial (cite?). Specifically, the defendant claims that the prosecutor misled the jury by advising them that defendant was served with the order of protection, which defendant claims he was not. Additionally, defendant claims that the prosecutor misled the jury when he failed to advise the jury that defendant had been given visitation with the children.

First, with regard to defendant's claims of prosecutorial misconduct during his opening and closing statement, defendant again failed to demonstrate that his claim was preserved, as defendant's counsel did not object to any of these statements at the time they were being made. In point of fact, he would be required to have articulated the precise argument he makes now in order to preserve the issue for appellate review (*People v Grossfeld*, 216 AD2d 331, 332 [2d Dept 1995], *lv denied* 86 NY2d 735).

Second, as defendant's claim of prosecutorial misconduct during the prosecutor's opening and closing statements is based largely on facts *dehors* the record at trial, it is not cognizable under CPL 330.30 (1). The prosecutor's remarks are consistent with the evidence that the People intended to present at trial, that included the fact that defendant was physically served with the order of protection. This was not a false statement but a true fact that was actually testified to by the clerk of the court, who stated under oath that he prepared the order of protection which noted that the defendant was present in the courtroom when it was issued and that he had knowledge that said order was personally served on the defendant outside of the courtroom by court officers

following the court proceeding. Similarly, the issue surrounding defendant's visitation with the children was established by the testimony of both Jennifer Solomon and Ann Elliott, both of whom described to the jury what the terms of that visitation entailed (*see* January 24, 2020 transcript at p. 74, and January 27, 2020 transcript at pp. 7-9).

Therefore, defendant's motion to set aside the verdict and for a new trial on the basis of prosecutorial misconduct should be summarily denied.

## POINT III

### WHILE THE VERDICT IS NOT REPUGNANT, DISMISSAL OF THE LESSER-INCLUDED ATTEMPTED CRIMINAL CONTEMPT IN THE SECOND DEGREE CHARGE IS WARRANTED.

Defendant also moves to set aside the verdict pursuant to CPL § 330.30, arguing that the jury's verdict convicting him of both criminal contempt in the second degree and attempted criminal contempt in the second degree is repugnant, defective, and illegal. Specifically, defendant argues the Court erred in failing to advise the jury to consider the lesser-included only in the alternative, and in allowing the jury to find him guilty of both the greater and lesser-included charge.

To start, although defendant failed to preserve his repugnancy claim (*see People v Satloff*, 56 NY2d 745 [1982]; *People v Stahl*, 53 NY2d 1048 [1981]), the verdict convicting defendant of criminal contempt in the second degree and attempted criminal contempt in the second degree is not repugnant, which requires legal impossibility for a jury to have convicted defendant on one count but not another (CPL 300.30 [5]; *People v Loughlin*, 76 NY2d 804 [1990]; *People v Tucker*, 55 NY2d 1 [1981]).

Here, the two counts submitted to the jury are inclusory concurrent counts, since attempted criminal contempt in the second degree is a lesser-included offense of criminal contempt in the second degree (CPL 300.30 [4]; CPL 1.20 [37]). Accordingly, as set forth in the Criminal Procedure Law, they should have been submitted in the alternative, with an instruction that the jury could not render a guilty verdict with respect to more than one, which did not occur here (CPL 300.40 [3] [b]; 300.50 [4]).[1] Nevertheless, as the counts submitted to the jury were

---

[1] The return of guilty verdicts on both counts here was legally defective, which required reinstruction to and reconsideration by the jury (CPL 310.50 [2]).

14

inclusory concurrent counts, the guilty verdict of the greater count—criminal contempt in the second degree—is deemed a dismissal of the lesser count submitted (CPL 300.40 [3] [b]). Therefore, the appropriate remedy is dismissal of the attempted criminal contempt in the second degree count by this Court (CPL 300.40 [3] [b]; *People v Lee*, 39 NY2d 388, 390 [1976]; *People v Garofalo*, 192 AD2d 619, 619 [2d Dept 1993]).

## CONCLUSION

For the foregoing reasons, defendant's motion to set aside the verdict should be denied except as set forth herein.

Respectfully Submitted,

MIRIAM E. ROCAH

District Attorney of Westchester County
Westchester County Courthouse
111 Dr. Martin Luther King, Jr., Blvd.
White Plains, New York 10601
(914) 995-3489

JOYCE V. MILLER
Assistant District Attorney