UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC H. FISHMAN, | |
| Plaintiff, | |
| -against- | |
| CITY OF NEW ROCHELLE, POLICE OFFICER LANE SCHLESINGER SHIELD # 1058, JOSEPH F. SCHALLER, ROBERT GAZZOLA, IN HIS OFFICIAL CAPACITY AS POLICE COMMISSIONER OF THE CITY OF NEW ROCHELLE POLICE DEPARTMENT, SERGEANT MYRON JOSEPH SHIELD # 18, & COUNTY OF WESTCHESTER, | 19-cv-00265 (NSR) |
| | ORDER & OPINION |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/2023

NELSON S. ROMÁN, United States District Judge:

Plaintiff Marc Fishman ("Plaintiff"), by his attorneys, brings the instant amended action for alleged violations of: Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 701, 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and 42 U.S.C. § 1983 ("Section 1983") for alleged constitutional violations of the First, Fourth, and Fourteenth Amendments.  (*See* ECF No. 52 ("Am Compl.").)  Plaintiff brings this action against the County of Westchester ("Westchester County") and the City of New Rochelle, Police Officer Lane Schlesinger (Shield 1058), Chief of Police Joseph Schaller, Police Commissioner Robert Gazzola, and Police Sergeant Myron Joseph (Shield 18) (together, the "City Defendants").[1]

Presently before the Court are Westchester County's and the City Defendants' motions to dismiss the Amended Complaint (ECF Nos. 96 and 99), as well as Plaintiff's motion for an extension of time to effect service or process. (ECF No. 86.)  For the

---

[1] Robert Gazolla is sued in his official capacity.  (Am. Compl. ¶ 14.)

following reasons, the Court GRANTS both Motions to Dismiss, as well as Plaintiff's motion for an extension of time to effect service or process.[2]

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint, the opposition to the motions to dismiss (ECF no. 103 ("Pl.'s Opp.")), and the documents incorporated by reference or integral to the Amended Complaint,[3] and are accepted as true for purposes of this motion.

Plaintiff suffers from cognitive and hearing disabilities which substantially limit his hearing (tinnitus), memory, verbal functioning, verbal learning, and which cause him difficulties in processing information presented to him verbally.  (Am. Compl. ¶ 8.)  He carries a traumatic brain injury ("TBI") and implant card from the Brain Injury Association that indicates his need for assistance.  (Id. ¶ 38.)  The card states on the front, "I have a brain injury which may affect my behavior and ability to communicate."  (Id.)  The back of the card sets forth symptoms of a brain injury including "[d]ifficulty with attention, concentration, memory or understanding, confusion, disorientation, dizziness, difficulty processing and slow response time . . . ." (Id.)

### I.   Family Court Proceedings

On June 21, 2017, Plaintiff had a hearing before the Westchester County Family Court, and the family court judge accepted Plaintiff's statements that he was a disabled individual.  (Id. ¶ 8.)  Plaintiff requested numerous reasonable accommodations for his communication disabilities, including a request for a note taker, large print documents and orders, the use of a disability

---

[2]      In the Court's October 19, 2021 Order and Opinion (ECF No. 38.), the Court (i) held that Plaintiff's original complaint (ECF No. 2.) stated a plausible claim for relief under the ADA and RA against the City of New Rochelle but not against Westchester County (id. at 18); (ii) dismissed the Section 1983 claims and analogous state law claims for negligence, false arrest, and malicious prosecution against all Defendants (id. at 20); (iii) dismissed the individual City Defendants on the basis of insufficiency of service of process (id. at 11–12); and (iv) provided Plaintiff an opportunity to file and serve an amended complaint (id. at 20–21).

[3]      As discussed infra, the parties filed exhibits with their papers.  The Court may review only those exhibits it finds to be integral to the Complaint or incorporated by reference.

aide/advocate, and real time computer accessed transcription service. (*Id.* ¶ 22.) The family court judge did not accommodate the disability requests. (*Id.*) Plaintiff avers that as a result, he could not comprehend the order of protection that the judge issued orally at a subsequent hearing on June 27, 2017. (*Id.* ¶¶ 8, 23.) The order of protection directed Plaintiff to stay away from and not have any communication or contact with his ex-wife, though it allowed Plaintiff to have supervised visitation with his children. (*Id.* ¶ 23.) The family court judge read out the oral order all while Plaintiff was surrounded by five court officers and was about to be arrested. (*Id.* ¶ 24.) The five officers' walkie talkies were loud and kept going off while the judge read the order to Plaintiff. (*Id.* ¶ 24.) Plaintiff's disability aide, Donna Drumm, Esq., who was present during the June 27, 2017 proceeding, stated in an affirmation submitted to the criminal court that it was "[u]nlikely he was able to comprehend the order of protection." (*Id.* ¶ 24.) Plaintiff claims he was never served with a written order of protection. (*Id* ¶ 8.)

## II.   December 15, 2018 Events

Plaintiff was scheduled for supervised visitation with his children on December 15, 2018. (*Id* ¶ 27.) On December 14, 2018, the ex-wife had confirmed the visitation with the supervisor, Ann Elliot. (*Id.* ¶¶ 25–26.)

