

**THE**
**QUINN**
**LAW FIRM**

399 KNOLLWOOD ROAD, SUITE 220
WHITE PLAINS, NEW YORK 10603
Tel: 914.997.0555
Fax: 914.997.0550

**By ECF**                                                        June 22, 2023

Hon. Victoria Reznik
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY  10601

**Re:**    Fishman v. City of New Rochelle
           19-CV-265 (NSR) (VR)

Dear Magistrate Judge Reznik:

The Quinn Law Firm represents defendant City of New Rochelle ("City") in the above-referenced action.  We are submitting this letter in response to plaintiff's motion to recuse Your Honor on the basis of an alleged conflict of interest.  We will also describe below the factual background and procedural history of the action, and will bring the Court up to date on progress of discovery so far.

Plaintiff's Motion to Recuse

First, the Court should be aware that, after I learned that Your Honor had been assigned to this case, I e-mailed plaintiff's counsel, out of an abundance of caution, to notify him regarding my role as a member of the Southern District of New York Merit Selection Panel ("Panel"). Accordingly, contrary to Mr. Caner's characterization, my role on the Panel was not something he "discovered" -- he heard about it from me.

Second, I do not believe that a conflict of interest requiring recusal exists.  Contrary to Mr. Caner's description, I did not conduct one-on-one interviews of candidates for the open Magistrate Judge position.  Rather, I was only one member of the Panel which interviewed about twelve candidates.  As I explained to Mr. Caner, the Panel's function is to narrow down an applicant pool by recommending candidates for further consideration by the Court.  After making those recommendations, the Panel has no further role or influence in deciding which candidate the Court ultimately selects.  Panel members learn which candidate is ultimately selected at the same time the general public learns this information.

Nevertheless, with all of that said, the City takes no position on this issue, and we will defer to whatever decision the Court makes on plaintiff's motion.  We also request that a discovery conference be scheduled promptly, whether before Your Honor or another Magistrate Judge, as

Hon. Victoria Reznik
June 22, 2023
Page 2

plaintiff has failed to respond fully to outstanding demands and the case is at risk for falling behind schedule.

Factual Background

This case centers on plaintiff's allegation that, following his arrest by members of the New Rochelle Police Department ("NRPD") on December 15, 2018, he was deprived of reasonable accommodations allegedly owed to him under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

On December 15, 2018, plaintiff Marc Fishman ("plaintiff" or "Mr. Fishman") was arrested for violating the terms of an Order of Protection issued in favor of his ex-wife, Jennifer Solomon ("Ms. Solomon"), and their three children. Mr. Fishman and Ms. Solomon had a highly-contested divorce in which Ms. Solomon was awarded sole custody of the children. Mr. Fishman was entitled to visitation, but only when specifically scheduled and only in the presence of a court-appointed supervisor.

On the day in question, Mr. Fishman and his girlfriend ("Ms. Bolivar"), picked up the court-appointed supervisor ("Ms. Elliot"), from her residence in Manhattan, and they drove towards New Rochelle. It is not entirely clear whether a visit for that particular day had been scheduled and canceled; or scheduled and modified. Ms. Solomon has stated that a visit previously scheduled for December 15, 2018, had been canceled because of conduct on the part of Fishman that upset one of the children. Mr. Fishman contends that an alternative plan had been agreed upon whereby he was going to meet the son at his ice hockey practice, visit with the son during the day, and then return him home. Whatever the case may have been, instead of driving to the hockey rink, Mr. Fishman, Ms. Bolivar and Ms. Elliot drove directly to Ms. Solomon's residence in New Rochelle.

When Mr. Fishman, Ms. Elliot and Ms. Bolivar arrived, Ms. Elliot walked up to the front door and rang the doorbell, while Mr. Fishman and Ms. Bolivar remained in the car. When Ms. Solomon answered the door, she was surprised to see Ms. Elliot standing there. Ms. Solomon then observed that Mr. Fishman had exited the car, and was trying to speak with the son, who was playing in the driveway. This upset Ms. Solomon because on all prior visits Mr. Fishman never came to, or in the vicinity of, her residence, and she believed that this violated the terms of the Order of Protection. Ms. Solomon called the son to return to the house, which he did.

Ms. Elliot then returned to the car, whereupon Mr. Fishman stated that he wanted to file a complaint against his ex-wife at NRPD headquarters. Meanwhile, Ms. Solomon called the NRPD to report that Mr. Fishman had violated the terms of the Order of Protection. NRPD Officer Lane Schlesinger responded to Ms. Solomon's home, interviewed her and reviewed certain documents. He then returned to headquarters, where he met Mr. Fishman, Ms. Elliot and Ms. Bolivar, who were already there. Officer Schlesinger separately interviewed Mr. Fishman and Ms. Elliot. Mr. Fishman was thereafter placed under arrest and charged with criminal contempt (3rd degree) for violating the Order of Protection.

