UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARC FISHMAN,

                              Plaintiffs.                          19-cv-00265-NSR

              - against -

CITY OF NEW ROCHELLE, LANE
SCHLESINGER, SHIELD # 1058, JOSEPH F.
SCHALLER, ROBERT GAZOLLA, IN HIS
OFFICIAL CAPACITY AS POLICE
COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT,
SERGEANT MYRON JOSEPH SHIELD # 18,
AND COUNTY OF WESTCHESTER,

                              Defendants.
------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
       June 5, 2024

_____/s/_____
Caner Demirayak, Esq.
*Attorneys for Plaintiff Marc Fishman*
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
Fax: 646-679-2527
caner@canerlawoffice.com

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**STATEMENT OF FACTS** ........................................................................................................ 1

    I.    **Plaintiff Marc Fishman Voluntarily Goes to the New Rochelle Police Department** ... 1

    II.   **Plaintiff's Cognitive and Hearing Disabilities** ............................................................. 2

    III.  **Defendants Agree Plaintiff is Disabled** ....................................................................... 3

    IV.  **Plaintiff Requests a Reasonable Accommodation** ...................................................... 3

    V.   **Defendants Deny Plaintiff the Requested Reasonable Accommodation** ...................... 5

    VI.  **Defendants Release Fishman on Bail as an "Accommodation"** ................................. 5

    VII. **Fishman is Significantly Harmed Because of the Denial of a Reasonable** ............... 6

**ARGUMENT** .............................................................................................................................. 7

I.    **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED AS ALL PARTIES AGREE THAT PLAINTIFF IS DISABLED AND WAS DENIED AN ACCOMMODATION DURING THE POLICE ENCOUNTER AND THERE IS NO DISPUTE THAT THE REQUESTED ACCOMODATION WAS REASONABLE AND WOULD NOT HAVE BURDENED THE DEFENDANTS** ................................. 7

    A.   There is no Dispute That Plaintiff is a Qualified Individual With a Disability ........... 7

    B.   There is no Dispute That Plaintiff Requested a Reasonable Accommodation and That Defendants Were Otherwise on Notice of the Need for a Reasonable Accommodation ................................................................................................................ 8

    C.   There is no Dispute That Plaintiff was Denied a Reasonable Accommodation .......... 9

    D.   The Defendants Cannot Establish That the Requested Accommodation was Unreasonable or Was Otherwise Burdensome ............................................................... 9

**CONCLUSION** ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Borkowski v. Valley Cent. Sch. Dist.*,
  63 F.3d 131 (2d Cir. 1995) .................................................................................................. 8

*McElwee v. Cnty. of Orange*,
  700 F.3d 635 (2d Cir. 2012) ................................................................................................ 8

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ................................................................................................ 7

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ................................................................................................ 7

*Powell v. Nat'l Bd. of Med. Examiners*,
  364 F.3d 79 (2d Cir. 2004) .................................................................................................. 8

*Tardif v. City of New York*,
  991 F.3d 394 (2d Cir. 2021) ................................................................................................ 7

*Williams v. City of New York*,
  121 F. Supp. 3d 354 (S.D.N.Y. 2015) ................................................................................. 7

*Wynne v. Town of E. Hartford*,
  2023 U.S. Dist. LEXIS 199575, 2023 WL 7339543 (D. Ct. Nov. 7, 2023) (Hall, D.J.) ............ 7

## **PRELIMINARY STATEMENT**

Marc Fishman is disabled. His disabilities impair his ability to comprehend, communicate and hear. He was detained, interrogated, arrested, charged, prosecuted and convicted for innocent conduct. The City of New Rochelle's refusal to accommodate Fishman's disabilities resulted in six years of criminal proceedings based upon a disabled person's innocent conduct. Had New Rochelle granted the basic accommodation all of this would have been avoided. Fishman was unable to convey the legality of the events of December 15, 2018 without an accommodation.

Early on in this litigation the court denied the defendants' motion to dismiss finding that the claims for disability discrimination were plausibly allegedly. Discovery has now demonstrated that the claims are not only plausible but undisputed and established. As such, the plaintiff should be granted summary judgment as to the defendant's liability under Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act and set this matter down for a trial as to damages only.

## **STATEMENT OF FACTS**

### I.  **Plaintiff Marc Fishman Voluntarily Goes to the New Rochelle Police Department**

On December 15, 2018, Marc Fishman (hereinafter "Fishman") voluntarily walked into the New Rochelle Police Department (hereinafter "NRPD") stationhouse to make a complaint about violation of his court ordered supervised visitation with his children. Plaintiff's Local Rule 56.1 Statement of Material Facts (hereinafter "Plaintiff's 56.1") at ¶ 1.

