UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| MARC FISHMAN, | **LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff. | |
| | 19-cv-00265-NSR |
| - against - | |
| CITY OF NEW ROCHELLE, LANE SCHLESINGER, SHIELD # 1058, JOSEPH F. SCHALLER, ROBERT GAZOLLA, IN HIS OFFICIAL CAPACITY AS POLICE COMMISSIONER OF THE CITY OF NEW ROCHELLE POLICE DEPARTMENT, SERGEANT MYRON JOSEPH SHIELD # 18, AND COUNTY OF WESTCHESTER, | |
| Defendants. | |

------------------------------------------------------------------------X

Plaintiff Marc Fishman respectfully submit this statement, pursuant to Your Honor's Individual Practice Rules and Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, setting forth the undisputed material facts upon which plaintiff contends there are no genuine issues to be tried:

### I. Plaintiff Marc Fishman Voluntarily Goes to the New Rochelle Police Department

1. On December 15, 2018, Marc Fishman (hereinafter "Fishman") voluntarily walked into the New Rochelle Police Department (hereinafter "NRPD") stationhouse to make a complaint about violation of his court ordered supervised visitation with his children. **Exhibit 1** for Deposition Transcript of Marc Fishman at 73:16-74:2; 75:23-25.

2. The visit was scheduled and confirmed via text message the day prior. **Exhibit 1** at 62:10-63:8; **Exhibit 2** for text messages of December 14-15, 2018.

3. Ann Elliot (hereinafter "Elliot") testified that "As a supervisor, I could have said to Ms. Solomon, Ms. Solomon, go inside, he does have a visit this morning by court order, we are going to move forward with the visit and move forward," but she decided not to have a visit as her "perception is we'll have future visits…but it didn't work out that way once we got to the police station." **Exhibit 3** for Deposition Transcript of Ann Elliot at 105:8-23.

4. Fishman was accompanied by the supervisor for the visitation, Elliot and the court appointed disability aide, Isabel Bolivar (hereinafter "Bolivar"). Deposition of Marc Fishman at **Exhibit 1** at 47:21-25; 56:6-24; 79:12-20.

5. Bolivar was appointed as Fishman's disability/ADA aide by Judge Michelle I. Schauer in her March 30, 2018 visitation order. **Exhibit 4** for March 30, 2018 Order.

6. When Fishman arrived at the stationhouse he advised the employee at the counter of his difficulty hearing and understanding her. **Exhibit 1** 78:19-20, 79:2-7.

7. Fishman disclosed his disability to the window officer at the NRPD. **Exhibit 1** at 79:8-11. Fishman stated he had difficulty interacting and needed an accommodation. *Id*.

II. **Plaintiff's Cognitive and Hearing Disabilities**

8. Fishman suffers from "Post-concussion syndrome [and] traumatic brain injury affect[ing] registration, cognition, short-term memory, names, sequences." **Exhibit 1** at 39:6-10; **Exhibit 5** for Medical Note of March 22, 2021 from Center for Cognition and Communication.

9. Additionally, Fishman suffers from "tinnitus…which impacts [his] hearing" and "occipital neuralgia, which is severed nerves in the rear of [his] head." **Exhibit 1** at 37:3-22.

10. As a result of this disabilities, Fishman has received treatment including "executive function testing…memory recall…speak, traumatic brain injury therapy [and] role playing with decision making." **Exhibit 1** at 45:15-20.

11. Plaintiffs caries cards labeled "Brain Injury Identification Card," and a Medtronic Medical Device Identification card for his Stimulation System Implant. **Exhibit 6** for Identification Cards.

12. Elliot testified she felt Fishman was "a little slow." **Exhibit 3** at 92:19-93:2.

13. Elliot testified that Fishman would have difficulty in expressing and communicating what occurred to the police officers who interviewed him, that he could come off as slower and would be jumping all over. **Exhibit 3** at 108:16-109:11.

14. When asked about whether Fishman needed an accommodation or modification, Elliot explained "I just know with my communication [with Fishman] sometimes it did get a little frustrating but as a professional I had to work with that, so yes." **Exhibit 3** at 109:12-20.

### III. Defendants Agree Plaintiff is Disabled

15. Officer Schlesinger testified "I never said he wasn't disabled." **Exhibit 1** at 129:9-11.

16. In their motion to dismiss the complaint the defendants did not contest plaintiff's disability.

17. The defendants agreed to and did conduct plaintiff's deposition in this case with the assistance of a real time transcription accommodation.

18. The Second Circuit previously granted Fishman's motion in another matter for an accommodation for this disabilities in the form of real time transcription during oral argument.

### IV. Plaintiff Requests a Reasonable Accommodation

19. While at the stationhouse, "Ms. Bolivar identified herself as [Fishman's] aide for communication…and that she had the papers with her for the orders, and that [Fishman] needed

her help, and she needed to assist [Fishman] with communication and interpret and show all the orders to Officer Schlesinger." **Exhibit 1** at 93:5-21.

20. However, "Officer Schlesinger denied Ms. Bolivar as my aide access to the room to assist me with full and effective communication." **Exhibit 1** at 99:10-16.

21. Additionally, when Fishman "Showed Officer Schlesinger [his] traumatic brain injury card and asked for [his] aide to be brought in with me…he said he wasn't interested." **Exhibit 1** at 100:2-6.

