THE QUINN LAW FIRM PLLC
Attorneys for the City of New Rochelle
399 Knollwood Road, Suite 220
White Plains, NY  10603
(914) 997-0555
Attn:   Lalit K. Loomba, Esq.
          lloomba@quinnlawny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------  X

MARC FISHMAN,                                          :        Docket No.
                                                                        19-CV-265 (NSR)

                                  Plaintiff,              :

     -against-                                             :        CITY OF NEW
                                                                        ROCHELLE'S RESPONSE
CITY OF NEW ROCHELLE, LANE SCHLESINGER,   :        TO PLAINTIFF'S
SHIELD #1058, JOSEPH F. SCHALLER, ROBERT              STATEMENT OF
GAZOLLA, IN HIS OFFICIAL CAPACITY AS          :        UNDISPUTED FACTS
POLICE COMMISSIONER OF THE CITY OF NEW               PURSUANT TO LOCAL
ROCHELLE POLICE DEPARTMENT, SERGEANT     :        RULE 56.1
MYRON JOSEPH SHIELD #18, & COUNTY OF
WESTCHESTER,                                           :
                                                                 :
                                  Defendants.          :

-------------------------------------------------------------------  X

TO:

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.
Attorneys for Plaintiff
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
(718) 344-6048
caner@canerlawoffice.com

        PLEASE TAKE NOTICE that pursuant to Rule 56.1 of the Local Rules of the Southern

District of New York, defendant City of New Rochelle (the "City") hereby sets forth the

following response to plaintiff's statement of material undisputed facts.

-1-

1.      On December 15, 2018, Marc Fishman (hereinafter "Fishman") voluntarily walked into the New Rochelle Police Department (hereinafter "NRPD") stationhouse to make a complaint about violation of his court ordered supervised visitation with his children. **Exhibit 1** for Deposition Transcript of Marc Fishman at 73:16-74:2; 75:23-25.

**Response**:  Admit.

2.      The visit was scheduled and confirmed via text message the day prior.  **Exhibit 1** at 62:10-63:8; Exhibit 2 for text messages of December 14-15, 2018.

**Response:**  Deny.  Exhibit 2 is a text message from Ms. Elliot, not from Ms. Solomon.  *See also* Defendant's Ex. G-1 (video of the interaction between Mr. Fishman and Ms. Elliot and the civilian service officer).

3.      Ann Elliot (hereinafter "Elliot") testified that "As a supervisor, I could have said to Ms. Solomon, Ms. Solomon, go inside, he does have a visit this morning by court order, we are going to move forward with the visit and move forward," but she decided not to have a visit as her "perception is we'll have future visits... but it didn't work out that way once we got to the police station." **Exhibit 3** for Deposition Transcript of Ann Elliot at 105:8-23.

**Response**:  Deny.  *See* Deposition of Ann Elliot, at 105:8-23 for her full testimony.

4.      Fishman was accompanied by the supervisor for the visitation, Elliot and the court appointed disability aide, Isabel Bolivar (hereinafter "Bolivar"). Deposition of Marc Fishman at **Exhibit 1** at 47:21-25; 56:6-24; 79:12-20.

**Response**:  Admit, except deny that Ms. Bolivar was appointed by the Court as an ADA disability aid.  *See* **Exhibit 4**, at p.3.

5.      Bolivar was appointed as Fishman's disability/ADA aide by Judge Michelle I. Schauer in her March 30, 2018 visitation order. **Exhibit 4** for March 30, 2018 Order.

**Response:**  Deny.  By the plain terms of the Order, Judge Schauer held: "To the extent that Mr. Fishman now asserts that he does not need supervision by a professional supervisor and

that the Court should give him an aide to assist with his visits because he is disabled . . . his *assertion is meritless and any such aid does not constitute an "ADA" court accommodation*." **Exhibit 4,** at p.3 (emphasis added).

6.    When Fishman arrived at the stationhouse he advised the employee at the counter of his difficulty hearing and understanding her. **Exhibit 1** 78:19-20, 79:2-7.

**Response:** Deny.  *See* Defendant's Ex. G-1 (video of the interaction between Mr. Fishman and the civilian service officer).

