THE QUINN LAW FIRM PLLC
Attorneys for the City of New Rochelle
399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555
Attn: Lalit K. Loomba, Esq.
lloomba@quinnlawny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
MARC FISHMAN,                                            :    Docket No.
                                                         :    19-CV-265 (NSR)
                            Plaintiff,                   :
                                                         :
        -against-                                        :    CITY OF NEW
                                                         :    ROCHELLE'S
CITY OF NEW ROCHELLE, LANE SCHLESINGER,                  :    STATEMENT OF
SHIELD #1058, JOSEPH F. SCHALLER, ROBERT                 :    UNDISPUTED FACTS
GAZOLLA, IN HIS OFFICIAL CAPACITY AS                     :    PURSUANT TO LOCAL
POLICE COMMISSIONER OF THE CITY OF NEW                   :    RULE 56.1
ROCHELLE POLICE DEPARTMENT, SERGEANT                     :
MYRON JOSEPH SHIELD #18, & COUNTY OF                     :
WESTCHESTER,                                             :
                                                         :
                            Defendants.                  :
-------------------------------------------------------------------- X

TO:

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.
Attorneys for Plaintiff
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
(718) 344-6048
caner@canerlawoffice.com

   PLEASE TAKE NOTICE that pursuant to Rule 56.1 of the Local Rules of the Southern

District of New York, defendant City of New Rochelle (the "City") hereby sets forth the

following statement of material facts as to which it contends there are no genuine issues to be

tried.

-1-

A. The Parties

1. Plaintiff Marc Fishman ("Plaintiff" or "Mr. Fishman"), is an individual who, at all relevant times, resided in the state of New York. *See* First-Amended Complaint (**Exhibit A**), at ¶7.

2. Plaintiff was deposed on October 17, 2023, and relevant pages from his deposition transcript are annexed as **Exhibit B**.

3. Defendant City of New Rochelle is a municipal corporation organized and existing under the laws of the state of New York.

B. Non-Party Witnesses

4. Police Office Lane Schlesinger ("P.O. Schlesinger") was, at all relevant times, an employee of the City, and a member of the New Rochelle Police Department ("NRPD").

5. Officer Schlesinger was deposed on December 1, 2023, and relevant pages from his deposition transcript are annexed as **Exhibit C**.

6. Lieutenant Robert Wenzler ("Wenzler") is an employee of the City, and a member of the NRPD. Lieutenant Wenzler was deposed on September 26, 2023, and relevant pages from his deposition transcript are annexed as **Exhibit D.**

7. Ms. Isabella Bolivar ("Ms. Bolivar") is an individual who resides in New York State, and, at all relevant times, was the fiancée of plaintiff Marc Fishman. *See* Deposition of Isabella Bolivar, taken December 4, 2023 (**Exhibit E**), at 10:5-17.

8. Ms. Bolivar was deposed on December 4, 2023, and relevant pages from her deposition transcript are annexed as **Exhibit E.**

9. Ms. Ann Elliott ("Ms. Elliott") is an individual who resides in New York State,

and, at all relevant times, was a court-approved visitation supervisor for visits between plaintiff Marc Fishman and his children.

10. Ms. Elliott was deposed on December 4, 2023, and relevant pages from her deposition transcript are annexed as **Exhibit F.**

11. Jennifer Solomon ("Ms. Solomon") is an individual who resides in New York State. Ms. Solomon is the ex-wife of plaintiff Marc Fishman and the mother of his four children. *See* Fishman Dep. (Ex. B), at 19:6-21; 21:20-23:16.

C. The Fishman-Solmon Marriage and Divorce

12. Plaintiff Marc Fishman and Ms. Jennifer Solomon were married on July 4, 2010. Fishman Dep. (Ex. B), at 19:5-18.

13. Mr. Fishman and Ms. Solomon had four children together: a daughter, a son, and twin sons. Fishman Dep. (Ex. B), at 21:18-22:19.

14. Mr. Fishman and Ms. Solomon's divorce became finalized in or about October 2012. Fishman Dep. (Ex. B), at 19:5-18.

D. The June 13, 2018 Family Court Orders

15. On June 13, 2018, the Family Court, Westchester County (Michelle I. Schauer, J.) issued a fact-finding order and order of protection in connection with Mr. Fishman, Ms. Solomon and their children. *Matter of Solomon v. Fishman*, 180 A.D.3d 1051, 1051 (2d Dep't 2020).

