```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
MARC H. FISHMAN,

                      Plaintiff,

                              Case No. 19-cv-26E wsr

        -against-

CITY OF NEW ROCHELLE, POLICE OFFICER LANE
SCHLESINGER SHIELD #1058, JOSEPH F. SCHALLER,
ROBERT GAZZOLA IN HIS OFFICIAL CAPACITY AS POLICE
COMMISSIONER OF THE CITY OF NEW ROCHELLE POLICE
DEPARTMENT, SERGEANT MYRON JOSEPH SHIELD #18 &
COUNTY OF WESTCHESTER,

                      Defendants.
-----------------------------------------x
```

                                300 Quarropas Street
                                White Plains, New York
                                September 26, 2023
                                10:00 A.M.

        EXAMINATION BEFORE TRIAL of one of the Defendants, CITY OF NEW ROCHELLE, by a witness, ROBERT WENZLER, pursuant to Order, before Caitrin DeSimone, a Notary Public within and for the State of New York.

```
(1)
(2)    A P P E A R A N C E S:
(3)
(4)
       LAW OFFICE OF CANER DEMIRAYAK, ESQ. P.C.
(5)    Attorneys for Plaintiffs
            One Pierrepont Plaza, 12th Floor
(6)         Brooklyn, New York  11201
(7)    BY: CANER DEMIRAYAK
       Caner@canerlawoffice.com
(8)
(9)
       THE QUINN LAW FIRM
(10)   Attorneys for Defendants
            399 Knollwood Road, Suite 220
(11)        White Plains, New York  10603
(12)   BY: LATIT K. LOOMBA
       Llomba@quinnlawny.com
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)
```

```
(1)
(2)                   S T I P U L A T I O N S
(3)
(4)
(5)        IT IS HEREBY STIPULATED AND AGREED by and
(6)   between the attorneys for the respective parties
(7)   herein, that filing and sealing be and the same
(8)   are hereby waived.
(9)        IT IS FURTHER STIPULATED AND AGREED that all
(10)  objections, except as to the form of the
(11)  question, shall be reserved to the time of the
(12)  trial.
(13)       IT IS FURTHER STIPULATED AND AGREED that the
(14)  within deposition may be sworn to and signed
(15)  before any officer authorized to administer an
(16)  oath, with the same force and effect as if signed
(17)  and sworn to before the Court.
(18)
(19)                           oOo
(20)
(21)
(22)
(23)
(24)
(25)
```

(1)                      WENZLER
(2)    ROBERT WENZLER,
(3)    Called as a witness, having been first duly sworn
(4)    by a Notary Public, was examined and testified as
(5)    follows:
(6)    EXAMINATION BY
(7)    **CANER DEMIRAYAK:**
(8)             Q.      What is your name?
(9)             **A.      Robert Wenzler.**
(10)            Q.      What is your address?
(11)            **A.      My address is 475 North Avenue,**
(12)   **New Rochelle, New York 10801.**
(13)            Q.      Good morning, Lieutenant Wenzler.
(14)   My name is Caner Demirayak.  I am an attorney.  I
(15)   represent the plaintiff, Marc Fishman, in a
(16)   lawsuit that's been brought against the City of
(17)   New Rochelle and various other entities.  My
(18)   understanding is, today, you're being produced as
(19)   a witness in response to the Plaintiff's Federal
(20)   Rule of Civil Procedure Rule 30(b)(6) B notice.
(21)   Do you have that same understanding?
(22)            **A.      Generally.**
(23)            Q.      Okay.  Now, before coming here
(24)   today, what did you do to prepare for today's
(25)   deposition?

```
(1)                WENZLER
(2)  you'd be able to give me knowledgeable answers in
(3)  your experience on behalf of the City of New
(4)  Rochelle?
(5)           MR. LOOMBA:  I'm placing an
(6)  objection on the record because I believe that is
(7)  outside the scope of the 30(b)(6).  You can
(8)  proceed.
(9)           MR. DEMIRAYAK:  Sure.  Sure.
(10) Your objection is noted, for sure.
(11)      Q.    Is there a provision in your
(12) manual or procedure relating to accommodating
(13) persons with disabilities?
(14)      A.    Nothing specific to that.
(15)      Q.    Okay.  So if I understand what
(16) you're saying, there's a specific, I guess, code
(17) number or rule for arrests of adults, for orders
(18) of protection, but there's nothing itemized
(19) specifically for accommodating persons with
(20) disabilities, is that what you're saying?
(21)      A.    Not in the language you just
(22) said.
(23)      Q.    Okay.  Now, as of December 15,
(24) 2018, did the City of New Rochelle Police
(25) Department have any practices, policies, or
```

