UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

MARC FISHMAN,                                    :        Docket No.
                                                          19-CV-265 (NSR)
                          Plaintiff,             :

     -against-                                   :

CITY OF NEW ROCHELLE, LANE SCHLESINGER,          :
SHIELD #1058, JOSEPH F. SCHALLER, ROBERT
GAZOLLA, IN HIS OFFICIAL CAPACITY AS             :
POLICE COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT, SERGEANT             :
MYRON JOSEPH SHIELD #18, & COUNTY OF
WESTCHESTER,                                     :
                                                 :
                          Defendants.            :

---------------------------------------------------------------------- X


**DEFENDANT CITY OF NEW ROCHELLE'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**


THE QUINN LAW FIRM, PLLC
Attorneys for Defendant City of New Rochelle
399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................................. iii

Introduction ......................................................................................................................................... 1

Preliminary Statement ......................................................................................................................... 1

Pertinent Facts and Procedural History ............................................................................................... 2

    A. The Order of Protection and Custody Agreement. ....................................................... 2
    B. The December 15, 2018 Incident ................................................................................. 4
    C. The Police Response. .................................................................................................... 6
    D. The Interview with Mr. Fishman and Mr. Fishman's Arrest ........................................ 7
    E. Training and Persons with Disabilities Generally. ....................................................... 9
    F. Mr. Fishman is Found Guilty of Violating the Order of Protection ............................. 9

Argument ............................................................................................................................................. 9

POINT I    THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF
              FOR VIOLATING THE ORDER OF PROTECTION ............................................. 9

POINT II   PLAINTIFF'S ADA CLAIM FAILS AS A MATTER OF
              LAW .................................................................................................................... 10

    A. The Applicable Law. .................................................................................................... 10
    B. Application ................................................................................................................... 14

POINT III  PLAINTIFF CANNOT DEMONSTRATE THAT HE WAS
              SUBJECTED TO INTENTIONAL DISCRIMINATION ...................................... 17

POINT IV  PLAINTIFF'S REHABILITATION ACT CLAIM FAILS
              AS A MATTER OF LAW .................................................................................... 18

Conclusion. ......................................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages(s)**

*Aberra v. City of New York,*
  2023 U.S. App. LEXIS 1074 (2d Cir. Jan. 18, 2023) ................................................................. 16

*Bardy v. Wal-Mart Stores, Inc.,*
  531 F.3d 127 (2d Cir. 2008) ...................................................................................................... 14

*Brown v. City of New York,*
  798 F.3d 94 (2d Cir. 2015) ........................................................................................................ 17

*City and Cty of San Francisco v. Sheehan,*
  135 S. Ct. 1765 (2015) ............................................................................................................... 13

*Curley v. Village of Suffern,*
  268 F.3d 65 (2d Cir. 2001) ........................................................................................................ 16

*Doe v. Pfrommer,*
  148 F.3d 73 (2d Cir. 1998) ........................................................................................................ 12

*Felix v. New York City Transit Auth.,*
  324 F.3d 102 (2d Cir. 2003) ...................................................................................................... 12

*Fishman v. City of New Rochelle,*
  D.E. 38, at 16 (S.D.N.Y Oct. 19, 2021) .................................................................................... 13

*Frank v. Sachem Sch. Dist.,*
  84 F. Supp. 3d 172 (E.D.N.Y. 2015) ......................................................................................... 19

*Fulton v. Goord,*
  591 F.3d 37 (2d Cir. 2009) ........................................................................................................ 12

*Garcia v. City of Lubbock,*
  2023 U.S. App. LEXIS 18513 (5th Cir. July 20, 2023) ............................................................. 14

*Garcia v. Doe,*
  779 F.3d 84 (2d Cir. 2014) ................................................................................................... 15, 18

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,*
  280 F.3d 98 (2d Cir. 2001) ................................................................................................... 12,19

*Gershanow v. County of Rockland,*
  2014 U.S. Dist. LEXIS 37004 (S.D.N.Y. Mar. 20, 2014) ......................................................... 19

*Henrietta D. v. Bloomberg,*
  331 F.3d 261 (2d Cir. 2003) ................................................................................................. 12,13

*Natofsky v. City of New York,*
  921 F.3d 337 (2d Cir. 2019) ...................................................................................................... 20

*Nicholas v. City of Binghamton,*
 2012 WL 3261409 (N.D.N.Y. Aug. 8, 2012) ......................................................................... 13

*Panetta v. Crowley,*
 460 F.3d 388 (2d Cir. 2006)................................................................................................... 16

*Powell v. National Bd. Of Med. Examiners,*
 364 F.3d 79 (2d Cir. 2004)..................................................................................................... 12

*Ryan v. Vermont State Police,*
 667 F. Supp. 2d 378 (D. Vt. 2009)......................................................................... 13,14,17,18

