UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARC FISHMAN,

                            Plaintiffs.                            19-cv-00265-NSR

                - against -

CITY OF NEW ROCHELLE, LANE
SCHLESINGER, SHIELD # 1058, JOSEPH F.
SCHALLER, ROBERT GAZOLLA, IN HIS
OFFICIAL CAPACITY AS POLICE
COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT,
SERGEANT MYRON JOSEPH SHIELD # 18,
AND COUNTY OF WESTCHESTER,

                            Defendants.
------------------------------------------------------------------------X



## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


                        LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated:  Brooklyn, New York
          July 6, 2024

                                             _____
                                             Caner Demirayak, Esq.
                                             *Attorneys for Plaintiff Marc Fishman*
                                             300 Cadman Plaza West
                                             One Pierrepont Plaza, 12th Floor
                                             Brooklyn, New York 11201
                                             718-344-6048
                                             Fax: 646-679-2527
                                             caner@canerlawoffice.com

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** .................................................................................................. 1

**STATEMENT OF FACTS** ........................................................................................................... 2

    **I.**    **Plaintiff Marc Fishman Voluntarily Goes to the New Rochelle Police Department** 2

    **II.**    **Plaintiff's Cognitive and Hearing Disabilities** ............................................................. 3

    **III.**    **Defendants Agree Plaintiff is Disabled** ...................................................................... 4

    **IV.**    **Plaintiff Requests a Reasonable Accommodation** ..................................................... 4

    **V.**    **Defendants Deny Plaintiff the Requested Reasonable Accommodation** ................... 5

    **VI.**    **Defendants Release Fishman on Bail as an "Accommodation"** ................................ 6

    **VII.**    **Fishman is Significantly Harmed Because of the Denial of a Reasonable** ............... 6

**ARGUMENT** ................................................................................................................................ 7

**I.**    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS ALL PARTIES AGREE THAT PLAINTIFF IS DISABLED AND WAS DENIED AN ACCOMMODATION DURING THE POLICE ENCOUNTER AND THERE IS NO DISPUTE THAT THE REQUESTED ACCOMODATION WAS REASONABLE AND WOULD NOT HAVE BURDENED THE DEFENDANTS** ................................. 7

    **A.**    There is no Dispute That Plaintiff is a Qualified Individual With a Disability .......... 8

    **B.**    There is no Dispute That Plaintiff Requested a Reasonable Accommodation and That Defendants Were Otherwise on Notice of the Need for a Reasonable Accommodation ................................................................................................................ 8

    **C.**    There is no Dispute That Plaintiff was Denied a Reasonable Accommodation .......... 9

    **D.**    The Defendants Cannot Establish That the Requested Accommodation was Unreasonable or Was Otherwise Burdensome ............................................................... 10

    **E.**    The Defendant was Deliberately Indifferent to Plaintiff's Need for a Reasonable Accommodation and Hence is Liable for Monetary Damages ..................................... 10

**CONCLUSION** .......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Biondo v. Kaleida Health*,
  935 F.3d 68 (2d Cir. 2019) .................................................................................................. 11, 12

*Borkowski v. Valley Cent. Sch. Dist.*,
  63 F.3d 131 (2d Cir. 1995) ........................................................................................................ 9

*McElwee v. Cnty. of Orange*,
  700 F.3d 635 (2d Cir. 2012) ...................................................................................................... 9

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ...................................................................................................... 7

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ...................................................................................................... 8

*Powell v. Nat'l Bd. of Med. Examiners*,
  364 F.3d 79 (2d Cir. 2004) ........................................................................................................ 8

*Tardif v. City of New York*,
  991 F.3d 394 (2d Cir. 2021) ...................................................................................................... 7

*Williams v. City of New York*,
  121 F. Supp. 3d 354 (S.D.N.Y. 2015) ....................................................................................... 8

*Wynne v. Town of E. Hartford*,
  2023 U.S. Dist. LEXIS 199575, 2023 WL 7339543 (D. Ct. Nov. 7, 2023) (Hall, D.J.) ............ 8

**PRELIMINARY STATEMENT**

The defendant filed a motion for summary judgment seeking dismissal of claims for disability discrimination while acknowledging that (1) plaintiff is disabled and (2) that it failed to provide any accommodations during the police encounter because its officer did not believe that plaintiff was disabled. A belief contradicted by the officer's testimony stating "I never said he wasn't disabled." At the same time the defendant makes no argument that accommodating plaintiff would be burdensome or create any difficulties administratively or financially. These concessions alone not only require denial of the defendant's motion but a grant of plaintiff's motion for summary judgment as there is no triable issue that the defendant failed to reasonably accommodate the disabled plaintiff. The defendant desperately focuses on the jury verdict[1] against Mr. Fishman, but such legally inconsistent verdict has no bearing on the failure to accommodate claim here. The only triable question is damages.

