Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
MARC FISHMAN,

                                        Civil Action No.
              PLAINTIFF,                19-CV-265(NSR)
                                        (VR)
       -against-
CITY OF NEW ROCHELLE,
              DEFENDANT.
---------------------------------------X
                 300 Quarropas Street
                 White Plains, New York  10601
                 December 4, 2023
                 10:10 a.m.


     Examination Before Trial of ANN ELLIOTT, a Non-Party Witness in the above-captioned matter, held at the above time and place, before Howard Breshin, a Notary Public of the State of New York.

1              ELLIOTT
2
   A P P E A R A N C E S:
3
4  LAW OFFICE OF CANER DEMIRAYAK
       Attorneys for Plaintiff
5      300 Cadman Plaza West
       One Pierrepont Plaza - 12th Floor
6      Brooklyn, New York  11201
   BY: CANER DEMIRAYAK, ESQ.
7      718 344-6048
       canerlawoffice@gmail.com
8
   THE QUINN LAW FIRM
9      Attorneys for Defendant
       399 Knollwood Road - Suite 220
10     White Plains, New York  10603
   BY: LALIT LOOMBA, ESQ.
11     914 997-0555
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1           **STIPULATIONS**
2                 **IT IS HEREBY STIPULATED AND AGREED**
3           **by and between the attorneys for the**
4           **respective parties hereto, that this**
5           **examination may be sworn to before any**
6           **Notary Public.**
7                 **IT IS FURTHER STIPULATED AND**
8           **AGREED that the sealing and filing of**
9           **the said examination shall be waived.**
10                **IT IS FURTHER STIPULATED AND**
11          **AGREED that all objections to questions**
12          **except as to form shall be reserved for**
13          **trial.**
14
15
16
17
18
19
20
21
22
23
24
25

Page 83

1        STIPULATIONS
2     A.   No, I was not informed of that.
3     Q.   Whether you were informed or not, were
4  you concerned that that would happen?
5     A.   No, I had no concerns.  I didn't feel
6  I did anything that warranted me being arrested.
7     Q.   So did you have any concern that you
8  potentially would be arrested or charged with any
9  crime that day?
10    A.   No, because I didn't feel there was a
11 crime.
12    Q.   A crime with respect to yourself?
13    A.   Yes.
14    Q.   How about anyone else that was
15 involved?
16    A.   I didn't think there was a crime
17 either with Mr. Fishman.
18    Q.   Did you feel that there may have been
19 a crime with Ms. Bolivar?
20    A.   No, I didn't feel that way.
21    Q.   What about with Ms. Solomon, the
22 mother of the children?
23    A.   No, I didn't feel that way at the
24 time.
25    Q.   Okay.  Would it be fair to say that

Page 92

1               STIPULATIONS
2     know, I said, you know, Joanna mentioned about
3     some track meet with her dad, she really wants
4     to, I think she may have gotten in on that
5     conversation.  And so Ms. Solomon said, okay, you
6     know, he can come and see you run.
7         Q.    Now, I usually don't preface my
8     questions with commentary but I am probably
9     asking a loaded word, so if you can't answer the
10    way I'm asking, let me know and I'll rephrase it.
11              In your work with this family, did you
12    feel that Jennifer Solomon was engaging either
13    indirectly or directly in parental alienation
14    against Marc?
15              MR. LOOMBA:  Wait, objection to
16         form.  Go ahead.
17        A.    Yes, I did feel in some sense that was
18    happening.
19        Q.    Did you feel that Marc Fishman had a
20    processing issue with words and phrases and
21    communication with speaking with someone in your
22    interaction with him?
23        A.    Initially when I started the case and
24    I did not know about his accident or whatever, I
25    kind of felt that this father, excuse my

