[Page 1]
December 1, 2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MARC FISHMAN,                        :
                                                DOCKET NO.
            Plaintiff,               :  19-CV-265 NSR
    -against-                        :
CITY OF NEW ROCHELLE; LANE           :
SCHLESINGER, SHIELD #1058; JOSEPH
F. SCHALLER; ROBERT GAZOLLA, In His:
Official Capacity as Police
Commissioner of the City of New      :
Rochelle Police Department;
SERGEANT MYRON JOSEPH, SHIELD #18    :
& COUNTY OF WESTCHESTER,
                                     :
            Defendants.
------------------------------------x

                    Lexitas -
                    LegalView VC

                    December 1, 2023
                    10:00 A.M.

        DEPOSITION of OFFICER LANE SCHLESINGER, a
Defendant in the above-entitled action, held at the
above time via Video Conference, taken before a
Certified Court Reporter of the State of New
Jersey.


                LEXITAS TRI STATE
          100 Merrick Road, Suite 320W
        Rockville Centre, New York 11570
            (516) 678-8700 Ext. 2332

(1) **A P P E A R A N C E S:**
(2)
(3)  LAW OFFICES OF CANER DEMIRAYAK, ESQ., P.C.
(4)  BY: CANER DEMIRAYAK, ESQUIRE
(5)  300 Cadman Plaza West
(6)  One Pierrepont Plaza, 12th Floor
(7)  Brooklyn, New York 11201
(8)  Tel: (718) 344-6048
(9)  Email: caner@canerlawoffice.com
(10) Attorney for the Plaintiff
(11)
(12)
(13)
(14) THE QUINN LAW FIRM
(15) BY: LALIT K. LOOMBA, ESQUIRE
(16) 399 Knollwood Road, Suite 220
(17) White Plains, New York 10603
(18) Tel: (914) 997-0555
(19) Fax: (914) 997-0550
(20) Email: loomba@quinnlawny.com
(21) Attorneys for the Defendants
(22)
(23)
(24) **A L S O   P R E S E N T:**
(25) **ROBERT CALVERT, New York State E-Notary**

```
(1)                    I  N  D  E  X
(2)
(3)
(4)    WITNESS          EXAMINATION BY              PAGE
(5)
(6)    OFFICER LANE SCHLESINGER
(7)
(8)                     MR. DEMIRAYAK                 8
(9)
(10)
...
(25)
```

```
 (1)                E X H I B I T S
 (2)
 (3)
 (4)    EXHIBIT NO.     DESCRIPTION               PAGE
 (5)
 (6)    P-1             AUDIO RECORDING           PREMARKED
 (7)    P-2             UNIDENTIFIED DOCUMENT     PREMARKED
 (8)    P-3             TEXT MESSAGES             PREMARKED
 (9)    P-4             DOMESTIC INCIDENT         PREMARKED
                        REPORT
(10)
(11)
(12)
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)    *Exhibit marked & retained by Attorney*
(21)
(22)
(23)
(24)
(25)
```

```
 (1)
 (2)                S T I P U L A T I O N S
 (3)
 (4)
 (5)
 (6)                IT IS HEREBY STIPULATED AND AGREED
 (7)    by and between (among) counsel for the respective
 (8)    parties herein, that filing and sealing being the
 (9)    same are hereby waived.
(10)                IT IS FURTHER STIPULATED AND AGREED
(11)    that all objections, except as to the form of the
(12)    question, shall be reserved to the time of the
(13)    trial.
(14)                IT IS FURTHER STIPULATED AND AGREED
(15)    that the within deposition may be sworn to and
(16)    signed before any officer authorized to administer
(17)    an oath, with the same force and effect as if
(18)    signed and sworn to before the Court.
(19)
(20)
(21)
(22)
(23)                       *     *     *
(24)
(25)
```

```
(1)
(2)              V I D E O   S T I P U L A T I O N S
(3)
(4)              IT IS HEREBY STIPULATED AND AGREED
(5)     by and between counsel for all parties present
(6)     that pursuant to C.P.L.R. Section 3113 (d) this
(7)     deposition is to be conducted by
(8)     Videoconference, that the Court Reporter, all
(9)     counsel, and the witness are all in separate
(10)    remote locations and participating via
(11)    Videoconference ((LegelView/Zoom/WebEx) meeting
(12)    under the control of Lexitas Court Reporting
(13)    Service, that the officer administering the
(14)    oath to the witness shall be sworn in remotely
(15)    by the Court Reporter after confirming the
(16)    witness' identity, that this Videoconference
(17)    will not be recorded in any manner and that any
(18)    recording without the express written consent
(19)    of all parties shall be considered
(20)    unauthorized, in violation of law, and shall
(21)    not be used for any purpose in this litigation or
(22)    otherwise.
(23)
(24)             IT IT FURTHER STIPULATED that
(25)    exhibits may be marked by the attorney
```

