UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
MARC FISHMAN,                                                     :    Docket No.
                                                                   :    19-CV-265 (NSR)
                   Plaintiff,                            :

  -against-                                                          :

CITY OF NEW ROCHELLE, LANE SCHLESINGER,          :
SHIELD #1058, JOSEPH F. SCHALLER, ROBERT
GAZOLLA, IN HIS OFFICIAL CAPACITY AS                 :
POLICE COMMISSIONER OF THE CITY OF NEW
ROCHELLE POLICE DEPARTMENT, SERGEANT         :
MYRON JOSEPH SHIELD #18, & COUNTY OF
WESTCHESTER,                                                         :
                                                                                 :
                   Defendants.                         :

------------------------------------------------------------------- X


# DEFENDANT CITY OF NEW ROCHELLE'S
# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


THE QUINN LAW FIRM PLLC
Attorneys for Defendant City of New Rochelle
399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................... iii

Introduction ............................................................................................................................1

Preliminary Statement ............................................................................................................1

Argument ................................................................................................................................2

    POINT I    THE CITY IS ENTITLED TO SUMMARY JUDGMENT .........................................2

        A.  Plaintiff Has Not Demonstrated a Question of Fact Regarding His Alleged Disability. ...................................................................................................................2

        B.  Plaintiff Was Not Denied a Reasonable Accommodation .............................................4

        C.  Plaintiff Did Not Raise a Triable Issue of Fact Regarding Intentional Discrimination. ............................................................................................................8

Conclusion. ...........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                     **Pages(s)**

*Baerga v. Hospital for Special Surgery,*
   2003 U.S. Dist. LEXIS 17201 (S.D.N.Y. Sept. 3, 2003) ............................................................. 3

*Biondo v. Kaleida Health,*
   935 F.3d 68 (2d Cir. 2019) .......................................................................................................... 9

*Brown v. City of New York,*
   798 F.3d 94, 109 (2d Cir. 2015) .................................................................................................. 9

*Douglas v. Victor Capital Group,*
   21 F. Supp. 2d 379 (S.D.N.Y. 1988) ...................................................................................... 3, 4

*Frank v. Sachem Sch. Dist.,*
   84 F. Supp. 3d 172 (E.D.N.Y. 2015) .......................................................................................... 8

*Garcia v. Doe,*
   779 F.3d 84, 93 (2d Cir. 2014) .................................................................................................... 8

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,*
   280 F.3d 98 (2d Cir. 2001) .......................................................................................................... 8

*Gershanow v. County of Rockland,*
   2014 U.S. Dist. LEXIS 37004 (S.D.N.Y. Mar. 20, 2014) ....................................................... 8-9

*Heilweil v. Mount Sinai Hosp.,*
   32 F.3d 718 (2d Cir. 1994) .......................................................................................................... 3

*Jocks v. Tavernier,*
   316 F.3d 128, 136 (2d Cir. 2003) ........................................................................................... 6, 8

*Johnson v. St. Clare's Hosp. & Health Ctr.,*
   1997 U.S. Dist. LEXIS 22492 (S.D.N.Y. May 13, 1998) .......................................................... 3

*Ryan v. Vermont State Police,*
   667 F. Supp. 2d 378 (D. Vt. 2009) ......................................................................................... 8, 9

*Scott v. Harris,*
   550 U.S. 372 (2007) .................................................................................................................... 9

*Wagner v. City of New York,*
   2015 WL 5707326 (S.D.N.Y. Sept. 28, 2015) ........................................................................... 8

-iii-

**Statutes**

N.Y.C.P.L. §140.10(4)(b)(i). ...................................................................................................8

## Introduction

Defendant City of New Rochelle ("City") respectfully submits this reply memorandum of law in further support of its motion for summary judgment.

## Preliminary Statement

As demonstrated in the City's main brief, plaintiff's ADA and Rehabilitation Act claims must be dismissed because, even assuming that plaintiff suffered from an ADA-qualified cognitive disability that was open, obvious and apparent to the members of the New Rochelle Police Department ("NRPD"), plaintiff cannot demonstrate that he was (i) treated any worse than a non-disabled arrestee in the same circumstances would have been treated; or (ii) subjected to intentional discrimination. Plaintiff's opposition largely ignores the City's motion and, instead, simply copies and pastes from plaintiff's own motion for summary judgment.

