```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/22/2025__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC FISHMAN,

                Plaintiff,

-against-

CITY OF NEW ROCHELLE

                Defendant,

19-cv-265 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Marc Fishman initiated this action January 8, 2019, alleging violations of alleging violations of Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, 29 U.S.C. § 94 *et seq*, First Amendment, Fourth Amendment and Fourteenth Amendment violations under 42 U.S.C. § 1983, as well as state law claims of negligence, false arrest, and malicious prosecution. Only Plaintiff's ADA and RA claims against Defendant City of New Rochelle remain, which the Court now addresses.

Presently before the Court is the Plaintiff's and Defendant's Motions for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. For the following reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff and Defendant submitted briefs, statements of material fact pursuant to Local Rule 56.1, responses to the opposing statements of material fact, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

On June 13, 2018, the Westchester Family Court issued a fact-finding order and order of protection (the "Orders") in connection with the Plaintiff, Jennifer Solomon ("Solomon"),

1

Plaintiff's former wife, and their children. (Defendant Rule 56.1 Statement ("Def's 56.1") ¶¶ 15-16.) The Orders modified a previously ordered custody agreement between Plaintiff and Solomon dated May 5, 2014, by awarding Solomon sole legal custody of the children. (*Id*. ¶ 16.) Additionally, the Orders stipulated that Plaintiff was to stay away from the children, their home, and their schools except for certain supervised parental access until June 13, 2019. (*Id*. ¶ 17.)

In December 2018, Plaintiff Marc Fishman voluntarily presented himself to the New Rochelle Police Department to make a complaint about a perceived violation of his court ordered supervision with his children. (Plaintiff Rule 56.1 Statement ("Pltf.'s 56.1") ¶ 1.) Plaintiff was accompanied by Ann Elliot ("Elliot"), the supervisor for the visitation, and Isabel Bolivar ("Bolivar"). (Pltf.'s 56.1 ¶ 3.) Plaintiff represents that Bolivar was his court appointed disability aide, but Defendant disputes this characterization. (Pltf.'s 56.1 ¶ 4; Defendant's Response to Plaintiff's Statement of Facts ("Defendant Response") ¶ 4.) Plaintiff states that upon arrival to the stationhouse, he advised the civilian service officer ("CSO") of his difficulty hearing and understanding her (Pltf.'s 56.1 ¶ 6), but Defendant disputes this occurrence, instead stating that Plaintiff engaged in detailed conversation with the CSO, Elliot and Bolivar without any indication, explicit or implicit, that Fishman had any difficulty understanding or making himself understood during the conversation. (Def's 56.1 ¶ 49.) Plaintiff asserts that he disclosed his disability to the CSO, stating he needed an accommodation (Pltf.'s 56.1 ¶ 7), but Defendant disputes this, stating that Plaintiff only advised the civilian service officer that he was disabled, with no further information offered. (Defendant Response ¶ 7.)

After speaking with the CSO, Plaintiff was interviewed by Officer Lane Schlesinger ("Schlesinger") (Defs' 56.1 ¶ 52.) Bolivar was not allowed to accompany Plaintiff while he was interviewed by Schlesinger. (Pltf's 56.1 ¶¶ 20, 25.) Plaintiff states that he attempted to show

Schlesinger his traumatic brain injury card and that Schlesinger responded stating he "wasn't interested" in the card, and that Plaintiff also asked for Bolivar to be allowed to assist him during the interview (Pltf's 56.1 ¶¶ 21-22); Defendant disputes this, instead asserting that Schlesinger only recalled Plaintiff stating he had a cognitive disability and that Plaintiff did not ask for a specific accommodation. (Def's 56.1 ¶¶ 53-54.) Moreover, Schlesinger found Plaintiff to be "perfectly lucid in conversation" and believed that given Plaintiff's "verbosity" in conversation and "lack of any manifest difficulty" in understanding or answering Schlesinger's questions, Plaintiff did not require a specific accommodation to be able to participate in the interview or arrest process thereafter. (Def's 56.1 ¶¶ 55-56.); Plaintiff disputes this representation of events. (Plaintiff Response to Defendant's Statement of Facts ("Plaintiff Response") ¶¶ 55-56.)