On December 15, 2018, Plaintiff, accompanied by his supervisor for visitation and disability aide, headed towards his ex-wife's house in a vehicle to visit his children. (*Id* ¶ 27.) The vehicle was driven by his disability aide. (*Id* ¶ 27.) The vehicle was stopped 150 feet away from the ex-wife's house. (*Id* ¶ 28.) The supervisor exited the vehicle and walked to the house to initiate the visitation. (*Id.*)

The disability aide then drove the vehicle past the ex-wife's house as she lived on a one-way street. (*Id* ¶ 29.) The vehicle was driven by at a normal speed and never came closer than

30 feet to the property line. (*Id*.)  After passing by the house, the vehicle was parked 200 feet away from the house, and Plaintiff stayed in the vehicle.  (*Id* ¶ 30.) After waiting for some time, the supervisor came back to the vehicle and explained to Plaintiff that the ex-wife cancelled the visitation.  (*Id* ¶ 31.)[4]

Plaintiff then asked his disability aide to drive him to the police station to make a report of his ex-wife's refusal to allow visitation. (*Id* ¶ 32.)  While Plaintiff was heading to the police station, the ex-wife called the police and claimed that Plaintiff violated the order of protection.  (*Id* ¶ 33.)

In response to the call by the ex-wife, Officer Schlesinger proceeded to the ex-wife's house to investigate her claims. (*Id* ¶ 34.)    During Schlesinger's conversation with the ex-wife, he received a phone call from the precinct advising that Plaintiff was already there attempting to file a report about the failure to allow visitation. (*Id* ¶ 34.)  Schlesinger asked the station to keep Plaintiff there as he traveled back to the station to question him. (*Id* ¶ 35.)  Plaintiff alleges that by this point, he was not free to leave and Schlesinger intended to question plaintiff with respect to the possible charges of criminal contempt in the second degree in an attempt to elicit incriminating responses. (*Id*.) Schlesinger then arrived at the station to question plaintiff, the supervisor and his disability aide.  (*Id* ¶ 36.)

At the police station, Plaintiff advised Schlesinger that he suffered from a cognitive and hearing communications disability and asked for a reasonable accommodation to ensure he had effective and meaningful communications during the interrogation/questioning.  (*Id* ¶ 37.) Plaintiff asked for a cognitive interpreter or a specialist and a note taker, large print documents and

---

[4]    While the Court accepts Plaintiff's allegations in the amended complaint as true for purposes of this motion, the Court notes that the ex-wife's witness statement to the police alleges that after she told Plaintiff's supervisor that Plaintiff had to leave, Plaintiff got out of the car, grabbed a hockey stick, and ran to the front of the house, and the ex-wife ran inside the house and contacted the New Rochelle Police Department.  (*See* ECF No. 104-3, Demiryak Decl., Exh. 3.)

for his disability aide to be present during questioning.  (*Id* ¶ 37.)  Plaintiff showed Schlesinger his traumatic brain injury and implant cards from the Brain Injury association.  (*Id* ¶ 38.)  Plaintiff's requests were refused.  (*Id* ¶ 39.)

Schlesinger had access to Plaintiff's 28-page custody and visitation order during questioning and kept going back and forth with Schaller on whether to actually charge Plaintiff with criminal contempt in the second degree.  (*Id* ¶ 40.)  Schlesinger asked Plaintiff if December 15, 2018 was a visitation day, which he confirmed was.  (*Id*.)  Plaintiff advised Schlesinger that he needed his disability aide's assistance in discussing and explaining the 28-page agreement and a note taker, which request was denied.  (*Id* ¶ 41.)

Schlesinger stated the agreement was the longest he had ever seen and asked the supervisor to authenticate the document, which she did.  (*Id* ¶ 42.)  Plaintiff advised Schlesinger that he had in the vehicle documents which would further support his claims of disability. (*Id* ¶ 43.)  Plaintiff's request to go to the car to obtain such document was denied.  (*Id*.)  Plaintiff's request to have his disability aide or supervisor to obtain the documents was denied.  (*Id*.)[5]

Plaintiff alleges that had Schlesinger allowed Plaintiff or his companions to go to the car and obtain documents, he would have been shown a March 28, 2018 Order specifically authorizing and appointing the disability aide to serve as an aide during supervised visitations.  (*Id* ¶ 44; *see also* ECF No. 104-5, Exh. 5 (excerpt of March 28, 2018 order of the Family Court).)  The Order indicates that the ex-wife was required to consent to the presence of the disability aide.  (*Id*.)  The

---

[5] Plaintiff alleges that Schlesinger falsely testified in his criminal trial testimony that the only documents he reviewed to determine if there was a violation of the June 27, 2017 order of protection was whatever the teletype system had provided to him. (Am. Compl. ¶ 52.) Schlesinger testified he neither saw nor asked for a copy of the specific custody and visitation agreements for which the order of protection allowed.  (*Id*.) Plaintiff states that a brief review of the teletype that Schlesinger had in front of him included a notation that "Note: this order has not been served."  (*Id*. ¶ 53.) Plaintiff alleges that the teletype in front of Schlesinger also confirmed: "Except for supervised access, provided by court order entered June 13, 2018," but this language did not include any further detail and does not describe that the June 27, 2017 oral order also allowed for the supervised visitation. (*Id*. ¶ 54.)