Hon. Victoria Reznik
June 22, 2023
Page 3

While Mr. Fishman was in custody, he contends that he was denied certain reasonable accommodations that he was entitled to under the ADA, including having a disability aid present during questioning by the police. He also claims that he was denied the opportunity to show officers documents that were in the trunk of his car that, according to Mr. Fishman, would have demonstrated his innocence.

Mr. Fishman vigorously defended the criminal charge stemming from his December 15, 2018 arrest, and the case was eventually tried before a jury at the Westchester County Court. On January 28, 2020, the jury found Mr. Fishman guilty of violating the Order of Protection. The sentencing of Mr. Fishman has been scheduled, and adjourned, numerous times; and, in fact, Mr. Fishman has still not been sentenced. On January 9, 2022, a bench warrant was issued by the Westchester County Court for Mr. Fishman's arrest. We understand that the bench warrant remains outstanding.

Procedural History

Mr. Fishman commenced this civil action *pro se* on January 8, 2019, less than a month after his arrest on December 15, 2018. The original defendants were the City of New Rochelle, certain individual members of the NRPD, and the County of Westchester. All defendants moved to dismiss, and on October 19, 2021, this Court (Roman, J.), issued an Opinion and Order granting the motions in part and denying them in part. (D.E. 38) Judge Roman held that plaintiff had adequately pled claims under the ADA and the Rehabilitation Act, and allowed plaintiff an opportunity to replead.

On March 10, 2022, Mr. Fishman—now represented by Mr. Caner—filed an amended complaint. (D.E. 47) The amended complaint significantly expanded the scope of the action by adding several Section 1983 civil rights claims to the ADA and Rehabilitation Act claims originally pled by Mr. Fishman. In July 2022, the City Defendants moved to dismiss the additional civil rights claims asserted in the amended complaint (D.E. 96), and the County of Westchester moved to dismiss. (D.E. 99) On February 1, 2023, this Court (Roman, J.), issued an Opinion and Order dismissing all of the Section 1983 civil rights claims; all claims against the individual defendants; and all claims against the County of Westchester. (D.E. 108) Only two claims remain: the ADA and the Rehabilitation Act claims against the City. The City filed its answer on March 3, 2023. (D.E. 111) A civil case discovery plan and scheduling order was issued on March 17, 2023. (D.E. 115)

Status of Discovery

The parties have exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a). The City has noticed plaintiff's deposition, served a request for production of documents and served a demand for medical authorizations. Plaintiff served document demands, interrogatories and has noticed the City's deposition pursuant to Rule 30(b)(6).

The City has responded to plaintiff's interrogatories and document demands, and responded and objected, in part, to plaintiff's Rule 30(b)(6) notice. Plaintiff has produced 1,349

Hon. Victoria Reznik
June 22, 2023
Page 4

pages of documents, but has yet to comply with the requirement of identifying which documents are responsive to which demands. Plaintiff also failed to indicate whether he is withholding any documents because of a specific objection or privilege, and has yet to provide the requested medical authorizations. Counsel have met and conferred regarding these issues, and plaintiff agreed to provide all outstanding discovery by June 9, 2023. Plaintiff's counsel then requested an additional adjournment, until June 23, 2023, on account of illness caused by the heavy smoke conditions in New York on June 6, 2023. We agreed to this adjournment, and anticipated that plaintiff would be providing outstanding discovery responses by no later than June 23, 2023. However, it now appears from plaintiff's letter motion that he has unilaterally decided to pause discovery pending the Court's resolution of his motion for recusal.

Plaintiff's Deposition

One final discovery issue merits brief discussion. There is currently a dispute as to whether to hold plaintiff's deposition in person or via Zoom. Plaintiff's position is that Zoom depositions are standard now and there is no reason why his deposition cannot be conducted remotely. While many depositions are taken via Zoom, there are particular reasons why the City believes plaintiff's deposition should be conducted in person. First, plaintiff alleges that he suffers from a cognitive disability that makes it difficult for him to understand verbal communication. An in-person deposition will help ensure that the deposition runs smoothly and that any claimed misunderstandings are dealt with promptly and before the record is closed. The City also anticipates that disputes might come up during the deposition if the plaintiff insists upon conferring with his attorney, or another party (*e.g.,* a disability aid), on grounds that his cognitive disabilities make it impossible for him to understand deposition questions. It may be that the parties will need to seek assistance from the Court to resolve such disputes, and holding the deposition in person would facilitate that process. The parties will continue to meet and confer regarding this impasse and will notify the Court if we are unable to resolve the issue.

Respectfully submitted,

Lalit K. Loomba

Cc: Caner Demirayak, Esq. (via ECF)