The visit was scheduled and confirmed via text message the day prior. Plaintiff's 56.1 at ¶ 2.

Ann Elliot (hereinafter "Elliot") testified that "As a supervisor, I could have said to Ms. Solomon, Ms. Solomon, go inside, he does have a visit this morning by court order, we are going to move forward with the visit and move forward," but she decided not to have a visit as her "perception is we'll have future visits…but it didn't work out that way once we got to the police station." Plaintiff's 56.1 at ¶ 3.

Fishman was accompanied by the supervisor for the visitation, Elliot and the court appointed disability aide, Isabel Bolivar (hereinafter "Bolivar"). Plaintiff's 56.1 at ¶ 4.

Bolivar was appointed as Fishman's disability/ADA aide by Judge Michelle I. Schauer in her March 30, 2018 visitation order. Plaintiff's 56.1 at ¶ 5.

When Fishman arrived at the stationhouse he advised the employee at the counter of his difficulty hearing and understanding her. Plaintiff's 56.1 at ¶ 6.

Fishman disclosed his disability to the window officer at the NRPD. Plaintiff's 56.1 at ¶ 7. Fishman stated he had difficulty interacting and needed an accommodation. *Id*.

II.     **Plaintiff's Cognitive and Hearing Disabilities**

Fishman suffers from "Post-concussion syndrome [and] traumatic brain injury affect[ing] registration, cognition, short-term memory, names, sequences." Plaintiff's 56.1 at ¶ 8. Additionally, Fishman suffers from "tinnitus…which impacts [his] hearing" and "occipital neuralgia, which is severed nerves in the rear of [his] head." Plaintiff's 56.1 at ¶ 9.

As a result of this disabilities, Fishman has received treatment including "executive function testing…memory recall…speak, traumatic brain injury therapy [and] role playing with decision making." Plaintiff's 56.1 at ¶ 10.

Plaintiffs caries cards labeled "Brain Injury Identification Card," and a Medtronic Medical Device Identification card for his Stimulation System Implant. Plaintiff's 56.1 at ¶ 11.

Elliot testified she felt Fishman was "a little slow." Plaintiff's 56.1 at ¶ 12. Elliot testified that Fishman would have difficulty in expressing and communicating what occurred to the police officers who interviewed him, that he could come off as slower and would be jumping all over. Plaintiff's 56.1 at ¶ 13.

When asked about whether Fishman needed an accommodation or modification, Elliot explained "I just know with my communication [with Fishman] sometimes it did get a little frustrating but as a professional I had to work with that, so yes." Plaintiff's 56.1 at ¶ 14.

### III. Defendants Agree Plaintiff is Disabled

Officer Schlesinger testified "I never said he wasn't disabled." Plaintiff's 56.1 at ¶ 15. In their motion to dismiss the complaint the defendants did not contest plaintiff's disability. *Id* at ¶ 16. The defendants agreed to and did conduct plaintiff's deposition in this case with the assistance of a real time transcription accommodation. *Id* at ¶ 17.

The Second Circuit previously granted Fishman's motion in another matter for an accommodation for this disabilities in the form of real time transcription during oral argument. Plaintiff's 56.1 at ¶ 18.

### IV. Plaintiff Requests a Reasonable Accommodation

While at the stationhouse, "Ms. Bolivar identified herself as [Fishman's] aide for communication…and that she had the papers with her for the orders, and that [Fishman] needed her help, and she needed to assist [Fishman] with communication and interpret and show all the orders to Officer Schlesinger." Plaintiff's 56.1 at ¶ 19.

However, "Officer Schlesinger denied Ms. Bolivar as my aide access to the room to assist me with full and effective communication." Plaintiff's 56.1 at ¶ 20. Additionally, when Fishman "Showed Officer Schlesinger [his] traumatic brain injury card and asked for [his] aide to be brought in with me…he said he wasn't interested." *Id* at ¶ 21.

The proposed accommodation was requested and was simply for the disability "aide to come in to assist with…reading and interpreting the order [and] for [Fishman or his] aide to go to the car to get the court file out of the truck that had the order [stating she was] the [court appointed] aide and had the visitation orders." Plaintiff's 56.1 at ¶ 22.

Had the accommodation been granted "Ms. Bolivar would have brought the order [showing] she's…the court-appointed aide [and] she would have been able to isolate the portions of the order of protection that have a carve-out for visitation…and she would have been able to read the order." Plaintiff's 56.1 at ¶ 23.