22. The proposed accommodation was requested and was simply for the disability "aide to come in to assist with…reading and interpreting the order [and] for [Fishman or his] aide to go to the car to get the court file out of the truck that had the order [stating she was] the [court appointed] aide and had the visitation orders." **Exhibit 1** at 102:25-103:8; **Exhibit 4**; **Exhibit 7** for June 13, 2018 27 Page Visitation Order.

23. Had the accommodation been granted "Ms. Bolivar would have brought the order [showing] she's…the court-appointed aide [and] she would have been able to isolate the portions of the order of protection that have a carve-out for visitation…and she would have been able to read the order." **Exhibit 1** at 104:14-105:11.

24. Had the accommodation been granted the disability aide could have articulated to Officer Schlesinger that there was "no violation [of the order of protection] and the visit wasn't canceled in writing beforehand and that we didn't go on any property." **Exhibit 1** at 107:6-18.

25. Bolivar testified that she was prevented from going into the interrogation room with Fishman. **Exhibit 8** for Deposition Transcript of Isabel Bolivar at 38:19-39:11.

26. Bolivar testified she told Schlesinger "I wanted to go in with them to explain the situation, to participate in the interrogation and he literally put his arm out and he stopped me. He didn't let me." **Exhibit 8** at 52:3-6.

27. Bolivar testified she had the court orders and that she could have articulated the situation in a way Fishman could not have. **Exhibit 8** at 38:23-39:2.

28. Bolivar was intimidated by Schlesinger. **Exhibit 8** at 39:12-20.

**V.    Defendants Deny Plaintiff the Requested Reasonable Accommodation**

29. Officer Schlesinger intentionally refused to accommodate plaintiff because according to the officer: "I did not think he was disabled" and that "I don't believe he had a disability that prevented him from making statements," and "That day I did not see a disability in my interactions with him." **Exhibit 9** for Deposition Transcript of Lane Schlesinger at 50:8-9, 94:25-9:2, 124:2-4.

30. When plaintiff showed the officer his brain injury card the officer stated "I don't care. Put it away…I don't need to see it. My boss says I don't need to see it." **Exhibit 1** at 140:18-25.

31. At some point during the interrogation, Officer Schlesinger asked plaintiff to read, authenticate and explain a 20 plus page visitation agreement to him. Plaintiff "started reading it…and had an occipital neuralgia attack while sitting at the table." **Exhibit 1** at 102:10-19.

**VI.    Defendants Release Fishman on Bail as an "Accommodation"**

32. While defendant claims it did accommodate plaintiff by allowing him to go home instead of being sent to jail, Robert Wenzler testified that "Decision was not based on some specific policy about accommodating people that were disabled, it was based off of sympathy

and empathy to the situation." **Exhibit 10** for Deposition Transcript of Robert Wenzler at 37:2-14.

33. However, Lt. Wenzler testified "By allowing him to leave that day versus staying in a jail cell for the next two days, I would say that was an accommodation, yes." **Exhibit 10** at 96:3-10.

34. Officer Schlesinger confirmed plaintiff did not ask for an accommodation to be sent home. Instead, Lieutenant Wenzler "Made a decision to release Mr. Fishman so that medical attention, if needed, could be given to him and he doesn't have to be housed in a cell unnecessarily." **Exhibit 9** at 82:1-10.

35. In the reporting officer narrative it is set forth that "Due to the poor health of Mr. Fishman and his inability to drive it was authorized to release him to Ms. Bolivar and assign a return date of 17 Dec 18." **Exhibit 11** for Reporting Officer Narrative.

### VII. Fishman is Significantly Harmed Because of the Denial of a Reasonable Accommodation

36. Bolivar testified that had the accommodation been granted "I would have been able to explain [the situation] and help avoid everything that happened to the detriment of these children, him and our families." **Exhibit 8** at 46:15-18.

37. Fishman was required to expend over $50,000 to defend the criminal case and to hire a disability advocate. **Exhibit 1** at 133:6-25.

38. Fishman lost his real estate broker's license. **Exhibit 1** at 134:14-135:25.

39. Fishman lost $150,000 in income as a result of the 10-month suspension of his real estate broker's license. **Exhibit 1** at 136:2-7.

40. Fishman was convicted of crimes he was actually innocent of. **Exhibit 12** for Memorandum of Law in Support of Motion to Set Aside Guilty Verdict.

41. Ann Elliot testified "I didn't think there was a crime with Mr. Fishman," with respect to the events of the December 15, 2018 scheduled supervised visitation, and she was not concerned about Mr. Fishman being arrested or charged with a crime that day. **Exhibit 3** at 83:7-17.

42. The prosecutor conceded that the verdict against Fishman was legally inconsistent. **Exhibit 13** for People's Affirmation in Opposition to Motion to Set Aside Verdict.

43. The trial judge refused to vacate the legally inconsistent verdict.

44. Fishman has been prohibited from any visitation with his children since January 28, 2020 as orders of protection have been in place since the jury's legally inconsistent verdict was rendered.

45. This was a continuation of the parental alienation being created against Fishman as testified to by Elliot. **Exhibit 3** at 92:7-93:10.

                        LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
         June 2, 2024

_____/s/_____
Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
Fax: 646-679-2527
caner@canerlawoffice.com