7.    Fishman disclosed his disability to the window officer at the NRPD. **Exhibit 1** at 79:8-11. Fishman stated he had difficulty interacting and needed an accommodation. *Id.*

**Response:** Deny, except admit that about 11 minutes into his conversation with the window officer Mr. Fishman, while introducing Ms. Bolivar, states "I'm disabled."  *See* Defendant's Ex. G-1 (video of the interaction between Mr. Fishman and the civilian service officer).

8.    Fishman suffers from "Post-concussion syndrome [and] traumatic brain injury affect[ing] registration, cognition, short-term memory, names, sequences." **Exhibit 1** at 39:6-10; **Exhibit 5** for Medical Note of March 22, 2021 from Center for Cognition and Communication.

**Response:** Deny.  The evidence cited does not support the statement.

9.    Additionally, Fishman suffers from "tinnitus... which impacts [his] hearing" and "occipital neuralgia, which  is severed nerves in the rear of [his] head." **Exhibit 1** at 37:3-22.

**Response:** Admit only that plaintiff made these statements in his deposition.

10.    As a result of this disabilities, Fishman has received treatment including "executive function testing... memory recall... speak, traumatic brain injury therapy [and] role playing with decision making." **Exhibit 1** at 45:15-20.

**Response:** Admit only that plaintiff made these statements in his deposition.

11.     Plaintifs caries cards labeled "Brain Injury Identification Card," and a Medtronic Medical Device Identification card for his Stimulation System Implant. **Exhibit 6** for Identification

Cards.

> **Response:**  Admit that these identification cards were issued to plaintiff.  Deny information
> and belief as to whether he carries those cards with him.

12.    Elliot testified she felt Fishman was "a little slow." **Exhibit 3** at 92:19-93:2.

> **Response**:  Admit.

13.    Elliot testified that Fishman would have difficulty in expressing and
communicating what occurred to the police officers who interviewed him, that he could come off as
slower and would be jumping all over. **Exhibit 3** at 108:16-109:11.

> **Response:**  Deny.  The cited testimony does not support this statement.

14.    When asked about whether Fishman needed an accommodation or modification,
Elliot explained "I just know with my communication [with Fishman] sometimes it did get a little
frustrating but as a professional  I had to work with that, so yes." **Exhibit 3** at 109:12-20.

> **Response:**  Deny.  The statement omits a significant portion of Ms. Elliot's response.

15.    Officer Schlesinger testified "I never said he wasn't disabled." **Exhibit 1** at 129:9-
11

> **Response:**  Admit.  But further allege that Officer Schlesinger testified that Mr. Fishman "was
> perfectly lucid in conversation," and that he not believe that Mr. Fishman required an
> accommodation to participate in a conversation.  Schlesinger Dep. (Ex. C), at 39:19-40:5;
> 85:6-25; 94:18-95:17.

16.    In their motion to dismiss the complaint the defendants did not contest plaintiffs
disability.

> **Response:**  Admit that in moving to dismiss plaintiff's amended complaint pursuant to Rule
> 12(b)(6) of the Federal Rules of Civil Procedure, defendants assumed the truth of the
> allegations of the complaint for purposes of the motion only.

eicht

17.     The defendants agreed to and did conduct plaintiffs deposition in this case with the assistance of a real time transcription accommodation.

**Response**:     Admit that plaintiff requested, and paid for the cost of a real time transcription of his deposition which was held remotely.

18.     The Second Circuit previously granted Fishman's motion in another matter for an accommodation for this disabilities in the form of real time transcription during oral argument.

**Response:**     Deny.  Plaintiff cites no evidence to support this statement.

19.     While at the stationhouse, "Ms. Bolivar identified herself as [Fishman's] aide for communication... and that she had the papers with her for the orders, and that [Fishman] needed her help, and she needed to assist [Fishman] with communication and interpret and show all the orders to Officer Schlesinger." **Exhibit 1** at 93:5-21.

**Response**:  Admit that Mr. Fishman testified to this effect, but object on grounds that this testimony is inadmissible hearsay.  *See* FRE 801, 802.