16. The June 13, 2018 fact-finding order and order of protection modified the previously so-ordered custody agreement between Mr. Fishman and Ms. Solomon, dated May 5, 2014, by awarding Ms. Solmon sole legal custody of the children, and denied Mr. Fishman's cross-petition to enforce the earlier May 5, 2014 agreement. *Matter of Solomon v. Fishman*, 180 A.D.3d 1051, 1051 (2d Dep't 2020).

17.     The order of protection issued on June 13, 2018 (the "Order of Protection"), among other things, "directed [Mr. Fishman] to stay away from the children, their home, and their schools except for certain supervised parental access, until and including June 13, 2019." *Matter of Solomon v. Fishman,* 180 A.D.3d 1051, 1051 (2d Dep't 2020).

18.     Mr. Fishman appealed from the Order of Protection as well as the modification of the May 5, 2014 custody agreement. *Matter of Solomon v. Fishman,* 180 A.D.3d 1051, 1051 (2d Dep't 2020).

19.     On February 26, 2020, the Appellate Division of the Supreme Court of the State of New York, Second Department, dismissed Mr. Fishman's appeal from the Order of Protection as academic because the order had expired, on its own terms, on June 13, 2019. *Matter of Solomon v. Fishman,* 180 A.D.3d 1051, 1052 (2d Dep't 2020).

20.     The Appellate Division affirmed the modification of the May 5, 2014 custody agreement finding that the "Family Court's determination that there had been a change in circumstances requiring a transfer of legal custody is supported by a sound and substantial basis in the record," and "the court's determination that an award of sole legal and residential custody to [Ms. Solomon] would be in the children's best interests is supported by a sound and substantial basis in the record." *Matter of Solomon v. Fishman,* 180 A.D.3d 1051, 1052 (2d Dep't 2020).

21.     Under the Order of Protection and revised custody agreement, Mr. Fishman could only visit with his children when accompanied by a court-approved visitation supervisor. *Matter of Solomon v. Fishman,* 180 A.D.3d 1051, 1052 (2d Dep't 2020).

E.    Ms. Isabella Bolivar

22.     Mr. Fishman met Ms. Bolivar in December 2015. Fishman Dep. (Ex. B), at

-4-

56:17-20.

23. Starting in or about 2016, Ms. Bolivar started living with Mr. Fishman at an apartment in Riverdale, New York. Fishman Dep. (Ex. B), at 56:25-57:13.

24. Ms. Bolivar lived with Mr. Fishman at the Riverdale apartment until January 2022. Fishman Dep. (Ex. B), at 56:25-57:13.

25. Ms. Bolivar was living with Mr. Fishman in Riverdale in December 2018. Fishman Dep. (Ex. B), at 63:9-12.

F. <u>The December 15, 2018 Incident</u>

26. In December 2018, while the Order of Protection and revised custody agreement were in effect, Ms. Elliott served as the court-approved visitation supervisor for supervised visits between Mr. Fishman and his children. Fishman Dep. (Ex. B), at 63:13-22; Elliott Dep. (Ex. F), at 9:11-11:5, 17:5-7.

27. The general procedure for visitations as of December 2018 was that Ms. Solomon would drop the children off with Ms. Elliott near Mr. Fishman's apartment in Riverdale, and then Ms. Elliott would walk the children to Mr. Fishman's apartment. Elliott Dep. (Ex. F), at 18:7-19:20.

28. After the visit concluded, Ms. Bolivar would drive the children and Ms. Elliott back to Ms. Solomon's home, located at 55 Halcyon Terrace in New Rochelle; or on at least one occasion, Ms. Elliott would take the children back to Ms. Solomon's home using an Uber car. Elliott Dep. (Ex. F), at 21:13-22:3.

29. The general procedure for visits was varied on two occasions because one of Mr. Fishman's sons ("J.F.") was in an ice hockey program in Mamaroneck, New York. Elliott Dep. (Ex. F), at 23:8-27:13.

30. On these two occasions, Ms. Solomon dropped the children off at the ice hockey rink in Mamaroneck, and then after the visit ended, Ms. Bolivar drove the children back to Ms. Solomon's house. Elliott Dep. (Ex. F), at 24:22-27:13, 27:20-28:13.