(1)              WENZLER
(2)     procedures, whether written or not written,
(3)     relating to accommodating persons with
(4)     disabilities?
(5)              A.     Yes, generically, not as stated.
(6)     If someone is physically impaired or mentally
(7)     impaired, it is the general practice to advise a
(8)     supervisor of these conditions and there will be
(9)     an assessment thereafter to determine what
(10)    accommodations and/or how to proceed.
(11)             Q.     Okay.  And where does that
(12)    general practice or procedure come from?
(13)             A.     That is from the adult arrest
(14)    procedure, Section 12, point number 12, as
(15)    listed in the adult arrest procedure.
(16)             Q.     And does that procedure refer
(17)    specifically to disabilities or is that physical
(18)    or mental impairment?
(19)             A.     The phrase most closely
(20)    associated to which you're saying about
(21)    disability would be physical impairment.
(22)             Q.     Okay.
(23)             A.     That's the language used in the
(24)    procedure.
(25)             Q.     Okay.  Is part of that procedure

(1)                         **WENZLER**

(2)    **would indicate that they understand what's**

(3)    **happening, that would be an indicator to the**

(4)    **officer that something could be off.  I guess,**

(5)    **general observations and impressions based on**

(6)    **their experiences.**

(7)            Q.      Okay.  Now, you've talked about

(8)    the fact that it involves around the officer's

(9)    observations and experience.  Does any part of

(10)   that assessment also include things that the

(11)   person is telling the officer about their

(12)   conditions?

(13)            **MR. LOOMBA:  Object to form.  You**

(14)   **can answer.**

(15)           A.      Yes.

(16)           Q.      Okay.  So what is -- I guess,

(17)   back on December 15, 2018, what would be the

(18)   procedure or policy or general practice as far as

(19)   dealing with someone that comes in and tells you

(20)   they have an impairment, please help me?

(21)           **A.      The officer would notify the**

(22)   **supervisor, usually the desk officer, and then**

(23)   **further assessments and accommodations would be**

(24)   **made based on the situation.**

(25)           Q.      Now, in the context of police

(1) WENZLER
(2) questioning whether or not the person at that
(3) point is a suspect or not, what is the general
(4) practice back on December 15, 2018, with respect
(5) to assessing whether something needs to be done
(6) for an impairment before questioning is
(7) continued?
(8)     **MR. LOOMBA:  Objection to form.**
(9) **You can answer.**
(10)     **A.    It all depends on the situation.**
(11) **If the arrest warrants further interrogation or**
(12) **questioning, that would be considered.  If the**
(13) **arrest is for something where further**
(14) **interrogation is not necessary, it might not be a**
(15) **consideration.**
(16)     Q.    Back on December 15, 2018, did
(17) the City of New Rochelle use or have able for use
(18) interpreters for someone with a language barrier
(19) or a communication barrier, whether it be based
(20) on a foreign language or an impairment?
(21)     **MR. LOOMBA:  Objection to form.**
(22)     **A.    I am aware that we have -- we**
(23) **participate in what's called the Language Line**
(24) **for foreign speakers.  I do know that we have**
(25) **personnel that are fluent in sign language, so if**

(1)                         **WENZLER**

(2)    **that were to be something needed, a recall or**

(3)    **some type of reach out for that type of scenario**

(4)    **could be afforded.  That's all I can think of**

(5)    **offhand.**

(6)           Q.      Okay.  And was the -- was there

(7)    availability of an ASL accomodation back on

(8)    December 15, 2018?

(9)           **A.      ASL meaning American Sign**

(10)   **Language?**

(11)          Q.      Yes.

(12)          **A.      Yes.**

(13)          Q.      Okay.  Now, back on December 15,

(14)   2018, was there a practice or policy in handling

(15)   someone who has, or who tells you they have, a

(16)   disability aide with them?  What would be the

(17)   practice and policy of dealing with someone that

(18)   needs an aide or tells you they need an aide?