*Sage v. City of Winooski,*
 2017 U.S. Dist. LEXIS 43467 (D. Vt. 2017)..................................................................... 13,15

*Swartz v. Insogna,*
 704 F.3d 105 (2d Cir. 2013)................................................................................................... 11

*Scott v. Harris,*
 550 U.S. 372 (2007)............................................................................................................... 17

*Wagner v. City of New York,*
 2015 WL 5707326 (S.D.N.Y. Sept. 28, 2015)................................................................... 13,18

*Williams v. City of New York,*
 121 F. Supp. 3d 354 (S.D.N.Y. 2015).................................................................................... 13

*Windham v. Harris Cty.,*
 875 F.3d 229 (5th Cir. 2017) ............................................................................................ 14, 16

## Statutes

N.Y. Penal Law 215.50 (3) ..................................................................................................... 11

N.Y.C.P.L. §140.10(4)(b)(i) ................................................................................................... 18

## Introduction

Defendant City of New Rochelle ("City") respectfully submits this memorandum of law in support of its motion for summary judgment dismissing each of plaintiff's remaining claims for relief.

## Preliminary Statement

On December 15, 2018, plaintiff Marc Fishman ("plaintiff" or "Mr. Fishman") was arrested by members of the New Rochelle Police Department ("NRPD") for violating the terms of an order of protection that had been issued against him and in favor of his ex-wife and children (the "Order of Protection"). In January 2020, a jury of his peers found Mr. Fishman guilty of violating the Order of Protection. Mr. Fishman's post-trial motions to vacate the verdict were denied, and he never filed a notice of appeal from the conviction.

In the instant civil case, plaintiff's remaining claims are under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (the "Rehabilitation Act"). Plaintiff asserts that he is qualified as a disabled person under the ADA -- in particular, that he suffers from cognitive deficits that make it difficult for him to understand and express himself through oral communication.[1] Plaintiff alleges that during his arrest on December 15, 2018, members of the NRPD failed to reasonably accommodate his alleged cognitive disability by refusing to allow him to have his girlfriend (Mr. Fishman also refers to her as his "disability aid") present during a police interview, and by, prior to booking the plaintiff for violating the Order of Protection, refusing him access to certain documents, as well as a notepad and pen, that he claims would have helped him better explain why he did not believe that he violated the Order of Protection.

---

[1] Mr. Fishman claims to be disabled in other ways, but plaintiff does not allege that he was denied an accommodation for any other such disability.

As detailed below, plaintiff's ADA claim fails as a matter of law. First, even assuming, without conceding, that plaintiff suffered from a qualified cognitive disability on the date of his arrest, his disability was not open, obvious and apparent to the members of the NRPD who participated in his arrest. Under these circumstances, there can be no liability for a failure to accommodate such a disability. *See infra* Point II. Second, even assuming both that plaintiff suffered from an ADA-qualified cognitive disability and that the disability was open, obvious and apparent, plaintiff cannot demonstrate that he was treated any differently than a non-disabled arrestee in the same circumstances would have been treated. In short, he suffered no discrimination on account of a disability. *See id.* Third, plaintiff cannot demonstrate that he was subjected to intentional discrimination, which is a requirement under the ADA. *See infra* Point III. Finally, the legal analysis under the Rehabilitation Act parallels that of the ADA claim. Accordingly, because the ADA claim fails as a matter of law, so too does plaintiff's claim under the Rehabilitation Act. *See infra* Point IV.

## Pertinent Facts and Procedural History

A full recitation of the pertinent facts and procedural history of this action are set forth in the City's statement pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, to which the Court is respectfully referred. All exhibits referenced herein and in the Rule 56.1 Statement are annexed to the accompanying declaration of Lalit K. Loomba, Esq.

A.      The Order of Protection and Custody Agreement

Plaintiff Marc Fishman and Ms. Jennifer Solomon ("Ms. Solomon") were married on July 4, 2010. Rule 56.1 at ¶12. They had four children together: a daughter, a son and twin sons. *Id.* at ¶13. Mr. Fishman and Ms. Solomon's divorce became finalized in or about October 2012.

-2-

*Id.* at ¶14.

On June 13, 2018, in the context of what was then an ongoing, and bitterly contested, custody fight between Mr. Fishman and Ms. Solomon, the Westchester County Family Court (Michelle I. Schauer, J.) issued a fact-finding order and order of protection (as defined above, the "Order of Protection"). Rule 56.1 at ¶15. The Family Court's fact-finding order and the Order of Protection modified a previously so-ordered custody agreement between Mr. Fishman and Ms. Solomon, dated May 5, 2014, by awarding Ms. Solomon sole legal custody of the children, and denying Mr. Fishman's cross-petition to enforce the earlier May 5, 2014 agreement. *Id.* at ¶16. The June 13, 2018 Order of Protection, among other things, "directed [Mr. Fishman] to stay away from the children, their home, and their schools except for certain supervised parental access, until and including June 13, 2019." *Id.* at ¶17.