---

[1] Defendant begins its memorandum of law focusing on the alleged presence of probable cause to find Mr. Fishman guilty of criminal contempt in the second degree. It wisely does not argue this is an element or a defense to the failure to accommodate claims. It appears this argument is made for two reasons (1) to garner sympathy from the court and paint Mr. Fishman as a convicted person and (2) to insulate it from any currently inactive 42 U.S.C. § 1983 claims. However, as established in the counter statement of material facts, Officer Schlesinger is recorded as admitting he did not believe Mr. Fishman intentionally violated any order of the court. This alone is fatal to probable cause as intentional disobedience of a lawful mandate is required. Again, defendant tries to muddy the waters here as Mr. Fishman was convicted as to the June 27, 2017 order and not the June 13, 2018 order. The difference is crucial as only with a reasonable accommodation could Mr. Fishman communicate that he was permitted supervised visitation and did not violate the June 27, 2017 Order, an Order which was silent as to supervised visitation.

## STATEMENT OF FACTS

    I.    **Plaintiff Marc Fishman Voluntarily Goes to the New Rochelle Police Department**

On December 15, 2018, Marc Fishman (hereinafter "Fishman") voluntarily walked into the New Rochelle Police Department (hereinafter "NRPD") stationhouse to make a complaint about violation of his court ordered supervised visitation with his children. Plaintiff's Local Rule 56.1 Counter Statement of Material Facts (at additional factual section) (hereinafter "Plaintiff's 56.1") at ¶ 1.

The visit was scheduled and confirmed via text message the day prior. Plaintiff's 56.1 at ¶ 2.

Ann Elliot (hereinafter "Elliot") testified that "As a supervisor, I could have said to Ms. Solomon, Ms. Solomon, go inside, he does have a visit this morning by court order, we are going to move forward with the visit and move forward," but she decided not to have a visit as her "perception is we'll have future visits…but it didn't work out that way once we got to the police station." Plaintiff's 56.1 at ¶ 3.

Fishman was accompanied by the supervisor for the visitation, Elliot and the court appointed disability aide, Isabel Bolivar (hereinafter "Bolivar"). Plaintiff's 56.1 at ¶ 4.

Bolivar was appointed as Fishman's disability/ADA aide by Judge Michelle I. Schauer in her March 30, 2018 visitation order. Plaintiff's 56.1 at ¶ 5.

When Fishman arrived at the stationhouse he advised the employee at the counter of his difficulty hearing and understanding her. Plaintiff's 56.1 at ¶ 6.

Fishman disclosed his disability to the window officer at the NRPD. Plaintiff's 56.1 at ¶ 7. Fishman stated he had difficulty interacting and needed an accommodation. *Id*.

## II.     Plaintiff's Cognitive and Hearing Disabilities

Fishman suffers from "Post-concussion syndrome [and] traumatic brain injury affect[ing] registration, cognition, short-term memory, names, sequences." Plaintiff's 56.1 at ¶ 8. Additionally, Fishman suffers from "tinnitus…which impacts [his] hearing" and "occipital neuralgia, which is severed nerves in the rear of [his] head." Plaintiff's 56.1 at ¶ 9.

As a result of this disabilities, Fishman has received treatment including "executive function testing…memory recall…speak, traumatic brain injury therapy [and] role playing with decision making." Plaintiff's 56.1 at ¶ 10.

Plaintiffs caries cards labeled "Brain Injury Identification Card," and a Medtronic Medical Device Identification card for his Stimulation System Implant. Plaintiff's 56.1 at ¶ 11.

Elliot testified she felt Fishman was "a little slow." Plaintiff's 56.1 at ¶ 12. Elliot testified that Fishman would have difficulty in expressing and communicating what occurred to the police officers who interviewed him, that he could come off as slower and would be jumping all over. Plaintiff's 56.1 at ¶ 13.

When asked about whether Fishman needed an accommodation or modification, Elliot explained "I just know with my communication [with Fishman] sometimes it did get a little frustrating but as a professional I had to work with that, so yes." Plaintiff's 56.1 at ¶ 14.