Page 93

1               STIPULATIONS
2    language, is a little slow.  But then when he
3    caught onto my, like posture, like what is going
4    on, you know, then he told me about an accident
5    and the surgery and having implants and all of
6    that and being part of the disabled disability
7    thing.  So I said -- and he said it was very bad,
8    his memory is just coming back and, you know,
9    being able to process and understand.  So I said,
10   oh, okay.
11              Because in speaking to Ms. Solomon
12   also not sharing that with her but she divulged
13   information to make it seem -- maybe that is why
14   that was my perception, you know, he didn't do
15   well in college and he didn't finish, he's not
16   that bright, you know.  So I am like, okay, maybe
17   this is the challenges I'm having with getting
18   him to understand or saying something and not
19   getting good results.  This is an adult.  This is
20   a court order.  I said this three times already,
21   why are you not, you know.
22              So with that information, then I
23   understood a little better that maybe this was,
24   you know, part of what happened in the accident.
25        Q.    I guess just because just thinking

1              STIPULATIONS
2    on our way to the police station, I tried to tell
3    him it is not going to change anything, we are
4    not going to have a visit today.  But he insisted
5    that the visit was being ended by Ms., you know,
6    Ms. Solomon where I am telling him I am making
7    the call, right, but he didn't see it that way.
8    He saw that she was doing it, right?
9              As a supervisor, I could have said to
10   Ms. Solomon, Ms. Solomon, go inside, he does have
11   a visit this morning by court order, we are going
12   to move forward with the visit and move forward.
13   I could have made that decision.  But I didn't
14   feel with the talk of the order of protection and
15   stuff even though I didn't see one and Ms.
16   Solomon being so very upset and with all the
17   dynamics that was going on in this case, it was
18   in the best interests of everyone that I said,
19   okay, we are not going to have a visit today.  It
20   is just a day and my perception is we'll have
21   future visits, right?  So let's everybody quiet,
22   let's move on from today.  But it didn't work out
23   that way once we got to the police station.
24             I didn't even want to go to the police
25   station.  I begged him to just drop me off, I

```
                                              Page 108
 1                    STIPULATIONS
 2     by hearsay what these two people were saying.
 3     And so in driving past her home was not -- maybe
 4     he was in the vicinity but he was in a public
 5     space, public property which is a street, turning
 6     the corner on the street, parked on the side of
 7     the street.  So I didn't see where any criminal
 8     issue -- this was no different for me than us
 9     being at the rink, he is there, Ms. Solomon is
10     there.  This was no different from her being in
11     the same space, which occurred a couple of times,
12     and Mr. Fishman was there even in closer
13     proximity of making the best situation between
14     two feuding parents being in the presence of
15     their children.
16          Q.    Did you feel that Mr. Fishman would
17     have had difficulty in expressing and
18     communicating what occurred that day to the
19     police officers when they were interviewing him?
20                 MR. LOOMBA:  Objection.  Go ahead.
21          A.    He probably could have.  Because when
22     he gets upset, you know, he goes off.
23          Q.    He can come off as a little slower?
24                 MR. LOOMBA:  Objection.
25          A.    Yes, he will be kind of like jumping
```

```
                                              Page 109
 1                   STIPULATIONS
 2    all over, you know.
 3         Q.    So regardless as to what you had
 4    spoken to the police officers about, they spoke
 5    to him next and it is possible that he may have
 6    not expressed himself in a way that clearly
 7    explained what happened as the way you saw it had
 8    happened?
 9              MR. LOOMBA:  Objection to form.
10         Go ahead.
11         A.    It is quite possible.
12         Q.    Do you think that there may have been
13    some sort of accommodation or modification that
14    he would need to better trust himself on that day
15    or with you?
16         A.    I am not sure what that would be.  It
17    is not even something that entered my thoughts.
18    I just know with my communication, sometimes it
19    did get a little frustrating but as a
20    professional I had to work with that, so yes.
21              MR. DEMIRAYAK:  I have no other
22              questions for you.  But I will note my
23              objection again on the record.  The
24              request for all emails and text
25              messages to this non-party witness I
```