(1)
(2)  presenting the exhibit to the witness, and that
(3)  a copy of any exhibit presented to a witness
(4)  shall be emailed to or otherwise in possession
(5)  of all counsel prior to any questioning of a
(6)  witness regarding the exhibit in question. All
(7)  parties shall bear their own costs in the conduct
(8)  of this deposition by Videoconference.
(9)
(10)
(11)
(12)
(13)
(14)
(15)                    *       *       *
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)

(1)  did not state that he had a disability, no, I would
(2)  not think he's disabled.
(3)        Q.    Okay.  And him stating he had a
(4)  disability didn't change your opinion?
(5)        A.    My interaction with him and how he
(6)  verbalized what he said, the way he spoke, his body
(7)  language, and everything else that goes along with
(8)  a person interview face-to-face, no, I did not
(9)  think he was disabled.
(10)       Q.    Who explained the custody of visitation
(11) orders here?
(12)       A.    I read it on Miss Solomon's computer.
(13) And Miss Elliot.
(14)       Q.    Did you read the whole thing on Miss
(15) Solomon's computer?
(16)       A.    I don't remember.  I don't remember how
(17) many pages I read.
(18)       Q.    The whole thing?
(19)       A.    Sir, I don't remember how many pages I
(20) read.
(21)       Q.    Did you ever review a hard printed copy
(22) of that?
(23)             COURT REPORTER: Sorry. Can you repeat
(24) your answer?
(25)             MR. LOOMBA: Question was did he ever read

(1)   Q.   Well, Lieutenant Wenzler felt Mr. Fishman
(2) was disabled but you did not, right?
(3)        MR. LOOMBA: Objection.
(4)   A.   That's not what I said at all.  I said
(5) Lieutenant Wenzler made a decision based on his
(6) synopsis of the situation, what was claimed, and he
(7) made a decision to release Mr. Fishman so that
(8) medical attention, if needed, could be given to him
(9) and he doesn't have to be housed in a cell
(10) unnecessarily.
(11)  Q.   If you were the ultimate decision-maker
(12) would you have allowed Mr. Fishman to be released
(13) without bail?
(14)  A.   I'm not the decision-maker.  Nor would I
(15) make assumptions like that.
(16)  Q.   Were you told --.
(17)       Well, you didn't -- you told us before
(18) you didn't believe his disability.
(19)  A.   I said based off our conversation I
(20) didn't see any reason that he couldn't understand
(21) or had a lucid conversation where he didn't.
(22)  Q.   As a result, you felt that he did not
(23) require any accomodations or modifications in the
(24) police encounter, correct?
(25)  A.   No.  He didn't ask for any.

(1) unacceptable.
(2)     So, again, did you come to a
(3) determination in your head, as an officer, whether
(4) he was disabled or not? Not as you just said, I
(5) accommodated his claim by allowing him to ask me.
(6) That's not an answer, Officer. You're in Federal
(7) Court. So was he disabled or not in your opinion?
(8) Yes or no?
(9)     A.  According to his claim yes.
(10)    Q.  So the answer is yes? Can you answer it
(11) yes or no?
(12)    A.  According to his claim yes. I'm not a
(13) doctor. Nor can I give you diagnosis.
(14)    Q.  I didn't ask if you're a doctor. You're
(15) a police officer. You have a very, very important
(16) job.
(17)    A.  Right.
(18)    Q.  I'm asking was he a person with a
(19) disability? Is your answer yes because it's not
(20) clear? The record says yes according to his
(21) claim. I'm saying according to you?
(22)    MR. LOOMBA: You can give opinion
(23) according to you whether you believe he had a
(24) disability.
(25)    A.  I don't believe he had a disability that

(1) up his disability?
(2)     A.    I don't have opinion on his personality.
(3) That day I did not see a disability in my
(4) interaction with him.
(5)     Q.    In other words, if he said he was
(6) disabled, he wasn't telling the truth according to
(7) you?
(8)     A.    No.  If he said he was disabled, that's
(9) his claim and I'm not here to dispute that.
(10)    Q.    But you didn't agree with his claim?
(11)    A.    I don't have to agree with it.  It didn't
(12) interfere with my -- with him or with what he was
(13) trying to convey to me.
(14)    Q.    His disability is complete bullshit?  Is
(15) that what you're saying?
(16)          MR. LOOMBA: Objection.
(17)    A.    I never said anything.  Nor did I curse.
(18)    Q.    But -- so you didn't think he was
(19) disabled.  Yet, you say he's still entitled to
(20) believe he's disabled?
(21)    A.    Right.  He's --
(22)          MR. LOOMBA: -- wait.  Let me object to
(23) form.  He answered.  Go ahead.
(24)    Q.    What was the answer?
(25)    A.    He's allowed to claim he's disabled.  I'm