Again, plaintiff's basic argument is that if Ms. Bolivar had been allowed to be present during his interview with Officer Schlesinger, she could have conveyed to Officer Schlesinger that plaintiff did not violate the law, which plaintiff claims "would have helped him avoid the mess of the last six years in charging an innocent disabled persons with crimes he did not commit." Plaintiff's Opp. Mem. at 10. But no arrestee—disabled or not disabled—is entitled to have someone present, whether a girlfriend or a "disability aid," to help him talk his way out of an arrest. Instead, it is blackletter law that once there is probable cause to arrest, an officer is not obligated to consider the arrestee's explanations of innocence, or to allow additional persons to advocate on the arrestee's behalf at that juncture. Advocacy like that is of course entirely appropriate, and indeed constitutionally guaranteed; but the place for it is in Court, before a judge, not before an arresting officer.

The ADA requires that a disabled person engaging with a governmental service or

program (here, an arrest) be provided with reasonable accommodations so that they are put on equal footing with the non-disabled; it does not require that the disabled be placed in a better position. Because plaintiff has failed to demonstrate that he was not placed on equal footing with a non-disabled arrestee, the City is entitled to summary judgment dismissing plaintiff's claims, and his action should be dismissed, with prejudice.

## Argument

### POINT I
### THE CITY IS ENTITLED TO SUMMARY JUDGMENT

A.  Plaintiff Has Not Demonstrated a Question of Fact Regarding His Alleged Disability

Plaintiff contends that the parties have agreed that he is disabled, and that he was denied an accommodation during his police encounter on December 15, 2018. This is incorrect.

Defendants have never conceded that plaintiff suffers from an ADA-qualified disability, and plaintiff has not proved otherwise with admissible or competent evidence. In his opposition, plaintiff again relies on the fact that Defendants did not contest his allegation of disability when moving to dismiss his original *Pro Se* complaint. Opp. Mem. at 8. But on a Rule 12(b)(6) motion, factual allegations are assumed to be true only for purposes of the motion. When Defendants answered plaintiff's amended complaint, they denied the relevant allegations concerning plaintiff's alleged disability. *See* Answer to First Amended Complaint (D.E. 111), at ¶¶ 8-9, 74-87, 88-93 denying First Amended Complaint (D.E. 52), at ¶ at ¶¶ 8-9, 74-87, 88-93.[1]

Second, plaintiff argues that the City should be bound by Officer Schlesinger's and Lieutenant Wenzler's testimony that they thought plaintiff was "disabled." Mem. at 8. Officer

---

[1] Plaintiff also cites the fact that his deposition was taken remotely and that the court reporting agency provided plaintiff with a real time transcription as proof of his alleged disability. Plaintiff fails to mention that the deposition was taken remotely because plaintiff insisted that he would not appear for an in-person deposition in New York State on account of an outstanding bench warrant for his arrest, and that the real-time transcription was requested and paid for by plaintiff himself.

Schlesinger's and Lt. Wenzler's opinions about Mr. Fishman are not binding on the City as to the legal question of whether he suffers from an ADA-qualified disability, and plaintiff cites no law to support otherwise. But even if they were, plaintiff has mischaracterized their testimony. Officer Schlesinger testified that Mr. Fishman was "perfectly lucid in conversation" and did not require an accommodation to participate in a conversation (i.e., the arrest process). *See* Schlesinger Dep. (Ex. C), at 39:19-40:5; 85:6-25; 94:18-95:17. Lieutenant Wenzler, who allowed Mr. Fishman to be released on his own recognizance, testified that his decision to do that "was not based on specific policy about accommodating people that were disabled, it was based off of sympathy and empathy to the situation." Wenzler Dep (Pl. Ex. 10), at 37:2-14.

Third, plaintiff relies on (i) his own testimony, (ii) the testimony of his "disability aid" (Ms. Bolivar), (iii) the testimony of the visitation supervisor (Ms. Elliott); and (iv) "medical documentation" to prove that he suffered from an ADA-qualified disability. Opp. Mem. at 8. However, plaintiff's own testimony and the testimony of Ms. Bolivar and Ms. Elliott, in the absence of "supporting medical testimony, simply is not sufficient to establish a *prima facie* case under the ADA." *Douglas v. Victor Capital Group,* 21 F. Supp. 2d 379, 392 (S.D.N.Y. 1988). In fact, "[c]ourts in the Second Circuit have consistently held that when a plaintiff fails 'to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his condition,' he cannot establish that he is disabled within the meaning of the ADA." *Baerga v. Hospital for Special Surgery,* 2003 U.S. Dist. LEXIS 17201, at *18 (S.D.N.Y. Sept. 3, 2003), quoting *Johnson v. St. Clare's Hosp. & Health Ctr.,* 1997 U.S. Dist. LEXIS 22492, at *24 (S.D.N.Y. May 13, 1998); *see also Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir. 1994).