After interviewing Plaintiff, reviewing the Orders, and speaking with his supervisors, Schlesinger concluded there was probable cause to believe that Plaintiff violated the terms of the Orders, specifically because Plaintiff purportedly drove by Solomon's house and because Plaintiff got out of the car when doing so and attempted to speak with their children. (Def's 56.1 ¶¶ 46, 62.) Plaintiff disagrees that such events occurred and disagrees that there was probable cause to arrest him. (Plaintiff Response ¶ 62.) Plaintiff avers that had Bolivar been able to accompany him during the investigation process, Schlesinger would have not found there to be probable cause to arrest Plaintiff and thus Plaintiff would have avoided the resulting criminal case and its consequences, namely being convicted of a crime which Plaintiff protests he is innocent of, having to expend $50,000 to defend the criminal case and hire a disability advocate, and losing $150,000 in income due to the ten month suspension of his real estate broker's license. (Pltf's 56.1 ¶¶ 36-40.)

Based on the foregoing, Plaintiff's brings claims alleging violations of the ADA and the RA.

**PROCEDURAL HISTORY**

On January 8, 2019, Plaintiff commenced this action against the Defendant in his Complaint ("Compl."). (ECF No. 1.) On July 23, 2024, Plaintiff filed his motion for summary Judgment, along with his memorandum of law in support ("Plaintiff Motion" or "Pltf Mot."), his Rule 56.1 statement, his response to Defendant's Rule 56.1 statement along with his statement of additional facts, and Defendant filed its motion for summary judgment ("Defendant Motion" or "Deft Mot."), along with its memorandum of law in support, its Rule 56.1 statement, and its response to Plaintiff's 56.1 statement and to Plaintiff's statement of additional facts.

**LEGAL STANDARD**

**A. Rule 56**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

4

(1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Plaintiff brings claims pursuant to the ADA and RA. The Court addresses them in turn.

### A.  ADA Claim

To establish a violation of Title II of the ADA, a plaintiff must allege that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her]

5

disabilities." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). To establish a claim under the RA, a plaintiff must also demonstrate that the defendant receives federal funding. *Id.*

      a. **Whether Plaintiff is a Qualified Individual with a Disability**

To be a "qualified individual" under the ADA and RA, a plaintiff must allege two elements: 1) that they have a physical or mental impairment; and 2) that this impairment substantially limits one or more major life activities. *Schwartz v. Comex*, No. 96 CIV. 3386 LAP, 1997 WL 187353, *2 (S.D.N.Y. Apr. 15, 1997). Major life activities are "activities that are of central importance to daily life . . . [including] functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); 29 C.F.R. § 1630.2(i)).

Plaintiff is a "qualified individual" for the purposes of the ADA and the RA. According to the record, Plaintiff "sustained a Head Injury and Post-Concussion Syndrome and received cognitive rehabilitation treatment" at the Center for Cognition and Communication. (CD Dec., Ex. 5.) Plaintiff experiences "cognitive deficits in areas of verbal learning and memory trials, initial acquisition of non-verbal learning and memory, working memory, and verbal functioning." (*Id*.) He experiences "tinnitus (hearing difficulty, along with considerable memory difficulties that interfere with his daily functioning." (*Id*.) As a result, Plaintiff "struggles with processing and retaining information presented to him." (*Id*.) Additionally, Plaintiff carries a Brain Injury Identification card, which reads: "I have a brain injury which may affect my behavior and ability to communicate." (CD Dec., Ex. 6.)

Consequently, the record plainly establishes that Plaintiff suffers mental impairments which significantly impact major life-activities, namely his ability to hear, speak and learn.

Plaintiff thus is a "qualified individual" for the purposes of the ADA and RA. *Capobianco*, 422 F.3d 47. Additionally, the Court notes that while some of the medical records submitted by Plaintiff consist of unsworn statements from medical clinician, "[p]laintiff['s] evidence, if submitted in admissible form, [could] present[] evidence from which a reasonable factfinder could conclude" that Plaintiff suffers from a mental impairment that substantially hinders a major life activity. *Nasrallah v. Helio De*, 1998 WL 152568 (S.D.N.Y. Apr. 2, 1998) (denying summary judgment motion against plaintiffs, instead directing plaintiffs to submit their evidence in admissible form). Accordingly, for the purposes of resolving the instant motions, the Court concludes that a reasonable factfinder could conclude that Plaintiff is disabled and is a qualified individual for the purposes of the ADA and the RA.