March 28, 2018 order also described the aide as an ADA aide. (*Id.*) Schlesinger advised plaintiff repeatedly that his supervisor, Defendant Schaller, was speaking with the district attorney to determine if he should be charged with criminal contempt of the protection orders as they could not make a decision based on what was in front of them. (*Id* ¶ 46.)  As such, Plaintiff was caused to be held in a detention cell for over three hours. (*Id* ¶ 47.)

Plaintiff was then charged with criminal contempt in the second degree.  (*Id.* ¶ 55.) Schlesinger advised Plaintiff he would be kept incarcerated unless he posted $1,500 cash bail, and in response, Plaintiff stated he did not have that much money for bail.  (*Id.* ¶ 48.)   Schlesinger then advised Plaintiff that Schaller would reduce the $1,500 cash bail to $300 as they did not want to have to take Plaintiff to the hospital, given his health issues. (*Id.* ¶¶ 48–49.)  Schlesinger stated "we would never want to keep you overnight because then we have to bring you to the hospital which we do not want to do." (*Id* ¶ 49.)  Schlesinger and Schaller then told Plaintiff's disability aide to leave Plaintiff at the station and to drive the supervisor home. (*Id* ¶ 50.)  Schlesinger and Schaller told Plaintiff that he would not be able to receive a police or complaint report for his requested charge against his ex-wife for not allowing visitation, as it was not the police department's problem.  (*Id.* ¶ 51.)

Plaintiff maintains that Miranda warnings were never read to him and even if they were he would not comprehend or understand them without basic accommodations for his communications disabilities, which were denied to him.  (*Id.* ¶ 58.)

## III.    Criminal Proceedings for Contempt in the Second Degree

Plaintiff alleges several issues that occurred at his criminal proceeding related to the December 15, 2018 arrest, including during a jury trial that was held in January 2020.  *See People v. Marc Fishman*, C.A. No. 18-06293M (Westchester Cnty.).

First, he alleges that Schlesinger falsely testified in his criminal trial testimony that the only documents he reviewed to determine if there was a violation of the June 27, 2017 order of protection was whatever the teletype system had provided to him. Schlesinger testified he neither saw nor asked for a copy of the specific custody and visitation agreements for which the order of protection allowed.   (*Id.* ¶ 52.)  Plaintiff also alleges that Schlesinger misled the criminal jury and provided them with false evidence by testifying that the June 27, 2017 order of protection was a "full stay away order," and was the "most stringent," which allowed for no communications or contact whatsoever.  (*Id.* ¶ 59.)

Plaintiff, moreover, states that the Westchester County prosecutor misled the jury and advised during opening statements and summation that Plaintiff was subject to a full stay away order and was not allowed for visitation, and "lied to the jury and stated Plaintiff was actually served with the order of protection."  (*Id.* ¶¶ 61–62.)  Plaintiff also claims that County Clerk Edward Edmead, who served as a witness at the criminal trial and gave testimony, testified that the order of protection did not allow visitation nor any communication with Plaintiff's children.  (*Id.* ¶ 63.)  He also acknowledged that although he checked off a box stating plaintiff was served with the order in court that he never observed that it was served and just assumed it was.  (*Id.*)

In addition, Plaintiff alleges that as both sides rested, the criminal court judge asked if the prosecution would consider adding a charge of attempted criminal contempt in the second degree, which the prosecution requested be added over defense counsel's objections.   (*Id.* ¶ 64.) The criminal court judge did not advise the jury to consider the charges in the alternative.  (*Id.* ¶ 66.) The jury then came back with a verdict of guilty as to both attempted and completed criminal contempt in the second degree.  (*Id.* ¶ 67.)  After the verdict the criminal court judge issued a full

order of protection disallowing any and all contact or visitation with plaintiff's children.  (*Id*. ¶ 69.)

On January 27, 2020, Plaintiff moved for a trial order of dismissal, which the criminal court denied the next day, following oral argument.  (*See* Demirayak Decl., Exh. 7 (District Attorney Opposition to Motion to Set Aside Verdict at 5).  On August 2, 2020, the prosecution received Defendant's *pro se* motion to set aside the jury's guilty verdict on the grounds of having possession of newly discovered evidence.  (*Id*. at 6.)  The criminal court denied the motion, and scheduled sentencing for October 28, 2020. (*Id*.)  Sentencing was repeatedly adjourned for medical reasons and upon subsequent *pro se* filings to set aside the jury verdict.  (*Id*.)  The criminal court judge issued a bench warrant for plaintiff's failure to appear for sentencing scheduled for January 9, 2022.  (Am. Compl. ¶ 72.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678.  (quoting *Twombly*, 550 U.S. at 555) (emphasis added).  The critical inquiry is whether the plaintiff has pled

sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    The Parties' Exhibits

Though the parties have submitted numerous documents outside of the four corners of the Amended Complaint in connection with the instant motions, only certain of those documents are appropriately before the Court.  As discussed below, the Court will only consider the City Defendants' three exhibits (ECF No. 97), as well as certain of Plaintiff's exhibits (ECF No. 104), as described below.