Had the accommodation been granted the disability aide could have articulated to Officer Schlesinger that there was "no violation [of the order of protection] and the visit wasn't canceled in writing beforehand and that we didn't go on any property." Plaintiff's 56.1 at ¶ 24.

Bolivar testified that she was prevented from going into the interrogation room with Fishman. Plaintiff's 56.1 at ¶ 25. Bolivar testified she told Schlesinger "I wanted to go in with them to explain the situation, to participate in the interrogation and he literally put his arm out and he stopped me. He didn't let me." *Id* at ¶ 26. Bolivar testified she had the court orders and that she could have articulated the situation in a way Fishman could not have. *Id* at ¶ 27. Bolivar was intimidated by Schlesinger. *Id* at ¶ 28.

4

### V. Defendants Deny Plaintiff the Requested Reasonable Accommodation

Officer Schlesinger intentionally refused to accommodate plaintiff because according to the officer: "I did not think he was disabled" and that "I don't believe he had a disability that prevented him from making statements," and "That day I did not see a disability in my interactions with him." Plaintiff's 56.1 at ¶ 29.

When plaintiff showed the officer his brain injury card the officer stated "I don't care. Put it away…I don't need to see it. My boss says I don't need to see it." Plaintiff's 56.1 at ¶ 30.

At some point during the interrogation, Officer Schlesinger asked plaintiff to read, authenticate and explain a 20 plus page visitation agreement to him. Plaintiff "started reading it…and had an occipital neuralgia attack while sitting at the table." Plaintiff's 56.1 at ¶ 31.

### VI. Defendants Release Fishman on Bail as an "Accommodation"

While defendant claims it did accommodate plaintiff by allowing him to go home instead of being sent to jail, Robert Wenzler testified that "Decision was not based on some specific policy about accommodating people that were disabled, it was based off of sympathy and empathy to the situation." Plaintiff's 56.1 at ¶ 32.

However, Lt. Wenzler testified "By allowing him to leave that day versus staying in a jail cell for the next two days, I would say that was an accommodation, yes." Plaintiff's 56.1 at ¶ 33.

Officer Schlesinger confirmed plaintiff did not ask for an accommodation to be sent home. Instead, Lieutenant Wenzler "Made a decision to release Mr. Fishman so that medical attention, if needed, could be given to him and he doesn't have to be housed in a cell unnecessarily." Plaintiff's 56.1 at ¶ 34. In the reporting officer narrative it is set forth that "Due to the poor health of Mr. Fishman and his inability to drive it was authorized to release him to Ms. Bolivar and assign a return date of 17 Dec 18." *Id* at ¶ 35.

## VII. Fishman is Significantly Harmed Because of the Denial of a Reasonable Accommodation

Bolivar testified that had the accommodation been granted "I would have been able to explain [the situation] and help avoid everything that happened to the detriment of these children, him and our families." Plaintiff's 56.1 at ¶ 36.

Fishman was required to expend over $50,000 to defend the criminal case and to hire a disability advocate. Plaintiff's 56.1 at ¶ 37. Fishman lost his real estate broker's license. *Id* at ¶ 38. Fishman lost $150,000 in income as a result of the 10-month suspension of his real estate broker's license. *Id* at ¶ 39.

Fishman was convicted of crimes he was actually innocent of. Plaintiff's 56.1 at ¶ 40. Ann Elliot testified "I didn't think there was a crime with Mr. Fishman," with respect to the events of the December 15, 2018 scheduled supervised visitation, and she was not concerned about Mr. Fishman being arrested or charged with a crime that day. *Id* at ¶ 41.

The prosecutor conceded that the verdict against Fishman was legally inconsistent. Plaintiff's 56.1 at ¶ 42. The trial judge refused to vacate the legally inconsistent verdict. *Id* at ¶ 43.

Fishman has been prohibited from any visitation with his children since January 28, 2020 as orders of protection have been in place since the jury's legally inconsistent verdict was rendered. Plaintiff's 56.1 at ¶ 44. This was a continuation of the parental alienation being created against Fishman as testified to by Elliot. *Id* at ¶ 45.

**ARGUMENT**

I. **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED AS ALL PARTIES AGREE THAT PLAINTIFF IS DISABLED AND WAS DENIED AN ACCOMMODATION DURING THE POLICE ENCOUNTER AND THERE IS NO DISPUTE THAT THE REQUESTED ACCOMODATION WAS REASONABLE AND WOULD NOT HAVE BURDENED THE DEFENDANTS**

In the Second Circuit "To establish a claim under Title II, a plaintiff must demonstrate (1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (*quoting Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016)). On a failure to accommodate theory "The demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Id* at 405 (*quoting Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003)).