20.     However, "Officer Schlesinger denied Ms. Bolivar as my aide access to the room to assist me with full and effective communication." **Exhibit 1** at 99:10-16.

**Response**:  Admit that Mr. Fishman testified to this effect, but object on grounds that this testimony is inadmissible hearsay.  *See* FRE 801, 802.

21.     Additionally, when Fishman "Showed Officer Schlesinger [his] traumatic brain injury card and asked for [his] aide to be brought in with me... he said he wasn't interested." **Exhibit 1** at 100:2-6.

**Response**:  Deny.  *See* Deposition of Lane Schlesinger (Ex. C), at 46:18-20.

22.     The proposed accommodation was requested and was simply for the disability "aide to come in to assist with... reading and interpreting the order [and] for [Fishman or his] aide to go to the car to get the court file out of the truck that had the order [stating she was] the [court appointed]

aide and had the visitation orders." **Exhibit 1** at 102:25-103:8; **Exhibit 4; Exhibit** 7 for June 13, 2018 27 Page Visitation Order.

   **Response**: Deny. *See* Deposition of Lane Schlesinger (Ex. C), at 53:22-54:21; 93:6-20.

   23.    Had the accommodation been granted "Ms. Bolivar would have brought the order [showing] she's... the court-appointed aide [and] she would have been able to isolate the portions of the order of protection that have a carve-out for visitation... and she would have been able to read the order." **Exhibit 1** at 104:14-105:11.

   **Response:** Deny, and refer to Ms. Elliot's full testimony at Ex. I, pp 104:14-105:11.

   24.    Had the accommodation been granted the disability aide could have articulated to Officer Schlesinger that there was "no violation [of the order of protection] and the visit wasn't canceled in writing beforehand and that we didn't go on any property." **Exhibit 1** at 107:6-18.

   **Response:** Admit.

   25.    Bolivar testified that she was prevented from going into the interrogation room with Fishman. **Exhibit 8** for Deposition Transcript of Isabel Bolivar at 38:19-39:11.

   **Response:** Admit.

   26.    Bolivar testified she told Schlesinger "I wanted to go in with them to explain the situation, to participate in the interrogation and he literally put his arm out and he stopped me. He didn't let me." **Exhibit 8** at 52:3-6.

   **Response:** Admit.

   27.    Bolivar testified she had the court orders and that she could have articulated the situation in a way Fishman could not have. **Exhibit 8** at 38:23-39:2.

   **Response:** Admit.

   28.    Bolivar was intimidated by Schlesinger. **Exhibit 8** at 39:12-20.

   **Response:** Admit that Ms. Bolivar testified to that effect.

29.      Officer Schlesinger intentionally refused to accommodate plaintiff because according to the officer: "I did not think he was disabled" and that "I don't believe he had a disability that prevented him from making statements," and "That day I did not see a disability in my interactions with him." **Exhibit 9** for Deposition Transcript of Lane Schlesinger at 50:8-9, 94:25-9:2, 124:2-4.

Response:  Deny.  *See* Schlesinger Dep. (Ex. C), at 53:22-54:21; 93:6-20.

30.      When plaintiff showed the officer his brain injury card the officer stated "I don't care. Put it away.. .I don't need to see it. My boss says I don't need to see it." **Exhibit 1** at 140:18-25.

Response:  Admit that Mr. Fishman testified to this effect, but object because this testimony is inadmissible hearsay.  *See* FRE 801, 802.

31.      At some point during the interrogation, Officer Schlesinger asked plaintiff to read, authenticate and explain a 20 plus page visitation agreement to him. Plaintiff "started reading it... and had an occipital neuralgia attack while sitting at the table." **Exhibit 1** at 102:10-19.

Response:  Deny.  The cited testimony does not state that Mr. Fishman was asked to read a 20-page visitation agreement.

32.      While defendant claims it did accommodate plaintiff by allowing him to go home instead of being sent to jail, Robert Wenzler testified that "Decision was not based on some specific policy about accommodating people that were disabled, it was based off of sympathy and empathy to the situation." **Exhibit 10** for Deposition Transcript of Robert Wenzler at 37:2- 14.