31. On or about December 1, 2018, during a scheduled and supervised visit between Mr. Fishman and his children, an incident occurred in which one of the twins became very upset. Elliott Dep. (Ex. F), at 34:13-38:15.

32. Ms. Elliott terminated the visit following the incident, and Ms. Bolivar drove everyone back to Ms. Solomon's house in New Rochelle. Elliott Dep. (Ex. F), at 34:13-38:15.

33. For the next scheduled visit, December 15, 2018, the two twins did not want to attend, and the older daughter had a school function which prevented her from attending; however, a plan was made to allow J.F. to meet Mr. Fishman for breakfast, after which Mr. Fishman would accompany him to hockey practice. Elliott Dep. (Ex. F), at 42:13-43:13.

34. On the morning of December 15, 2018, Ms. Bolivar (who was driving), Ms. Elliott and Mr. Fishman drove to New Rochelle for the visit. Elliott Dep. (Ex. F), at 56:2-58:16.

35. Ms. Elliott expected that Ms. Solomon was going to drop J.F. off at the restaurant for the breakfast, so when Ms. Bolivar instead drove directly to Ms. Solomon's house, Ms. Elliott was surprised. Elliott Dep. (Ex. F), at 56:2-58:16.

36. Ms. Solomon's house is located on Halcyon Terrace in New Rochelle, which is a secluded residential street located near the campus of Iona College. Schlesinger Dep. (Ex. C), at 61:21-62:11.

37. Ms. Bolivar stopped the car 2-4 houses down from Ms. Solomon's house. Elliott Dep. (Ex. F), at 43:14-45:20; Fishman Dep. (Ex. B), at 68:12-20.

38. Because Ms. Elliott had a text message that she wanted to discuss with Ms.

-6-

Solomon anyway, she decided to walk up to the house to do that. Elliott Dep. (Ex. F), at 56:2-58:16.

39. While Ms. Elliott was speaking with Ms. Solomon at her front door, Ms. Bolivar moved the car, and drove it directly past Ms. Solomon's house, which caused Ms. Solomon to become upset. Elliott Dep. (Ex. F), at 45:21-46:3.

40. Mr. Fishman estimated that the car came within 45 feet of Ms. Solomon as it drove past her house, and that the car was driving about 15 miles per hour at the time. Fishman Dep. (Ex. B), at 81:8-85:24.

41. Ms. Bolivar stopped the car about two houses down from Ms. Solmon's house (on the other side), after which Mr. Fishman got out of the car, and called out to his son J.F., who was playing hockey in a nearby driveway. Elliott Dep. (Ex. F), at 46:4-11; Fishman Dep. (Ex. B), at 70:19-72:21, 73:2-10.

42. Ms. Solomon yelled at J.F. to get back into the house, which he did, and this caused Mr. Fishman to become very upset. Elliott Dep. (Ex. F), at 46:12-49:18.

43. Ms. Elliott then returned to the car and announced that the visit was canceled. Fishman Dep. (Ex. B), at 72:22-25.

44. Mr. Fishman told Ms. Bolivar to drive to the police station because he wanted to report that Ms. Solomon had prevented him from visiting with his son. Elliott Dep. (Ex. F), at 55:5-25; Fishman Dep. (Ex. B), at 73:16-23.

G.   Ms. Solomon Calls the Police

45. Ms. Solomon then called the New Rochelle Police Department ("NRPD") to report that her ex-husband, Mr. Fishman, had violated the terms of the Order of Protection, and Officer Lane Schlesinger was radioed to respond to Ms. Solmon's house. Schlesinger Dep. (Ex.

-7-

C), at 18:4-17.

46. Ms. Solomon told Officer Schlesinger that Mr. Fishman had violated the Order of Protection by driving by the house, which sits in a secluded residential neighborhood, and by getting out of the car and trying to call out to J.F while he was playing hockey. Schlesinger Dep. (Ex. C), at 28:17-29:21.

47. At some point, Officer Schlesinger was notified by dispatch that Mr. Fishman was at police headquarters. Based on his conversation with Ms. Solomon, as well as his review of an e-Justice print out in his car, Officer Schlesinger determined that he needed to speak with Mr. Fishman, so he instructed headquarters to keep him there. Schlesinger Dep. (Ex. C), at 26:1-27:6.