(19)                 **MR. LOOMBA:  I'm just going to**

(20)   **object to this.  It's way beyond the scope of the**

(21)   **30(b)(6).  We objected to the scope as originally**

(22)   **propounded and we met and conferred with the**

(23)   **attorney for the plaintiff and the agreed upon**

(24)   **the subjects for the deposition today, were**

(25)   **trained with respect to disabilities and arrests**

(1) **WENZLER**

(2) **claims.  We are focussing here on practices and**

(3) **policies relating to disability accommodations,**

(4) **which ties into training.  We went into the**

(5) **deposition knowing that the City of New Rochelle**

(6) **does not have any policies and procedures with**

(7) **respect to disability accommodations**

(8) **specifically, so I think it's fair grounds to ask**

(9) **as context before we get into specific training,**

(10) **if there is any, relating to a policy that**

(11) **doesn't exist, but your objection is noted.**

(12)      Q.    Okay.  So we'll shift gears for a

(13) second, Lieutenant.  Now, currently, 2023, are

(14) officers of the New Rochelle Police Department

(15) trained in disability accommodations?

(16)      **A.**    **Yes.**

(17)      Q.    Okay.  So I guess we'll start

(18) from this year.  What sort of training was done

(19) this year?

(20)      **A.**    **My recollection and experience is**

(21) **that this training is received in the police**

(22) **academy and though I cannot --**

(23)      Q.    So I guess to help you to save

(24) time here, so my question was, was there any

(25) training done in 2023 for officers that are

```
 (1)                      WENZLER
 (2)   already working that graduated the police
 (3)   academy.  Is the answer no?
 (4)         A.    As far as specific to disability?
 (5)         Q.    For accommodating persons with
 (6)   disabilities that police officers --
 (7)         A.    No, I don't believe that was part
 (8)   of this year's in service program.
 (9)         Q.    Okay.  Now, going back to that,
(10)   what is the training that officers receive in the
(11)   police academy as of 2023 with respect disability
(12)   accommodations?
(13)         A.    It could've changed -- it
(14)   could've changed since I was there, but I
(15)   remember when I was in the police academy getting
(16)   some type of lecture or presentation regarding
(17)   that area.
(18)         Q.    Okay.  And we haven't went into
(19)   your career with the police department yet, but I
(20)   guess it's a good time now.  When did you enter
(21)   the police academy?
(22)         A.    2004.
(23)         Q.    Okay.  And when did you, I guess,
(24)   graduate from the police academy and be appointed
(25)   a police officer?
```

```
 (1)                      WENZLER
 (2)    recollection -- did he voluntarily come to the
 (3)    precinct based on your independent recollection?
 (4)           A.      I don't remember.
 (5)           Q.      Okay.  And do you -- from your
 (6)    independent recollection, do you recall the sum
 (7)    and substance of the conversations you had with
 (8)    the women in the lobby that you described as
 (9)    advocates?
(10)           A.      I don't remember much other than
(11)    that they were describing his situation, I don't
(12)    recall specifically what conditions or
(13)    circumstances he was facing.  I do know and
(14)    remember that it was apparent that an order of
(15)    protection was violated and he was a suspect and
(16)    though I don't remember, I probably told him
(17)    that, yeah, we have to charge him for the order
(18)    of protection violation, but I was also working
(19)    with them to figure out how to best move forward
(20)    after the booking.  Because in an order of
(21)    protection charge, usually speaking from the
(22)    police perspective, we don't have much
(23)    discretion.  It's a court order.  We are bound to
(24)    make an arrest.  We don't have the ability to
(25)    say, you know what, just go home, nor do we
```

(1)                    **WENZLER**

(2)     generally have the ability to release someone.

(3)     They usually are remanded until court is next in

(4)     session to be arraigned and/or receive an amended

(5)     or a new order of protection.

(6)             Q.     And with respect to that day and

(7)     that incident, from your independent

(8)     recollection, when you saw Mr. Fishman, based on

(9)     your interaction with other persons, such as

(10)    those women, did you come to the understanding

(11)    that you believed Mr. Fishman was a person with

(12)    disability?

(13)            MR. LOOMBA:  Objection to form.

(14)    You can answer.

(15)            A.     I don't recall specifically what

(16)    issues he had, but after consulting with

(17)    everyone, it was determined that it may be best

(18)    for him to be released in their care, meaning

(19)    these women, which, again, as mentioned, is

(20)    definitely something that we would not normally

(21)    afford someone.  And me being the tour commander

(22)    that day, I was putting myself at risk for

(23)    further liability by releasing him, considering

(24)    he just violated an order of protection, and it's

(25)    my primary focus to be mindful of a victim.