Mr. Fishman appealed from the Order of Protection as well as the modification of the May 5, 2014 custody agreement. Rule 56.1 at ¶18. On February 26, 2020, the Appellate Division of the Supreme Court of the State of New York, Second Department, dismissed Mr. Fishman's appeal from the Order of Protection as academic, because the Order of Protection had expired, on its own terms, on June 13, 2019. *Id.* at ¶19. The Appellate Division affirmed the modification of the May 5, 2014 custody agreement finding that the "Family Court's determination that there had been a change in circumstances requiring a transfer of legal custody is supported by a sound and substantial basis in the record," and the "the court's determination that an award of sole legal and residential custody to [Ms. Solomon] would be in the children's best interests is supported by a sound and substantial basis in the record." *Id.* at ¶20. Accordingly, under the Order of Protection and custody agreement, as revised, Mr. Fishman could only visit with his children when accompanied by a court-approved supervisor. *Id.* at ¶21.

-3-

B.    The December 15, 2018 Incident

Mr. Fishman met Ms. Isabella Bolivar ("Ms. Bolivar") in December 2015. Rule 56.1 at ¶22. Starting in or about 2016, Ms. Bolivar started living with Mr. Fishman at an apartment in Riverdale, New York. *Id.* at ¶23. Ms. Bolivar lived with Mr. Fishman at the Riverdale apartment until January 2022. *Id.* at ¶24. She was living with him in December 2018. *Id.* at ¶25.

In December 2018, while the Order of Protection and revised custody agreement were in in effect, Ms. Ann Elliott ("Ms. Elliott") served as the court-approved visitation supervisor for supervised visits between Mr. Fishman and his children. Rule 56.1 at ¶26. The general procedure for visits as of December 2018 was that Ms. Solomon would drop the children off with Ms. Elliott near Mr. Fishman's apartment in Riverdale, and then Ms. Elliott would walk the children to Mr. Fishman's apartment. *Id.* at ¶27. After the visit concluded, Ms. Bolivar would drive the children and Ms. Elliott back to Ms. Solomon's home, located at 55 Halcyon Terrace in New Rochelle; or on one occasion, Ms. Elliott took the children back to Ms. Solomon's home using an Uber car. *Id.* at ¶28.

The general procedure was varied twice because one of Mr. Fishman's sons ("J.F.") was in an ice hockey program in Mamaroneck, New York. Rule 56.1 at ¶29. On these two occasions, Ms. Solomon dropped the children off at the ice hockey rink in Mamaroneck, and then after the visit ended, Ms. Bolivar drove the children back to Ms. Solomon's house. *Id.* at ¶30.

On or about December 1, 2018, the children were participating in a scheduled and supervised visit at Mr. Fishman's apartment in Riverdale when an incident occurred in which one of the twins became very upset. Rule 56.1 at ¶31. Ms. Elliott terminated the visit following the incident, and Ms. Bolivar drove everyone back to Ms. Solomon's house in New Rochelle. *Id.* at ¶32. For the next scheduled visit, December 15, 2018, the twins did not want to attend, and the

-4-

older daughter had a school function preventing her from attending; however, a plan was made to allow J.F. to meet Mr. Fishman for breakfast, after which Mr. Fishman would accompany him to the hockey practice. *Id.* at ¶33.

On the morning of December 15, 2018, Ms. Bolivar (who was driving), Ms. Elliott and Mr. Fishman drove to New Rochelle for the visit. Rule 56.1 at ¶34. Ms. Elliott expected that Ms. Solomon was going to drop the son off at the restaurant for the breakfast, so when Ms. Bolivar instead drove directly to Ms. Solomon's house, Ms. Elliott was surprised. *Id.* at ¶35. Ms. Solomon's house is located on a secluded residential street located near the campus of Iona College in New Rochelle. *Id.* at ¶36. Driving to Ms. Solomon's house takes a deliberate and intentional act. Ms. Bolivar stopped the car 2-4 houses down from Ms. Solomon's house. *Id.* at ¶37. Because she had a text message that she wanted to discuss with Ms. Solomon anyway, Ms. Elliott decided to walk up to the house to do that. *Id.* at ¶38. While Ms. Elliott was speaking with Ms. Solomon at her front door, Ms. Bolivar moved the car, and drove it directly past Ms. Solomon's house, which caused Ms. Solomon to become upset. *Id.* at ¶39. Mr. Fishman estimated that the car came within 45 feet of Ms. Solomon as it drove past her house, and that the car was driving about 15 miles per hour at the time. *Id.* at ¶40.