### III. Defendants Agree Plaintiff is Disabled

Officer Schlesinger testified "I never said he wasn't disabled." Plaintiff's 56.1 at ¶ 15. In their motion to dismiss the complaint the defendants did not contest plaintiff's disability. *Id* at ¶ 16. The defendants agreed to and did conduct plaintiff's deposition in this case with the assistance of a real time transcription accommodation. *Id* at ¶ 17.

The Second Circuit previously granted Fishman's motion in another matter for an accommodation for this disabilities in the form of real time transcription during oral argument. Plaintiff's 56.1 at ¶ 18.

### IV. Plaintiff Requests a Reasonable Accommodation

While at the stationhouse, "Ms. Bolivar identified herself as [Fishman's] aide for communication…and that she had the papers with her for the orders, and that [Fishman] needed her help, and she needed to assist [Fishman] with communication and interpret and show all the orders to Officer Schlesinger." Plaintiff's 56.1 at ¶ 19.

However, "Officer Schlesinger denied Ms. Bolivar as my aide access to the room to assist me with full and effective communication." Plaintiff's 56.1 at ¶ 20. Additionally, when Fishman "Showed Officer Schlesinger [his] traumatic brain injury card and asked for [his] aide to be brought in with me…he said he wasn't interested." *Id* at ¶ 21.

The proposed accommodation was requested and was simply for the disability "aide to come in to assist with…reading and interpreting the order [and] for [Fishman or his] aide to go to the car to get the court file out of the truck that had the order [stating she was] the [court appointed] aide and had the visitation orders." Plaintiff's 56.1 at ¶ 22.

Had the accommodation been granted "Ms. Bolivar would have brought the order [showing] she's…the court-appointed aide [and] she would have been able to isolate the portions of the order of protection that have a carve-out for visitation…and she would have been able to read the order." Plaintiff's 56.1 at ¶ 23.

Had the accommodation been granted the disability aide could have articulated to Officer Schlesinger that there was "no violation [of the order of protection] and the visit wasn't canceled in writing beforehand and that we didn't go on any property." Plaintiff's 56.1 at ¶ 24.

Bolivar testified that she was prevented from going into the interrogation room with Fishman. Plaintiff's 56.1 at ¶ 25. Bolivar testified she told Schlesinger "I wanted to go in with them to explain the situation, to participate in the interrogation and he literally put his arm out and he stopped me. He didn't let me." *Id* at ¶ 26. Bolivar testified she had the court orders and that she could have articulated the situation in a way Fishman could not have. *Id* at ¶ 27. Bolivar was intimidated by Schlesinger. *Id* at ¶ 28.

**V.     Defendants Deny Plaintiff the Requested Reasonable Accommodation**

Officer Schlesinger intentionally refused to accommodate plaintiff because according to the officer: "I did not think he was disabled" and that "I don't believe he had a disability that prevented him from making statements," and "That day I did not see a disability in my interactions with him." Plaintiff's 56.1 at ¶ 29.

When plaintiff showed the officer his brain injury card the officer stated "I don't care. Put it away…I don't need to see it. My boss says I don't need to see it." Plaintiff's 56.1 at ¶ 30.

At some point during the interrogation, Officer Schlesinger asked plaintiff to read, authenticate and explain a 20 plus page visitation agreement to him. Plaintiff "started reading it…and had an occipital neuralgia attack while sitting at the table." Plaintiff's 56.1 at ¶ 31.

## VI.  Defendants Release Fishman on Bail as an "Accommodation"

While defendant claims it did accommodate plaintiff by allowing him to go home instead of being sent to jail, Robert Wenzler testified that "Decision was not based on some specific policy about accommodating people that were disabled, it was based off of sympathy and empathy to the situation." Plaintiff's 56.1 at ¶ 32.

However, Lt. Wenzler testified "By allowing him to leave that day versus staying in a jail cell for the next two days, I would say that was an accommodation, yes." Plaintiff's 56.1 at ¶ 33.

Officer Schlesinger confirmed plaintiff did not ask for an accommodation to be sent home. Instead, Lieutenant Wenzler "Made a decision to release Mr. Fishman so that medical attention, if needed, could be given to him and he doesn't have to be housed in a cell unnecessarily." Plaintiff's 56.1 at ¶ 34. In the reporting officer narrative it is set forth that "Due to the poor health of Mr. Fishman and his inability to drive it was authorized to release him to Ms. Bolivar and assign a return date of 17 Dec 18." *Id* at ¶ 35.

## VII.  Fishman is Significantly Harmed Because of the Denial of a Reasonable Accommodation

Bolivar testified that had the accommodation been granted "I would have been able to explain [the situation] and help avoid everything that happened to the detriment of these children, him and our families." Plaintiff's 56.1 at ¶ 36.