Here, the "medical evidence" upon which plaintiff's opposition rests consists of an

*unsworn* "To Whom it May Concern" letter from the Center for Cognition and Communication, dated March 22, 2021, stating that Mr. Fishman experiences "persistent tinnitus (hearing difficulty) along with considerable memory difficulties that interfere with his daily functioning," and that because of these difficulties, plaintiff "struggles with processing and retaining information presented to him." Plaintiff's Ex. 5. This letter is inadmissible hearsay and thus cannot create an issue of fact. *See Douglas,* 21 F. Supp. 2d at 391-392. However, even assuming the letter was considered, it does not speak to whether any of Mr. Fishman's alleged hearing or cognitive problems substantially limits one or more major life activities. *Id.*[2] In short, this Court cannot rule, as a matter of law, that plaintiff had a qualified disability under the ADA.

B.     Plaintiff Was Not Denied a Reasonable Accommodation

As demonstrated in the main brief, even assuming plaintiff had an ADA qualified disability, the City would still be entitled to summary judgment because plaintiff was not denied a reasonable accommodation. Plaintiff's argument to the contrary, *see* Opp. Mem. at 8-9, is without merit.

First, plaintiff contends that when he first arrived at NRPD headquarters "he communicated with the employee at the window [and] advised [her that] he was disabled." Opp. Mem. at 9. This grossly mischaracterizes the interaction. The entire conversation between Mr. Fishman and the CSO at the public window was captured on video. *See* Defendants' Exhibit G-1. When Mr. Fishman spoke directly with the CSO, which he did at length, he did not tell her that he had difficulty hearing or that he was disabled; to the contrary, the conversation is marked by a regular back and forth. *Id.* After about 11 minutes of speaking with the CSO, Ms. Bolivar

---

[2] In this regard, the Court is respectively referred to the video evidence submitted in support of Defendants' motion for summary judgment. *See* Defendant's Exhibit G-1, G-2 and G-3. A review of that evidence shows that Mr. Fishman had no difficulty hearing or effectively communicating with the Civilian Service Officer at the public window at New Rochelle Police Headquarters, or with Officer Schlesinger in the holding cell area of headquarters.

-4-

arrives, and Mr. Fishman introduces her to the CSO as his "disability aid," adding briefly, and without any elaboration, "I'm disabled." *Id.* at 11:00-11:15. Besides that minor reference, Mr. Fishman never informed the CSO that he was disabled, and he never informed the CSO of the nature of his disability or that he required a particular accommodation for it. *Id.*

Second, Mr. Fishman contends that he told Officer Schlesinger that he was disabled and required assistance from Ms. Bolivar during questioning. Opp. Mem. at 9. However, Officer Schlesinger did not recall Mr. Fishman requesting any accommodation, and, as noted above, testified that Mr. Fishman was "perfectly lucid in conversation" and that he did not believe that Mr. Fishman required an accommodation to participate in a conversation. *See* Schlesinger Dep. (Ex. C), at 39:19-40:5; 85:6-25; 94:18-95:17. The video evidence corroborates that Mr. Fishman had no trouble communicating with either the CSO or with Officer Schlesinger.

Third, Mr. Fishman argues that Ms. Bolivar was a court-appointed ADA disability aid. Mem. at 9. However, the order cited by Mr. Fishman to prove Ms. Bolivar's alleged status, Plaintiff's Exhibit 4, demonstrates otherwise. In that order, Westchester County Family Court Judge Michelle Shauer held: "To the extent that Mr. Fishman now asserts that he does not need supervision by a professional supervisor and that the Court should give him an aide to assist with his visits because he is disabled . . . *his assertion is meritless and any such aid does not constitute an 'ADA' court accommodation.*" **Exhibit 4,** at p.3 (emphasis added). The repeated assertion that Ms. Bolivar was a court-appointed ADA disability aid is therefore demonstrably false.