    b. **Whether Defendant is subject to the ADA**

Public entities are generally subject to the ADA. *See Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 230 (S.D.N.Y. 2020). The "public entities defined in the ADA are state or local governments and their instrumentalities." *Sherman v. Black*, 510 F. Supp. 2d 193, 198 (E.D.N.Y. 2007), *aff'd*, 315 F. App'x 347 (2d Cir. 2009). The City of New Rochelle is clearly, therefore, within the scope of the ADA. Moreover, given the City of New Rochelle receives federal funding, it is likewise within the scope of the RA. *Henrietta D.*, 331 F.3d 261 at 272.

    c. **Whether the Defendant Discriminated against Plaintiff by way of Failure to Accommodate Plaintiff**

"In the context of arrests, courts have generally recognized, and distinguished, two types of claims under Title II of the ADA: (1) a wrongful arrest claim, where police arrest a suspect based on his disability, not for any criminal activity; and (2) a claim that alleges a failure to provide reasonable accommodations, where police properly arrest a suspect but fail to reasonably

7

accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees." *Ryan v. Vermont State Police*, 667 F. Supp. 2d 378, 387 (D. Vt. 2009). Courts have "dismissed ADA claims where the plaintiff has failed to prove that she requested an accommodation." *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003) (citing *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir.1999) ("[T]he duty to provide a reasonable accommodation is not triggered until a specific demand for an accommodation has been made.")). At the same time, "[a]pplication of this general rule is not warranted . . . where the disability is obvious or otherwise known to the [defendant] without notice from the [plaintiff]. The notice requirement is rooted in common sense. Obviously, a [defendant] who acts or fails to act without knowledge of a disability cannot be said to have discriminated based on that disability . . . Moreover, the notice requirement prevents a [plaintiff] from keeping her disability a secret and suing later for failure to accommodate." *Id*.

Defendant argues that Plaintiff did not make his disability sufficiently known, and instead that Plaintiff only made cursory acknowledgements when he first walked into the New Rochelle Police Department. (LL Dec., Ex. G-1.) As such, the Defendant could not be responsible for failing to accommodate a disability it did not know of and for failing to address limitations Plaintiff did not raise. At two points in the video, Plaintiff appears to state that he is disabled, and that Bolivar is his ADA aid. (*Id*.) If this were the totality of what the record contained, then the Court might be inclined to agree with the Defendant that Plaintiff did not sufficiently make his disability and corresponding limitations known.

However, the record does not end there. Plaintiff argues that he attempted to substantively raise his disability with Officer Schlesinger, specifically by showing his brain injury card, to which

8

Officer Schlesinger allegedly said "I don't care. Put it away . . . I don't need to see it. My boss says I don't need to see it." (Pltf's 56.1 ¶ 30.) Defendant, in response, argues that such statements cannot be imputed to the City of New Rochelle; this is not so, as if Officer Schlesinger made these statements in the course of arresting and/or investigating Plaintiff, Officer Schlesinger made these statements while acting as an agent of the City of New Rochelle. *Nyack v. S. Conn. State Univ.*, 424 F. Supp. 2d 370 (D. Conn. 2006). Statements made by an agent are admissible as vicarious admissions under the Federal Rules of Evidence when the following criteria are met: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992).

Here, there is no dispute that Schlesinger is an agent of the City of New Rochelle, as an officer of the New Rochelle Police Department; any statement made by Schlesinger to Plaintiff would have been made during the course of investing and/or arresting Plaintiff, thus being made during the course of the agency relationship; and finally, the alleged statements directly relate to a matter within the scope of the agency, as they directly deal with a disabled person purportedly requesting accommodations while being investigated and/or arrested.  Thus, Schlesinger's statements are admissible against Defendant as vicarious admissions of a party opponent. Fed.R.Evid. 801(d)(2)(D). If Schlesinger did, in fact, make these statements, Plaintiff cannot be faulted for failing to substantively raise his disability such that Defendant could have notice of Plaintiff's disability and of the need to accommodate Plaintiff accordingly.

While it might be disputed whether Plaintiff gave sufficient notice of his disability, either conclusion would still require that summary judgment be granted in favor of Defendant. If the Defendant lacked notice of Plaintiff's disability, then summary judgment would be appropriate in

favor of Defendant as Plaintiff cannot bring a claim for discrimination under the ADA and RA where Defendant did not know of Plaintiff's disability.