In deciding a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This generally includes "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A document is incorporated by reference into the complaint where the complaint "refers to" the document.  *EQT Infrastructure Ltd v. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012).  However, "[a] mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself."  *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011).

A document may also be considered if it is "integral" to the complaint. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include . . . documents that, although not incorporated by reference, are 'integral' to the complaint.") (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)). A document is integral to the complaint where the plaintiff "(1) has 'actual notice' of the document and its information and (2) has 'relied upon the[] documents in framing the complaint.'" *McLennon v. City of New York*, 171 F. Supp. 3d 69, (E.D.N.Y. 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). However, "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the document in preparing his complaint." *Williams v. City of New York*, No. 14-CV-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

The City Defendants filed the Declaration of Lalit K. Loomba with their motion to dismiss, that attached three exhibits: (1) the Amended Complaint ("Exhibit A"); (2) the New York State Order of Protection Detail on the order of protection issued against Plaintiff, dated June 27, 2017 ("Exhibit B"); and (3) a domestic incident report dated December 15, 2018 ("Exhibit C"). (ECF No. 97.) It is clear that the orders of protection are incorporated by reference into the Amended Complaint, as Plaintiff expressly refers to these documents in his Complaint and opposition papers. (*See, e.g.*, Am. Compl. ¶¶ 8, 23.) Therefore, the Court also incorporates by reference the domestic incident report, as the Amended Complaint references it (though calls it the "police report."). (Am. Compl. ¶¶ 139, 140.)

Plaintiff's opposition to the motions to dismiss attach various documents as exhibits. (*See* ECF No. 104.) The exhibits generally consist of (1) an October 29, 2019 order dismissing the initial charges against Plaintiff for criminal contempt, which was filed in the criminal matter

relating to the December 15, 2018 events[6]; (2) a misdemeanor complaint charging Plaintiff of criminal contempt in the same criminal matter; (3) a statement by Plaintiff's ex-wife regarding the December 15, 2018 event; (4) an order of protection that was not served; (5) an order providing for allowances of supervised visitation; (6) the June 27, 2017 Order of Protection; (6) the Westchester County district attorney response to Plaintiff's motion to set aside the verdict in his criminal matter; (7) a July 16, 2021 order of the U.S. Second Circuit granting Plaintiff's motion for reasonable accommodation in a separate proceeding captioned *Fishman v. Office of Court Adm. N.Y. State Courts*, 2021 U.S. App LEXIS 29233 (2d Cir. 2021); (8) discipline reports issued against Defendant Schlesinger; (9) discipline reports issued against Defendant Joseph; (10) a June 9, 2022 Order of Protection; and (11) a July 8, 2022 Notice of Appeal of the June 9, 2022 Order of Protection, filed before the New York Second Department.

The Court will not consider the discipline reports against Defendants Schlesinger and Joseph, given that there is no reference to such reports in the Amended Complaint. Plaintiff was not proceeding *pro se* at the time that the Amended Complaint was filed (*see* ECF Nos. 39, 52), and such documents should have been attached to, or at least referenced, in the Amended Complaint. *See, c.f., Rosendale v. Mr. Cooper Group Inc*., No. 19-cv-9263 (NSR), 2021 WL 4066821, at *8 n.4 (S.D.N.Y. Sept. 7, 2021) (the Court may consider documents attached to opposition papers if they are consistent with the allegations in the Complaint and Plaintiff is proceeding *pro se*). The Court will also not consider Exhibit 15 (a June 9, 2022 Order of Protection) and Exhibit 16 (an appeal on the June 9, 2022 Order of Protection to the New York

---

[6]      Plaintiff states that the prosecutors were able to amend their charging instrument, which they did. (*See* Pl.'s Opp. at 1.)

Second Department), as those arose after the filing of the Amended Complaint on March 12, 2022. (ECF No. 104).[7]

However, the Court will consider the rest of Plaintiff's exhibits as consistent with the allegations in the Amended Complaint.  *See EQT Infrastructure Ltd*, 861 F. Supp. at 224 n.2.

## II.      Personal Jurisdiction

Plaintiffs bring a separate motion for an extension of time to effect service or process onto Defendants Schlesinger and Joseph. (ECF No. 86.)  Relatedly, in their motion to dismiss, the City Defendants argue that Defendants Schlesinger and Joseph should be dismissed on grounds of lack of personal jurisdiction because they were not timely served.  (City Def. Br. at 24.)

Plaintiff argues that Plaintiff served Defendants Schlesinger and Joseph at their place of employment one day late, and that such tardiness should be excused for good cause because these Defendants purportedly absconded and refused service.  (Pl.'s Opp. at 21.)  Plaintiff states that Defendants indeed were properly served under N.Y. C.P.L.R 308, or in the alternative, the Court could order service by other means in response to Plaintiff's pending motion.  (*Id*.)

The City Defendants argue that while these Defendants were served pursuant to CPLR 308(2), service was not complete until May 3, 2022, which was two weeks past the deadline set by the court.  (City Def. Br. at 23.).  In their reply brief on the motion to dismiss, the City Defendants argue that (i) Plaintiff did not make diligent efforts to effect service on these defendants, particularly as Plaintiffs failed to serve them at their place of employments; (ii) neither Schlesinger nor Joseph had notice of the civil rights claims added to the first amended complaint; and (iii) Schlesinger and Joseph would be prejudiced by having to defend claims naming them in their individual capacities.  (City Reply at 10.)