In this Circuit it is clear that "police encounters are…services, programs or activities within the meaning of Title II." *Wynne v. Town of E. Hartford*, 2023 U.S. Dist. LEXIS 199575, 2023 WL 7339543 (D. Ct. Nov. 7, 2023) (Hall, D.J.) (*citing Williams v. City of New York*, 121 F. Supp. 3d 354, 364-65 (S.D.N.Y. 2015)).

A. **There is no Dispute That Plaintiff is a Qualified Individual With a Disability**

There is no dispute that plaintiff is disabled. First, when moving to dismiss plaintiff's *pro se* complaint the defendants did not contest the plaintiff's disability and should be held to such position. Second, the testimony of the defendants' employees confirms their acceptance of his disability on December 15, 2018. Specifically, Schlesinger testified that he never denied plaintiff

7

was disabled and Wenzler testified he accommodated plaintiff's disability when he released him instead of sending him to jail pending arraignment. Third, the testimony of plaintiff, his disability aide, the medical documentation and the supervisor for visitation all confirm his disability.

    **B. There is no Dispute That Plaintiff Requested a Reasonable Accommodation and That Defendants Were Otherwise on Notice of the Need for a Reasonable Accommodation**

"A public entity discriminates against qualified individuals with a disability if it fails to provide them with a reasonable accommodation that permits them to have access to and take a meaningful part in its services, programs, or activities." *Wynne,* U.S. Dist. LEXIS 199575 (*citing Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)).

"A plaintiff bears the initial burden of demonstrating the existence of some accommodation…" *Wynne,* U.S. Dist. LEXIS 199575 (*citing McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012)). And, "Once the plaintiff has identified a plausible accommodation, the costs of which, facially do not clearly exceed its benefits, the defendant bears the burden of showing that the plaintiff's proposed accommodation is unreasonable." *Id* (*citing Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

Here, there is no dispute that plaintiff requested a reasonable accommodation. First, plaintiff voluntarily went to the NRPD stationhouse to file a complaint and when he communicated with the employee at the window he advised he was disabled. Second, plaintiff told Schlesinger he was disabled and required assistance from his court assigned disability/ADA aide to communicate with Schlesinger during the questioning. Third, Schlesinger admitted at his deposition that he was repeatedly informed of plaintiff's disabilities but that he simply did not accept them and thus did not provide an accommodation. Fourth, Bolivar testified she also advised Schlesinger she was the court assigned disability/ADA aide and that she could assist plaintiff in

communicating and explain the complex visitation orders. Fifth, Wenzler testified that they agreed to accommodate plaintiff by letting him go home instead of being sent to jail, but did not provide him any accommodation during the interview.

### C. There is no Dispute That Plaintiff was Denied a Reasonable Accommodation

Even if Schlesinger's claim that a specific accommodation was not requested is believed, his refusal to engage in an interactive process to determine what accommodations could be provided is a de-facto denial of an accommodation.

There is no dispute that Schlesinger denied plaintiff an accommodation during the police interview. Schlesinger admitted he was informed of plaintiff's disabilities but rejected the claims and as such refused to provide an accommodation. He refused to permit plaintiff's disability/ADA aide to be present during the interview to assist with his cognitive and hearing deficits.

### D. The Defendants Cannot Establish That the Requested Accommodation was Unreasonable or Was Otherwise Burdensome

The defendant is unable to demonstrate that the requested accommodation was unreasonable or otherwise burdensome. It would defy logic to argue that allowing a disabled person's disability/ADA aide to be present during an interrogation would burden the defendant police department. Instead it would have helped the defendant avoid the mess of the last six years in charging an innocent disabled person with crimes he did not commit. And, the defendant could have still proceeded with the same course with plaintiff even if the accommodation was granted. Its decision to deny the accommodation was discriminatory as it denied a disabled person the same access to the police encounter as non-disabled persons. A similar nondisabled person could have explained the legality of the conduct and the 30 plus pages of court orders rendering all conduct that day legal. However, the disabled plaintiff could not do so without the assistance of a

9

disability/ADA aide. Since this sort of accommodation would not cost the defendant anything or create non financial burdens, the defendant cannot rebut plaintiff's *prima facie* case, rendering summary judgment appropriate and necessary.

## **CONCLUSION**

The plaintiff's motion for summary judgment should be granted and this matter scheduled for a jury trial as to damages only.