Response:  Admit that plaintiff was allowed to be released on his own recognizance because of concerns about his health.  Ex. 10, at 37:2-14.

33.      However, Lt. Wenzler testified "By allowing him to leave that day versus staying in a jail cell for the next two days, I would say that was an accommodation, yes." **Exhibit 10** at 96:3-10.

Response:  Admit.

34.     Officer Schlesinger confirmed plaintiff did not ask for an accommodation to be sent home. Instead, Lieutenant Wenzler "Made a decision to release Mr. Fishman so that medical attention, if needed, could be given to him and he doesn't have to be housed in a cell unnecessarily." **Exhibit 9** at 82:1-10.

Response: Admit.

35.     In the reporting officer narrative it is set forth that "Due to the poor health of Mr. Fishman and his inability to drive it was authorized to release him to Ms. Bolivar and assign a return date of 17 Dec 18." **Exhibit 11** for Reporting Officer Narrative.

Response: Admit.

36.     Bolivar testified that had the accommodation been granted "I would have been able to explain [the situation] and help avoid everything that happened to the detriment of these children, him and our families." **Exhibit 8** at 46:15-18.

Response: Admit.

37.     Fishman was required to expend over $50,000 to defend the criminal case and to hire a disability advocate. **Exhibit 1** at 133:6-25.

Response: Deny. The cited testimony does not support the statement.

38.     Fishman lost his real estate broker's license. **Exhibit 1** at 134:14-135:25.

Response: Deny. The cited testimony does not support the statement.

39.     Fishman lost $150,000 in income as a result of the IO-month suspension of his real estate broker's license. **Exhibit 1** at 136:2-7.

Response: Deny.

40.     Fishman was convicted of crimes he was actually innocent of. **Exhibit 12** for Memorandum of Law in Support of Motion to Set Aside Guilty Verdict.

Response: Deny.

41.     Ann Elliot testified "I didn't think there was a crime with Mr. Fishman," with

respect to the events of the December 15, 2018 scheduled supervised visitation, and she was not concerned about Mr. Fishman being arrested or charged with a crime that day. **Exhibit 3** at 83:7- 17.

> **Response:** Admit that Ms. Elliot testified to this effect.

42. The prosecutor conceded that the verdict against Fishman was legally inconsistent. **Exhibit 13** for People's Affirmation in Opposition to Motion to Set Aside Verdict.

> **Response:** Deny.  In the underlying criminal trial, Mr. Fishman was found guilty of both attempted criminal contempt in the second degree, and criminal contempt in the second degree.  In opposing Mr. Fishman's motion to vacate the verdict, Assistant District Attorney Joyce V. Miller stated that because attempted criminal contempt in the second degree and criminal contempt in the second degree are "inclusory concurrent counts, the guilty verdict of the greater count—criminal contempt in the second degree—is deemed a dismissal of the lesser count submitted." Ex. 13, at p.15.  According to ADA Miller, the "appropriate remedy is dismissal of the attempted criminal contempt in the second degree count by this Court." *Id.*  However, Mr. Fishman's conviction for the greater charge, criminal contempt in the second degree, stands.

43. The trial judge refused to vacate the legally inconsistent verdict.

> **Response:** Admit that Fishman's motion to vacate the conviction was denied.

44. Fishman has been prohibited from any visitation with his children since January 28, 2020 as orders of protection have been in place since the jury's legally inconsistent verdict was rendered.

> **Response**: Deny.  Plaintiff cites no evidence to support this statement.

45. This was a continuation of the parental alienation being created against Fishman as testified to by Elliot. **Exhibit 3** at 92:7-93:10.

> **Response**: Deny.  The cited testimony does not support the statement.

Dated:  White Plains, New York
        July 8, 2024

                                        Respectfully submitted,

                                        THE QUINN LAW FIRM PLLC
                                        Attorneys for City of New Rochelle


                                        *Lalit K. Loomba*

                                        _____
                                        Lalit K. Loomba

                                        399 Knollwood Road, Suite 220
                                        White Plains, NY  10603
                                        (914) 997-0555
                                        lloomba@quinnlawny.com

-10-