H. Officer Schlesinger Interviews Ms. Elliott and Mr. Fishman

48. While at police headquarters, but before Mr. Fishman met with Officer Schlesinger, Mr. Fishman can be seen and heard conversing with the civilian service officer ("CSO") at the public counter in the lobby. *See* video file on thumb drive (**Exhibit G-1),** Camera 8, at 0:00-13:50.[1]

49. The video shows Mr. Fishman listening and participating in a detailed conversations between himself, the CSO, Ms. Elliott and Ms. Bolivar without any obvious or apparent indication that Mr. Fishman had any difficulty understanding or making himself understood during the conversations. Ex. G-1.

50. After arriving at police headquarters, Officer Schlesinger interviewed Ms. Elliott, who told him that she had told Mr. Fishman that he should not be going to Ms. Solomon's home because the visit had been canceled, and that Mr. Fishman said that if she did not accompany

---

[1] There are three video exhibits contained on the thumb drive accompanying the City's motion. If at all possible, the listener should use headphones while listening to these exhibits.

him to Ms. Solomon's home he would find another court-appointed visitation supervisor. Schlesinger Dep. (Ex. C), at 40:5-12.

51. Ms. Elliott told Officer Schlesinger that she knew that the visit and the actions taken by Mr. Fishman were in violation of the Order of Protection with which she was familiar. Schlesinger Dep. (Ex. C), at 41:9-22.

52. Officer Schlesinger also interviewed Mr. Fishman. Schlesinger Dep. (Ex. C), at 40:22-41:4.

53. During the interview of Mr. Fishman, Mr. Fishman told Officer Schlesinger that he had a cognitive disability. Schlesinger Dep. (Ex. C), at 37:6-15.

54. However, Officer Schlesinger did not recall Mr. Fishman asking for a specific accommodation for any cognitive disability. Schlesinger Dep. (Ex. C), at 53:22-54:21; 93:6-20.

55. Instead, Officer Schlesinger found that Mr. Fishman "was perfectly lucid in conversation," and Officer Schlesinger did not believe that Fishman required an accommodation to participate in a conversation. Schlesinger Dep. (Ex. C), at 39:19-40:5; 85:6-25; 94:18-95:17.

56. In particular, Mr. Fishman's "verbosity" and lack of any manifest difficulty in understanding or answering questions led Officer Schlesinger to conclude that Mr. Fishman did not require any specific accommodation to understand or participate in the interview or in the arrest process that followed. Schlesiger Dep (Ex. C), at 119:18-121:8; 123:4-124:13; 124:23-127:11.

57. Mr. Fishman testified that he did ask for specific accommodations:
(i) for Ms. Bolivar to be present to help him with full an effective communication; (ii) for Ms. Bolivar and/or he to go to the car to get a Court file out of the trunk which had the order for the aid and the visitations orders and a calendar of medical visits; (iii) a transcriber or note taker; (iv)

-9-

a notepad and a pen; and (v) for the officers to call his neurologist and other doctors. Fishman Dep. (Ex. B), at 102:20-104:13.

58. Mr. Fishman testified that if Ms. Bolivar had been present for the interview, she "would have been able to give a third perspective on what happened that day as the Court-appointed aide so that the officer didn't just have what he claimed was [the ex-wife] Jennifer's version, Ann Elliott's version, and my version." Fishman Dep. (Ex. B), at 104:14-105:11.

59. Mr. Fishman testified that Ms. Bolivar could have helped Officer Schlesinger understand the visitation carve-out provisions of the Order of Protection, and could have supported Mr. Fishman's legal claim that he was never properly served with the order. Fishman Dep. (Ex. B), at 104:14-105:11.

60. Mr. Fishman also testified that Ms. Bolivar could have helped Officer Schlesinger understand that he had not violated any laws, including the Order of Protection. Fishman Dep. (Ex. B), at 105:12-107:18; 122:7-123:8.

61. Mr. Fishman claimed that a note pad and pen would have assisted him in the same fashion. Fishman Dep. (Ex. B), at 111:8-19.

62. After interviewing Ms. Elliott and Mr. Fishman, reviewing the Order of Protection and visitation order, and conferring with his supervisors, Officer Schlesinger concluded that there was probable cause to believe that Mr. Fishman had violated the terms of the Order of Protection and therefore the criminal contempt provisions of the New York Penal Law. Schlesinger Dep. (Ex. C), at 43:16-44:6; 44:19-45:22.