(1) **WENZLER**

(2) Q. So you said it was best for him
(3) to be released in their care after the police
(4) encounter was done and after he was charged with
(5) criminal contempt in the second degree, but
(6) before you were determined -- the precinct was
(7) determining how to charge him, what bail to give,
(8) whether to remand, etc., what determination was
(9) made before that, in your independent
(10) recollection, as far as whether he had a
(11) disability and whether he needed an accommodation
(12) during or before the police encounter started?
(13) MR. LOOMBA: Objection to form.
(14) A. I don't recall specifically.
(15) Like I said, I remember speaking to the women.
(16) They described his situation. So in conjunction
(17) with the conditions expressed, the situation that
(18) he was under, they -- I remember them making some
(19) type of assurances to me, which made me feel
(20) better as far as coming up with a decision to
(21) release him, in that there would be no further
(22) criminal behavior or actions, that they wouldn't
(23) go back to the house in question. I remember
(24) things like that vaguely, but I'm not specific.
(25) And it all played into the decision to release

(1) **WENZLER**
(2) **him.**
(3) Q. Do you have an independent
(4) recollection on that date if you were made aware
(5) as to whether or not Mr. Fishman had visitation
(6) rights for his children pursuant to that order of
(7) protection that he was being charged with
(8) violating?
(9) **A. I don't recall specifically, but**
(10) **I do remember that, perhaps, he was disputing**
(11) **that at some point. I don't remember exactly**
(12) **what he said, or what he was saying to me if I**
(13) **spoke to him, or if he spoke to Officer**
(14) **Schlesinger and this was Officer Schlesinger**
(15) **relaying this information to me, but I do vaguely**
(16) **remember him disputing his actions.**
(17) Q. Do you recall whether or not a
(18) visitation order was reviewed by anyone in your
(19) precinct, you or people you were supervising,
(20) before the determination was made to charge him
(21) with a violating the order protection?
(22) **A. As far as the visitation order, I**
(23) **do not recall.**
(24) Q. Assuming that the visitation
(25) order was read or understood by you, do you still

(1)                         **WENZLER**

(2)  circumstances that were presented that day.

(3)         Q.      So I think I asked before, but

(4)  did he request an accomodation -- I guess my

(5)  question for you now is, do you recall if your

(6)  department provided Mr. Fishman with an

(7)  accomodation?

(8)         A.      By allowing him to leave that day

(9)  versus staying in a jail cell for the next two

(10) days, I would say that was an accomodation, yes.

(11)        Q.      Okay. And do you recall if your

(12) department denied a request for reasonable

(13) accommodation that day?

(14)        A.      I don't recall denying any

(15) request.

(16)                MR. DEMIRAYAK: Okay. At this I

(17) don't have any further questions. I will say

(18) that the 30(b)(6) notice is not closed. There

(19) will be additional witness necessarily to close

(20) it, which would include at least Police Officer

(21) Schlesinger. We do reserve the right to notice

(22) Sergeant King as a Rule 30(b)(1) witness if we so

(23) choose. However, for now, Lieutenant Wenzler is

(24) dismissed as a fact witness on the 30(b)(6) topic

(25) of training. We feel that the testimony is

```
(1)                     WENZLER
(2)                   CERTIFICATION
(3)     STATE OF NEW YORK   )
                            ) ss.:
(4)     COUNTY OF WESTCHESTER )
(5)
(6)              I, Caitrin DeSimone, a Notary
(7)     Public within and for the State of New York, do
(8)     hereby certify:
(9)              That ROBERT WENZLER the
(10)    witness(es) whose deposition(s) is(are)
(11)    hereinbefore set forth, was(were) duly sworn by
(12)    me and that such deposition(s) is(are) a true and
(13)    accurate record of the testimony given by such
(14)    witness(es).
(15)              I further certify that I am not
(16)    related to any of the parties to the action by
(17)    blood or marriage; and that I am in no way
(18)    interested in the outcome of this matter.
(19)              IN WITNESS WHEREOF, I have
(20)    hereunto set my hand this September 26th of 2023.
(21)
(22)                    _____
(23)                         CAITRIN DESIMONE
(24)
(25)
```