Ms. Bolivar stopped the car about two houses down from Ms. Solmon's house (on the other side), after which Mr. Fishman, in violation of the Order of Protection, got out of the car and called out to his son J.F., who was playing hockey in a driveway. Rule 56.1 at ¶41. Ms. Solomon yelled at J.F. to get back into the house, which he did, and this caused Mr. Fishman to become very upset. *Id.* at ¶42. Ms. Elliott then returned to the car and announced that the visit was canceled. *Id.* at ¶43. Mr. Fishman told Ms. Bolivar to drive to the police station to report that Ms. Solomon had prevented him from visiting with his son. *Id.* at ¶44.

-5-

C.    The Police Response

Ms. Solomon called the NRPD to report that her ex-husband, Mr. Fishman, had just

violated the terms of the Order of Protection, and Officer Lane Schlesinger was radioed to

respond to Ms. Solomon's house.  Rule 56.1 at ¶45.  Ms. Solomon told Officer Schlesinger that

Mr. Fishman had violated the Order of Protection by driving by the house, which sits in a

secluded residential neighborhood, and by getting out of the car and trying to call out to J.F.  *Id.*

at ¶46.  At some point after speaking with Ms. Solomon, Officer Schlesinger was notified via

police radio that Mr. Fishman was at police headquarters.  *Id.* at ¶47.  Based on his conversation

with Ms. Solomon, as well as his review of an e-Justice print out on the computer that was in his

police vehicle, Officer Schlesinger determined that he needed to speak with Mr. Fishman, so he

instructed headquarters to keep him there.  *Id.*

While at police headquarters, but before Mr. Fishman met with Officer Schlesinger, Mr.

Fishman can be seen and heard on surveillance video conversing with a civilian service officer

("CSO") at the public counter in the lobby.  Rule 56.1 at ¶48.  The video shows a detailed back

and forth conversation between Mr. Fishmann and the CSO, and between Mr. Fishman and Ms.

Elliott and Ms. Bolivar, without any apparent or obvious sign that Mr. Fishman could not

understand or make himself understood during the conversation.  *Id.* ¶49.

After arriving at police headquarters, Officer Schlesinger interviewed Ms. Elliott, who

told him that she had told Mr. Fishman that he should not be going to Ms. Solomon's home, and

that Mr. Fishman told her, in return, that if she did not accompany him there he would find

another court-appointed visitation supervisor.  Rule 56.1 at ¶50.  Ms. Elliott told Officer

Schlesinger that she knew that the visit and the actions taken by Mr. Fishman at Ms. Solomon's

home were in violation of the Order of Protection.  *Id.* at ¶51.

D.      The Interview with Mr. Fishman and Mr. Fishman's Arrest

Officer Schlesinger also interviewed Mr. Fishman.  Rule 56.1 at ¶52.  During the interview, Officer Schlesinger recalled that Mr. Fishman claimed that he had a cognitive disability.  *Id.* at ¶53.  While Officer Schlesinger did not recall whether Mr. Fishman asked for a specific accommodation, *id.* at ¶54, he found that Mr. Fishman "was perfectly lucid in conversation," and that given his "verbosity" and lack of any manifest difficulty in understanding or answering questions, he did not think that Mr. Fishman required an accommodation to understand what was happening.  *Id.* at ¶¶55-56.

For his part, Mr. Fishman claims that he did ask for specific accommodations:  (i) for Ms. Bolivar to be present to help him with full an effective communication; (ii) for Ms. Bolivar and/or himself to be allowed to retrieve a Court file from the trunk of their car, which he testified contained an orders appointing Ms. Bolivar as his aid, relating to the terms and conditions of visitation, and a calendar of medical visits; (iii) a transcriber or note taker; (iv) a notepad and a pen; and (v) for the officers to call his neurologist and other doctors.  Rule 56.1 at ¶57.  Mr. Fishman testified that if Ms. Bolivar had been present for the interview, she "would have been able to give a third perspective on what happened that day as the Court-appointed aide so that the officer didn't just have what he claimed was [the ex-wife] Jennifer's version, Ann Elliott's version, and my version."  *Id.* at ¶58.  He also claimed that Ms. Bolivar could have helped Officer Schlesinger, and the other officers, understand the visitation carve-out provisions of the Order of Protection, and could have supported Mr. Fishman's legal claim that he was never properly served with the order.  *Id.* at ¶59.  Mr. Fishman testified that Ms. Bolivar could have helped Officer Schlesinger understand that Mr. Fishman had not violated any laws, including the Order of Protection.  *Id.* at ¶60.  Mr. Fishman claimed that a note pad and pen would have

-7-

assisted him in the same fashion. *Id.* at ¶61.