Fishman was required to expend over $50,000 to defend the criminal case and to hire a disability advocate. Plaintiff's 56.1 at ¶ 37. Fishman lost his real estate broker's license. *Id* at ¶ 38. Fishman lost $150,000 in income as a result of the 10-month suspension of his real estate broker's license. *Id* at ¶ 39.

Fishman was convicted of crimes he was actually innocent of. Plaintiff's 56.1 at ¶ 40. Ann Elliot testified "I didn't think there was a crime with Mr. Fishman," with respect to the events of the December 15, 2018 scheduled supervised visitation, and she was not concerned about Mr. Fishman being arrested or charged with a crime that day. *Id* at ¶ 41.

The prosecutor conceded that the verdict against Fishman was legally inconsistent. Plaintiff's 56.1 at ¶ 42. The trial judge refused to vacate the legally inconsistent verdict. *Id* at ¶ 43.

Fishman has been prohibited from any visitation with his children since January 28, 2020 as orders of protection have been in place since the jury's legally inconsistent verdict was rendered. Plaintiff's 56.1 at ¶ 44. This was a continuation of the parental alienation being created against Fishman as testified to by Elliot. *Id* at ¶ 45.

## ARGUMENT

I. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS ALL PARTIES AGREE THAT PLAINTIFF IS DISABLED AND WAS DENIED AN ACCOMMODATION DURING THE POLICE ENCOUNTER AND THERE IS NO DISPUTE THAT THE REQUESTED ACCOMODATION WAS REASONABLE AND WOULD NOT HAVE BURDENED THE DEFENDANTS**

In the Second Circuit "To establish a claim under Title II, a plaintiff must demonstrate (1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (*quoting Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016)). On a failure to accommodate theory "The demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is

7

sufficient to sustain a claim for a reasonable accommodation." *Id* at 405 (*quoting Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003)).

In this Circuit it is clear that "police encounters are…services, programs or activities within the meaning of Title II." *Wynne v. Town of E. Hartford*, 2023 U.S. Dist. LEXIS 199575, 2023 WL 7339543 (D. Ct. Nov. 7, 2023) (Hall, D.J.) (*citing Williams v. City of New York*, 121 F. Supp. 3d 354, 364-65 (S.D.N.Y. 2015)).

**A. There is no Dispute That Plaintiff is a Qualified Individual With a Disability**

There is no dispute that plaintiff is disabled. First, when moving to dismiss plaintiff's *pro se* complaint the defendants did not contest the plaintiff's disability and should be held to such position. Second, the testimony of the defendants' employees confirms their acceptance of his disability on December 15, 2018. Specifically, Schlesinger testified that he never denied plaintiff was disabled and Wenzler testified he accommodated plaintiff's disability when he released him instead of sending him to jail pending arraignment. Third, the testimony of plaintiff, his disability aide, the medical documentation and the supervisor for visitation all confirm his disability.

**B. There is no Dispute That Plaintiff Requested a Reasonable Accommodation and That Defendants Were Otherwise on Notice of the Need for a Reasonable Accommodation**

"A public entity discriminates against qualified individuals with a disability if it fails to provide them with a reasonable accommodation that permits them to have access to and take a meaningful part in its services, programs, or activities." *Wynne,* U.S. Dist. LEXIS 199575 (*citing Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)).

"A plaintiff bears the initial burden of demonstrating the existence of some accommodation…" *Wynne,* U.S. Dist. LEXIS 199575 (*citing McElwee v. Cnty. of Orange*, 700

8

F.3d 635, 642 (2d Cir. 2012)). And, "Once the plaintiff has identified a plausible accommodation, the costs of which, facially do not clearly exceed its benefits, the defendant bears the burden of showing that the plaintiff's proposed accommodation is unreasonable." *Id* (*citing Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

Here, there is no dispute that plaintiff requested a reasonable accommodation. First, plaintiff voluntarily went to the NRPD stationhouse to file a complaint and when he communicated with the employee at the window he advised he was disabled. Second, plaintiff told Schlesinger he was disabled and required assistance from his court assigned disability/ADA aide to communicate with Schlesinger during the questioning. Third, Schlesinger admitted at his deposition that he was repeatedly informed of plaintiff's disabilities but that he simply did not accept them and thus did not provide an accommodation. Fourth, Bolivar testified she also advised Schlesinger she was the court assigned disability/ADA aide and that she could assist plaintiff in communicating and explain the complex visitation orders. Fifth, Wenzler testified that they agreed to accommodate plaintiff by letting him go home instead of being sent to jail, but did not provide him any accommodation during the interview.