Fourth, Mr. Fishman claims that even though Lieutenant Wenzler released Mr. Fishman on his own recognizance, instead of requiring him to stay in jail for the weekend, Lt. Wenzler did not provide him any accommodation during the interview. Opp. Mem. at 9. However, Mr.

Fishman does not claim that he requested an accommodation from Lt. Wenzler during any interview, and as noted, Officer Schlesinger testified that Mr. Fishman was perfectly lucid, and had no difficulty in asking or answering questions, such that there was no obvious or apparent need for an accommodation.

Finally, plaintiff argues that if Ms. Bolivar had been allowed to review the 27-page visitation order with Officer Schlesinger, she could have explained that Mr. Fishman's visits with his children were "court ordered," and that she could also have "articulated to Officer Schlesinger that there was 'no violation [of the order of protection] and the visit wasn't canceled in writing beforehand and that we didn't' go on any property." Opp. Mem. at 5. This argument is irrelevant because, as demonstrated in the City's main brief, there was probable cause to arrest Mr. Fishman and, accordingly, Officer Schlesinger was not obligated to entertain or investigate Mr. Fishman's protestations or explanations of innocence. *See Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir. 2003).

The visitation order that, according to Mr. Fishman, Ms. Bolivar could have used to prove his innocence is attached as an exhibit to plaintiff's motion. Plaintiff's Exhibit 5. It bears a close review. The document in question is the June 13, 2018 decision and order of Westchester Family Court Judge Michelle I. Schauer, which ruled on, and granted, the application of Mr. Fishman's ex-wife to modify the terms of a previous custody agreement and which granted her sole and exclusive custody of the four children. *Id.* In granting the application, Judge Schauer found that "Mr. Fishman was unable to show that modifications to the [earlier] 2014 Agreement are unnecessary, especial given that during the fact-finding proceeding he did little more than deny obvious facts and blame others for his own destructive actions." *Id.* at 21-22. The Family Court further found that "the evidence as presented at trial only supports a conclusion that Mr. Fishman

-6-

has purposefully manipulated the intent of court orders and engaged in negative behavior that has inured to the detriment of his children." *Id.* at 23-24. Accordingly, Judge Schauer held "that it is appropriate for Mr. Fishman to have only supervised access to his children, as his access to his children needs to be closely monitored and tightly controlled in order to protect them from his poor judgment and impulsive behavior." *Id.* at 24-25.

As referenced in the June 13, 2018 decision and order, the Family Court also issued an order of protection on June 13, 2018 (as defined in the main brief, the "Order of Protection"). The Order of Protection, which was in effect on the date of Mr. Fishman's arrest, directed and ordered Mr. Fishman to stay away from his ex-wife, and her house, and directed and ordered that he stay away from his children as well, unless in the context of a scheduled visitation with the supervisor. Here, Mr. Fishman was arrested for violating the Order of Protection because he failed to stay away from his ex-wife and her house, and he attempted to contact one of his sons outside the organized context of a supervised visit. Mr. Fishman was tried and convicted of violating the Order of Protection.[3] That conviction was never disturbed on appeal.

As this Court already ruled, Mr. Fishman's conviction conclusively established that there was probable cause to arrest Mr. Fishman for violating the Order of Protection. *See* Order & Opinion (D.E. 106), at 15-16. Moreover, probable cause to arrest Mr. Fishman was properly based on the information available to Officer Schlesinger at the time, including that Mr. Fishman intentionally placed himself in close proximity to Ms. Solomon and her house, and intentionally tried to contact his son outside the context of a supervised visit. Because there was probable

---

[3] In his opposition, plaintiff asserts that he was convicted of violating an order dated June 27, 2017, not the order dated June 13, 2018. Opp. Mem. at 1, n.1. Plaintiff cites no evidence for this assertion. In any event, the point is moot because, again, plaintiff is arguing that he needed the accommodation so he could better protest his innocence. *Id.* Once there was probable cause to arrest plaintiff, and there was probable cause to arrest in this case, officers were not obligated to entertain such a protest.

-7-

cause to arrest, Officer Schlesinger was under no obligation to entertain Mr. Fishman's explanations of innocence (whether or not aided by Ms. Bolivar), or to investigate them, prior to placing Mr. Fishman under arrest. *See Garcia v. Doe,* 779 F.3d 84, 93 (2d Cir. 2014); *Jocks,* 316 F.3d at 136. And that was, and would be, the case whether Mr. Fishman was disabled or not. Indeed, whether disabled or not, given the credible allegations made by Ms. Solomon regarding a domestic incident, the New York Criminal Procedure Law mandated plaintiff's arrest. *See* N.Y.C.P.L. §140.10(4)(b)(i).