If Defendant did have notice of Plaintiff's disability, then the next consideration would be whether Defendant failed to accommodate Plaintiff's disability. According to Defendant, Plaintiff did not request an accommodation throughout the arrest and investigation process, and, to the contrary, despite any disabilities, appeared to be perfectly "lucid." (Def's Rule 56.1 ¶¶ 52-56.) Indeed, video exhibits proffered in support of Defendant's motion support Defendant's representation that Plaintiff exhibited no difficulty in processing or articulating information while interacting with New Rochelle Police Department officials. (LL Dec., Ex. G-1 to Ex. G-3.) Plaintiff, however, asserts that he requested an accommodation, namely that Bolivar be able to assist him during the investigation and arrest process. (Pltf's Rule 56.1 ¶¶ 24-28.)

Plaintiff and Defendant's disagreements on whether Plaintiff did request an accommodation create a dispute of material fact as to whether Defendant failed to accommodate Plaintiff. This dispute of fact does not mean that the instant action cannot be resolved at summary judgment; even if Plaintiff could demonstrate that Defendant failed to accommodate him and resolve this question of fact in his favor, Plaintiff, fatal to his ADA claim, would not be able to demonstrate that he suffered greater injury or indignity than other arrestees as a result.

Plaintiff asserts, by way of Bolivar's testimony, that the failure to accommodate harmed Plaintiff because had Bolivar been allowed to accompany Plaintiff, she would have been able to articulate Plaintiff's circumstances in such a way that he would not have been arrested. (Pltf's Rule 56.1 ¶ 36.) By extension, Plaintiff reasons that he would not have been subject to the following: he would not have been "convicted of crimes he was actually innocent of," he would not have had to expend "over $50,000 to defend the criminal case and to hire a disability advocate," and he

10

would not have lost "$150,000 in income as a result of the 10-month suspension of his real estate broker's license." (Pltf's Rule 56.1 ¶¶ 36-40.)

Plaintiff might sincerely believe that he is innocent and therefore his conviction and the corresponding consequences are unfair; however, Plaintiff's frustration with the outcome of an entirely separate criminal action (wherein he was afforded all due process considerations and protections), distinct from the instant action, does not transform the separate criminal action's conviction and its corresponding consequences into cognizable harm under the ADA's guarantee that Plaintiff will not suffer greater injury or indignity than other arrestees. Because the record does not otherwise contain any evidence – and Plaintiff does not aver in his Rule 56.1 statement or in his statement of additional facts – indicating that any alleged failure to accommodate resulted in Plaintiff suffering greater injury or indignity than other arrestees, Plaintiff's ADA claim fails as a matter of law and summary judgment must therefore be granted in favor of Defendant. *See Woods v. City of Utica*, 902 F. Supp. 2d 273 (N.D.N.Y. 2012) (granting summary judgment against plaintiff's ADA and RA claims where plaintiff did not demonstrate that defendant's actions caused greater injury or indignity than other arrestees); *Durr v. Slator*, 2023 WL 8277960 (N.D.N.Y. Nov. 30, 2023), *appeal dismissed* (Mar. 29, 2024) (denying summary judgment against plaintiff's ADA claims where plaintiff sufficiently demonstrated he suffered injury as a result of defendants' failure to accommodate plaintiff based on his disabilities*); Morales v. City of New York*, 2016 WL 4718189 (S.D.N.Y. Sept. 7, 2016) (denying summary judgment against plaintiff's ADA claims where there existed a genuine dispute of material fact as to whether the failure to safely transport a paraplegic plaintiff caused the plaintiff to suffer greater indignity than other arrestees); *Wagner v. City of New York*, 2015 WL 5707326 (S.D.N.Y. Sept. 28, 2015) (same).

      d. **Plaintiff's RA Claim**

The ADA and RA "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Given the Court is granting summary judgment in favor of Defendant against Plaintiff's ADA claim, finding that such claim fails as a matter of law and finding there to be no genuine dispute of material fact as to whether Plaintiff suffered injuries as a result of any failure to accommodate Plaintiff's disabilities, the Court will also grant summary judgment in favor of Defendant against Plaintiff's RA claim.

## CONCLUSION

For the foregoing reasons, Plaintiff Marc Fishman's Motion for Summary Judgment is DENIED and Defendant City of New Rochelle's Motion for Summary Judgment is GRANTED. The Clerk of Court is kindly directed to terminate the motion at ECF Nos. 152 and 159. The Clerk of Court is also directed to enter judgment in favor of the Defendants. The Clerk of Court is further directed to close the case.

Dated:   January 22, 2025                                    SO ORDERED:
            White Plains, New York

                                                                              NELSON S. ROMÁN
                                                                   United States District Judge