---

[7]        Even if the Court were to consider these documents, the Court's findings herein would remain the same.

Rule 4 of the Federal Rules of Civil Procedure states service on an individual may be effected by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Under New York law, service may be accomplished "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business . . . ." N.Y. C.P.L.R. § 308(2).

In addition, Rule 4(m) provides that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court — on a motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Accordingly, there are two means by which a court can grant an extension: (1) upon a showing of good cause; or (2) within its discretion. *Id.*; *see also Zapata v. City of New York*, 502 F.3d 192, 195–96 (2d Cir. 2007) (holding an extension proper "even in the absence of good cause").

Here, the Court will exercise its discretion to grant the extension on the service deadline. *See e.g., Zapata*, 502 F.3d at 196. The Second Circuit has consistently held that Rule 4 should be

construed liberally and that "incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). The City Defendants concede that they have *already* been served, and counsel has entered an appearance on behalf of all the City Defendants. While service was untimely, the instant motion to dismiss has remained pending for several months, and Defendants Schlesinger and Joseph never sought leave to file motions to dismiss to assert separate arguments. The City Defendants' motion papers also include a substantial amount of arguments on their behalf. The Court therefore finds no prejudice to Defendants in extending the deadline for service, and GRANTS Plaintiff's motion for an extension of time to effect service.[8]

### III. Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

---

[8] As discussed below, in any event, the Court dismisses the claims in the Amended Complaint against the individual defendants. (*See infra*).

Pursuant to Section 1983, Plaintiff alleges claims for false arrest and unlawful imprisonment (Am. Compl. ¶¶ 94–98); violation of the right to a fair trial (*id.* ¶¶ 99–105); malicious prosecution (*id.* ¶¶ 106–10); failure to intervene (*id.* ¶¶ 111–15); supervisory liability (*id.* ¶¶ 116–18); municipal liability (*id.* ¶¶ 119–37); retaliation (*id.* ¶¶ 138–41); violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments (*id.* ¶¶ 142–46); and conspiracy (*id.* ¶¶ 147–49).

The Court will discuss each of the Section 1983 claims in turn.  Upon the Court's review, for the reasons articulated below, the Court DISMISSES Plaintiff's Section 1983 claims against all Defendants.

### A.  Section 1983 False Arrest/Unlawful Imprisonment

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.  *Id.*  Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.  *Id* (internal citation and quotations omitted).  Probable cause does not require absolute certainty.  *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).  In addition, where a plaintiff was convicted of criminal charges, that conviction is conclusive evidence of probable cause for the confinement unless the conviction has been reversed on appeal.  *De'Bey v. City of New York*, No. 20CIV1034PGGSLC, 2022 WL 909790, at *8 (S.D.N.Y. Mar. 29, 2022); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

The City Defendants argue that there has already been a conviction after a jury verdict against Plaintiff for violating the orders of protection issued against him, and that conviction has not been reversed on appeal.  (City Def. Br. at 6–7; Am. Compl. ¶ 67.)  Plaintiff, on the other hand, argues that there has been no conviction under N.Y. C.P.L.R. 380.40(1) because Plaintiff has not yet been sentenced.  (Pl.'s Opp. at 12.)  Plaintiff argues that "a sentence on a verdict or plea of guilty must be pronounced before a conviction be entered," and that the Court has not sentenced Plaintiff "without reasonable delay."  (*Id.*)  Plaintiff also argues that the jury verdict was legally defective, and that Plaintiff has not been able to file an appeal because the trial judge has "refused to order an acquittal or a new trial, let alone sentence and enter a conviction of plaintiff, [and therefore] [Plaintiff] has no ability to file an appeal."  (*Id.*)

The Court agrees with the City Defendants that Plaintiff misinterprets the meaning of "conviction."  Under N.Y. Crim. P. L. 1.2(13), a conviction is defined as "the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument."  N.Y. Crim. P. L. § 1.2(13).  Plaintiff concedes in his Amended Complaint that a jury verdict found him guilty under N.Y. Penal Law 215.50 (second degree criminal contempt) (Am. Compl. ¶ 67.), so simply speaking, there has been a conviction.  N.Y. C.P.L.R. 380.40(1), which Plaintiff points to, only states that a "court must pronounce sentence where a conviction is entered."  N.Y. C.P.L.R. 380.40(1).  That provision does not state, as Plaintiff contends, that a defendant must be sentenced in order to be convicted.

The Court notes that while Plaintiff states that the trial court presiding over his criminal case has not sentenced Plaintiff as of the date that his motion papers were filed, he also concedes that Plaintiff failed to appear for his sentencing on January 9, 2022.  (Am. Compl. ¶ 72.) Moreover, the Court agrees with Defendant that Plaintiff's argument that the jury's verdict was "legally

defective" is one that should be raised before the criminal court or on direct appeal, not before this Court.[9]  *See Heck v. Humphrey*, 512 U.S. 477, 477 ("this Court has long been concerned that judgments be final and consistent and has been disinclined to expand opportunities for collateral attack on criminal convictions . . .").