63. Video from the booking area captures conversations between Mr. Fishman and Officer Schlesinger. *See* thumb drive containing videos marked **Exhibit G-2** and **Exhibit G-3**.

64. While in the holding cell, Mr. Fishman stated that he was feeling cold. Officer

Schlesinger allowed Mr. Fishman to wear two layers of clothing (not just one), in response to which Mr. Fishman thanked Officer Schlesinger for his "professionalism." *See* Ex. G-2.[2]

65. At about 12:12:00, Officer Schlesinger reads Mr. Fishman his *Miranda* rights, and Mr. Fishman indicates that he understands them; and then, for the next 3.5 minutes, Mr. Fishman engages in a detailed conversation with Officer Schlesinger about his version of the events of the day. *See* Ex. G-3.

66. During this conversation, there are no obvious or apparent signs that Mr. Fishman had any difficulty understanding or making himself understood through oral communication. *See* Ex. G-3.

67. Indeed, for the major portion of this video clip, another officer is having a conversation with another detainee, asking him a series of background and suicide screening questions. The other detainee actually states he cannot hear because of the conversation between Mr. Fishman and Officer Schlesinger. Mr. Fishman, to the contrary, did not state that he was distracted by this other simultaneous conversation. *See* Ex. G-3.

68. Mr. Fishman was allowed to be bailed out on an otherwise non-bailable offense. Schlesinger Dep. (Ex. C), at 53:22-54:21; Wenzler Dep. (Ex. D), at 32:5-33:5; 33:6-35:2; 96:3-10.

69. Mr. Fishman understood that the detainee in the holding cell next to his had to wait the entire weekend, until Monday morning, to see a Judge, but that Mr. Fishman himself was allowed to be released on his own recognizance that Saturday afternoon. Fishman Dep. (Ex. B), at 114:20-116:10.

70. The decision to allow Mr. Fishman to be released on bail was made by Lt. Robert

---

[2] The video on Exhibit G-2 starts at the 2:20 second mark.

Wenzler, who was the tour commander that day. Schlesinger Dep. (Ex. C), at 80:25-83:19.

I.   The NRPD Provides Training for Interacting With Disabled Persons

71.   NRPD Officers receive training on persons with disabilities in the police academy. Wenzler Dep. (Ex. D), at 17:12-18:17.

72.   Following recruit training, the NRPD has had in-service training regarding people who are showing signs of mental health crises or physical impairments. Wenzler Dep. (Ex. D), at 28:9-29:12.

73.   If a suspect or victim presents with a physical or mental disability, the NRPD procedure calls for a supervisor to be notified after which an assessment will be made to determine if an accommodation is required. Wenzler Dep. (Ex. D), at 7:23-8:24; 12:16-24; Schlesinger Dep. (Ex. C), at 117:15-118:23.

74.   If a suspect or victim did not speak English, the NRPD has access to the Language Line for Foreign Speakers. Wenzler Dep. (Ex. D), at 13:16-14:12; 87:16-88:15

75.   If a suspect or victim was deaf, the NRPD would recall or reach out to someone who knows American Sign Language. Wenzler Dep. (Ex. D), at 13:16-14:12; 88:6-19; Schlesinger Dep. (Ex. C), at 117:15-118:23.

J.   Mr. Fishman is Found Guilty of Violation the Order of Protection

76.   Mr. Fishman was charged with violating the Order of Protection, and in January 2020, a jury found him guilty of that charge. Fishman Dep. (Ex. B), at 117:25-118:17.

77.   In connection with his criminal conviction, a bench warrant was issued for Mr. Fishman's arrest when he failed to appear in Court for sentencing. Fishman Dep. (Ex. C), at 118:21-119:3.

78.   Mr. Fishman's criminal conviction has never been vacated or reversed on appeal.

Dated: White Plains, New York
June 7, 2024

                                        Respectfully submitted,

                                        THE QUINN LAW FIRM PLLC
                                        Attorneys for City of New Rochelle

                                        _____
                                        Lalit K. Loomba

                                        399 Knollwood Road, Suite 220
                                        White Plains, NY  10603
                                        (914) 997-0555
                                        lloomba@quinnlawny.com