After interviewing Ms. Solomon, Ms. Elliott and Mr. Fishman; reviewing the Order of Protection and visitation order; and conferring with his supervisors, Officer Schlesinger concluded that there was probable cause to believe that Mr. Fishman violated the terms of the Order of Protection and therefore the criminal contempt provisions of the New York Penal Law. Rule 56.1 at ¶62. Mr. Fishman was therefore placed under arrest and brought to the booking area for processing.

Video from the booking area captures conversations between Mr. Fishman and Officer Schlesinger. Rule 56.1 at ¶63. At approximately 12:10 p.m., Officer Schlesinger reads Mr. Fishman his *Miranda* rights. *Id.* at ¶64. Mr. Fishman indicates that he understands them, and then for the next three minutes engages in a detailed conversation with Officer Schlesinger about his version of the events of the day. *Id.* During the conversation, there is no apparent or obvious sign that Mr. Fishman had any difficulty understanding or making himself understood through oral communication. *Id.* at ¶65. Indeed, for a good portion of the video, another officer is having a conversation with another detainee, asking him a series of background and suicide screening questions. *Id.* at ¶66. The other detainee actually states he cannot hear because of the conversation between Mr. Fishman and Officer Schlesinger. Mr. Fishman, to the contrary, did not state that he was distracted by the other conversation. *Id.*

Following his arrest and being booked, Mr. Fishman was allowed to be bailed out on an otherwise non-bailable offense. Rule 56.1 at ¶68. Mr. Fishman understood that the detainee in the holding cell next to his was going to have to wait the entire weekend, until Monday morning, to see a Judge, but that Mr. Fishman himself was allowed to be released on his own recognizance that Saturday afternoon. *Id.* at ¶69.

E.      Training and Persons with Disabilities Generally

Generally, NRPD Officers receive training on persons with disabilities in the police

academy.  Rule 56.1 at ¶71.  Following recruit training, the NRPD has had in-service training

regarding people who are showing signs of mental health crises or physical impairments.  *Id.* at

¶72.  If a suspect or victim presents with an open, obvious and apparent physical or mental

disability, the NRPD procedure calls for a supervisor to be notified after which an assessment

will be made to determine if an accommodation is required.  *Id.* at ¶73.  If a suspect or victim did

not speak English, the NRPD has access to the Language Line for Foreign Speakers.  *Id.* at ¶74.

If a suspect or victim was deaf, the NRPD would recall or reach out to someone who knows

American Sign Language.  *Id.* at ¶75.

F.      Mr. Fishman is Found Guilty of Violating the Order of Protection

Mr. Fishman was charged with violating the Order of Protection, and in January 2020, he

was found guilty by a jury for violating the order by his actions in close proximity to Ms.

Solomon's house on December 15, 2018.  Rule 56.1 at ¶76.  In connection with his criminal

conviction, a bench warrant was issued for Mr. Fishman's arrest when he failed to appear in

Court for sentencing.  *Id.* at ¶77.  Mr. Fishman's criminal conviction has never been vacated or

reversed on appeal.  *Id.* at ¶78.

## Argument

### POINT I

**THERE WAS PROBABLE CAUSE TO ARREST
PLAINTIFF FOR VIOLATING THE ORDER OF PROTECTION**

This Court already ruled that plaintiff's conviction, which was never reversed on appeal,

conclusively established that there was probable cause to arrest Mr. Fishman for violating the

Order of Protection.  *See* Order & Opinion (D.E. 106), at 15-16.  The Court's reasoning in its

prior order continues to apply.  Because plaintiff was convicted of violating the Order of Protection, and because his conviction was never reversed on appeal, probable cause to arrest is conclusively established.  *Id.*

However, even short of the conviction, there was, based on the totality of the circumstances, probable cause to arrest Mr. Fishman for violating the Order of Protection.  A police officer has probable to arrest when, based on the totality of the circumstances known to the officer at the time, he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Swartz v. Insogna,* 704 F.3d 105, 111 (2d Cir. 2013).  With exceptions not applicable here, a person is guilty of criminal contempt (2d degree) when he engages in "intentional disobedience or resistance to the lawful process or other mandate of a court."  N.Y. Penal Law 215.50(3).

In the instant case, the Order of Protection required Mr. Fishman to stay away from his ex-wife and her house, and to stay away from his children, except in the context of a supervised visit.  Based on the totality of the circumstances known to the NRPD at the time, there was probable cause to believe that Mr. Fishman intentionally violated the Order of Protection by, *inter alia,* going out of his way to put himself in close proximity to Ms. Solomon's home, which is located in a remote residential area, and by then getting out of the car and attempting to contact his son outside of the context of a supervised visit.