**C. There is no Dispute That Plaintiff was Denied a Reasonable Accommodation**

Even if Schlesinger's claim that a specific accommodation was not requested is believed, his refusal to engage in an interactive process to determine what accommodations could be provided is a de-facto denial of an accommodation.

There is no dispute that Schlesinger denied plaintiff an accommodation during the police interview. Schlesinger admitted he was informed of plaintiff's disabilities but rejected the claims and as such refused to provide an accommodation. He refused to permit plaintiff's disability/ADA aide to be present during the interview to assist with his cognitive and hearing deficits.

9

### D. The Defendants Cannot Establish That the Requested Accommodation was Unreasonable or Was Otherwise Burdensome

The defendant is unable to demonstrate that the requested accommodation was unreasonable or otherwise burdensome. It would defy logic to argue that allowing a disabled person's disability/ADA aide to be present during an interrogation would burden the defendant police department. Instead it would have helped the defendant avoid the mess of the last six years in charging an innocent disabled person with crimes he did not commit. And, the defendant could have still proceeded with the same course with plaintiff even if the accommodation was granted. Its decision to deny the accommodation was discriminatory as it denied a disabled person the same access to the police encounter as non-disabled persons. A similar nondisabled person could have explained the legality of the conduct and the 30 plus pages of court orders rendering all conduct that day legal. However, the disabled plaintiff could not do so without the assistance of a disability/ADA aide. Since this sort of accommodation would not cost the defendant anything or create non financial burdens, the defendant cannot rebut plaintiff's *prima facie* case, rendering summary judgment appropriate and necessary.

### E. The Defendant was Deliberately Indifferent to Plaintiff's Need for a Reasonable Accommodation and Hence is Liable for Monetary Damages

The Defendant incorrectly argues that a plaintiff must show intentional discrimination for plaintiff to be entitled to monetary damages. It is undisputed (and even conceded, despite in a misleading way) that a plaintiff can show the requisite *mens rea* for monetary damages pursuant to a deliberate indifference standard. Defendant's motion fails to demonstrate the absence of issues of fact as to deliberate indifference. First its officer admits Mr. Fishman advised him he was disabled. Second the officer admits he just didn't believe the disability so he refused to accommodate him.

These statements alone show (1) an objective awareness by the defendant's employee that Mr. Fishman may require an accommodation and (2) a subjective refusal to provide such accommodation and could have avoided such discrimination but for his deliberate indifference to plaintiff's disability. Regardless, the plaintiff and non-party witnesses state that a reasonable accommodation was requested whereas the defendant's officer denies an accommodation was requested. This factual dispute must be sent to a jury.

In *Biondo v. Kaleida Health*, 935 F.3d 68, 75-76 (2d Cir. 2019), the Second Circuit found deliberate indifference where a defendant knew of the plaintiff's disability and refused to accommodate it. This is further buttressed by Robert Wenzler's decision to release Mr. Fishman instead of keeping him detained pending arraignment due to "poor health" and also as an accommodation. The after the fact accommodation of release on a non-bailable offense does not cure the earlier deliberate denial of an accommodation during the actual police interrogation that resulted in the arrest and charging decision.

There were multiple employees aware of plaintiff's disabilities but refused to provide any accommodation during the interrogation and questioning. Since Wenzler was able to "accommodate" plaintiff after the fact he also had the authority to order Schlesinger to provide an accommodation during the interrogation and he failed to do so. Any other supervisor or sergeant in the chain of command with Wenzler would also be liable herein on a deliberate indifference standard. Even Schlesinger himself could have provided the accommodation and deliberately refused. It is not for Schlesinger to make a judgment about a disability.

As held in *Biondo* "A jury might…find that certain staff members observed [Fishman] struggling to communicate [or comprehend] knew that he…lacked the [ability] to communicate adequately…had the authority to [permit plaintiff's requested accommodation with assistance

11

from his ADA aide, and the use of a note pad] and deliberately failed to do so notwithstanding repeated requests," by plaintiff and his ADA Aide. *Biondo*, 935 F.3d at 76. Only to provide an after the fact accommodation allowing release after plaintiff's statements were illegally obtained without an accommodation and without *Miranda*.

## **CONCLUSION**

The defendant's motion for summary judgment must be denied[2].

---

[2] The defendant does not dispute that it receives federal financial assistance and thus admits it is subject to the provisions of the Rehabilitation Act. Since the motion must be denied as to Title II of the ADA and motion also must be denied as to the RA claims.