The ADA is violated when police fail to reasonably accommodate an arrestee's disability and thereby cause the arrestee "to suffer greater injury or indignity than other arrestees." *Wagner v. City of New York,* 2015 WL 5707326, at *7 (S.D.N.Y. Sept. 28, 2015). Because Mr. Fishman was treated no differently than a non-disabled arrestee would have been treated under the same circumstances, and cannot be said to have suffered any greater injury or indignity than would have been suffered by a non-disabled arrestee, no provision of the ADA was violated. *See Ryan v. Vermont State Police,* 667 F. Supp. 2d 378, 390 (D. Vt. 2009). The City is therefore entitled to summary judgment dismissing Mr. Fishman's claims.

C.      Plaintiff Did Not Raise a Triable Issue of Fact Regarding Intentional Discrimination

Monetary damages under the ADA or the Rehabilitation Act are only available when a "plaintiff can demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.,* 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015), citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 111 (2d Cir. 2001). To prove "intentional discrimination" under the ADA, a plaintiff must [prove] facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policymaker acted with 'deliberate indifference' to his rights under the ADA." *Id.* at 187, citing *Gershanow v. County of Rockland,* 2014 U.S. Dist.

LEXIS 37004, at *13 (S.D.N.Y. Mar. 20, 2014). "A plaintiff can 'demonstrate[] deliberate indifference in the Title II context where an 'official with authority to address the alleged discrimination and to institute corrective measures on [the] [p]laintiff's behalf had actual knowledge of ongoing discrimination against [the] [p]laintiff but failed to respond adequately.'" *Frank,* 84 F. Supp. 3d at 187, citing *Gershanow,* 2014 U.S. Dist. LEXIS at *14.

As demonstrated in the main brief, Mr. Fishman failed to demonstrate that a policymaker acted with ill will, personal animosity or deliberate indifference to his rights under the ADA. Moreover, even assuming that Officer Schlesinger was a policymaker, he allowed plaintiff to wear two layers (not just one), in response to which plaintiff thank him for his "professionalism." Rule 56.1 at ¶64. Similarly, even assuming Lt. Wenzler was a policymaker, he placed himself at risk for discipline by allowing Mr. Fishman to be released on his own recognizance, as opposed to spending the weekend in jail. Plaintiff therefore did not establish ill will or animosity.

Plaintiff's reliance in opposition on *Biondo v. Kaleida Health,* 935 F.3d 68 (2d Cir. 2019), is misplaced. In *Biondo,* the plaintiff's disability was not in doubt. The plaintiff was profoundly deaf and had unintelligible speech. *Id.* at 69-70. Here, by contrast, video of Mr. Fishman interacting with the CSO at the front desk and with Officer Schlesinger in the holding cell area makes clear that no rational juror could conclude that Mr. Fishman's alleged cognitive or hearing disability was open and obvious to the officers interacting with him that day. Plaintiff argues that there is an open question of fact about his disability, but no rational juror watching video of his encounters with police officials that date could make that conclusion. *See Ryan,* 667 F. Supp. 2d at 389 ("The video of this encounter clearly reveals that there was indeed effective communication between Ryan and the police"); *see also Scott v. Harris,* 550 U.S. 372, 378-381 (2007) (relying on video to reverse summary judgment on a vehicle pursuit case); *Brown v. City*

*of New York,* 798 F.3d 94, 109 92d Cir. 2015) (video evidence when obvious can dispel questions of fact and allow for determination of an issue as a matter of law).

In short, plaintiff has not, and cannot, demonstrate a contested issue of fact on the question of whether a policymaker acted with deliberate indifference towards his rights. Plaintiff's claims therefore fail.

### Conclusion

For the reasons set forth above, and in the main brief, the City's motion for summary judgment should be granted, and this action should be dismissed with prejudice.

Dated: White Plains, New York
      July 23, 2024

Respectfully submitted,

THE QUINN LAW FIRM PLLC
Attorneys for the City of New Rochelle

_____
Lalit K. Loomba

399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555
lloomba@quinnlawny.com