For the aforementioned reasons, the Court dismisses without prejudice Plaintiff's Section 1983 claim for false arrest.

### B.  Section 1983 Fair Trial Claim

Plaintiff bases his Section 1983 fair trial claim on the allegation that the Defendants created "false evidence" against him and "made it appear to the criminal jury that the order of protection was a 'full stay away order,' and that plaintiff's attempts at visitation on December 15, 2018 was unlawful."  (Am. Compl. ¶ 100.)  Plaintiff also alleges that "Defendants testified falsely at trial and/or consciously omitted certain facts personally known to them to deny plaintiff the right to a fair trial."  (Am. Compl. ¶ 102.)

In order to prevail on a Section 1983 fair trial claim based on fabricated evidence or information, Plaintiff must plead that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *DiPippo v. Cnty. of Putnam*, No. 17-CV-7948 (NSR), 2019 WL 1004152, at *16 (S.D.N.Y. Feb. 28, 2019) (internal quotations and citations omitted).  In addition, Plaintiff must show that the underlying criminal proceeding

---

[9]      Plaintiff also argues that the Westchester County district attorney conceded that the verdict is legally defective (Pl.'s Opp. at 13) because the district attorney agrees that the lesser included charge of attempted second degree contempt should be dismissed, as it was presented to the jury as a concurrent charge rather than as an alternative to the second degree contempt charge, as required under N.Y. C.P.L. 300.40(3)(b).  (Demirayak Decl., Exh. 7 (District Attorney Opposition to Motion to Set Aside Verdict at 14–15.)  Plaintiff concedes that the judge presiding over the criminal matter considered the arguments but rejected them.  (Pl.'s Opp. at 2.)  The Court will not opine on whether the judge presiding over Plaintiff's criminal court matter was incorrect, and instead, reiterates that Plaintiff's remedy is to seek relief before the criminal court or on direct appeal.

was "terminated in a such a manner that the civil lawsuit does not impugn an ongoing prosecution or outstanding conviction."  (City Def Br. at 10 (citing *Smalls v. Collins*, 10 F. 4th 117, 139 (2d Cir. 2021), abrogated by *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) on other grounds). "This requirement may be satisfied where a criminal conviction has been invalidated or a criminal prosecution has been terminated in the criminal defendant's favor because, in such circumstances, there is no risk that a section 1983 plaintiff's claim will impugn an existing conviction or the basis for an ongoing prosecution." *Id*.   Because there was a trial in which Plaintiff was convicted and has not yet appealed or dismissed, this Court finds that Plaintiff cannot state a plausible Section 1983 claim for fair trial. Accordingly, the claim is dismissed without prejudice.

### C.  Section 1983 Malicious Prosecution

In order to prevail on a Section 1983 claim for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.  *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal quotations and citations omitted).   To prevail on a malicious prosecution claim under New York law, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Id*. (internal quotations omitted).

The Court finds that Plaintiff fails to state a Section 1983 malicious prosecution claim in light of his criminal conviction, which has not been overturned or dismissed.  *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) (for a Section 1983 malicious prosecution claim, a plaintiff needs to show that the criminal prosecution ended without a conviction.)  As indicated by the U.S. Supreme Court in *Thompson v. Clark*:

"a Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him. The favorable termination requirement serves multiple purposes: (i) it avoids parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) it precludes inconsistent civil and criminal judgments where a claimant could succeed in the tort action after having been convicted in the criminal case; and (iii) it prevents civil suits from being improperly used as collateral attacks on criminal proceedings."

142 S. Ct. at 1338.

Therefore, the Court dismisses without prejudice Plaintiff's Section 1983 malicious prosecution claim.

### D. First Amendment Retaliation, Federal Civil Rights Violations, and Section 1983 Conspiracy

The Court dismisses Plaintiffs' claims for First Amendment Retaliation, Federal Civil Right Violations, and Section 1983 Conspiracy. As the City Defendants point out, Plaintiff does not meaningfully address these claims for relief in its opposition, and therefore, these claims are deemed to be abandoned. *Baptiste v. Griffin*, No. 18 CV 7274 (NSR), 2019 WL 5635808, at *5 (S.D.N.Y. Oct. 31, 2019) ("When a plaintiff "fail[s] to address Defendants' arguments in support of dismissing [a] claim, it is deemed withdrawn or dismissed as abandoned.").

### E. Section 1983 Failure to Intervene Claims

A "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013). Because the Court finds that Plaintiff fails to properly assert any of its Section 1983 claims, the Court also dismisses without prejudice Plaintiff's failure to intervene claim.

### F. Section 1983 Supervisory Liability

In Count VII of the Amended Complaint, Plaintiff seeks to impose supervisory liability against the "supervisory defendants," which include Defendants Gazolla, Schaller and Joseph.