## POINT II
### PLAINTIFF'S ADA CLAIM
### FAILS AS A MATTER OF LAW

A.    The Applicable Law

To establish a violation of Title II of the ADA, a plaintiff must prove that (1) he is a

-10-

qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) he was "denied the opportunity to participate or benefit from defendant['s] services, programs, or activities, or [was] otherwise discriminated against by [d]efendant, by reason of [his] disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003); *see also Powell v. National Bd. Of Med. Examiners,* 364 F.3d 79, 85 (2d Cir. 2004). The last element requires the plaintiff to prove that his mistreatment was "was motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001). This animus requirement reflects the purpose of Title II, which is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

An ADA discrimination claim in this context may be pursued under one of three theories: (i) intentional discrimination; (ii) disparate impact; or (iii) failure to make a reasonable accommodation. *See Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009). In this case, plaintiff is pursuing a reasonable accommodation claim. "The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled." *Felix v. New York City Transit Auth.,* 324 F.3d 102, 107 (2d Cir. 2003). The ADA mandates that a person with disabilities be accommodated so that they have "'meaningful access' to the program or services sought." *Henrietta D.,* 331 F.3d at 282.

The Second Circuit "has not addressed the issue of whether an arrest itself is a 'program, service or activity' under the ADA," *Ryan v. Vermont State Police,* 667 F. Supp. 2d 378, 386 (D. Vt. 2009), and in 2015 the United States Supreme Court declined to resolve the question. *See City and Cty of San Francisco v. Sheehan,* 135 S. Ct. 1765, 1773 (2015). However, other courts addressing the issue have "generally found that Title II [of the ADA] applies" to arrests, "but that

-11-

the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of a particular case." *Williams v. City of New York,* 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015). Indeed, in denying the City's motion to dismiss plaintiff's original complaint in the instant action, this Court stated that "'[a]n arrest or seizure of an individual, including post arrest transportation and investigation, is a 'service, activity, or benefit' of a police department and is thus covered under the ADA." *Fishman v. City of New Rochelle,* D.E. 38, at 16 (S.D.N.Y Oct. 19, 2021), quoting *Nicholas v. City of Binghamton,* 2012 WL 3261409, at *13 ((N.D.N.Y. Aug. 8, 2012).

In the arrest context there are two categories of ADA claims. In the first, a plaintiff alleges a wrongful arrest *because* of the plaintiff's disability; as might be the case if police misperceived the effect of a person's disability as criminal activity itself. *See Sage v. City of Winooski,* 2017 U.S. Dist. LEXIS 43467, at *7-8 (D. Vt. March 22, 2017). In the second, a plaintiff who does not, or cannot, challenge the legality of his arrest, alleges that police failed to reasonably accommodate his disability during the investigation or the arrest, "'thus causing him to suffer greater injury or indignity than other arrestees.'" *Id.* at *7, quoting *Ryan,* 667 F. Supp. at 387; *see also Wagner v. City of New York,* 2015 WL 5707326, at *7 (S.D.N.Y. Sept. 28, 2015) (recognizing an ADA claim "where police execute a proper arrest but fail to reasonably accommodate a plaintiff's disability during the investigation or arrest, causing [plaintiff] to suffer greater injury or indignity than other arrestees.").

In general, the requirement to provide an accommodation applies when the disability is obvious. *See Bardy v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 135 (2d Cir. 2008) (in an employment context, "an employer has a duty to reasonably accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should

-12-

have known that the employee was disabled"). This same rule applies in the context of an arrest of an allegedly disabled person. *See Garcia v. City of Lubbock,* 2023 U.S. App. LEXIS 18513, at * 28 (5th Cir. July 20, 2023); *see also Windham v. Harris Cty.,* 875 F.3d 229, 234, 237 (5th Cir. 2017) ("When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that "the disability, resulting limitation, and necessary reasonable accommodation"" were "open, obvious, and apparent" to the entity's relevant agents.") (internal quotes and citations omitted) (citing cases).

Moreover, "[m]ere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . *as a result* of that disability. Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances.'" *Windham,* 875 F.3d at 236 (internal quotes and citations omitted). Hence, the "burden falls on the plaintiff to specifically identify the disability and resulting limitations and to request an accommodation in direct and specific terms." *Id.* at 237 (internal quotes and citations omitted).

*Ryan v. Vermont State Police,* 667 F. Supp. 2d 378, 385-390 (D. Vt. 2009), provides a good example of an arrestee with obvious disabilities. In *Ryan,* police arrested a man who was deaf, and an amputee, who could not walk without using a cane. The court dismissed plaintiff's failure to accommodate claim because (i) the plaintiff was allowed to walk to the police vehicle with the aid of his cane and was not asked any questions during the ride to headquarters; (ii) the plaintiff, who could read, was provided with a written citation at the start of the booking process and plaintiff was observed putting on his reading glasses and reading the citation; (iii) given plaintiff's manifest understanding of the booking procedure the denial of his request to have his

-13-

son present did not violate the ADA. *Id.* at 389-390. In denying the claim, the court found that the plaintiff could not "point to any injury nor denial of the benefits of any program or services that an able-bodied person would have received." *Id.* at 390.