(Am. Compl. ¶¶ 13–15, 117.)  As indicated above, because the Court dismisses the substantive Section 1983 claims, the Court also dismisses Count VII.[10]

### G.  Section 1983 Municipal Liability

Defendants Westchester and City of New Rochelle aver that the Amended Complaint fails to allege municipal liability, as it does not describe any policy, custom, or practice that led to the alleged constitutional violations.  (Westchester Opp. at 8–13; City Def. Opp. at 16–20.)  Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  The Second Circuit uses a two-prong approach in determining *Monell* liability for Section 1983 claims.  *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).  First, the plaintiff must plead "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."  *Id*.  Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Where municipal liability is based on a failure to train employees, the inadequate training itself must "reflect[ ] deliberate indifference to . . . constitutional rights."  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 392 (1989).  To allege deliberate indifference, a plaintiff must properly plead

---

[10]    In any event, absent specific allegations as to their wrongdoing, it is not enough to allege supervisory liability against these individuals to make a Section 1983 claim.  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) ("Following *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), courts may not apply a special rule for supervisory liability. Rather, the plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (citing *Ashcroft*, 556 U.S. at 676.).  Based on the allegations in the Amended Complaint, the Court would find no supervisory liability against Defendants Joseph and Gazzola, given the sparseness of allegations against them and a lack of allegations regarding any of their personal involvement in the arrest or subsequent prosecution.

(1) "that a policymaker knows to a moral certainty that [his or] her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009).  A failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

In the Amended Complaint, Plaintiff claims that the "policies, usages, practices, procedures and rules of the New Rochelle Police Department included, but were not limited to, inadequate screening, hiring, retaining, training and supervising its employees" and that "the New Rochelle Police Department has failed to properly train its employees with regard to the proper issuance of criminal complaints, and defendant City was aware that NRPD officers routinely baselessly arrested individuals and created and issued facially insufficient criminal complaints depriving said individuals of their constitutional right."  (Am. Compl. ¶ 121) Plaintiff does not provide any specific *Monell* allegations against Westchester County.

Because the Court dismisses the substantive Section 1983 claims, *see supra*, the Court need not consider the municipal liability claim.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's

failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")

However, assuming *arguendo* that there were constitutional violations, the Court finds that Plaintiff has failed to allege municipal liability as against Westchester county and City of New Rochelle.

### a.   Westchester County Municipal Liability

First, the Court finds that because Plaintiff does not address Westchester County's *Monell* argument in its opposition to the motion to dismiss, Plaintiff has abandoned its *Monell* claims against this Defendant. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.") (citing *Johnson v. City of New York*, 15-CV-8195, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017)).  In any event, the Amended Complaint continues to fail to allege any action on behalf of Westchester or any of its officers.  The Amended Complaint still does not allege any police, custom, or practice created by Westchester County that was responsible for any constitutional violation.  While the Amended Complaint alleges that the County is "responsible for the actions of its prosecutors" and names a prosecutor who allegedly maliciously prosecuted Plaintiff (Am. Compl. ¶ 16), the Amended Complaint does not provide any other additional nonconclusory allegations that the attorney engaged in any wrongdoing.  Nor are there any allegations that Westchester County failed to train or was deliberately indifference to the rights of persons with whom employees come into contact.

### b.   City of New Rochelle Municipal Liability

The Court finds that Plaintiff has failed to allege *Monell* claim against the City of New Rochelle.  In his Amended Complaint, Plaintiff alleges that the City had a policy and practice of

"inadequate screening, hiring, retaining, training and supervising its employees," and that the New Rochelle Police Department "failed to properly train its employees with regard to the proper issuance of criminal complaints." (Am. Compl. ¶ 121.) However, Plaintiff fails to allege any further details of the purportedly faulty City police training program, fails to adequately plead that the City was on notice of a failure to train, and otherwise fails to adequately plead that the City failed to adopt a police concerning accommodation to persons with disabilities. *McClean v. Cnty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *23 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (dismissing *Monell* claims against County where complaint does not identify any specific policies or customs and does not plausibly plead any policy or custom of the County Defendants that violated his rights."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

In his Opposition, Plaintiff attaches disciplinary records of Defendants Schlesinger (from 2012 and 2013) and Joseph (from 2005, 2007 and 2008) to attempt to indicate a pattern of misconduct that the City of New Rochelle did not address. (Demirayak Decl. Exhs. 11–14.) However, as discussed above, the Court does not incorporate these documents by reference, so they will not be considered at this time. (*See, supra.*)

Therefore, the Court dismisses Plaintiff's *Monell* claims against Westchester County and the City of New Rochelle.

## IV.    ADA and RA

In the Court's October 19, 2021 Order and Opinion (ECF No. 38), the Court found that Plaintiff stated ADA and RA claims against the City of New Rochelle, and that there could be no

ADA and RA claim against the individual City Defendants because there is no individual liability under the ADA or the RA. (ECF No. 38 at 15.) (citing *Santiago v. 1199 SEIU*, No. 18-CV-06711 (AMD) (RLM), 2020 WL 4350048, at *5 (E.D.N.Y. July 29, 2020)). In their moving papers, the City Defendants state that they do not address the ADA or RA claims, and instead will eventually answer and deny the ADA and RA claims. (City Opp. at 1, n.1.) Therefore, the Court will not disturb its determination on the ADA and RA issue as to the City Defendants.