As opposed to obvious physical disabilities, whether a mental or psychological disability is obvious may be more difficult to determine. For example, in *Sage v. City of Winooski,* 2017 U.S. Dist. LEXIS 43467 (D. Vt. 2017), police officers responded to a report of a person named Isaac Sage, who was trespassing at a health club. It was alleged that Isaac Sage had a lengthy history of mental illness and resided in "Allen House," a well-known treatment center for persons with chronic and serious mental health illness. In denying a motion to dismiss, the Court found that Isaac told the police that he resided at Allen House, which reasonably put them on notice that he had mental health issues that needed to be accommodated during the course of his arrest.

Finally, some basic rules in the false arrest area are relevant to the analysis of Mr. Fishman's ADA claims. "It is well established that a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Garcia v. Doe,* 779 F.3d 84, 93 (2d Cir. 2014), quoting *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001); *see also Aberra v. City of New York,* 2023 U.S. App. LEXIS 1074, at *4-5 (2d Cir. Jan. 18, 2023). Accordingly, when an officer has probable cause to arrest, a "failure to investigate [the] arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley,* 460 F.3d 388, 395-396 (2d Cir. 2006).

B.    Application

Applying the law set forth above to the facts of this case, plaintiff's ADA claim fails.

-14-

Initially, there is no claim here that plaintiff was arrested *because* he was disabled. Rather, the claim is that despite allegedly suffering from an ADA-qualified cognitive disability, plaintiff was not provided a reasonable accommodation that would have entitled him to fully participate in the arrest process. Plaintiff's failure to accommodate claim cannot survive summary judgment.

First, plaintiff does not suffer from an obvious and apparent physical disability, such as deafness, but rather claims to suffer from a cognitive disability that made it more difficult for him to understand verbal communication and express himself verbally. While it is not disputed that Mr. Fishman *claimed* he was suffering from a cognitive disability, his failure to accommodate claim nevertheless fails because he cannot show that the alleged disability was open, obvious and apparent to Officer Schlesinger, or any other officer with whom he interacted in NRPD police headquarters. *See Windham,* 875 F.3d at 237. Officer Schlesinger testified that Mr. Fishman had no difficulty in understanding verbal communication or in expressing himself verbally. Rule 56.1 at ¶¶54-56. This is corroborated by surveillance video that captures Mr. Fishman interacting with a CSO at the public desk in the front lobby of headquarters and speaking with Ms. Elliott without any sign of hesitation or difficulty. *Id.* at ¶¶48-49. Likewise, the video that captures Mr. Fishman interacting with Officer Schlesinger shows that Mr. Fishman had no difficulty understanding and making himself understood to Officer Schlesinger. *Id.* at ¶¶63-67. After watching this video, no rational juror could conclude otherwise. *See Ryan,* 667 F. Supp. 2d at 389 ("The video of this encounter clearly reveals that there was indeed effective communication between Ryan and the police"); *see also Scott v. Harris,* 550 U.S. 372, 378-381 (2007) (relying on video to reverse summary judgment on a vehicle pursuit case); *Brown v. City of New York,* 798 F.3d 94, 109 92d Cir. 2015) (video evidence when obvious can dispel questions of fact and allow for determination of an issue as a matter of law). Here, even

assuming that Mr. Fishman suffered from a cognitive disability, it is manifestly apparent from the video evidence that any such disability was not open, obvious or apparent. Accordingly, Mr. Fishman cannot prevail on his ADA failure to accommodate claim.

Third, even assuming, for purposes of this motion only, that (i) plaintiff suffered from an ADA-qualified cognitive disability; (ii) this disability was open, obvious and apparent to Officer Schlesinger; and (iii) plaintiff was not provided any accommodations on account of the disability, plaintiff's ADA claim would still fail because he cannot demonstrate that he was treated any differently, or worse, than a non-disabled arrestee would have been treated under the same circumstances.

Importantly, when plaintiff was asked to describe his arrest experience, he did not claim to lack an understanding of the arrest process itself. Instead, his complaint is that if he had received requested accommodations—such as having Ms. Bolivar present during the interview with Officer Schlesinger or having access to certain documents—he would have been better able to explain to Officer Schlesinger why the Order of Protection was not violated and thus why he should not have been arrested. *See* Rule 56.1 at ¶¶57-61. But because there was probable cause to arrest plaintiff, *see supra* Point I, plaintiff was not legally entitled to have officers investigate his protestations of innocence; nor would officers be obligated to listen to Mr. Fishman explain his innocence, even assuming the quality of the explanation could have been improved by having Ms. Bolivar present. *See Garcia v. Doe,* 779 F.3d 84, 93 (2d Cir. 2014). Rather, plaintiff, as any non-disabled arrestee would have been, was subject to arrest for violating the Order of Protection. Indeed, under the New York Criminal Procedure Law, plaintiff's arrest was mandatory. *See* N.Y.C.P.L. §140.10(4)(b)(i).

The ADA is violated when police fail to reasonably accommodate an arrestee's disability

-16-

and thereby cause the arrestee "to suffer greater injury or indignity than other arrestees."

*Wagner,* 2015 WL 5707326, at *7.  Because plaintiff was treated no differently than a non-

disabled arrestee would have been treated under the same circumstances, and cannot be said to

have suffered any greater injury or indignity that would have been suffered by a non-disabled

arrestee, plaintiff's ADA claim fails.  *See Ryan,* 667 F. Supp. 2d at 390 (denying failure to

accommodate claim where plaintiff could not show he was treated any differently or worse than

a non-disabled arrestee would have been treated).

It is important to note that the ADA does not immunize a person with a qualified

disability from arrest.  Rather, it requires disabled persons to receive reasonable accommodations

so that, in receiving or engaging with a governmental process (here, an arrest), they are treated

evenhandedly, *i.e.*, no better and no worse, than a non-disabled person would be treated.  In the

instant case, Mr. Fishman was treated no worse than a non-disabled person would have been

treated, and therefore his rights under the ADA were not violated.[2]

## POINT III

### PLAINTIFF CANNOT DEMONSTRATE THAT HE WAS
### SUBJECTED TO INTENTIONAL DISCRIMINATION

"It is well settled that monetary damages are only available under Title II of the ADA

when a plaintiff can demonstrate intentional discrimination."  *Frank v. Sachem Sch. Dist.,* 84 F.

Supp. 3d 172, 186 (E.D.N.Y. 2015), citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,*

280 F.3d 98, 111 (2d Cir. 2001).  To prove "intentional discrimination" under the ADA, a

plaintiff must [prove] facts showing that a policymaker acted with ill will or personal animosity

---

[2] In fact, as noted above, Mr. Fishman was actually treated better than a non-disabled arrestee who happened to be arrested for a non-bailable offense on a Saturday morning would have been treated.  Mr. Fishman was allowed to be released on his own recognizance and to report to New Rochelle City Court on Monday morning, instead of being held over the weekend.

toward him because of his disability or that the policymaker acted with 'deliberate indifference' to his rights under the ADA." *Id.* at 187, citing *Gershanow v. County of Rockland*, 2014 U.S. Dist. LEXIS 37004, at \*13 (S.D.N.Y. Mar. 20, 2014). "A plaintiff can 'demonstrate[] deliberate indifference in the Title II context where an 'official with authority to address the alleged discrimination and to institute corrective measures on [the] [p]laintiff's behalf had actual knowledge of ongoing discrimination against [the] [p]laintiff but failed to respond adequately.'" *Id.* at \*187, citing *Gershanow,* 2014 U.S. Dist. LEXIS at \*14.

Mr. Fishman cannot make such a showing in the instant case. The record shows that no policymaker acted with ill will, personal animosity or deliberate indifference to Mr. Fishman's rights under the ADA. In fact, the video evidence shows that when Mr. Fishman said he was feeling cold in the holding cell, Officer Schlesinger allowed him to wear two layers (not just one), in response to which Mr. Fishman thanked Officer Schlesinger for his "professionalism." Rule 56.1 at ¶64. Moreover, as noted above, Lt. Wenzler, placing himself at risk for discipline, allowed Mr. Fishman to be released on his own recognizance, as opposed to spending the weekend in jail. In sum, because plaintiff cannot demonstrate intentional discrimination, his ADA claim fails.

**POINT IV**

**PLAINTIFF'S REHABILITATION ACT
CLAIM FAILS AS A MATTER OF LAW**

The provisions of the Rehabilitation Act are analyzed in parallel with the ADA. *See Natofsky v. City of New York,* 921 F.3d 337, 352 (2d Cir. 2019). Accordingly, because Mr. Fishman's ADA claim fails as a matter of law, so too does his claim under the Rehabilitation Act.

## Conclusion

For the reasons set forth above, the City's motion should be granted in its entirety.

Plaintiff's amended complaint should be dismissed, with prejudice.

Dated:  White Plains, New York
      June 7, 2024

                                   Respectfully submitted,

                                   THE QUINN LAW FIRM PLLC
                                   Attorneys for the City of New Rochelle

                                   Lalit K. Loomba

                                   399 Knollwood Road, Suite 220
                                   White Plains, NY  10603
                                   (914) 997-0555
                                   lloomba@quinnlawny.com