With respect to the Westchester County, Plaintiff alleges that the County violated his rights under Title II of the ADA and under the RA by, *inter alia*, providing discovery in the criminal action that was blurry or not printed large enough (*see* Am. Compl. ¶ 17).[11] For the reasons stated below, Plaintiff has, again, failed to allege any factual allegations involving Westchester giving rise to ADA or RA claims, and therefore his claims against it are dismissed.

### A. Discrimination

The ADA and RA "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely

---

[11]    Westchester County argues that Plaintiff previously presented this same claim in *Fishman v. New York State Unified Court Syst.*, No. 21-CV-3517 (CS), 2021 WL 2206491, at *2 (S.D.N.Y. June 1, 2021), against the Unified Court System, various court officials, Westchester County, and former District Attorneys Scarpino and Rocah. (Westchester Opp. at 14.) Plaintiff's complaint in that case was dismissed without prejudice. *Id*. In its opening brief, Westchester County argues that collateral estoppel bars Plaintiff's ADA and RA claim (Westchester Opp. at 14). However, Westchester County appears to have abandoned this argument in its Reply Brief by failing to respond to Plaintiff's opposition argument. (*See* Westchester Reply at 3–4.). The Court will not discuss the collateral estoppel effect, if any, of the *Fishman v. New York State Unified Court Sys.*, case with respect to this claim because the Court finds that, in any event, Plaintiff fails to plead an ADA and RA claim against Westchester County.

by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a violation of Title II, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal citations and quotation marks omitted). To establish a claim under the RA, a plaintiff must also demonstrate that the defendant receives federal funding. *Henrietta D.*, 331 F.3d at 272.

"The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled." *Felix v. New York City Transit Auth*., 324 F.3d 102, 107 (2d Cir. 2003). A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D.*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). The determination of what constitutes a reasonable accommodation is a "highly fact-specific, case-by-case inquiry." *Mary Jo C. v. New York State & Local Ret. Sys*., 707 F.3d 144, 165 (2d Cir. 2013) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)). "[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without

disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 277.

Here, the parties do not dispute that Plaintiff is disabled, or that Westchester County is subject to the ADA. Plaintiff bases his ADA and RA claim against Westchester County on his allegation that the Westchester County prosecutors failed to provide discovery in the criminal action in an accessible format. (Am. Compl. ¶¶ 17, 82.) Plaintiff's allegation fails to give any indication that he was denied accommodation because of his disability. *See Andino v. Fischer*, 698 F. Supp. 2d 362, 379 (S.D.N.Y. 2010) (dismissing plaintiff's Title II ADA claim under Rule 12(b)(6) because, "[a]side from giving conclusory statements that his request was denied because of his disability, Madison does not give any reason or indication that the three Defendants actually denied him [his request for reasonable accommodation] because he has PTSD. None of the Defendants made any statements to indicate the denial was based on his disability, and none of the DOCS paperwork or timing of the denial shows that it was based on Madison's PTSD . . . . There is no logical nexus between [PTSD] and the feed-in program as an accommodation"); *accord, Page v. V.T. Dep't of Corr.*, 11-CV-0187, 2012 WL 2153496, at *5 (D. Vt. May 4, 2012). Nor does Plaintiff adequately plead in the Amended Complaint or explain in its motion papers that Westchester County's policies were deliberately indifferent to reasonable accommodations. (*See* Pl.'s Opp. at 20.)

### B. Retaliation

"[T]he elements of a retaliation claim under either Section 504 or the ADA are '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse

action.'" *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (quoting *Weixel v. Bd. of Educ. of N.Y.C.*, 2000 WL 1100395, at *4 (S.D.N.Y. Aug. 7, 2000)).  The last element may be shown by "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of [others] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal citations omitted).

Here, it appears that Plaintiff no longer alleges ADA and RA retaliation against Westchester County in its Amended Complaint, as there is no discussion in Plaintiff's opposition nor any well-pled allegations regarding this issue.

Accordingly, Plaintiff's ADA and RA claims against Westchester are dismissed without prejudice.  The City's motion to dismiss these claims is denied.

## **CONCLUSION**

For the foregoing reasons, Westchester's motion to dismiss is GRANTED, and the City Defendants' motion to dismiss is GRANTED.  Plaintiff's motion for an extension of time to effect service is also GRANTED.

The Court does not disturb its finding in its October 19, 2021 Order and Opinion, which did not dismiss Plaintiff's ADA and RA claims against the City of New Rochelle for failure to accommodate (*see* ECF No. 38.), and which were not at issue in the instant motion practice.  Those claims remain in this case.  The Court therefore dismisses the Amended Complaint's Section 1983 claims[12] against all Defendants as well as the ADA and RA claims against Westchester County.

---

[12]     For the Section 1983 claims, dismissal is without prejudice in the event Plaintiff has a pending appeal or an appeal is filed in Plaintiff's criminal case. If no appeal is or will be filed, the Section 1983 claims shall not be reasserted.

Accordingly, Westchester County is dismissed as a Defendant, as well as Defendants Lane Schlesinger, Chief of Police Joseph Schaller, Police Commissioner Robert Gazzola, and Police Sergeant Myron Joseph.

Defendant City of New Rochelle is directed to file an Answer on or before March 3, 2023.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 86, 96, and 99.

Dated: February 1, 2023                                    SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge